*1 1*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 1 5 2002

Michael N. Milby
Clerk of Court

DINO X. CHAVEZ                                  :

VS.                                            :

BROWNSVILLE INDEPENDENT        :        CIVIL ACTION NO.:  B-02-128
SCHOOL DISTRICT, NOE SAUCEDA,  :
and RANDY DUNN, MARILYN DEL    :
BOSQUE-GILBERT and              :
HUGH EMERSON, JR., in their official  :
capacities as Board Members of Brownsville:
Independent School District     :

---

**MOTION TO DISMISS UNDER RULE 12(B)(6) FOR FAILURE TO STATE A
CLAIM UPON WHICH RELIEF CAN BE GRANTED ON BEHALF OF
DEFENDANTS RANDY DUNN, MARILYN
DEL BOSQUE-GILBERT, AND HUGH EMERSON, JR.**

---

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Movants, Randy Dunn, Marilyn Del Bosque-Gilbert, and Hugh Emerson, Jr., Co-Defendants in this cause, and file this their **Motion to Dismiss Under Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted On Behalf of Defendants Randy Dunn, Marilyn del Bosque-Gilbert, and Hugh Emerson, Jr.** and would show unto the Court as follows:

I. Statement of Nature and Stage of the Proceedings

Plaintiff Dino Chavez sued Brownsville Independent School District (BISD), Noe Sauceda, and movants Randy Dunn, Marilyn Del Bosque-Gilbert, and Hugh Emerson, Jr. in their official capacities. Movants are BISD trustees. Chavez alleged claims against the

movants under section 1983 for deprivation of his due process rights under the Fourteenth Amendment and for deprivation of his First Amendment free speech rights by retaliating against him for his speech.  Movants pray that Plaintiff be ordered to reply to their defenses under Rule 7(a) and for dismissal of these claims under Rule 12(b)(6).

## II.  Statement of the Issues

1. Individual Capacity

   A.    Does Chavez state claims against the movants in their individual capacities?

   B.    Were the movants' actions legislative activities, thereby entitling them to absolute immunity in their individual capacities?

   C.    Did the movants violate any of Chavez's clearly established constitutional rights?

2. Due Process

   A.    Does Chavez allege the deprivation of any liberty or property right?

   B.    Did the actions of the movants cause Chavez to be deprived of any liberty or property right?

   C.    Was Chavez entitled to more procedural protection than the notice and opportunity to be heard that he was afforded?

   D.    Does Chavez allege any arbitrary abuse of power by the movants?

3. Speech Retaliation

   A.    Was Chavez speaking as a citizen about an issue of public concern or as an contractor concerned about his own business?

   B.    Were the movants' actions protected by the First Amendment?

### III. Plaintiff's Complaint

Chavez's complaint alleges that in 1994 he submitted a proposal to BISD as representative of American Family Life Assurance Company of Columbus (AFLAC) for AFLAC to offer optional "cafeteria plan" insurance to BISD employees. BISD awarded this contract to AFLAC, and Chavez worked as AFLAC's representative with regard to this contract until he was terminated by AFLAC some time after November 2001. Chavez alleges that he was terminated as a result of the Defendants' conduct in the later months of 2001, when BISD advertised for and considered proposals for the cafeteria plan contract for the coming year.

Chavez alleges that movant Randy Dunn spoke with him on August 14, 2001, about a plan to use an "agent of record" for BISD insurance business, and for Chavez's future work for BISD to be coordinated with another agent and National Plan Administrators (NPA), another insurer.

Chavez appeared at a BISD board meeting on November 6, 2001 and spoke during the public comment section of the meeting. Chavez argued for the AFLAC plan and expressed his opinion that it would be illegal for BISD to use an "agent of record" as allegedly contemplated with the NPA plan.

