*14*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 0 2 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| DINO X. CHAVEZ | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | |
| | § | B - 02 - 128 |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT and NOE SAUCEDA | § | |

## PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE U. S. DISTRICT COURT:

COMES NOW **DINO X. CHAVEZ**, Plaintiff herein, complaining of Brownsville Independent School District and Noe Sauceda, and for such cause would respectfully show unto the Court and jury the following:

### I.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter in controversy in this action, and the claims are within the jurisdictional limits of this Court. Venue is also proper in this Court because all or a substantial part of the events or omissions giving rise to the claims herein occurred in Cameron County, and the Defendants' residence at the time the causes of action accrued was in Cameron County, Texas.

v:\fp\pop\258-02.1st                                                                                                   PAGE 1

## II.

## **PARTIES**

2.  Plaintiff DINO X. CHAVEZ is a resident of Brownsville, Cameron County, Texas.

3.  Defendant BROWNSVILLE INDEPENDENT SCHOOL DISTRICT (BISD) is an independent school district organized under the laws of the State of Texas. This Defendant has already been served and appeared herein.

4.  Defendant NOE SAUCEDA is an individual resident of Brownsville, Cameron County, Texas, at all relevant times herein. This Defendant has already been served and appeared herein.

## III.

## **FACTUAL BACKGROUND AND ALLEGATIONS**

5.  Plaintiff Dino Chavez was originally appointed to represent American Family Life Assurance Company of Columbus (AFLAC) on September 6, 1994. After working for a number of years with AFLAC, Mr. Chavez submitted an AFLAC proposal to BISD for an optional §125 Cafeteria Plan on April 30, 1998. That Plan was later approved by Defendant BISD on November 3, 1998, at which time Mr. Chavez was awarded the §125 Cafeteria Plan Services Contract and an opportunity to offer some other AFLAC voluntary products as a condition for providing free cafeteria plan services, including acting as Third Party Services Provider for BISD. During November and December 1998, Mr. Chavez planned, coordinated and conducted Defendant BISD's entire cafeteria plan enrollment for over 6,000 employees as a service to BISD, thus saving BISD considerable expense. During the following year, from

January through December 1999, Mr. Chavez provided BISD with additional administrative assistance and technical advice on a daily basis to insure compliance with §125 guidelines, in addition to handling all inquiries and necessary paperwork relating to claims, policy questions and other matters relating to those policies. Thereafter, BISD advertised for proposals on the same products for the 1999-2000 and 2000-2001 years. During both years, no changes were made and the District chose to continue utilizing Mr. Chavez's services and AFLAC's products. As part of his duties, Chavez continued providing these services through the years 2000 and 2001. As a result of Mr. Chavez's efforts, the provision of insurance services was streamlined for all BISD employees.

6.      Thereafter, on August 14, 2001, Chavez received information from BISD Board Member Randy Dunn indicating an attempt by him and BISD to hire an "agent of record" to provide all services and policies to BISD and its employees, including all supplemental policies, although this would not necessarily be in the best interests of BISD employees. Dunn also indicated an interest that any insurance products should go through an agent named Arnulfo Olivarez, although Mr. Olivarez had previously only provided the District's voluntary cancer plan, since January 1999. During this meeting, Dunn also inquired as to Mr. Chavez's being able to work with Mr. Olivarez and his company, National Plan Administrators. During the prior 3-years, Mr. Chavez had not worked with Mr. Olivarez, and there would be no need for Mr. Chavez to seek any assistance from Mr. Olivarez. Any working relationship with Mr. Olivarez, however, would likely involve the payment to Mr. Olivarez of some additional funds or commissions that would otherwise be due to Mr. Chavez.

7.      Notwithstanding Mr. Dunn's suggestions, on September 6, 2001, Mr. Chavez submitted his AFLAC proposal for consideration to continue the existing 3-year relationship, with essentially no changes in fees or services, and without reliance on the services of Mr. Olivarez. On September 10th, Mr. Chavez submitted a letter to each Board Member outlining the advantages of his proposal, the most significant of which included that he would be charging no fees, he had a local servicing office, and he had 3-years of proven customer satisfaction with BISD employees. He thereafter presented his proposal to the BISD insurance committee on October 30, 2001. Other members of that committee included Defendant Noe Sauceda and Board Members Marilyn Del Bosque-Gilbert, Randy Dunn, and Hugh Emerson, Jr.

