IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**OCT 1 8 2002**

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| DINO X. CHAVEZ | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | B - 02 - 128 |
| and RANDY DUNN, MARILYN DEL | § | |
| BOSQUE-GILBERT and HUGH EMERSON, | § | |
| JR., in their official capacities as Board | § | |
| Members of Brownsville Independent | § | |
| School District | § | |

**PLAINTIFF DINO X. CHAVEZ'S RESPONSE TO DEFENDANT BISD'S
and DEFENDANT NOE SAUCEDA'S MOTIONS TO DISMISS**

TO THE HONORABLE U.S. DISTRICT COURT:

COMES NOW DINO X. CHAVEZ, Plaintiff in the above styled and numbered action, and files this his Response to Defendant Brownsville Independent School District's Motion to Dismiss Plaintiff's First Amendment Original Petition (sic) under 12(b)(6) for Failure State a Claim Upon Which Relief Can Be Granted and Defendant Noe Sauceda's Motion to Dismiss, and for such response would respectfully show unto the Court the following:

## I.

## <u>SUMMARY OF RESPONSE</u>

Plaintiff Chavez has alleged causes of action against Defendant Brownsville Independent School District (BISD) for deprivation of his rights to free speech and to due process of law,

including for deprivation of his protected property, liberty, and equal protection rights, pursuant to the First and Fourteenth Amendments to the U.S. Constitution. Defendant BISD and its Superintendent Defendant Chavez removed Plaintiff from the bidding process, in violation of BISD's and other state bidding requirements, in order to funnel business and profits to a particular bidder. When Plaintiff Chavez complained to Defendant about the apparent illegality of its Superintendent's actions in attempting to appoint that bidder as its preselected "agent of record," Defendant responded by removing Plaintiff from the bidding process and allowing Plaintiff's employer to continue with its bid only if Plaintiff was excluded from participation. Such actions violated Plaintiff's due process, equal protection and free speech rights.

## II.

## FACTUAL SUMMARY

The factual allegations alleged by Plaintiff are set out at pages 2-9 of Plaintiff's First Amended Original Complaint. The following is a summary of those allegations.

After working for a number of years with American Family Life Assurance Company of Columbus (AFLAC), Plaintiff Chavez rose to the position of Regional Sales Coordinator, supervising numerous AFLAC agents in the Rio Grande Valley. Beginning in 1998, Plaintiff began selling and servicing BISD's §125 Cafeteria Plan Services Contract, which included enrollment for over 6,000 employees. Plaintiff continued to do so for the 1999-2000 and 2000-2001 years with no complaints from employees, but rather with considerable praise.

On August 14, 2001, however, Defendants BISD and Chavez began efforts to retain an "agent of record" to provide services and policies to all BISD employees. BISD Board Members and its Superintendent, Defendant Sauceda, also indicated that they had already selected the person who should be appointed as "agent of record," Arnulfo Olivarez. Mr. Olivarez had no

prior experience handling the Cafeteria Plan, as he had previously sold only cancer policies to BISD employees. As "agent of record," Mr. Olivarez would be entitled to a portion of the sales commissions made by Plaintiff Chavez, though Mr. Olivarez would have done nothing to earn or otherwise justify such payment. In an attempt to prevent Plaintiff Chavez from being awarded the Cafeteria Plan contract for the 2001-2002 school year, Defendant Sauceda began to misquote Plaintiff's proposal to the BISD insurance committee.

Plaintiff Chavez later learned that the Texas Attorney General had previously determined that Texas law does not allow a school district to grant "agent of record" status to a single agent. *See* Exhibit A, Attorney General Opinion JC-0205 (2000). Because this was a matter of specific interest to the BISD insurance committee and the public in general, Mr. Chavez notified the insurance committee and the BISD Board of Trustees of the Attorney General's opinion. The insurance committee, BISD's employees, and the public in general have a public interest in preventing illegal acts by its Board and Superintendent, in assuring that the policies they are purchasing do not have additional "agent of record" fees attached to them, and avoiding corruption in general. After Plaintiff Chavez reported the apparently illegal attempt to appoint Mr. Olivarez as "agent of record" to the Insurance Committee, and because of Plaintiff's service and reputation, the committee voted overwhelmingly to allow Mr. Chavez to continue to provide his services.

On November 29, 2001, however, after the insurance committee meeting, Defendant Superintendent Sauceda notified Plaintiff's supervisor that in spite of the insurance committee's decision, AFLAC's bid was being removed from consideration and BISD was terminating their current contract with AFLAC for Cafeteria Plan Services. The reason for these actions was because of Plaintiff Chavez's report of Defendants' attempted illegal actions. Defendants BISD

and Sauceda thereafter agreed to allow AFLAC to continue its services only if Plaintiff Chavez was removed as AFLAC's representative. Defendant Sauceda also submitted his letter of November 29, 2001, a copy of which is attached as Exhibit "B," setting out that position. As Defendant Sauceda explains, Plaintiff Chavez's proposal was specifically rejected, and AFLAC was thereafter allowed to continue servicing BISD only after Plaintiff Chavez was removed. The clear purpose and result of Defendants BISD's and Sauceda's action was to exclude Plaintiff from participating in the bidding and selection process for BISD's Cafeteria Plan.

As a result of Defendant's actions, Plaintiff was precluded from attending the November 29th presentations to the Board and the employees' insurance committee. Although the insurance committee had previously voted overwhelmingly to adopt the proposal originally submitted by Plaintiff Chavez by a vote of 44-1, Plaintiff Chavez was not allowed to participate in the acceptance of that bid. By the time of that meeting, he had been removed by Defendants. As a result, he was not allowed to conduct any of the enrollments or sales of the insurance products for which he had originally submitted a bid. Although Plaintiff Chavez submitted the AFLAC bid to be able to sell and service the Cafeteria Plan Services, he was precluded from participating in the actual selection process. Even though his company won the bid based on his proposal, Plaintiff Chavez was not allowed to service the bid he had submitted. Instead, pursuant to Defendants' instructions, Plaintiff Chavez was precluded from doing any of the things he had proposed doing in his bid, even though his bid was selected to sell and service those policies. In addition, because of Defendants' actions, Plaintiff was thereafter terminated from his Regional Sales Coordinator position with AFLAC as well and suffered damages as a result.

## III.

## <u>ARGUMENT AND AUTHORITIES</u>

**A.    <u>Due Process</u>**

As set out in Plaintiff's First Amended Original Complaint, Defendants Sauceda and

BISD contacted Plaintiff's supervisor, Frank LeFemina, by telephone and in writing, explaining

that the bid submitted by Plaintiff Chavez on behalf of AFLAC for Cafeteria Plan Services was

being removed from consideration and the current contract was to be terminated, unless Plaintiff

Chavez was removed as AFLAC's representative.  *See* Exhibit "B."  In doing so, Plaintiff

Chavez was deprived of the opportunity to participate in what had previously been represented as

an open bidding process, thus violating his due process rights.

> It is a purpose of the ancient institution of property to protect those claims upon
> which people rely on their daily lives, reliance that must not be arbitrarily
> undermined.  It is a purpose of the constitutional right to a hearing to provide an
> opportunity for a person to vindicate those claims.  Property interests, of course,
> are not created by the Constitution.  Rather, they are created and their dimensions
> are defined by existing rules or understandings that stem from an independent
> source such as state law--rules or understandings that secure certain benefits and
> that support claims of entitlement to those benefits.

***Board of Regents of State College v. Roth***, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33

L.Ed.2d 548 (1972).

Defendant BISD established certain bidding requirements, in accordance with its own

rules and state law, on which Plaintiff relied in submitting his bid for services.  *See* TEX. EDUC.

