IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION



United States District Court
Southern District of Texas
ENTERED

JAN 1 6 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| DINO CHAVEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-128 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT AND NOE | § | |
| SAUCEDA, | § | |
| | § | |
| Defendants. | § | |

### ORDER

BE IT REMEMBERED, that on January 16, 2003, the Court considered the Defendants' Motions to Dismiss For Failure to State a Claim [Dkt. Nos. 15 &18] and the response thereto [Dkt. No. 21]. The Court **GRANTS in part** and **DENIES in part** Defendants' Motions.

Factual Background

Plaintiff, Dino Chavez, was an insurance sales agent representing American Family Life Assurance Company of Columbus ("AFLAC"). Plaintiff submitted an AFLAC proposal to the Brownsville Independent School District's ("BISD") Insurance Committee for an optional section 125 Cafeteria Plan Services Contract. It is undisputed that Plaintiff was employed by AFLAC and was not an employee or independent contractor of BISD. Plaintiff claims that his bid was, in essence, a bid to provide enrollment services to BISD's employees and to provide administrative services for the processing of the employees' insurance policies. Plaintiff would earn commission from the AFLAC insurance policies he sold directly to the employees.

The present dispute arose when, after coordinating the employees' cafeteria plan enrollment from 1998 through 2001, Plaintiff and his employer were notified by Noe

Sauceda, the superintendent of BISD, that Plaintiff would no longer be allowed to present AFLAC's bid to the Insurance Committee. Mr. Sauceda sent a letter to Plaintiff in which he explained that unless another representative agent from AFLAC replaced Plaintiff, AFLAC's proposal would not be reviewed by the Insurance Committee. Mr. Sauceda cited unprofessional and unethical conduct and "continuous inappropriate correspondence" as the reason for such removal. See Plaintiff's First Amended Complaint, at ¶ 12 [Dkt. No. 14]. This action, plaintiff alleges, occurred after Mr. Sauceda attempted to award the contract to another bidder, and submitted false information, such as misquotes, to the Insurance Committee in an effort to sabotage AFLAC's bid. In particular, Plaintiff accused BISD of attempting to appoint an "agent of record to provide all ancillary available insurance policies and products for BISD employees," and opined "it [was] illegal to appoint an agent of record according to information located on the Texas Attorney General's website." Plaintiff spoke about this issue at several BISD Board Committee meetings.

Along with other proposals, AFLAC's bid for insurance services was placed on the Insurance Committee's agenda for the November 29, 2001, meeting. During this Insurance Committee meeting, AFLAC's proposal was accepted by a vote of the Committee. Plaintiff alleges that despite the fact that he had written the proposal and had conducted previous insurance enrollment services for BISD employees, he was deprived of the opportunity to actually present the proposal at the meeting and was not allowed to begin enrollment after its acceptance. Plaintiff argues his constitutional right to Free Speech under the First Amendment was violated when he was refused the opportunity to present the proposal in retaliation for publicly admonishing BISD for what he believed to be the illegal use of an agent of record. In addition, Plaintiff argues his due process rights under the Fourteenth Amendment were violated when he was deprived of the opportunity to fully participate in the bidding process.

### BIDS's and Noe Sauceda's Motion to Dismiss

Plaintiff has brought a claim against BISD under 42 U.S.C. § 1983 for the deprivation of his due process rights under the Fourteenth Amendment and his First Amendment rights under the United States Constitution. BISD argues Plaintiff has failed

to demonstrate that a recognized property right arose from the award of the contract. See BISD's Motion to Dismiss, at p. 2 [Dkt. No. 15]. BISD asserts that because Plaintiff was allowed to participate in all BISD bidding procedures, his procedural due process rights were not violated and no such property right exists under Texas law. See id. at 3.

BISD further argues Plaintiff's right to Free Speech was not violated because his speech is not protected by the Constitution for several reasons. First, Plaintiff's speech regarding the alleged illegality of appointing an agent of record represented Plaintiff's private interests as an insurance agent and not those of a concerned citizen. See id. at 5-6. Second, Plaintiff was not a public employee because it is undisputed that he was employed by AFLAC and had no employment contract with BISD. See id. As such, BISD, argues Plaintiff's speech amounts to nothing more than a public citizen speaking out during the public audience sessions of the BISD Board of Trustees Open Meetings. See id.

Noe Sauceda's motion to dismiss presents the same legal arguments. Additionally, however, he asserts that all of the intentional torts Plaintiff alleges against him are barred by section 101.021 of the Texas Civil Practice and Remedies Code and section 22.051 of the Texas Education Code. BISD, conversely, does not base any portion of its motion to dismiss on grounds of governmental immunity. Rather, BISD requests the Court order Plaintiff to submit a tailored reply, pursuant to Federal Rule of Civil Procedure 7(a), responding to the affirmative governmental immunity defenses raised in BISD's Answer to Plaintiff's First Amended Complaint.