Another board meeting was scheduled for November 13, 2001. Chavez alleges that an item on the agenda for discussion of the cafeteria plan contract had been deleted, but he does not allege any involvement of Dunn, Del Bosque-Gilbert, or Emerson, Jr. in removing this item from the agenda. In any event, Chavez's complaint acknowledges that he appeared

at the meeting and was permitted to speak again on behalf of the contract he represented with AFLAC and against the NPA proposal.

On November 16, 2001, the agenda was posted for the November 20 meeting. The agenda included approval of the NPA plan. Chavez then sent a letter directly to the BISD employees who served as representatives on the BISD Insurance Committee regarding the cafeteria plan contract and the November 20 agenda. Chavez appeared at the November 20 meeting and again spoke to the Board on behalf of the AFLAC proposal and against the NPA plan. A vote was taken on approving the NPA proposal. Although the movants voted in favor of the NPA proposal, the vote failed and the NPA proposal was not approved.

The next board meeting was November 29, 2001. Although the AFLAC proposal was on the agenda, Chavez alleges that defendant Sauceda informed Chavez's supervisor at AFLAC that the AFLAC proposal would only be considered if Chavez were replaced as AFLAC's representative. Sauceda also sent a letter to Chavez stating that due to Chavez's unprofessional and unethical conduct Chavez was prohibited from visiting school district property or contacting school personnel during school business hours. Chavez does not allege any involvement by Dunn, Del Bosque-Gilbert, or Emerson, Jr. in either of these measures.

Through another representative, AFLAC's proposal was presented at the November 29 meeting. A vote was taken among member of the BISD Insurance Committee, and the AFLAC plan won the vote and was approved to continue as the BISD cafeteria plan insurance provider. Chavez alleges that Dunn attempted to delay the counting of the

Insurance Committee vote, but acknowledges that there was no delay and the votes were counted immediately. Thereafter, Chavez was terminated by AFLAC.

## IV. Argument

### A.    Standard of Review

Under Rule 12(b)(6) the court must accept the allegations as true and must review them in the light most favorable to the plaintiff and drawing all reasonable inferences in favor of the plaintiff. *Watson v. Texas*, 261 F.3d 436, 440 (5th Cir. 2001). However, the complaint must state facts, not conclusions. *Guidry v. Bank of La Place*, 954 F.2d 278, 281 (5th Cir. 1992). The court may order the plaintiff to file a reply that states specific facts demonstrating the sufficiency of the claim. FED. R. CIV. P. 7(a); *Schultea v. Wood*, 47 F.3d 1420, 1433-34 (5th Cir. 1995).

### B.    No Liability for Board Members in Their Individual Capacity Due to Legislative and Qualified Immunity

Chavez's complaint states that he sues Dunn, Del Bosque-Gilbert, and Emerson, Jr. "in their official capacities." No mention is made of any claims asserted against them in their individual capacities. Movants assert, therefore, that this suit should be construed as not stating any claims against them in their individual capacities.

However, if movants are indeed sued only in their official capacities, then their inclusion in a lawsuit that also names BISD as a defendant is superfluous and unjustifiably harassing. *See Turner v. Houma Fire and Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) (suit against government official in official capacity pleads an action only against the government entity of which the official is an agent, and plaintiff who is awarded damages

in an official capacity suit must look only to government entity itself for recovery). Out of an abundance of caution, movants will also address the complaint as if it does assert claims against them in their individual capacities.

      1.    Absolute Legislative Immunity

Local legislators are entitled to absolute immunity for all actions taken in the sphere of legitimate legislative activity. *Bogan v. Scott-Harris*, 118 S.Ct. 966, 972 (1998). Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it. *Id*. at 973 (finding immunity to section 1983 claim alleging ordinance eliminating one-person department was motivated by animosity toward person's protected speech). Actions and statements made during an investigation by a legislative body or in a legislative committee are legitimate legislative activities. *Cole v. Gray*, 638 F.2d 804, 811 (5th Cir. 1981).