8.      Thereafter, Mr. Chavez received word that his proposal had been misquoted by Defendant Sauceda and his staff, in an effort to award the contract to someone other than Mr. Chavez. Although Mr. Chavez had complied with all District regulations relating to his proposal for insurance products and services, Defendants Sauceda and BISD were attempting to circumvent those procedures in an attempt to prevent Mr. Chavez from being awarded the contract, in spite of his having submitted the proposal most favorable to BISD. Defendant Sauceda's apparent purpose for submitting such false information was to promote the plan being offered by Arnulfo Olivarez for National Plan Administrators. Once he was able to convince Defendant board members to cooperate with his plan in their official capacities, Defendant Sauceda began to implement his plan to award the contract to Mr. Olivarez and his company, National Plan Administrators.

9.      During the course of deliberation over the various proposals, Mr. Chavez received word that BISD was still considering retaining Mr. Olivarez as "agent of record" to provide all

ancillary available insurance policies and products for BISD employees. Therefore, during the public input section of the BISD board meeting on November 6, 2001, Mr. Chavez notified the Board of information located on the Texas Attorney General's web-site and an opinion that granting "agent of record" status was illegal. Thereafter, Mr. Chavez continued to submit letters and charts to BISD's Insurance Committee Campus Representatives reflecting these matters. In spite of Mr. Chavez's statements and representations, and the information from the Texas Attorney General, the agenda for the November 13, 2001 BISD board meeting had removed any reference to any proposed cafeteria plan such as that proposed by Mr. Chavez. At that meeting, Mr. Chavez again spoke of the "agent of record" issue and presented information on that issue, discussing the legality of an "agent of record," the cost difference between AFLAC and the plan being promoted by Defendants Sauceda and BISD and National Plan Administrators (NPA), the difference in claim service, the difference in flexibility and the difference in local servicing offices. As pointed out at that meeting by Board Member Linda Salazar, the Board's actions were giving the appearance that bribery and corruption was running rampant among administration and board members This appearance was enhanced on November 16, 2001, when the BISD board meeting agenda was posted, recommending approval of NPA as the BISD "agent of record" for all policies.

10. Not willing to idly accept BISD's apparent illegal appointment of an "agent of record," Mr. Chavez sent a letter to all BISD Insurance Committee Campus Representatives to notify them that a decision on the Cafeteria Plan was on the agenda for the BISD meeting of November 20, 2001. At the November 20th meeting, Mr. Chavez again provided copies of the Attorney General's opinion concerning the illegality of an "agent of record," and he again

presented his concerns to the Board. In spite of the points raised by Mr. Chavez, Defendant Sauceda and several BISD Board Members argued for the selection of NPA as an "agent of record." During that discussion, however, Board Member Linda Salazar raised concerns as to why the employees' insurance committee had not been given the opportunity to voice their opinions on the matter. As a result, that measure failed.

11. Thereafter, Mr. Chavez's proposal for insurance services was placed on the agenda for the BISD Insurance Committee meeting set for November 29, 2001, along with NPA and another organization to make presentations. On the morning of November 29, however, Mr. Chavez was notified by his supervisor, Frank Lafemina, that he had been informed by Defendant Sauceda that AFLAC was being removed from consideration and that BISD was terminating their current contract with AFLAC for cafeteria plan services. Defendant Sauceda apparently explained that the reason for taking these actions was because of the letters Mr. Chavez had written to insurance committee members describing his products and the illegality of an "agent of record." When Mr. Lafemina suggested using another representative, Defendant Sauceda agreed that if another representative were to replace Mr. Chavez, he would agree to allow AFLAC to continue its services for BISD.

12. Later that morning, Defendants Sauceda and BISD delivered a letter to Mr. Chavez, providing him with a 30-day notice of BISD's intent not to renew his services as their Third Party Services Provider and that his proposal for renewal of the contract had been rejected as allowed under BISD's policies. This letter also accused Mr. Chavez of "continuous inappropriate correspondence," "conduct...unprofessional, unethical, and against expected customer-service provider relations," memos that were "in [his] opinion, both slanderous and

libelous," accusing Mr. Chavez of putting himself and AFLAC "in a legally liable situation," and asserting that "it is obvious that [he is] not working in the best interest of BISD...." Defendant Sauceda and BISD further directed Mr. Chavez to cease and desist all contact with school personnel during school business hours," and he was notified that "[c]ampus administration [would] be directed to contact security services if [he] or any of [his] associates [were] found to be on school-district property." The clear tone of Defendant Sauceda's and BISD's letter was to prevent Mr. Chavez from being able to continue his services as Third Party Services Provider, to acquire any future work with BISD, or to sell any policies to BISD employees, thus excluding him from participation in the bidding and selection process and denying him due process and the equal protection of the laws in being able to compete along with other service providers for the sale of these policies. Defendants Sauceda and BISD further attempted to prevent Mr. Chavez from conducting any business with BISD employees regarding the cafeteria plan by submitting the copy of this letter to Mr. Chavez' supervisor at AFLAC, advising that "this administration will consider AFLAC as a future product provider," only if a "corporate officer...personally apologize[d] to each board member, the board as a whole, myself, and my administrators publicly," and "written assurance [was provided] that appropriate, ethical conduct will be exercised in the future by any and all AFLAC representatives," and lastly "[p]rovided that the products are of the best quality, service and price." At no time did Defendant Sauceda identify any authority that would indicate the Texas Attorney General's Opinion was incorrect or did not apply to his attempts to hire Mr. Olivarez as an "agent of record."