CODE (FP: section symbol)44.031(a) and Defendant BISD's Purchasing and Acquisition

requirements, CH (LEGAL), a copy of which is attached hereto as Exhibit "C."  The District's

rules and state law provide that for purchases such as the Cafeteria Plan described herein valued

at above $25,000.00, competitive bidding is required.  Those rules do not allow for the removal

of an agent in order to accept his company's bid. Although BISD could have rejected Plaintiff's bid under certain circumstances, (*see* §44.031(a), Defendant BISD did not do so. To the contrary, Plaintiff's bid was ultimately accepted, although it was accepted only after Plaintiff was removed as the person *submitting* the bid. Although Defendant BISD listed eight (8) factors as "the only criteria that may be considered by the District in its decision to award a contract," Defendants disregarded their own rules and Texas state law in removing Plaintiff. Plaintiff had a reasonable expectation that Defendant BISD would follow its own rules and state law, thereby creating a property right in its doing so. There should be no question that Plaintiff had a property right to submit a bid on behalf of his employer, AFLAC. Defendants' withdrawal of Plaintiff's right to submit a bid and to participate in BISD's open bidding process, as authorized by state law and its own rules, violated Plaintiff's due process and liberty rights.

Contrary to the allegations set out in Defendant BISD's Motion to Dismiss, Plaintiff Chavez was not allowed to participate in *all* BISD bidding procedures. To the contrary, he was not allowed to participate in any procedures that allowed him to actually accept or receive the bid he submitted. The entire purpose of submitting a bid is to be able to accept or receive it once the bid award has been made. Bid participants do not participate in bidding procedures as a form of recreation, intending only to submit all the paperwork and not to actually accept any award of their bid if it is ultimately accepted. To the contrary, the entire purpose behind submitting a bid is to win the award and accept and perform the contract that follows. When Defendant Sauceda disqualified Plaintiff Chavez from participating in the open bidding procedure, without notice or an opportunity to be heard, he deprived Plaintiff of his rights to property and liberty to contract in accordance with the bidding rules.

Contrary to each of the cases cited by Defendant in its brief, Plaintiff Chavez was never provided the minimum requirements of due process before he was excluded from participating in the bidding process. "At a minimum, notice and a hearing are required before an individual may be deprived of his property or liberty interests." *Systems Contractors Corp. v. Orleans Parish School Board*, 148 F.3d 571, 575 (5th Cir. 1998), *citing Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

> The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principal basic to our society.' *Joint Anti-fascist Comm'n v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed.2d 817 (1951) (Frankfurter J., concurring). The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

*Mathews v. Eldridge*, 424 U.S. at 333, 96 S.Ct. at 902. At the very least, "notice and an opportunity to be heard were required before the School Board could disqualify [Plaintiff's] bid and bar [Plaintiff] from bidding on future projects." *Systems Contractors Corp. v. Orleans Parish School Board*, 148 F.3d at 575. Unlike the Plaintiff in *Systems Contractors*, no such notice or opportunity to be heard were provided to Plaintiff Chavez before his bid was summarily removed from consideration.

As the Supreme Court has explained, "'[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge*, 424 U.S. at 334, 96 S.Ct. at 902, *quoting Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id., quoting Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). At no time was

Plaintiff Chavez provided even the minimum requirements of notice and a hearing before he was deprived of his right to participate in the bidding process.

To determine how much process is actually due in any particular situation, courts have been directed to balance

    (1)    the private interest that will be affected by the official's actions,

    (2)    the risk of an erroneous deprivation of that private interest and the probable value, if any, that additional procedural protections would provide, and,

    (3)    the interest that the government seeks to achieve.

*Systems Contractors Corp. v. Orleans Parish School Board*, 148 F.3d at 575, *citing Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 893.  In citing the Louisiana Supreme Court, the Fifth Circuit explained that

> before a bidder could be disqualified as `irresponsible' in a case like the present one, four procedural steps must be followed: (1) the bidder must be given formal written notice that the School Board is considering disqualifying the bidder; (2) the bidder must be given an opportunity to respond to the charges in writing, and, where feasible, an opportunity to meet with the Board to discuss the charges; (3) the bidder must be given formal written notice that he has been disqualified before the project is awarded; and, (4) the records of the disqualification hearing must be preserved so that the bidder can receive an appropriate judicial review of that decision if so desired.

*Id.*, *citing Haughton Elevator Div. v. State*, 367 So.2d 1161, 1166 (La. 1979).  At no time was Plaintiff Chavez provided any of the procedural protections described in *Systems Contractors* before he was disqualified from participating in BISD's bidding procedures, as set out in Plaintiff's First Amended Original Complaint and Exhibit "B," as well as in Defendant Sauceda's letter of November 29, 2001.

Because Plaintiff Chavez was entitled to due process to protect his property and liberty rights, and because Plaintiff was not afforded any of the minimum procedural safeguards to which he was entitled, Plaintiff is now entitled to the relief he requests herein.

## B.    Freedom of Speech

As set out in Plaintiff's First Amended Original Complaint, "Defendant's actions against Plaintiff were in retaliation for his legitimate exercise of his free speech rights, guaranteed by the First Amendment to the U.S. Constitution." p.11. As out therein, Plaintiff legitimately reported that Defendant Sauceda's attempts to appoint Mr. Olivarez as "agent of record" is contrary to a Texas Attorney General opinion. See Exhibit "A." As Opinion No. JC-0205 (2000) explains, "[b]ecause the use of a designated broker of record will necessarily limit the number of companies from which the district may purchase insurance, it may foreclose the district's access to the most advantageous rates and terms." After Plaintiff Chavez reported the legal impediments to the appointment of an "agent of record" to Defendant BISD's Board of Trustees and its insurance committee, and because of those reports, Defendants Sauceda and BISD disqualified Plaintiff Chavez from bidding on the Cafeteria Plan. Their sole reason for doing so was because of Mr. Chavez's reports that Defendant Sauceda was attempting to take action that was apparently contrary to the law. Although Attorney General opinions "do not carry the force of law, they are entitled to be given considerable weight in determining the proper construction of statutes." *City of Houston v. Southern Pacific Transp. Co.*, 504 S.W.2d 554, 557 (Tex.App.-Houston [14th Dist.] 1974, writ ref'd n.r.e.).

Defendant Sauceda has not yet explained his rationale for seeking to appoint Mr. Olivarez as "agent of record." In seeking to appoint Mr Olivarez, the only thing that seems to be apparent

is that Defendant Sauceda was attempting to funnel a portion of insurance premiums to Mr. Olivarez for policies he had never previously sold. Previously, he had only sold cancer policies to BISD employes. Defendants BISD's and Sauceda's attempts to do so for what appears to be an illegal or improper purpose, is a matter of significant interest to the public in general.

Similarly, Plaintiff Chavez's comments regarding Defendants BISD's and Sauceda's apparent attempts to circumvent the open bidding requirements established by BISD is also a matter of public concern. The fact that Mr. Chavez was being directly affected by Defendants' apparently illegal actions does not minimize the fact that he was making a complaint of public interest. At the time of Mr. Chavez's reports of apparent violations of the law, he had not yet been awarded or denied the contract for handling the Cafeteria Services Plan. The public has an interest in knowing that, regardless of who is actually selected, the proper procedures are followed in selecting an appropriate bidder and in following state law in the selection of agents. Simply because Plaintiff had a personal interest in Defendant's apparently illegal acts does not mean that the public did not also have an interest.