Rule 12(b)(6) Standard

A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted." Kennedy v. Tangipahoa Parish Library Bd. of Control, 224 F.3d 359, 365 (5th Cir. 2000); Lowrey v. Texas A & M University System, 117 F.3d 242, 247(5th Cir. 1997), quoting Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir. 1982). Fifth Circuit law dictates that a district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. See Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). See also Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000). A complaint will not be dismissed "unless it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc., 804 F.2d 879, 881 (5th Cir. 1986). The Fifth Circuit has held, however, that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief." Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995) (citation omitted).

### Due Process Claim

When a plaintiff asserts a section 1983 claim alleging a due process violation, he "must first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in a deprivation of that interest." Blackburn, 42 F.3d at 935 (citations omitted). See also American Mfr. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999). Property interests entitled to constitutional protection are defined by sources beyond the Constitution such as state law. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972); Perry v. Sindermann, 408 U.S. 593, 601 (1972) (quoting Roth, 408 U.S. at 577). Chavez alleges in his complaint that he was deprived of his property interests without due process of law when he was refused the opportunity to present the final proposal to the Insurance Committee and to begin the enrollment of employees following the awarding of AFLAC's proposal. See Plaintiff's First Amended Complaint, at ¶¶ 11-12 [Dkt. No. 14].

"[P]roperty interests," the Supreme Court has said, "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." Perry, 408 U.S. at 602, n. 7. (internal quotation marks and citation omitted). Plaintiff does not cite to any Texas cases,[1] nor has the Court unearthed any, in which the courts recognized a

---

[1] Plaintiff cites to Systems Contractors Corp. v. Orleans Parish School Bd., 148 F.3d 571 (5th Cir. 1998). This case can be distinguished from the present case. Systems Contractors was a case under Louisiana's bidding laws, and the Louisiana Supreme Court found explicitly that a bidder for a government contract has a protected property interest under the Due Process Clause. See id. at 574 n. 16. Indeed, the Court stated in Systems Contractors that "unlike Louisiana, many states do not recognize a protected property

4

property interest in the award of a government contract. To the contrary, case law indicates that in light of the fact that a governmental entity may reject any and all bids, a rejected bidder has no property right in the award of the contract. See § 271.027(a) Tx. Loc. Gov't Code Ann. (Vernon's 1999 & Supp. 2003). See also, e.g., Spawglass Constr. Corp. v. City of Houston, 974 S.W.2d 876, 880 (Tex. App.–Houston [14th Dist.] 1998, pet. denied); DRT Mechanical Corp. et al. v. Collin County, Texas, 845 F. Supp. 1159, 1162-63 (E.D. Tex. 1994); Assoc. General Contractors v. Corpus Chrisiti, 694 S.W.2d 581, 583 (Tex. App.–Corpus Christi 1985, no writ); A & A Const. Co. v. City of Corpus Christi, 527 S.W.2d 833 (Tex. Civ. App. –Corpus Christi 1975, no writ). Generally, courts have found that a property interest is present in a government contract when the contract confers a special status such as employment or entitlement to a social benefit. See, e.g., S & D Maintenance Co. v. Goldin, 844 F.2d 962, 965-69 (2d Cir. 1988); San Bernardino Physicians' Services Med. Group v. County of San Bernardino, 824 F.2d 1404, 1407-10 (9th Cir. 1987).

Plaintiff cannot establish a property interest because his interest in the proposal itself is simply too attenuated. Plaintiff was an employee of AFLAC. He was not an independent contractor and received no direct payment or formal benefits from BISD because he was not employed by the school district. Plaintiff was denied the opportunity to present AFLAC's proposal at the final Insurance Committee meeting, but he had participated in prior meetings leading up to the vote on the proposal. Although Plaintiff was not allowed to present the proposal himself, an alternate AFLAC representative did, and the Insurance Committee accepted it and allowed employee enrollment to begin with the new representative. In essence, Plaintiff was denied the privilege of continuing his relationship with BISD and in the process forging business relationships with the employees by his administration of their insurance policy plans. Plaintiff was not, however, denied a property interest nor were his due process rights violated. Despite the fact that Plaintiff had previously administered the insurance policy plans for BISD employees, he had no more than a "unilateral expectation" that he could continue to submit proposals and

---

interest in government contracts until those contracts are actually awarded." Id. at 575.

serve BISD employees. See Roth, 408 U.S. at 577. See also Blackburn, 42 F.3d at 936-37 (holding that owner of wrecker service failed to allege a property interest in remaining on city's and county's rotating on-call list for accident wrecker service). Plaintiff explains that he derives commission from his position as the insurance service provider when he sells insurance plans to BISD employees. This fact alone, however, does not alter the Court's determination that Plaintiff has not demonstrated that a property interest exists for insurance service providers who are neither employed by BISD nor bound by contract to BISD.