In this case, Chavez alleges very little wrongful conduct by the movants, none of it outside the sphere of legitimate legislative activities. Chavez alleges that the movants voted in favor of the NPA proposal rather than the AFLAC proposal he represented. The act of voting is "quintessentially legislative." *Bogan*, 118 S.Ct. at 973. Obviously, the choice of insurance plans for BISD employees reflected a broad, discretionary, policy-making decision, not an issue that concerned only one person. *See id.*, (distinguishing between broad policy issues and issues that implicate only one person).

Chavez alleges two other specific acts by Dunn, both of which also fall within the sphere of legislative activities. Chavez alleges Dunn informed him of a planned change to

the contract he had been awarded by BISD, and further alleges that Dunn unsuccessfully tried to delay the counting of a vote at a board meeting. Obviously Dunn's alleged actions regarding the counting of the vote at the board meeting were legislative activities. His alleged discussion with Chavez regarding the handling of the insurance contract at a time when the contract was up for reconsideration by the board was also within the sphere of legislative activities.

      2.    <u>Qualified Immunity</u>

      The doctrine of qualified immunity shields a state official from personal liability for damages under 42 U.S.C. § 1983 when the official's exercise of discretionary authority results in a violation of an individual's federal constitutional or statutory rights, unless at the time and under the circumstances of the challenged conduct all reasonable officials would have realized that it was proscribed by the federal law on which the suit is founded. *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997). The bifurcated test for qualified immunity asks whether the plaintiff has alleged a violation of a clearly established right and, if so, whether the defendant's conduct was objectively unreasonable. *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998). Currently applicable constitutional standards govern the first prong of the analysis. *Id*. at 326. The second prong involves two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law. *Id*. at 326; *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999).

As discussed in greater detail below, no clearly established constitutional rights were violated in this case. Chavez has no liberty or property interest in government contracts. He was afforded notice and an opportunity to be heard. Chavez's speech was not protected by the First Amendment because his speech was primarily concerned with preserving his own commission. Even if his speech was protected, nothing movants did in response to his speech could be characterized as "objectively unreasonable."

C.   Chavez Fails to State a Due Process Claim

Chavez does not specify whether he asserts a violation of procedural due process or substantive due process, nor what liberty or property interest he was deprived of. Under the facts alleged, he has no protected liberty or property interest. Chavez also cannot show the lack of notice and hearing required for a procedural due process claim, nor the arbitrary action required for a substantive due process claim.

1.   No Protected Liberty or Property Interest

To establish either a substantive due process claim or a procedural due process claim, a plaintiff must demonstrate the deprivation of a protected liberty or property interest. *Simi Inv. Co., Inc. v. Harris County, Tex.*, 236 F.3d 240, 249 (5th Cir. 2000) (substantive due process); *Board of Regents of State Colleges v. Roth*, 92 S.Ct. 2701, 2705 (1972) (procedural due process). A party asserting a property interest must show a legitimate entitlement to a property interest recognized under the relevant state law. *Bishop v. Wood*, 96 S.Ct. 2074, 2077 (1976); *Simi*, 236 F.3d at 250. Texas law does not recognize any property right arising from the competitive award of government contracts. *Spawglass Constr. Corp. v. City of*

*Houston*, 974 S.W.2d 876, 880 (Tex. App.--Houston [14th Dist.] 1998, pet. denied); *A & A Constr. Co., Inc. v. City of Corpus Christi*, 527 S.W.2d 833, 835 (Tex. Civ. App.--Corpus Christi 1975, no writ) (citing TEX. REV. CIV. STAT. ANN. art. 2368a §2 (1971) (city has the right to reject any and all bids), *see now* TEX. LOC. GOV'T CODE ANN. §271.027(a) (Vernon Supp. 2002) (school board has the right to reject any and all bids).