13. As a result, Mr. Chavez was not allowed to attend the employees' insurance committee meeting on November 29th, although Mr. Olivarez on behalf of NPA and a third representative on behalf of a third company were allowed to make presentations to the board and the employees' insurance committee. Another AFLAC representative was instead allowed to present the AFLAC proposal previously drafted and submitted by Mr. Chavez. During that presentation, BISD Board Member Herman Otis Powers expressed surprise by Defendant Sauceda's request for an apology, explaining that there was no need for such and that Sauceda had no right to write any such letter and include the Board Members' names, explaining that Defendant Sauceda had abused his power by writing this letter. At the conclusion of the presentations and questions, the employees' insurance committee voted, and their votes were put into a box. Although Board Member Dunn attempted to delay counting of the ballots, the committee insisted on an immediate count. As a result, the proposal submitted by Mr. Chavez on behalf of AFLAC won by a margin of 44-1. A significant part of the reason for the success of the AFLAC proposal was Mr. Chavez's history of providing service to BISD employees. As a result, Defendant Sauceda notified the audience that AFLAC could begin enrollment the following day. Because he had previously notified Mr. Chavez that he was not allowed on BISD campuses, however, Mr. Chavez could not participate in those enrollments, and thus lost all income from those new enrollments.

14. As a result of Defendants' actions, Plaintiff Dino Chavez was removed from the handling of the proposal he had submitted to BISD for AFLAC products, and he was thereafter terminated from his regional sales coordinator position with AFLAC. Although Mr. Chavez has spent years establishing his relationship with AFLAC and with BISD employees, including the

provision of numerous services for both, Mr. Chavez was summarily terminated by AFLAC because Defendants refused to work with Mr. Chavez. Although Mr. Chavez acted within his rights at all times, Defendants acted contrary to law and deprived Mr. Chavez of his rights. Defendant Sauceda never identified any specific actions taken by Mr. Chavez that were inappropriate, and all of Mr. Chavez's actions in the present application process, as well as in his prior years in servicing BISD employees, were proper, authorized and according to law. By this time, however, the damage to Mr. Chavez's career had already been done.

## IV.

## CAUSES OF ACTION

A.   **Noe Sauceda**

15.   The facts alleged in Section IV above are incorporated as though fully set out herein. As set out in Section IV, the actions of Defendant Sauceda constitute tortious and intentional interference with the business relationship between Plaintiff Dino Chavez and his employer American Family Life Assurance Company of Columbus (AFLAC), on a matter on which he did not have discretion, in such a manner as to constitute fraud on Plaintiff Chavez and BISD employees, as well as malice and an intentional infliction of emotional distress on Plaintiff Chavez. The actions of Defendant Sauceda were such as to deliberately interfere with Plaintiff's business relationship with AFLAC and were deliberately intended to cause loss and damages to Mr. Chavez by doing so. Such actions were taken by Defendant Sauceda without privilege or justification and caused him the damages for which he now sues. Defendant Sauceda's written and spoken comments were also intended to, and did, disparage Plaintiff and his reputation in his business and community. Such comments were with malice and made without regard to their

truth and were in fact false, and thus constitute libel and slander, for which this Defendant is individually liable. Plaintiff would further assert that the actions of Defendant Sauceda were such as to constitute malice for which Plaintiff is entitled to the recovery of exemplary damages pursuant to Texas Civil Practice and Remedies Code §41.001, *et seq*. In particular, Defendant Sauceda had a specific intent to cause substantial injury to Mr. Chavez, and the acts he committed involved an extreme degree of risk that Mr. Chavez would lose all income from the proposal he had submitted on behalf of AFLAC, considering the probability and magnitude of potential harm. Defendant Sauceda had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to Mr. Chavez's rights or welfare.

16.   Defendant Sauceda's actions further caused a deprivation of Plaintiff Chavez's constitutional rights to free speech and to due process of law, of which he was deprived without justification or excuse, and for which he now sues pursuant to 42 U.S.C. §1983. Defendant's actions against Plaintiff were in retaliation for his legitimate exercise of his free speech rights, guaranteed by the First Amendment to the U.S. Constitution. Defendant's actions were in retaliation for Mr. Chavez's legitimate speech relating to the illegality of the use of an "agent of record" and other matters relating to the contract for insurance services. Defendant's actions further violated Plaintiff's rights to due process, protected by the Fourteenth Amendment to the U.S. Constitution, by depriving him of the opportunity to participate in an open bidding process, as authorized by state law, without due process and in deprivation of his right to equal protection of the laws, as further set out above. Defendant's actions were deliberately intended to cause harm to Mr. Chavez, and the resulting harm to him was severe. As a result of Sauceda's and BISD's actions, Mr. Chavez suffered extreme shame, humiliation, embarrassment, loss of

reputation, injury to his reputation, worry, anxiety, sleeplessness and damage to his personal health, for which he now sues.