It is only "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of personal interests," that an employee is not extended First Amendment protection. *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record." *Id.*, 461 U.S. at 148, 103 S.Ct. at 1690. The Supreme Court in *Connick* found no public interest in Myers' speech, partially because he did not "seek to bring to light actual or potential wrongdoing or breach of public trust on the part of [defendant] and others." *Id.*, 461 U.S. at 148, 103 S.Ct. at 1691. Plaintiff Chavez, on the other hand, did.

The speech about which Plaintiff Chavez complained specifically involved Defendants' attempts to violate the public trust. The Plaintiffs in the cases cited by Defendants, however, did not address matters of public concern. *See Stuart v. Parish of Jefferson*, 951 F.2d 681 (5th Cir. 1992) (speech concerning alleged sexual harassment of co-worker and unpleasant work environment); *Ayoub v. Texas A&M Univ.*, 927 F.2d 834 (5th Cir. 1991) (speech concerning perceived salary disparity only involving Plaintiff); *McAdams v. Matagorda County Appraisal Dist.*, 798 F.2d 842 (5th Cir. 1986) (Plaintiff terminated without regard to speech, even if speech was protected); and *Crawford v. Richardson*, 2001 WL 733415 (N.D. Tex. June 27, 2001) (speech directed towards reinstatement, rather than corruption or wrongdoing, did not implicate public concern and was not causally connected to discharge.). There should be no question, on the other hand, that a public employee's violation of the public trust by illegally appointing an agent of record to attempt to funnel funds to that agent, in violation of state and local bidding requirements, is a matter of public interest.

On the other hand, where an employee or citizen speaks on matters that are of concern to the public in general, that speech will be protected, even if that person has some personal interest in the matter on which they complain. For example, in determining that a teacher has a right to speak on issues of public importance, even where that speech is critical of the manner in which the Board of Education handled previous proposals to raise revenue for schools, an issue that would have directly affected the teacher's personal interest, the Supreme Court concluded in *Pickering* that courts should strive "to arrive at a balance between the interest of the [speaker], as a citizen in commenting upon matters of public concern, and the interest of the State, as an employer in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ. of Township High School Dist.* 205, 391 U.S. 563, 568, 88 S.Ct.

1731, 1734-35, 20 L.Ed.2d 811 (1968). As the Supreme Court more recently held, there is "no reason to believe that proper application of the *Pickering* balancing test cannot accommodate the difference between employees and independent contractors." ***Board of County Commissioners v. Umbehr***, 518 U.S. 668, 678, 116 S.Ct. 2342, 2349, 135 L.Ed.2d 843 (1996). In recognizing "the right of independent government contractors not to be terminated for exercising their First Amendment rights," the Supreme Court provided that a Plaintiff in Mr. Chavez's position

> must show that the termination of his contract was motivated by his speech on a matter of public concern, an initial showing that requires him to prove more than the mere fact that he criticized the Board Members before they terminated him. If he can make that showing, the Board will have a valid defense if it can show, by a preponderance of the evidence, that, in light of their knowledge, perceptions, and policies at the time of the termination, the Board Members would have terminated the contract regardless of his speech. [citation omitted] The Board will also prevail if it can persuade the District Court that [BISD's] legitimate interests as contractor, deferentially viewed, outweighed the free speech interests at stake.

*Id.*, 518 U.S. at 685, 116 S.Ct. at 685-86, *citing* ***Mt. Healthy City Bd. of Ed v. Doyle***, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Similarly, governmental entities may not remove an independent contractor from a list of approved vendors for exercising his First Amendment rights. ***O'Hare Truck Service, Inc. v. City of Northlake,*** 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996). Defendants do not have an "absolute right to enforce a patronage scheme,...as a means of retaining control over independent contractors,...and satisfying governmental officials' concerns about reliability...." *Id.* 518 U.S. at 726, 116 S.Ct. at 2361. Because Plaintiff is entitled to analysis under the *Pickering* balancing test, as modified by the dictates of ***Umbehr***, ***O'Hare*** and ***Mt. Healthy***, dismissal would not be appropriate.

## C.     Tort Claims Against Defendant Sauceda

Defendant Sauceda also alleges that he is immune from intentional torts pursuant to Texas Civil Practice & Remedies Code §101.056. Section 101.056 only applies to the actions of a "governmental unit" in the performance, or decision not to perform, and act that it is not required by law to perform. Defendant Sauceda has not identified how this section would apply to him, or to how he is a "governmental unit." Accordingly, he is not entitled to dismissal under section 101.056.

Similarly, Texas Education Code §22.051 also does not provide immunity to Defendant Sauceda, because that section provides immunity only for acts that are within the scope of a school district employee's position and that involve the exercise of judgment or discretion on his part. As set out herein and in Plaintiff's First Amended Original Complaint, BISD's bidding procedures and applicable state law did not authorize Defendant Sauceda to terminate Plaintiff's contractual relationships, nor to disqualify Plaintiff as an eligible bidder, as part of his duties. Nor did Defendant Sauceda's doing so involve the exercise of judgment or discretion that was ever provided to him. Accordingly, §22.051 also does not apply and Plaintiff is not entitled to dismissal under that section either.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF **DINO X. CHAVEZ** would respectfully request that upon consideration of Defendants Brownsville Independent School District's and Noe Sauceda's Motions to Dismiss that such motions be DENIED in their entirety, that this action be allowed to proceed to trial and judgment, and that Plaintiff be granted such other and further relief to which he may show himself to be justly entitled, whether general or special, at law and in equity.

v:\fp\motions\258-02 P's Rsp to Ds' M2Dismiss                    PAGE -13-

Signed on this the 18th day of October, 2002.

Respectfully submitted,

**LAW OFFICE**
**J. ARNOLD AGUILAR**
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas 78520
Telephone       : (956) 504-1100
Facsimile        : (956) 504-1408

By:

J. Arnold Aguilar
State Bar No, 00936270
Federal Adm. No. 6822

Attorney for Plaintiff,
DINO X. CHAVEZ

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **PLAINTIFF DINO X. CHAVEZ'S RESPONSE TO DEFENDANT BISD'S and DEFENDANT NOE SAUCEDA'S MOTION TO DISMISS** has on this the 18th day of October, 2002, been forwarded via certified mail, return receipt requested to:

Ms. Elizabeth G. Neally
Mr. Ricardo Morado
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 W. Price Rd., Suite 9
Brownsville, TX 78520


Mr. Charles V. Willette, Jr.
WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, TX 78521


_____
John J. Jordan, Jr.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DINO X. CHAVEZ                                     §
                                                   §
·        VS.                                        §
                                                   §        CIVIL ACTION NO.
BROWNSVILLE INDEPENDENT                             §
SCHOOL DISTRICT, NOE SAUCEDA,                       §        B - 02 - 128
and RANDY DUNN, MARILYN DEL                         §
BOSQUE-GILBERT and HUGH EMERSON,                    §
JR., in their official capacities as Board          §
Members of Brownsville Independent                  §
School District                                    §

---

### ORDER DENYING DEFENDANT BISD'S MOTION TO DISMISS

---

On the _____ day of _____, 2002, this cause came for hearing on

**Defendant Brownsville Independent School District's Motion to Dismiss.**

After hearing the argument of counsel thereon, the Court is of the opinion that Defendant

BISD's Motion to Dismiss should be DENIED;

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Defendant BISD's

Motion to Dismiss is DENIED.

SIGNED on this the _____ day of _____, 2002.