Plaintiff, therefore, has failed to state a due process claim and Defendants' Motions to Dismiss this portion of the Complaint are **GRANTED**.

### First Amendment Free Speech Claim

The fact that Plaintiff does not have a property interest or entitlement to personally continue with the bidding process does not also mean Plaintiff has failed to state a claim for a First Amendment constitutional violation. In Board of County Commissioners v. Umbehr, the Supreme Court made clear that even when an independent contractor has no property interest in his contract with the government, the government may not fail to renew the contract in retaliation for the exercise of the contractor's First Amendment rights. 518 U.S. 668, 673 (1996).

BISD argues that because Plaintiff was not employed by BISD and was not an independent contractor for the government, his speech was conveyed as a citizen and thus he is not entitled to any First Amendment protection. See BISD's Motion to Dismiss, at pp. 4-5 [Dkt. No. 15]. Alternatively, Mr. Sauceda argues the Court should employ the balancing test announced in Pickering v. Board of Ed., 391 U.S. 563 (1968) to determine whether Plaintiff's First Amendment rights have been violated. See Noe Sauceda's Motion to Dismiss, at p. 3 [Dkt. No. 18]. The Court is not convinced that Plaintiff has failed to state a First Amendment claim.

In general, when reviewing a First Amendment claim of this kind, the Court must first analyze the content, context, and form of the speech and determine whether it is protected by the Constitution. See Konigsberg v. State Bar of Cal., 366 U.S. 36, 49-51 (1961). Second, the Court must determine which First Amendment standard to apply because certain governmental limitations on protected speech are constitutionally permissible. See id.

### Is Plaintiff's speech protected by the First Amendment?

The mere fact that a plaintiff is not a public employee does not form proper grounds for ruling he is not entitled to protection against retaliation for speaking out on a matter of public concern. See Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995). Indeed, "even though a person as no 'right' to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, . . . the government may not deny a benefit to a person on a basis that infringes his constitutionally protected interests –especially, his interest in freedom of speech." Perry v. Sindermann, 408 U.S. 593, 597 (1972). In Board of County Commissioners v. Umbehr, the Supreme Court explained that at one end of a continuum are "government employees, whose close relationship with the government requires a balancing of important free speech and government interests," and on the other side are cases involving "ordinary citizens whose viewpoints on matters of public concern the government has no legitimate interest in repressing." 518 U.S. 668, 680 (1996). The First Amendment's protections from retaliatory discharge extends to independent contractors. See id. See also O'Hare Truck Service, Inc. v. City of Northlake, 518 U.S. 712, 719-21 (1996).

In the public employment context, the government has an interest in effectively and efficiently running the government, and because of this interest, the Supreme Court carved out a test for balancing the interest of the public employee and the government. See Pickering v. Board of Ed., 391 U.S. 563, 569 (1968). When an employer-employee relationship exists between the claimant and the government, the Court engages a two prong test. First, the Court determines whether the speech concerns a matter of public concern. See Connick v. Myers, 461 U.S. 138, 147 (1983). The Supreme Court has long

held that "speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values.'" Connick, 461 U.S. at 145. "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." Id. at 145. Second, the Court determines whether the employees' interests outweigh the government's interest in "promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568. Further, Connick held "only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." 461 U.S. at 147.

Plaintiff alleges that he submitted letters to BISD's Insurance Committee Campus Representatives and spoke during the public input section of the BISD Board meetings regarding the "apparent illegal[ity]" of appointing an agent of record. See Plaintiff's First Amended Complaint, at ¶ 9 [Dkt. No. 14]. Whether speech concerns a matter of public concern is related to its context and subject matter. See Branton v. City of Dallas, 272 F.3d 730, 740 (5th Cir. 2001). Plaintiff's complaint characterizes the designation of an agent of record as a misinterpretation or circumvention of the law, and as such could be construed as a matter of public concern. See First Nat'l Bank v. Bellotti, 435 U.S. 765, 776 (1978) (expressing the importance of bringing official misconduct to the public's attention). Plaintiff's speech, therefore, is protected under the Constitution.