Chavez alleges that he was deprived "of the opportunity to participate in the open bidding process." It is unclear how this forms a legitimate liberty interest. The purpose of participating in the bidding process is to be awarded a contract. But, when state law permits the governmental entity to reject "any and all bids," and refuses to acknowledge a property right ever attaching to the award of a government contract, this "liberty right" is ephemeral at best. Such an ephemeral right ought not be the keystone of an actionable constitutional deprivation. *See Daniels v. Williams*, 106 S.Ct. 662, 665 (1986) (Claims under the Fourteenth Amendment should be limited to large concerns of the governors and the governed; not be used as a font of tort law superimposed on existing legal systems).

    2.    <u>Movants Did Not Cause Chavez to be Deprived of Any Right</u>

Even if Chavez's allegations state the deprivation of a protected interest, the allegations do not support a conclusion that Chavez was deprived of this interest by the movants. Chavez concedes that he was allowed to participate in the bidding process by submitting a proposal on behalf of AFLAC, and that he was permitted to speak to the board on behalf of his proposal several times. Ultimately AFLAC, not the movants, chose to drop

Chavez, at the urging of co-defendant Sauceda (again, with no involvement from the movants).

Even if it were alleged that movants were involved in Sauceda's communication with AFLAC, there is no constitutional infirmity in a governmental entity informing a potential contractor that its proposal would be more favored if the potential contractor removed an employee whom the governmental entity regards as unethical and unprofessional. A finding that Chavez was deprived of a liberty interest would mean that everyone cut out of any proposal for a government contract would thereby be deprived of a protected liberty interest for purposes of procedural due process.

3.   No Procedural Due Process Claim Because Chavez was Afforded All the Process that Was Due

At a minimum, notice and hearing are required before an individual may be deprived of his liberty or property interests. *Systems Contractors Corp. v. Orleans Parish School Board*, 148 F.3d 571, 575 (5th Cir. 1998). By his pleadings, Chavez concedes that he received notice of the board's meetings concerning the insurance proposals and was afforded several opportunities to be heard. Indeed, by his own admission, it was his own conduct during those opportunities to be heard that got him into trouble. The Fifth Ciruit has noted the dearth of authority establishing any further procedural rights of bidders for government contracts and has cited with approval a New York case holding that only notice and the opportunity to be heard are required. *See id.* at 575-76, citing *Rutigliano Paper Stock v. U.S. Gen. Servs. Admin.*, 967 F.Supp. 757, 766 (S.D.N.Y. 1997). The Fifth Circuit also took note of the similarity between rejecting a proposal for a government contract and terminating a

government employee, and that in the latter context again all that is required is notice and the opportunity to be heard.[1] *Systems*, 148 F.3d at 576.

In this case, Chavez received notice of the request for proposals, the time, place and agenda for the board meetings, and was afforded several opportunities to be heard. No more procedural protection was due.

4.   No Substantive Due Process Violation Because No Arbitrary Abuse of Power

Substantive due process analysis is appropriate only where the government arbitrarily abuses its power to deprive individuals of constitutionally protected rights. *Simi*, 236 F.3d at 249. Chavez has not alleged an arbitrary abuse of power, nor, on the facts alleged, could an arbitrary abuse of power be shown. Movants voted for a competing insurance plan, but the AFLAC plan won in the end anyway. Chavez alleged that Dunn discussed changes to Chavez's way of doing business with the school district under the competing plan, and suggested delaying the counting of the Insurance Committee's votes, but the votes were counted immediately nonetheless. There is no arbitrary abuse of power in any of these actions, nor is there any indication that the alleged acts of the movants had the effect of depriving Chavez of any constitutionally protected rights.

---

[1]      Despite favorable discussion of a rule that would require only notice and the opportunity to be heard when rejecting a proposal for a government contract, *Systems* ultimately did not reach this issue because Louisiana also afforded certain post-rejection remedies. The court held that those post-deprivation remedies, along with notice and the opportunity to be heard, were sufficient. *Systems*, 148 F.3d at 576.