B.  **Brownsville Independent School District**

17. The facts alleged in Section IV above, are incorporated as though fully set out herein. As set out in Section IV, the actions of Defendant caused a deprivation of Plaintiff Chavez's constitutional rights to free speech and to due process of law, of which he was deprived without justification or excuse, and for which he now sues pursuant to 42 U.S.C. §1983. Defendant's actions against Plaintiff were in retaliation for his legitimate exercise of his free speech rights, guaranteed by the First Amendment to the U.S. Constitution. Defendant's actions were in retaliation for Mr. Chavez's legitimate speech relating to the illegality of the use of an "agent of record" and other matters relating to the contract for insurance services. Defendants' actions further violated Plaintiff's rights to due process and to the equal protection of the laws, protected by the Fourteenth Amendment to the U.S. Constitution, by depriving him of the opportunity to participate in an open bidding process, as authorized by state law, and as further set out above.

18. Defendant BISD's actions in depriving Mr. Chavez of his rights to free speech and to the due process and equal protection of the laws were conducted and implemented as part of the customs, policies and/or practices of Defendant BISD, or were made by those with policy-making authority in that area of BISD's business, for which Defendant BISD is now liable. Defendant's actions were deliberately intended to cause harm to Mr. Chavez, and the resulting harm to him was severe. As a result of Sauceda's and BISD's actions, Mr. Chavez suffered

extreme shame, humiliation, embarrassment, loss of reputation, injury to his reputation, worry, anxiety, sleeplessness and damage to his personal health, for which he now sues.

## V.

## DAMAGES

19. As a direct and proximate result of the facts made the basis of this lawsuit, Plaintiff sustained personal injuries and damages, and those injuries and damages were proximately caused by the acts and/or omissions of Defendants, for which Plaintiff now seeks recovery. Such damages include a loss of wages and wage earning capacity, loss of income and income opportunities, loss of past and prospective earnings, and mental pain, suffering and anguish in the past and in the future. In sum, Plaintiff seeks all actual and compensatory damages to which he may be entitled under the law. Plaintiff also seeks recovery of his reasonable and necessary attorney's fees and expenses, pursuant to 42 U.S.C. §1988. Plaintiff further seeks the recovery of punitive or exemplary damages from Defendant Sauceda, in an amount to be determined entirely by the discretion of the jury.

## VI.

## CONDITIONS PRECEDENT

20. All conditions precedent to the filing of this suit and the recovery of the damages prayed for herein have occurred and have been performed.

## VII.

## JURY TRIAL REQUEST

21. Plaintiff **DINO X. CHAVEZ** requests that a jury of his peers be convened to determine the facts made the basis of this lawsuit.

WHEREFORE, PREMISES CONSIDERED, Plaintiff **DINO X. CHAVEZ** respectfully prays that the Defendants be cited to appear and answer herein, and that upon final hearing of this action, that judgment be entered for Plaintiff against Defendants for all actual and compensatory damages suffered by Plaintiff, in an amount within the jurisdictional limits of this Court, together with all pre-judgment and post-judgment interest at the maximum rate allowed by law, reasonable attorneys' fees and expenses incurred by Plaintiff, and costs of court, as well as punitive or exemplary damages against Defendant Sauceda, as well as all other further relief to which Plaintiff may show himself to be justly entitled, whether special or general, at law and in equity.

Signed on this the 1st day of August, 2002.

Respectfully submitted,

**LAW OFFICE
J. ARNOLD AGUILAR**
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas 78520
Telephone : (956) 504-1100
Facsimile : (956) 504-1408

By: _____
J. Arnold Aguilar
State Bar No. 00936270
Federal Adm. No. 6822

Attorney for Plaintiff,
DINO X. CHAVEZ

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the above and foregoing **PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT** has on this the _1st_ day of August, 2002, been forwarded via certified mail, return receipt requested to:

Ms. Elizabeth G. Neally
Mr. Ricardo Morado
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 W. Price Rd., Suite 9
Brownsville, TX 78520

Mr. Charles V. Willette, Jr.
WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, TX 78521

Mr. Craig H. Vittitoe
ADAMS & GRAHAM
P.O. Drawer 1429
Harlingen, TX 78551

                                                J. Arnold Aguilar