_____
U.S. DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DINO X. CHAVEZ                                §
                                              §
VS.                                           §
                                              §          CIVIL ACTION NO.
BROWNSVILLE INDEPENDENT                        §
SCHOOL DISTRICT, NOE SAUCEDA,                  §          B - 02 - 128
and RANDY DUNN, MARILYN DEL                    §
BOSQUE-GILBERT and HUGH EMERSON,               §
JR., in their official capacities as Board     §
Members of Brownsville Independent             §
School District                               §

---

### ORDER DENYING DEFENDANT NOE SAUCEDA'S MOTION TO DISMISS

---

On the _____ day of _____, 2002, this cause came for hearing on

**Defendant Noe Sauceda's Motion to Dismiss.**

After hearing the argument of counsel thereon, the Court is of the opinion that Defendant

Noe Sauceda's Motion to Dismiss should be DENIED;

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Defendant Noe

Sauceda's Motion to Dismiss is DENIED.

SIGNED on this the _____ day of _____, 2002.

_____
U.S. DISTRICT JUDGE

# EXHIBIT "A"

Office of the Attorney General - State of Texas
John Cornyn

April 4, 2000

| | |
|---|---|
| The Honorable Troy Fraser<br>Co-Chair, Committee on Redistricting<br>Texas State Senate<br>P.O. Box 12068<br>Austin, Texas 78711-2068 | Opinion No. JC-0205<br><br>Re: Whether a junior college district may procure insurance using a designated broker of record (RQ-0135-JC) |

Dear Senator Fraser:

You ask about the authority of a junior college district to procure insurance using a designated broker of record. We conclude that a junior college district may not use a designated broker of record to purchase insurance contracts with premiums of an aggregate value of $10,000 or more for each twelve-month period. *See* Tex. Educ. Code Ann. §§ 44.031, 44.033 (Vernon Supp. 2000). A junior college district that expends less than $10,000, in the aggregate, on insurance premiums for each twelve-month period may use a designated broker of record to purchase insurance contracts, but the district's board of trustees should ensure that use of a designated broker of record is in the district's best interest and select a designated broker of record in a manner it determines is consistent with good business management. The district must also ensure that it purchases insurance according to a method that is in the district's best interest and that is consistent with good business management.

Before turning to your query, we wish to clarify the scope of this opinion. You ask: "Given all the choices an institution of higher education has to procure insurance (Education Code 44.031), is using a designated broker of record legitimate?" Letter from Honorable Troy Fraser, Texas State Senate, to Honorable John Cornyn, Texas Attorney General (Oct. 29, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"]. The term "institution of higher education" could include both state universities and junior colleges. *See* Tex. Educ. Code Ann. § 61.003(8) (Vernon Supp. 2000) (defining "institution of higher education"). However, we limit our analysis to junior colleges. We do so because section 44.031 of the Education Code applies to school districts and junior college districts and does not apply to other institutions of higher education. *See id.* §§ 44.031, .0311. In addition, the request letter states that you submit the query on behalf of an insurance agent whose interest in these issues results from his unsuccessful attempt to bid to provide insurance to Tarrant County College, a junior college, *see id.* § 130.201. *See* Request Letter at 1. We also note that the letter states that the insurance agent "is concerned that institutions are using the broker of record to eliminate minority bidders." *Id.* at 1. Because you have not asked any particular questions in this regard, we do not address this issue.

Your letter does not provide details about the relationship between a junior college district and a "designated broker of record." We assume you refer to a situation where the junior college district arranges to purchase insurance through a single insurance agent who then obtains bids or proposals from insurance companies on the junior college district's behalf. We assume that the broker is licensed as may be required by the Insurance Code. *See, e.g.,* Tex. Ins. Code Ann. arts. 21.07-1, 21.07-2, 21.14, 21.14-1 (Vernon 1981 & Supp. 2000). We also gather that the insurance companies from whom the junior college district purchases insurance pay the agent a commission and that the agent is not compensated by the junior college district.

We understand that an insurance agent will be affiliated with a limited number of insurance companies. For this reason, a designated broker of record will not be able to solicit rates on the

district's behalf from all possible insurance companies for a particular policy. Because the use of a designated broker of record will necessarily limit the number of companies from which the district may purchase insurance, it may foreclose the district's access to the most advantageous rates and terms.

Before answering your questions, we briefly review the unique legal status of junior college districts and the Education Code provisions regarding junior college district purchases, including purchases of insurance contracts. Under the Education Code, "The board of trustees of junior college districts shall be governed in the establishment, management and control of the junior college by the general law governing the establishment, management and control of independent school districts insofar as the general law is applicable." Tex. Educ. Code Ann. § 130.084 (Vernon 1991). For this reason, junior college districts are governed by many of the same statutes that govern school districts.

In the absence of specific statutory requirements and limitations, school and junior college district boards of trustees are granted broad authority to manage the affairs of their districts. *See id.* § 11.151(b) (Vernon 1996) ("The trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district."). School district purchases of a certain monetary value are governed by the detailed provisions of subchapter B of chapter 44 of the Education Code, including section 44.031 of the Education Code mentioned in your request. In 1996, this office concluded that a junior college district was subject to subchapter B. *See* Tex. Att'y Gen. Op. No. DM-387 (1996) at 3-4. The Seventy-sixth Legislature recently confirmed this conclusion by enacting section 44.0311 of the Education Code, which expressly provides that subchapter B applies to junior college districts. *See* Tex. Educ. Code Ann. § 44.0311(a) (Vernon Supp. 2000) (enacted by Act of May 28, 1999, 76th Leg., R.S., ch. 1225, § 2, sec. 44.0311, 1999 Tex. Gen. Laws 4257, 4258-59). Thus, for purposes of subchapter B "'board of trustees' includes the governing board of a junior college district." *Id.* § 44.0311(b).

For purposes of section 44.031 and other provisions in subchapter B, a contract to purchase insurance is not a contract for professional services, but rather a contract to purchase personal property subject to generally applicable purchasing procedures. *See* Tex. Att'y Gen. Op. No. DM-347 (1995) at 5-7 (concluding a contract to purchase insurance was a contract to purchase personal property subject to statutory predecessor to section 44.031 of the Education Code, former Education Code, section 21.901) (overruling Tex. Att'y Gen. Op. Nos. MW-494 (1982), MW-342 (1981)); *see also* Tex. Att'y Gen. Op. No. DM-418 (1996) at 5 ("[S]ection 44.031 does not affect our conclusion in Attorney General Opinion DM-347 that a contract for the purchase of insurance is not a contract for professional services. . . . Under section 44.031 of the Education Code, a school board must award all contracts not for professional services, produce, or vehicle fuel in accordance with subsection (a), so long as the value of the contract exceeds $24,999.99 in the aggregate for a twelve-month period."). Thus, although the subchapter B purchasing provisions, as a general matter, do not apply to contracts for personal services, we need not consider that exception here. *See* Tex. Educ. Code Ann. § 44.031(f) (Vernon Supp. 2000) ("This section does not apply to a contract for professional services rendered, including services of an architect, attorney, or fiscal agent. A school district may, at its option, contract for professional services rendered by a financial consultant or a technology consultant in the manner provided by Section 2254.003, Government Code, in lieu of the methods provided by this section.").

Like purchases of most items, the procedures applicable to the purchase of insurance will depend upon the aggregate value of the school or junior college district's insurance contract premiums in a twelve-month period. Section 44.031, which applies to purchases valued at $25,000 or more in the aggregate for each twelve-month period, lists several purchasing methods and requires a district to use the method that provides the best value:

(a) Except as provided by this subchapter, all school district contracts, except contracts for the purchase of produce or vehicle fuel, valued at $25,000 or more in the aggregate for each 12-month period shall be made by the method, of the following methods, that provides the best value for the district:

(1) competitive bidding;

(2) competitive sealed proposals;

(3) a request for proposals, for services other than construction services;

(4) a catalogue purchase as provided by Subchapter B, Chapter 2157, Government Code;

(5) an interlocal contract;

(6) a design/build contract;

(7) a contract to construct, rehabilitate, alter, or repair facilities that involves using a construction manager; or

(8) a job order contract for the minor construction, repair, rehabilitation, or alteration of a facility.