<u>What is the applicable First Amendment standard?</u>

Applying the correct First Amendment standard requires the Court to determine whether Plaintiff's relationship to BISD was more akin to that of a public employee, independent contractor, or private citizen. Plaintiff acknowledges he was not an employee of BISD and did not have a contract with BISD to provide insurance policy services. Nonetheless, BISD's alleged conduct and communications with AFLAC had an impact on

Plaintiff's employment because he was removed from the bidding process and AFLAC assigned a new representative agent to present the proposal and enrol employees. As a result, the Court cannot now decide Plaintiff has not presented a First Amendment claim simply because Plaintiff was not directly employed by BISD. See Kinney v. Weaver, 301 F.3d 253, 270 (5th Cir. 2002) ("to hold that [a governmental entity's] conduct cannot constitute a First Amendment violation because they did not directly deny [the plaintiff] the benefit of employment, but instead used governmental power to exert economic pressure on [the plaintiff's] employer in order to achieve that same result, 'would allow the government to produce a result which [it] could not command directly.'") (citing Perry v. Sindermann, 408 U.S. 593, 597 (1972). Indeed, the Fifth Circuit has applied a Pickering balancing test in First Amendment retaliation cases that arose outside of the public employment context. See Kinney, 301 F.3d at 272 (listing cases applying this test).

Without assessing the merits of Plaintiff's claim, it is apparent that he has alleged facts that present a First Amendment claim upon which relief could be granted. Defendants' Motions to Dismiss this portion of the complaint are **DENIED**.

Official Immunity

State employees are entitled to official immunity when they are sued in their individual capacities for official acts under the Texas Tort Claims Act. See Medina County Com'rs Court v. Integrity Group, 944 S.W.2d 6, 9 (Tex.App. – San Antonio 1996, no pet.). Official immunity is an affirmative defense and places the burden of establishing all its elements on the defendant. City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994). "Governmental officials are entitled to immunity from suit arising from performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." Chambers, S.W. 2d at 653. An act is discretionary if it requires personal deliberation, decision, and judgment. Harris County v. Ochoa, 881 S.W.2d 884, 887 (Tex.-App.–Houston [14th Dist.] 1994, writ denied). "Ministerial acts are those '[w]here the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment . . . ." Chambers, 883 S.W.2d

at 654. Good faith is apparent if any reasonably prudent official would have believed that his conduct was consistent with the plaintiff's rights. <u>Chambers</u>, at 656-57. An official acts within the scope of his duties when he discharges duties generally assigned to him. <u>Id.</u> at 658.

Because official immunity is an affirmative defense, the burden rests on the defendant to establish all the elements of the defense. Id. at 653. In this case, Plaintiff has alleged that Noe Sauceda acted "on a matter on which he did not have discretion, in such a manner as to constitute fraud on Plaintiff Chavez and BISD employees, as well as malice." Plaintiff's First Amended Complaint, at ¶15 [Dkt. No. 14]. For the purpose of a motion to dismiss, therefore, Plaintiff's allegations counter Sauceda's assertion that his duties were within the scope and discretion of a Superintendent's duties and were conducted with in good faith. <u>See</u> Noe Sauceda's Motion to Dismiss, at p. 4 [Dkt. No. 18]. <u>See also</u> <u>Hutchison v. Brookshire Brothers, Ltd.</u>, 205 F. Supp.2d 629, 646 (E.D. Tex. 2002). To the extent that Sauceda's Motion to Dismiss for failure to state a claim is based on the assertion of official immunity, the motion is **DENIED**.

### BISD's Federal Rule of Civil Procedure 7(a) Request

BISD requests the Court order Plaintiff to respond to the affirmative defenses raised in their Answer to the First Amended Complaint. Additionally, Defendant Noe Sauceda has raised qualified immunity as an affirmative defense. Even absent a *per se* heightened pleading requirement, previously established in <u>Elliot v. Perez</u>, 751 F.2d 1472, 1473 (5th Cir. 1985), Plaintiff first must file a short and plain statement in his complaint, "that rests on more than conclusions alone." <u>Schultea v. Wood</u>, 47 F.3d 1427, 1433 (5th Cir. 1995). <u>See also</u> <u>Brown v. Valmet-Appleton</u>, 77 F.3d 860, 863 n.11 (5th Cir. 1996) (calling into question the heightened pleading requirement for officials sued in their individual capacities). The Court may then, in its discretion, insist that the Plaintiff file a reply tailored to the defense of qualified immunity. <u>Id</u>. "Vindicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when greater detail might assist." <u>Id</u>. at 1433-34. The reply must be tailored to the assertion of

qualified immunity and fairly engage its allegations. Id. at 1433. See also Todd v. Hawk, 72 F.3d 443, 446 (5th Cir. 1995). A Federal Rule of Civil Procedure 7(a) reply is the preferred procedure prior to consideration of a motion to dismiss on grounds of qualified immunity. The Court **ORDERS** Plaintiff to submit to the Court a Rule 7(a) reply tailored to BISD's defense of qualified immunity no later than 3:00 p.m. on Monday, February 10, 2003.

DONE at Brownsville, Texas, this 14th day of January, 2003.

Hilda G. Tagle
United States District Judge