D.   Chavez Fails to State a Claim for Speech Retaliation

    1.    Chavez's speech concerned his own financial interests, not a matter of public concern

        To recover on a claim of retaliation for protected speech, a plaintiff must establish that his statements were constitutionally protected, and that those protected statement were substantial or motivating factors in the action taken against him. *McAdams v. Matagorda County Appraisal Dist.*, 798 F.2d 842, 845 (5th Cir. 1986). Determining whether speech is protected involves a balance between the interests of the government contractor as a citizen in commenting on matters of public concern, and the interests of the State as an employer in promoting the efficiency of public services it provides. *Id.* When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of personal interest, federal courts will not intervene absent the most unusual circumstances. *Connick v. Myers*, 103 S.Ct. 1684, 1690 (1983). When the employee's speech about a government policy arises from the very application of that policy to the speaker, additional weight must be given to the government's side of the balance. *Id.* at 1693. Courts may properly consider the speaker's motive, i.e., whether the speaker was motivated by concern for the public good or by concern for his own interests. *Dodds v. Childers*, 933 F.2d 271, 273 (5th Cir. 1991).

        In this case Chavez was primarily concerned with maintaining the commission he earned on the AFLAC contract. Just as the employee's speech was found to be unprotected in *Connick* because the employee was primarily concerned with the impact of a policy on himself rather than with the public impact of the policy, *see Conick*, 103 S.Ct. at 1690,

Chavez's primary concern with the NPA plan was its adverse effects on him personally. His complaint betrays his concern that "going through" another agent under the NPA plan "would likely involve the payment to [that agent] of some additional funds or commissions that would otherwise be due to Mr. Chavez." The choice between AFLAC and NPA may have been a matter of public concern, but Chavez's involvement in the contract was a primarily a matter of concern to Chavez alone.

2.    BISD Board Members and BISD are entitled to First Amended Protection of Their Own.

The only acts Plaintiff alleges that del Bosque-Gilbert, Dunn, or Emerson, Jr. did were to (1) publicly express their views on using an "agent of record," (2) unsuccessfully urge a delay in counting the Insurance Committee votes, and (3) unsuccessfully vote for a competing proposal. All of these are protected "speech" under the First Amendment. Movants cannot be liable for these acts, either individually or in their "official capacity." The "official capacity" claims against Movants are really against BISD, which cannot be liable for protected speech nor can it even prevent the board members from a lawful exercise of their speech rights.

The manifest purpose of the First Amendment requires legislators be given the widest latitude to express views on public policy. *Bond v. Floyd,* 385 U.S. 116, 136 (1966)(House could not exclude elected Representative Julian Bond based on views he expressed in an interview). The interest of the public to hear all sides does not requires legislators have less protection than other citizen-critics. *Id.* at 136. A legislator has a duty to take positions on controversial issues so citizens can be fully informed and can judge the qualifications of their

elected officials. *Id.* Consequently, the act of voting is an expressive act, protected by the First Amendment. *Miller v. Town of Hall*, 878 F.2d 523, 532-33 (1st Cir. 1989), *cert. denied,* 493 U.S. 976 (1989); *Clarke v. U.S.*, 886 F.2d 404, 411 (D.C.Cir. 1989), *vacated as moot,* 915 F.2d 699 (D.C.Cir. 1990)(en banc).

Plaintiff has no right to require legislators refrain from speech or advocacy. *X-Men Sec., Inc. v. Pataki,* 196 F.3d 56, 68 (2nd Cir. 1999). The legislator does not lose the right to speak upon becoming a legislator. *Id.* at 69-70. Thus, the First Amendment protects the right to publically criticize the granting of a public contract. *Id.* at 70.

Plaintiff cannot escape this problem by claiming he sues movants only in their official capacity. First, BISD could not properly govern or command Del-Bosque, Emerson, Jr., or Dunn for their speech activities. Had the board taken action to suppress their speech, it would be liable to them. *See, e.g., Miller,* 878 F.2d at 532; *Rash-Aldridge v. Ramirez,* 96 F.3d 117, 119 (5th Cir. 1996). It would effectively deprive board members of their rights and suppress their protected duties to speak on issues to hold BISD liable for the exercise of their rights or duties.