*Id.* § 44.031(a). A district may also consider several subjective factors:

(b) Except as provided by this subchapter, in determining to whom to award a contract, the district may consider:

(1) the purchase price;

(2) the reputation of the vendor and of the vendor's goods or services;

(3) the quality of the vendor's goods or services;

(4) the extent to which the goods or services meet the district's needs;

(5) the vendor's past relationship with the district;

(6) the impact on the ability of the district to comply with laws and rules relating to historically underutilized businesses;

(7) the total long-term cost to the district to acquire the vendor's goods or services; and

(8) any other relevant factor that a private business entity would consider in selecting a vendor.

*Id.* § 44.031(b); *see also R.G.V. Vending v. Weslaco Indep. Sch. Dist.*, 995 S.W.2d 897, 899-900 (Tex. App.-Corpus Christi 1999, no pet.) ("[T]he criteria listed in section 44.031(b) are the only criteria that may be considered by the district in its decision to award the contract. The use of permissive language in the statute indicates that a school district has the discretion to apply one, some, or all of those criteria. The school district may not, however, completely ignore the listed criteria."). Section 44.031 authorizes a district board of trustees to "adopt rules and procedures for the acquisition of goods or services." Tex. Educ. Code Ann. § 44.031(d) (Vernon Supp. 2000).

Again, section 44.031 applies only to purchases valued at $25,000 or more in the aggregate for each twelve-month period. Another statute, section 44.033, governs purchases of personal property with a value of at least $10,000 but less than $25,000, in the aggregate, for a twelve-month period. *See* Tex. Att'y Gen. Op. No. DM-418 (1996) at 7 (noting that section 44.033 of the Education Code applies to purchases of insurance). This provision requires a district to purchase those items either in accordance with section 44.031(a) and (b) or according to

special procedures. *See* Tex. Educ. Code Ann. § 44.033(a) (Vernon Supp. 2000) ("A school district shall purchase personal property as provided by this section if the value of the items is at least $10,000 but less than $25,000, in the aggregate, for a 12-month period. In the alternative, the school district may purchase those items in accordance with Sections 44.031 (a) and (b)."). The special procedures set forth in section 44.033 include publishing notice, creating a vendor list, and obtaining price quotations from at least three vendors. *See id* § 44.033(b), (c).

The phrase "in the aggregate," as it is used in sections 44.031 and 44.033, requires a district "cumulatively to value contracts for like products that a school district normally would purchase together." Tex. Att'y Gen. Op. No. DM-418 (1996) at 9. Whether a district must aggregate premiums paid on different types of insurance coverages:

> may depend upon the local market; . . . the types of coverage involved, the size or location of the school district, and other factors that we are unable to predict. Possibly, one school district would normally contract to purchase certain products together, while another school district normally would not contract to purchase the same products together.

*Id.*

Finally, contracts with a value of less than $10,000, in the aggregate, for a twelve-month period are not subject to chapter 44, subchapter B. In the absence of statutory limitations on purchasing, school district trustees "'are required merely to act faithfully and in the exercise of their best judgment so as to best serve the interest of their district.'" *Gaynor Constr. Co. v. Board of Trustees, Ector County Indep. Sch. Dist.*, 233 S.W.2d 472, 478 (Tex. Civ. App.-El Paso 1950, writ ref'd) (citing Tex. Att'y Gen. Op. No. O-525 (1939)); *see also Stapleton v. Trussell*, 196 S.W. 269, 270 (Tex. Civ. App.-Fort Worth 1917, no writ). Thus, if contracts have an aggregate yearly value of less than $10,000, a district has the discretion to determine how it will make the purchases. A district may opt to make such purchases using the competitive procedures set out in sections 44.031 and 44.033 if its board of trustees determines that good business management requires it. *See* Tex. Att'y Gen. Op. No. DM-347 (1995) at 6-7 (noting that school district may use competitive bidding to make purchases valued at less than statutory cap if school board determines that good business management requires it); *see also Patten v. Concho County*, 196 S.W.2d 833, 835 (Tex. Civ. App.-Austin 1946, no writ) (although not required to make particular purchase through competitive bidding, commissioners court in its discretion may utilize such procedure if it determines "good business management" requires it).

We now turn to your specific questions. First, you ask whether a junior college district's purchase of insurance through a designated broker of record is legitimate under section 44.031 of the Education Code. We conclude that chapter 44, subchapter B of the Education Code does not permit the use of a designated broker of record for insurance contract purchases subject to its provisions.

Section 44.031 and its sister statute, section 44.033, establish a list of permissible purchasing methods for contracts over a certain aggregate yearly value. Since chapter 44, subchapter B was first enacted in 1995, the list of permissible methods has become increasingly comprehensive and now includes methods that involve the services of an individual. For example, section 44.031 now includes as a purchasing method use of "a contract to construct, rehabilitate, alter, or repair facilities that involves using a construction manager." Tex. Educ. Code Ann. § 44.031(a)(7) (Vernon Supp. 2000). Sections 44.037 and 44.038 set forth specific procedures for using a construction manager. We believe that, like use of a construction manager, use of a designated broker of record to purchase insurance is a purchasing method that must be expressly authorized.

Furthermore, as we have noted, a designated broker of record will have affiliations with a limited number of insurance companies. As a result, use of a designated broker of record will necessarily limit a district's access to all available rates and terms and might foreclose the district's access to the most advantageous rates and terms. This is contrary to the purpose of the subchapter B competitive purchasing procedures, which is to ensure that districts obtain the

best value. *See id.* § 44.031(a) (charging districts with selecting the method that provides the "best value for the district"). In addition, of the eight purchasing methods authorized by section 44.031(a), competitive bidding, competitive sealed proposals, and a request for proposals appear to be most suited to insurance contract purchases. Even if a district were to instruct a designated broker of record to solicit terms and rates using one of these methods, the district would not have used the method in its truest, most complete form. For this reason, we believe that the legislature must expressly authorize use of designated brokers of record, as it has done in the context of certain municipal insurance purchases. *See* Tex. Loc. Gov't Code Ann. § 252.024 (Vernon 1999) (providing that municipal competitive purchasing requirements do not "prevent a municipality from selecting a licensed insurance broker as the sole broker of record to obtain proposals and coverages for excess or surplus insurance").

In sum, because use of a designated broker of record is not authorized by sections 44.031 and 44.033, a junior college district may not use a designated broker of record to purchase insurance contracts with premiums with an aggregate yearly value of $10,000 or more. A district must use one of the methods listed in section 44.031 if purchasing insurance contracts with premiums of $25,000 or more in the aggregate for each twelve-month period. It must comply with section 44.033 if purchasing insurance contracts with premiums of at least $10,000 but less than $25,000, in the aggregate, for a twelve-month period. *See* Tex. Educ. Code Ann. §§ 44.031, .033 (Vernon Supp. 2000). Again, the phrase "in the aggregate," as it is used in sections 44.031 and 44.033, requires a district "cumulatively to value contracts for like products that a school district normally would purchase together." Tex. Att'y Gen. Op. No. DM-418 (1996) at 9. Whether a district must aggregate premiums paid on different types of insurance coverages will depend upon a number of factors and is beyond the purview of this office. *See id.*

For purchases of insurance contracts with premiums with an aggregate yearly value of less than $10,000, districts have greater, but not unfettered, discretion. Given that use of a designated broker of record will automatically limit the insurance companies available to a district, each junior college district board of trustees is obligated to consider whether use of a designated broker of record is in its district's best interest. *See Gaynor Constr.*, 233 S.W.2d at 478. Other options may provide a district with more advantageous rates and terms. Because a district does not compensate a designated broker of record, the selection of a designated broker is not governed by section 44.031 or 44.033. However, should the board decide that use of a designated broker of record is in the district's best interest, the board should also consider whether good business management requires selection of a designated broker of record according to a competitive process borrowed from chapter 44, subchapter B or of its own design. *See* Tex. Att'y Gen. Op. No. DM-347 (1995) at 6-7.