Second, movants' actions were not actionable because they did not cause an adverse government action. *Compare, Colson v. Grohman,* 174 F.3d 498 (5th Cir. 1999). There, the court upheld summary judgment dismissing a section 1983 suit by former council member Colson against the City of Pearland, its city manager, its police chief, and former city councilmen. *Id.* at 500. Plaintiff had criticized the police department's budget. *Id.* Plaintiff claimed that, in retaliation, the individuals falsely accused her of crimes, instigated a grand

jury investigation, and instigated a recall campaign against Colson. However, the recall campaign was halted and no recall election occurred. *Id.* at 503. The grand jury no-billed the charges. *Id.* at 504. Eventually, Colson lost the next election. *Id.*

The alleged retaliation violates the First Amendment where it imposes an adverse governmental action against the individual. *Id.* at 509. However, not all disadvantages flowing from the exercise of speech constitute actionable retaliation. *Id.* at 510. Mere false accusations or investigations fall short of adverse actions. *Id.* at 511. Because Colson was never indicted or subjected to a recall election, there was no actionable retaliation. *Id.* at 511-13.

The comparison is striking. Here, Chavez alleges acts that are protected speech by del Bosque-Gilbert, Emerson, Jr., and Dunn. He does not allege *their* actions directly caused BISD to take any action against him; indeed, he pleads that none of *their* actions were successful in causing BISD to do anything. The result should be the same as in *Colson*.

## V. Conclusion

The remedy provided by section 1983 should be reserved for more serious matters than Chavez's disappointment over losing his commission on the BISD insurance contract. Section 1983 was not intended as a vehicle for federal court correction of errors in the exercise of discretion by local school board members where the alleged errors do not rise to the level of violations of specific constitutional guarantees. *Wood v. Strickland*, 95 S.Ct. 992, 1003 (1975).

Chavez alleges the violation of no constitutionally protected liberty or property right. Nothing he alleges demonstrates the absence of constitutionally required procedural protections, nor the sort of arbitrary abuse of power that would arouse constitutional interest. The speech for which he claims constitutional protection was primarily concerned with winning a contract for himself and defeating a competing proposal. The acts he alleges were committed by the movants were largely inconsequential; Chavez does not even begin to demonstrate how the movant's acts deprived him of constitutional rights. Chavez does not state a claim against the movants upon which relief can be granted by this Court.

Respectfully submitted,

ADAMS & GRAHAM, L.L.P.
P. O. Drawer 1429
Harlingen, Texas 78551
Telephone: 956/428-7495
Facsimile: 956/428-2954

By: _____
CRAIG H. VITTITOE
State Bar No. 20593900
Federal I.D. No. 18756
ROGER W. HUGHES
State Bar No. 10229500
Federal I.D. No. 5950
SCOTT T. CLARK
State Bar No. 00795896
Federal I.D. No. 21676

Attorneys for Defendants RANDY DUNN, MARILYN DEL BOSQUE-GILBERT, AND HUGH EMERSON, JR.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing instrument was forwarded to the following attorneys of record on this the _____ 15 _____ day of July, 2002.

Mr. J. Arnold Aguilar                    **CMRRR # 7001 2510 0004 2061 2665**
**LAW OFFICES OF J. ARNOLD AGUILAR**
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, TX 78520
Attorney For Plaintiff, DINO X. CHAVEZ


Mr. Charles Willette, Jr.                    **Via Ordinary Mail**
**WILLETTE & GUERRA**
3505 Boca Chica Boulevard, Suite 460
Brownsville, TX 78520
Attorneys For Defendant, NOE SAUCEDA


Ms. Elizabeth G. Neally                    **Via Ordinary Mail**
**ROERIG, OLIVEIRA & FISHER, L.L.P.**
855 West Price Road, Suite 9
Brownsville, TX 78520
Attorney for Defendant,
BROWNSVILLE INDEPENDENT SCHOOL DISTRICT

_____
Craig H. Vittitoe