Your second question is as follows: "If an institution of higher education uses competitive bidding to hire a designated broker of record[,] is the broker then required to use competitive bidding to procure insurance?" Request Letter at 1. Given our conclusion that a district is not authorized to use a designated broker of record for purchases subject to sections 44.031 and 44.033, we address this question only with respect to purchases of insurance contracts with premiums with an aggregate yearly value of less than $10,000. We do not believe that the method a district uses to select a designated broker of record dictates the method used to purchase insurance. We also stress that it is the district, rather than the broker, that actually purchases insurance from insurance companies. A junior college district that uses a designated broker of record must work with the agent to ensure that the district purchases insurance according to a method that is in the district's best interest and is consistent with good business management.

## S U M M A R Y

A junior college district may not use a designated broker of record to purchase insurance contracts with premiums of an aggregate value of $10,000 or more for each twelve-month period. *See* Tex. Educ. Code Ann. §§ 44.031, 44.033 (Vernon Supp. 2000).

A junior college district that expends less than $10,000, in the aggregate, on insurance

premiums for each twelve-month period may use a designated broker of record to purchase insurance contracts, but the district's board of trustees should ensure that use of a designated broker of record is in the district's best interest and select a designated broker of record in a manner it determines is consistent with good business management. The district must also ensure that it purchases insurance according to a method that is in the district's best interest and is consistent with good business management.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee

POST OFFICE BOX 12548, AUSTIN, TEXAS 78711-2548 TEL: (512) 463-2100 WEB: WWW.OAG.STATE.TX.US
*An Equal Employment Opportunity Employer*

Home | Opinions

# EXHIBIT "B"

# Brownsville Independent School District

1900 Price Road   Brownsville, Texas 78521-2417   (956) 548-8000   Fax: (956) 548-8019

*Noe Sauceda, Ph.D.*
*Superintendent of Schools*

**HAND DELIVERED**

November 29, 2001

Dino Chavez, MBA
Regional Sales Coordinator
905 Los Ebanos Blvd., Suite A
Brownsville, Texas  78520

Dear Mr. Chavez,

Please accept this correspondence as my official 30-day notice of our intent to non-renew your services as our Third Party Administrator for our Cafeteria plan.  I must also inform you that your proposal for renewal of the contract has been rejected as allowed under BISD Policy CH (Legal) and CH (Local).

Your continuous inappropriate correspondence is troublesome since appropriate channels were not followed.  I consider the content of your letters and your conduct as unprofessional, unethical, and against expected customer-service provider relations. I am directing you to cease and desist all contact with school personnel during school business hours.  Campus administration will be directed to contact security services if you or any of your associates are found to be on school-district property.

I must caution you that the content of the memos you disseminated to BISD staff are, in my opinion, both slanderous and libelous and can place both you and your corporation (AFLAC) in a legally liable situation.  I will be contacting Mr. Frank Lafemina in the Austin Office and expressing to him my disappointment with your treatment of my Board and staff since it is obvious that you are not working in the best interest of BISD, your client.

Your supervisors will be advised that this administration will consider AFLAC as a future product provider under the following conditions:

a. A corporate officer must personally apologize to each board member, the board as a whole, myself, and my administrators publicly.
b. A written assurance that appropriate, ethical conduct will be exercised in the future by any and all AFLAC representatives wishing to serve BISD.
c. Provided that the products are of the best quality, service and price.

Sincerely,

Noe Sauceda, Ph.D.
Superintendent of Schools

Attachments:  Correspondence from Dino Chavez, Section 125 Cafeteria Plan Proposal
Policies CH (Legal and Local)

cc:   BISD Board of Trustees
Frank Lafemina (via facsimile: 512/479-5968)
AFLAC State Office
1801 LaVaca, Suite 108
Austin, Texas 78701

*"The Brownsville Independent School District is an Equal Opportunity Employer. M/W/D/V"*

# EXHIBIT "C"

PURCHASING AND ACQUISITION

| | |
|---|---|
| BOARD AUTHORITY | The Board may adopt rules and procedures for the acquisition of goods and services. *Education Code 44.031(d)* |
| DELEGATION OF AUTHORITY | The Board may delegate its authority regarding an action authorized or required to be taken by the District by Education Code Chapter 44, Subchapter B to a designated person, representative, or committee. |
| | The Board may not delegate the authority to act regarding an action authorized or required to be taken by the Board by Education Code Chapter 44, Subchapter B. |
| | *Education Code 44.0312* |
| INJUNCTION | A court may enjoin performance of a contract made in violation of Education Code Chapter 44, Subchapter B. A county attorney, district attorney, criminal district attorney, citizen of the county in which the District is located, or any interested party may bring an action for an injunction. A party who prevails in an action brought under this subsection is entitled to reasonable attorney's fees as approved by the court. *Education Code 44.032(f)* |
| PURCHASES VALUED AT OR ABOVE $25,000 | All District contracts, except contracts for the purchase of produce or vehicle fuel, valued at $25,000 or more in the aggregate for each 12-month period, shall be made by the method that provides the best value for the District: |

1. Competitive bidding. [See also CVA]
2. Competitive sealed proposals. [See also CVB]
3. A request for proposals for services other than construction services.
4. A catalog purchase as provided by Government Code Chapter 2157, Subchapter B.
5. An interlocal contract.

---

*Note:* Regarding construction of school facilities, see CVC for design/build contracts; CVD, CVE for contracts using a construction manager; CVF for job order contracts for minor repairs/alterations.

---

*Education Code 44.031(a)*

| | |
|---|---|
| FACTORS | In awarding a contract, the District may consider: |

1. Purchase price.
2. The reputation of the vendor and of the vendor's goods and services.
3. The quality of the vendor's goods or services.

5. The vendor's past relationship with the District.
6. The impact on the ability of the District to comply with laws relating to historically underutilized businesses.
7. The total long-term cost to the District to acquire the goods or services.
8. Any other relevant factor that a private business entity would consider in selecting a vendor.

*Education Code 44.031(b)*

The factors listed above are the only criteria that may be considered by the District in its decision to award a contract. The District may apply one, some, or all of the criteria, but it may not completely ignore them. *R.G.V. Vending v. Weslaco Indep. Sch. Dist.,* _____ *S.W.2d* _____ *(Tex. App.-Corpus Christi 1999).*

| | |
|---|---|
| NOTICE PUBLICATION | Notice of when and where bids or proposals or the responses to a request for qualifications will be received and opened shall be published in the county where the District's central administrative office is located, once a week for at least two weeks prior to deadline for receiving bids, proposals, or responses to a request for qualifications. If there is no newspaper in that county, the advertising shall be published in a newspaper in the county nearest the county seat of the county in which the District's central administrative office is located. In a two-step procurement process, the time and place where the second-step bids, proposals, or responses will be received are not required to be published separately. *Education Code 44.031(g)* |
| PERSONAL PROPERTY PURCHASES VALUED $10,000 TO $25,000 | When the District seeks to purchase personal property of a value of at least $10,000 but less than $25,000, in the aggregate, for a 12-month period, the District may either purchase those items in accordance with Education Code 44.031(a) and (b) described above or follow the vendor list procedures described below. *Education Code 44.033(a)* |
| NOTICE | For each 12-month period, the District shall publish a notice in two successive issues of any newspaper of general circulation in the county in which the school is located. If there is no newspaper in the county in which the school is located, the advertising shall be published in a newspaper in the county nearest the county seat of the county in which the school is located, specifying the categories of personal property to be purchased and soliciting the names, addresses, and telephone numbers of vendors that are interested in supplying any of the categories to the District. *Education Code 44.033(b)* |
| VENDOR LIST | For each category, the District shall create a vendor list consisting of each vendor that responds to the published notice and any additional vendors the District elects to include. Before the District makes a purchase from a category of personal property, it must obtain written or telephone price quotations from at least three vendors from the list for that category. If fewer than three vendors are on the list, the District shall contact each vendor. Whenever possible, telephone quotes should be confirmed in writing by mail or facsimile. The bidding records shall be retained with the District's competitive bid records and are subject to audit. Purchases shall be made from the lowest responsible bidder. *Education Code 44.033(b)(c)* |
| PRODUCE OR FUEL PURCHASES | When the District purchases produce or fuel valued at $10,000 or more in the aggregate, for a 12-month period, the District must either purchase those items in accordance with Education Code 44.031(a) and (b) described above or follow the |

| | |
|---|---|
| **PROFESSIONAL SERVICES** | The purchasing requirements of Education Code Section 44.031 do not apply to a contract for professional services rendered, including the services of an architect, attorney, or fiscal agent. |
| | The District may contract for professional services rendered by a financial consultant or a technology consultant in the manner provided by Section 2254.003, Government Code, in lieu of the methods provided by Education Code 44.031. |
| | *Education Code 44.031(f)* |
| | Competitive bids shall not be solicited for professional services of any licensed or registered certified public accountant, architect, landscape architect, land surveyor, physician, optometrist, professional engineer, state-certified or state-licensed real estate appraiser, or registered nurse. Contracts for these professional services shall be made on the basis of demonstrated competence and qualifications to perform the services and for a fair and reasonable price. *Gov't Code 2254.002, 2254.003(a)* [See also CV (LEGAL)] |
| **EMERGENCY DAMAGE OR DESTRUCTION** | If school equipment, a school facility, or a part of a school facility or personal property is destroyed or severely damaged or, as a result of an unforeseen catastrophe or emergency, undergoes major operational or structural failure, and the Board determines that the delay posed by the methods provided for in Education Code 44.031 would prevent or substantially impair the conduct of classes or other essential school activities, then contracts for the replacement or repair of the equipment, school facility, or the part of the school facility may be made by methods other than those required by Education Code 44.031. *Education Code 44.031(h)* |
| **COMPUTERS** | The District may acquire computers and computer-related equipment, including computer software, through the General Services Commission under contracts with the GSC in accordance with Government Code Chapter 2157. *Education Code 44.031(i)* |
| **SOLE SOURCE** | Compliance with Education Code 44.031 is not required for purchases that are available from only one source, including: |

1. An item for which competition is precluded because of a patent, copyright, secret process, or monopoly.
2. A film, manuscript, or book.
3. A utility service, including electricity, gas, or water.
4. A captive replacement part or component for equipment.

The sole source exception shall not apply to mainframe data processing equipment and peripheral attachments with a single-item purchase price in excess of $15,000.

*Education Code 44.031(j)(k)*

| | |
|---|---|
| **IMPERMISSIBLE PRACTICES** | A Trustee, employee, or agent shall not, with criminal negligence, make or authorize separate, sequential, or component purchases to avoid the purchasing requirements set out in Education Code 44.031. An officer or employee shall not knowingly violate Education Code 44.031 in any other manner. |

in normal purchasing practices would be made in one purchase. "Separate purchases" means purchases, made separately of items that in normal purchasing practices would be made in one purchase. "Sequential purchases" means purchases, over a period, of items that in normal purchasing practices would be made in one purchase.

Violation of this provision is a Class B misdemeanor and an offense involving moral turpitude, conviction of which shall result in removal from office or dismissal from employment. A Trustee who is convicted of a violation of this provision is considered to have committed official misconduct and for four years after the date of final conviction, the removed person is ineligible to be appointed or elected to public office in Texas, is ineligible to be employed by or act as an agent for the state or a political subdivision, and is ineligible to receive any compensation through a contract with the state or a political subdivision. [See BBC(LEGAL)]

*Education Code 44.032*

| | |
|---|---|
| INSURANCE | A contract for the purchase of insurance is a contract for the purchase of personal property and shall be made in accordance with Education Code 44.031 or 44.033. *Education Code 44.031, 44.033; Atty. Gen. Op. DM-347 (1995)* |
| MULTIYEAR CONTRACTS | The District may execute an insurance contract for a period longer than 12 months, if the contract contains either or both of the provisions described at COMMITMENT OF CURRENT REVENUE, below. If the District executes a multiyear insurance contract, it need not advertise for insurance vendors until the 12-month period during which the District will be executing a new insurance contract. *Atty. Gen. Op. DM-418(1996)* |
| COMPETITIVE BIDDING | If the District receives two or more bids from responsible bidders that are identical in nature and amount as the lowest and best bids, it shall select only one bidder from the identical bids. |

If only one of the bidders submitting identical bids is a resident of the District, that bidder shall be selected. If two or more such bidders are residents of the District, one shall be selected by the casting of lots. In all other cases, one of the identical bids shall be selected by the casting of lots.

The Board shall prescribe the manner of casting lots and shall be present when the lots are cast. All qualified bidders or their representatives may be present at the casting of lots.

*Local Gov't Code 271.901*

| | |
|---|---|
| OUT-OF-STATE BIDDERS | The Board shall not award a contract for general construction, improvements, services, or public works projects or for purchase of supplies, materials, or equipment to a bidder whose principal place of business is not in this state, unless the nonresident underbids the lowest bid submitted by a responsible resident bidder by an amount that is not less than the amount by which a resident bidder would be required to underbid a nonresident bidder to obtain a comparable contract in the state in which the nonresident's principal place of business is located. *Gov't Code 2252.001, 2252.002* |

This requirement shall not apply to a contract involving federal funds. The District shall rely on information published by the GSC in evaluating the bids of

**INTERLOCAL AGREEMENTS**

To increase efficiency and effectiveness, the District may contract or agree with other local governments and with state agencies, including the GSC, to perform some of its purchasing functions. *Gov't Code 791.001, 791.011*

The District may agree with another local government, including a nonprofit corporation that is created and operated to provide one or more governmental functions and services, or with the state or a state agency, including the GSC, to purchase goods and services reasonably required for the installation, operation, or maintenance of the goods. Such an agreement may not, however, apply to services provided by firefighters, police officers, or emergency medical personnel.

If the District purchases goods and services by agreement with another local government or with the state or state agency it satisfies the requirement to seek competitive bids for the purchase of goods and services.

*Gov't Code 791.025(b)(c); Atty. Gen. Op. JC-37 (1999)*

**STATE PURCHASING PROGRAM**

Purchasing services performed for the District by the GSC shall include:

1. The extension of state contract prices to the District when the GSC considers it feasible;
2. Solicitation of bids on items desired by the District if the solicitation is considered feasible by the GSC and is desired by the District;
3. Provision of information and technical assistance to the District about the purchasing program.

The GSC may charge the District its actual costs in providing purchasing services.

*Local Gov't Code 271.082*

**DISTRICT REQUIREMENTS**

The District may participate in the purchasing program by filing with the GSC a resolution adopted by the Board requesting that the District be allowed to participate on a voluntary basis, to the extent the GSC deems feasible, and stating that the Board shall:

1. Designate an official to act for the District in all matters relating to the program, including the purchase of items from the vendor under any contract.
2. Direct the decisions of its representative.
3. Be responsible for:
    a. Submitting requisitions to the GSC under contract(s) and for payment directly to the vendor; and
    b. Electronically sending purchase orders directly to vendors and electronically sending the GSC reports on actual purchases.
4. Be responsible for the vendor's compliance with all conditions of delivery and quality of the purchased item.

A purchase made through participation in this program meets any state requirement to seek competitive bids for the purchase of the item.

**ELECTRONIC MARKETPLACE**

If the District has the ability to electronically send purchase orders and information, it may participate in the GSC's electronic procurement marketplace,

*Loc'' Gov't Code 271.083*

| | |
|---|---|
| COOPERATIVE PURCHASING PROGRAM | The District may participate in a cooperative purchasing program with another local government or a local cooperative organization. If the District does so, it may sign an agreement with another participating local government or a local cooperative stating that the District will: |

1. Designate a person to act on behalf of the District in all matters relating to the program.
2. Make payments to another participating local government or local cooperative organization or directly under a contract, as provided in the agreement.
3. Be responsible for the vendor's compliance.

If the District participates in a cooperative purchasing program, it satisfies any law requiring it to seek competitive bids.

*Local Gov't Code 271.102; Atty. Gen. Op. JC-37 (1999)*

| | |
|---|---|
| COMMITMENT OF CURRENT REVENUE | A contract for the acquisition, including lease, of real or personal property is a commitment of the District's current revenue only, provided the contract contains either or both of the following provisions: |

1. Retains to the Board the continuing right to terminate the contract at the expiration of each budget period during the term of the contract.
2. Is conditioned on a best efforts attempt by the Board to obtain and appropriate funds for payment of the contract.

*Local Gov't Code 271.903*

| | |
|---|---|
| ENERGY CONSERVATION MEASURES | The District may contract for energy conservation measures using a request for proposal process. *Education Code 44.901* [See policy CL(LEGAL) for legal requirements pertaining to such contracts] |
| RECYCLED PRODUCTS | The District shall give preference in purchasing to products made of recycled materials if the products meet applicable specifications as to quantity and quality. The District shall regularly review and revise its purchasing procedures and specifications for purchase of goods, supplies, equipment, and materials in order to: |

1. Eliminate procedures and specifications that explicitly discriminate against products made of recycled materials.
2. Encourage the use of products made of recycled materials.
3. Ensure to the maximum extent economically feasible that the District purchase products that may be recycled when they have served their intended use.

The District may seek an exemption from compliance if it has a population of less than 5,000 within its geographic boundaries and demonstrates to the Water Commission that compliance would work a hardship on the District.

*Health and Safety Code 361.426*

PRODUCTS to agricultural products, including textiles and other similar products, that are produced, processed, or grown in Texas. "Processed" means canning, freezing, drying, juicing, preserving, or any other act that changes the form of a good from its natural state to another form. If Texas agricultural products are not equal in cost and quality to other agricultural products, the District shall give preference in purchasing to agricultural products produced, processed, or grown in the United States, if the cost and quality of the U.S. and foreign products are equal.

The District may not adopt product purchasing specifications that unnecessarily exclude agricultural products produced, processed, or grown in Texas.

| | |
|---|---|
| **VEGETATION FOR LANDSCAPING** | If cost is equal and the quality is not inferior, the District shall give preference to Texas vegetation when it purchases vegetation for landscaping purposes. |

*Education Code 44.042*

| | |
|---|---|
| **BUS PURCHASE OR LEASE** | Each contract proposed for the purchase or lease of one or more school buses, including a lease with an option to purchase, shall be submitted to competitive bidding when the contract is valued at $20,000 or more. *Education Code 44.031 (l)* [See CNB] |

| | |
|---|---|
| **CRIMINAL HISTORY** | Before entering into a contract with the District, a person or business must give notice to the District if the person or an owner or operator of the business has been convicted of a felony. The District may terminate a contract with a person or business if the District determines that the person or business failed to give such notice or misrepresented the conduct resulting in the conviction. The District must compensate the person for services performed before the contract terminated. *Education Code 44.034* |

The District may obtain criminal history record information that relates to an employee of, or applicant for employment by, a person that contracts with the District to provide services if:

1. The employee or applicant has or will have continuing duties related to the contracted services; and
2. The duties are or will be performed on school property or at another location where students are regularly present.

*Education Code 22.083(b)*

| | |
|---|---|
| **LOBBYING RESTRICTION: TOBACCO EDUCATION GRANT FUNDS** | The District may not spend grant funds it receives from the Permanent Fund for Tobacco Education and Enforcement to pay: |

1. Lobbying expenses incurred by the District;
2. A person or entity that is required under Government Code Chapter 305 to register as a lobbyist with the Texas Ethics Commission.
3. Any partner, employee, employer, relative, contractor, consultant, or related entity of a person or entity of a registered lobbyist (as described in item 2);
4. A person or entity who has been hired to represent associations or other entities for the purpose of affecting the outcome of legislation, agency rules, ordinances, or other government policies.

*Government Code 403.1067*

PURCHASING AND ACQUISITION

CH
(LOCAL)

| | |
|---|---|
| PURCHASING AUTHORITY | The Board delegates to the Superintendent or designee the authority to determine the method of purchasing, in accordance with CH(LEGAL), and to make budgeted purchases. However, any purchase that costs or aggregates to a cost of $10,000 or more shall require Board approval before a transaction may take place. |
| COMPETITIVE BIDDING | If competitive bidding is chosen as the purchasing method, the Superintendent or designee shall prepare bid specifications. All bids shall be submitted in sealed envelopes, plainly marked with the name of the bidder and the time of opening. All bidders shall be invited to attend the bid opening. Any bid may be withdrawn prior to the scheduled time for opening. Bids received after the specified time shall not be considered. |
| | The District may reject any and all bids. |
| COMPETITIVE SEALED PROPOSALS | If competitive sealed proposals are chosen as the purchasing method, the Superintendent or designee shall prepare the request for proposals and/or specifications for items to be purchased. All proposals shall be submitted in sealed envelopes, plainly marked with the name of the proposer and the time of opening. Proposals received after the specified time shall not be considered. Proposals shall be opened at the time specified, and all proposers shall be invited to attend the proposal opening. Proposals may be withdrawn prior to the scheduled time for opening. Changes in the content of a proposal, and in prices, may be negotiated after proposals are opened. |
| | The District may reject any and all proposals. |
| RESPONSIBILITY FOR DEBTS | The Board shall assume responsibility for debts incurred in the name of the District so long as those debts are for purchases made in accordance with adopted Board policy and current administrative procedures. The Board shall not be responsible for debts incurred by persons or organizations not directly under Board control; persons making unauthorized purchases shall assume full responsibility for all such debts. |
| PURCHASE COMMITMENTS | All purchase commitments shall be made by the Superintendent or designee on a properly drawn and issued purchase order, in accordance with administrative procedures. |
| PERSONAL PURCHASES | District employees shall not be permitted to purchase supplies or equipment for personal use through the District's business office. |

DATE ISSUED: 08/25/1999
UPDATE 61
CH(L)-B