United States District Court
Southern District of T—
FI'

FEB 1 0 2003

3 ᵕ    Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DINO X. CHAVEZ | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | B - 02 - 128 |
| and RANDY DUNN, MARILYN DEL | § | |
| BOSQUE-GILBERT and HUGH EMERSON, | § | |
| JR., in their official capacities as Board | § | |
| Members of Brownsville Independent | § | |
| School District | § | |

---

## FIRST AMENDED MOTION FOR LEAVE TO FILE PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT TO INCLUDE ADDITIONAL DEFENDANTS AND TO PROVIDE RULE 7(a) REPLY

---

TO THE HONORABLE U. S. DISTRICT COURT:

COMES NOW **DINO X. CHAVEZ**, Plaintiff herein and respectfully files his Motion for Leave to File Plaintiff's Second Amended Original Complaint pursuant to Federal Rules of Civil Procedures 15, 19 & 20, and pursuant to the Court's Order of January 16, 2003, and in support thereof would respectfully show unto the Court as follows:

1.      Plaintiff requests that the Court allow him leave to file his Second Amended Original Complaint in order to clarify his pleadings, to provide a Rule 7(a) reply to Defendant Brownsville Independent School District's defense of qualified immunity pursuant to the Court's Order of January 16, 2003, and to add Marilyn Del Bosque-Gilbert and Randall Dunn, individually, as parties defendant.  Plaintiff would show that the addition of these Defendants is necessary in order to accord complete relief to Plaintiff, based on the facts alleged herein.  If leave is not granted,

Plaintiff will be required to file a separate federal lawsuit against these individuals, resulting in a duplication of discovery, time and effort of all parties. Because of the addition of American Family Life Assurance Co. of Columbus ("AFLAC") as a third party Defendant, and because of the pending claims against Defendant Brownsville Independent School District, the addition of these Defendants is necessary to avoid duplication of effort and possibly inconsistent judgments in separate lawsuits. Accordingly, joinder of Del Bosque-Gilbert and Dunn as Defendants is either necessary pursuant to Rule 19, or permissive pursuant to Rule 20.

## II.

Plaintiff now requests leave of this Court to file his Second Amended Original Complaint, a copy of which is attached as Exhibit "A" and incorporated by reference as though set out herein. Discovery in this action is not yet completed, and the filing of this Second Amended Original Complaint will not divest the Court of jurisdiction, require any additional discovery or otherwise delay the trial of this action, but will rather aid the determination of this cause on the merits.

This motion is not being presented for harassment or delay, but solely so that the interests of justice may be served.

WHEREFORE, PREMISES CONSIDERED, Plaintiff **DINO X. CHAVEZ** respectfully requests that the Court enter an Order Granting Leave to file Plaintiff's Second Amended Original Complaint attached hereto as Exhibit "A."

Signed on this the 10th day of February, 2003.

Respectfully submitted,

**LAW OFFICE**
**J. ARNOLD AGUILAR**
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas  78520
Telephone     : (956) 504-1100
Facsimile     : (956) 504-1408

By: _____
J. Arnold Aguilar
State Bar No. 00936270
Federal Adm. No. 6822

Attorney for Plaintiff,
DINO X. CHAVEZ

## CERTIFICATE OF CONFERENCE

I, J. Arnold Aguilar, hereby certify that I have conferred with Defendants' counselors with regard to Plaintiff's Motion for Leave to File Plaintiff's Second Amended Original Complaint, and they responded as follows:

Elizabeth Neally

|  |  | X |
| --- | --- | --- |
| opposed | unopposed | unavailable |

Charles Willette, Jr.

| X |  |  |
| --- | --- | --- |
| opposed | unopposed | unavailable |

J. Arnold Aguilar

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **FIRST AMENDED MOTION FOR LEAVE TO FILE PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT TO INCLUDE ADDITIONAL DEFENDANTS AND TO PROVIDE RULE 7(a) REPLY** has on this the 10th day of February, 2003, been forwarded via certified mail, return receipt requested to:

Ms. Elizabeth G. Neally
Mr. Ricardo Morado
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 W. Price Rd., Suite 9
Brownsville, TX 78520

Mr. Charles V. Willette, Jr.
WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, TX 78521

Mr. Craig H. Vittitoe
ADAMS & GRAHAM
P.O. Drawer 1429
Harlingen, TX 78551

J. Arnold Aguilar

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION



United States District Court
Southern District of Texas
FILED

FEB 1 0 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| DINO X. CHAVEZ | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | |
| | § | **B - 02 - 128** |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | |
| MARILYN DEL BOSQUE-GILBERT | § | |
| and RANDALL DUNN | § | |

## PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE U. S. DISTRICT COURT:

COMES NOW **DINO X. CHAVEZ**, Plaintiff herein, complaining of Brownsville Independent School District, Noe Sauceda, Marilyn Del Bosque-Gilbert and Randall Dunn, and for such cause would respectfully show unto the Court and jury the following:

## I.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter in controversy in this action, and the claims are within the jurisdictional limits of this Court.  Venue is also proper in this Court because all or a substantial part of the events or omissions giving rise to the claims herein occurred in Cameron County, and the Defendants' residence at the time the causes of action accrued was in Cameron County, Texas.

## II.

## PARTIES

2.      Plaintiff **DINO X. CHAVEZ** is a resident of Brownsville, Cameron County, Texas.

3.      Defendant **BROWNSVILLE INDEPENDENT SCHOOL DISTRICT (BISD)** is an independent school district organized under the laws of the State of Texas. This Defendant has already been served and appeared herein.

4.      Defendant **NOE SAUCEDA** is an individual resident of Brownsville, Cameron County, Texas, at all relevant times herein. This Defendant has already been served and appeared herein.

5.      Defendant **MARILYN DEL BOSQUE-GILBERT** is an individual resident of Brownsville, Cameron County, Texas, at all relevant times herein. Service may be had upon this Defendant by serving her at 544 Calle Retama, Brownsville, Texas 78521.

6.      Defendant **RANDALL DUNN** is an individual resident of Brownsville, Cameron County, Texas, at all relevant times herein. Service may be had upon this Defendant by serving him at his office address, 1900 W. Price Road, Brownsville, Texas 78520.

## III.

## FACTUAL BACKGROUND AND ALLEGATIONS

7.      Plaintiff **Dino X. Chavez** was at all material times herein an independent insurance agent, originally appointed to represent American Family Life Assurance Company of Columbus (AFLAC) on September 6, 1994. After working for a number of years with AFLAC, Mr. Chavez was appointed as a Regional Sales Coordinator. As an independent insurance agent, and on behalf of AFLAC, on April 30, 1998, Mr. Chavez submitted a proposal to BISD to act as its Third Party

Services Provider for its § 125 cafeteria insurance plan, in exchange for the opportunity to offer additional optional insurance products with BISD's § 125 Cafeteria Plan to BISD employees. Although prior Third Party Services Providers would traditionally charge various fees for their services, Mr. Chavez's proposal provided that he would charge no fees to either BISD or its employees. That proposal was later approved by Defendant BISD on November 3, 1998, at which time Mr. Chavez's proposal was awarded the § 125 Cafeteria Plan Services Contract to act as BISD's Third Party Services Provider, along with the opportunity to offer additional AFLAC products in exchange for providing free administration of BISD's cafeteria plan.

8.    During November and December 1998, Mr. Chavez planned, coordinated and conducted Defendant BISD's entire cafeteria plan enrollment for over 6,000 employees as a service to BISD, thus saving BISD considerable expense. During the following year, from January through December 1999, Mr. Chavez provided BISD with additional administrative assistance and technical advice on a daily basis to insure compliance with § 125 guidelines, in addition to handling all inquiries and necessary paperwork relating to claims, policy questions and other matters relating to those policies. Thereafter, BISD advertised for proposals on the same products for the 1999-2000 and 2000-2001 years. During both years, no changes were made to BISD's proposal and the District chose to continue utilizing Mr. Chavez's services and allowing him to offer the additional voluntary AFLAC products. As part of his duties, Chavez continued to provide administrative services through the years 2000 and 2001. As a result of Mr. Chavez's efforts, the provision of insurance services was streamlined for all BISD employees, at no additional cost to BISD or its employees, but rather at considerable savings.

9.    Thereafter, on August 14, 2001, Chavez received information from BISD Board Member Randy Dunn indicating an attempt by him and BISD to hire an "agent of record" to

provide all services and policies to BISD and its employees, including all supplemental policies, although this would not necessarily be in the best interests of BISD employees. Dunn also indicated an interest that any insurance products should go through an agent named Arnulfo Olivarez, although Mr. Olivarez had previously only provided the District's voluntary cancer plan, since January 1999. During this meeting, Dunn also inquired as to Mr. Chavez's being able to work with Mr. Olivarez and his company, National Plan Administrators. During the prior 3-years, Mr. Chavez had not worked with Mr. Olivarez, and there would be no need for Mr. Chavez to seek any assistance from Mr. Olivarez. Any working relationship with Mr. Olivarez, however, would likely involve the payment to Mr. Olivarez of some additional funds or commissions that would otherwise be due to Mr. Chavez.

10.     Notwithstanding Mr. Dunn's suggestions, on September 6, 2001, Mr. Chavez submitted his AFLAC proposal for consideration to continue the existing 3-year relationship, with essentially no changes in fees or services, and without reliance on the services of Mr. Olivarez. On September 10th, Mr. Chavez submitted a letter to each Board Member outlining the advantages of his proposal, the most significant of which included that he would be charging no fees, he had a local servicing office, and he had 3-years of proven customer satisfaction with BISD employees. He thereafter presented his proposal to the BISD insurance committee on October 30, 2001. Other members of that committee included Defendant Noe Sauceda and Board Members Marilyn Del Bosque-Gilbert, Randy Dunn, and Hugh Emerson, Jr.

11.     During this time period, the BISD Board of Trustees was considering litigation against Sweezy Construction because mold had been found in buildings they constructed. Trustee Del Bosque-Gilbert's husband was a supervisory employee of Sweezy Construction at that time. Trustee Del Bosque-Gilbert therefore reached an agreement with Superintendent

v:\fp\pop\258-02 P's 2nd Am. Original Complaint                                                   PAGE 4

Sauceda to the effect that if no recommendation was made by him to pursue litigation against Sweezy Construction, she would go along with his plan to appoint Mr. Olivarez as BISD's "agent of record." That lawsuit was in fact prevented. Trustee Dunn also reached an agreement with Superintendent Sauceda to have Dunn's wife, Deborah Dunn, reinstated to her former position as secretary to Superintendent Sauceda, along with a $10,000.00 raise, and to have his girlfriend, Elizabeth Parra, placed in a position in the BISD Insurance Department at a substantial salary. In order to receive the consideration they were seeking, Defendants Del Bosque Gilbert and Dunn had to agree to Superintendent Sauceda's plan to appoint Arnulfo Olivarez as BISD's "agent of record" for all BISD insurance policies, even though the Texas Attorney General had previously concluded that such designation was illegal. Del Bosque-Gilbert and Dunn therefore agreed to allow Defendant Sauceda to violate Plaintiff Chavez's rights, in order to receive their own personal paybacks.

12.    Thereafter, Mr. Chavez received word that his proposal had been misquoted by Defendant Sauceda and his staff, in an effort to award the contract to someone other than Mr. Chavez. Although Mr. Chavez had complied with all District regulations relating to his proposal for insurance products and services, Defendants Sauceda, Del Bosque-Gilbert, Dunn and BISD were attempting to circumvent those procedures in an attempt to prevent Mr. Chavez from being awarded the contract, in spite of his having submitted the proposal most favorable to BISD and its employees. Defendant Sauceda's apparent purpose for submitting such false information was to promote the plan being offered by Arnulfo Olivarez for National Plan Administrators. Once he was able to convince Defendants Del Bosque-Gilbert, Dunn and the other board members to cooperate with his plan for their own selfish purposes, Defendant Sauceda began to implement his plan to award the contract to Mr. Olivarez and his company, National Plan Administrators.

v:\fp\pop\258-02 P's 2ⁿᵈ Am. Original Complaint                                    PAGE 5

13.    During the course of deliberation over the various proposals, Mr. Chavez received word that BISD was still considering retaining Mr. Olivarez as "agent of record" to provide all ancillary available insurance policies and products for BISD employees.   Therefore, during the public input section of the BISD board meeting on November 6, 2001, Mr. Chavez notified the Board of information located on the Texas Attorney General's web-site and an opinion that granting "agent of record" status was illegal.  Thereafter, Mr. Chavez continued to submit letters and charts to BISD's Insurance Committee Campus Representatives reflecting these matters.  In spite of Mr. Chavez's statements and representations, and the information from the Texas Attorney General, the agenda for the November 13, 2001 BISD board meeting had removed any reference to any proposed cafeteria plan such as that proposed by Mr. Chavez.  At that meeting, Mr. Chavez again spoke of the "agent of record" issue and presented information on that issue, discussing the legality of an "agent of record," the cost difference between AFLAC and the plan being promoted by Defendants Sauceda and BISD and National Plan Administrators (NPA), the difference in claim service, the difference in flexibility and the difference in local servicing offices.  At that meeting, Board Member Linda Salazar raised concerns that board members "should not profit from his/her position in any manner, [and] a board member should not take advantage of his/her position to broker deals."  The appearance of impropriety was enhanced on November 16, 2001, when the BISD board meeting agenda was posted, recommending approval of NPA as the BISD "agent of record" for all policies.

14.    Not willing to idly accept BISD's apparent illegal appointment of an "agent of record," Mr. Chavez sent a letter to all BISD Insurance Committee Campus Representatives to notify them that a decision on the Cafeteria Plan was on the agenda for the BISD meeting of November 20, 2001.  At the November 20th meeting, Mr. Chavez again provided copies of the

Attorney General's opinion concerning the illegality of an "agent of record," and he again presented his concerns to the Board. In spite of the points raised by Mr. Chavez, Defendants Sauceda and Del Bosque-Gilbert argued for the selection of NPA as an "agent of record." During that discussion, however, Board Member Linda Salazar raised concerns as to why the employees' insurance committee had not been given the opportunity to voice their opinions on the matter. As a result, that measure failed.

15.    Thereafter, Mr. Chavez's proposal for insurance services was placed on the agenda for the BISD Insurance Committee meeting set for November 29, 2001, along with NPA and another organization to make presentations. On the morning of November 29, however, Mr. Chavez was notified by his AFLAC supervisor, Frank La Femina, that he had been informed by Defendant Sauceda that AFLAC was being removed from consideration and that BISD was terminating their current contract with AFLAC for cafeteria plan services. Defendant Sauceda apparently explained that the reason for taking these actions was because of the letters Mr. Chavez had written to insurance committee members describing his products and the illegality of an "agent of record," speech protected by the First Amendment to the U.S. Constitution. When Mr. La Femina suggested using another representative, Defendant Sauceda agreed that if another representative were to replace Mr. Chavez, he would agree to allow AFLAC to continue its services for BISD.

16.    Later that morning, Defendants Sauceda and BISD delivered a letter to Mr. Chavez, providing him with a 30-day notice of BISD's intent not to renew his services as their Third Party Services Provider and that his proposal for renewal of the contract had been rejected as allowed under BISD's policies. At no time was Plaintiff Chavez provided with notice of Defendants' Sauceda's and BISD's intention to disqualify him from participating in his chosen profession, or an

opportunity to be heard, before he was disqualified. This letter also accused Mr. Chavez of "continuous inappropriate correspondence," "conduct...unprofessional, unethical, and against expected customer-service provider relations," memos that were "in [his] opinion, both slanderous and libelous," accusing Mr. Chavez of putting himself and AFLAC "in a legally liable situation," and asserting that "it is obvious that [he is] not working in the best interest of BISD...." At no time did Defendant Sauceda identify any authority that would indicate the Texas Attorney General's Opinion was incorrect or did not apply to his attempts to hire Mr. Olivarez as an "agent of record." Defendant Sauceda and BISD further directed Mr. Chavez to cease and desist all contact with school personnel during school business hours," and he was notified that "[c]ampus administration [would] be directed to contact security services if [he] or any of [his] associates [were] found to be on school-district property." The clear tone of Defendant Sauceda's and BISD's letter was to prevent Mr. Chavez from being able to continue his services as Third Party Services Provider, to acquire any future work with BISD, or to sell any policies to BISD employees, thus excluding him from participation in the bidding and selection process and denying him due process and the equal protection of the laws in being able to compete along with other service providers for the sale of these policies.

17.    Defendants Sauceda and BISD further attempted to prevent Mr. Chavez from conducting any business with, or making any sales to, BISD employees regarding the cafeteria plan by submitting a copy of this letter to Mr. Chavez' supervisor at AFLAC, advising that "this administration will consider AFLAC as a future product provider," only if a "corporate officer...personally apologize[d] to each board member, the board as a whole, myself, and my administrators publicly," and if "written assurance [was provided] that appropriate, ethical conduct will be exercised in the future by any and all AFLAC representatives," and only lastly "[p]rovided

v:\fp\pop\258-02 P's 2nd Am. Original Complaint                                                    PAGE 8

that the products are of the best quality, service and price." Again, no notice or opportunity to be heard was provided to Plaintiff Chavez before he was denied the right to follow his specific chosen profession.

18.    As a result of Defendant Sauceda's correspondence and telephone conferences, Mr. Chavez was not allowed to attend the employees' insurance committee meeting on November 29th, although Mr. Olivarez on behalf of NPA and a third representative on behalf of a third company were allowed to make presentations to the board and the employees' insurance committee. Another AFLAC representative was instead allowed to present the AFLAC proposal previously drafted and submitted by Mr. Chavez. During that presentation, BISD Board Member Herman Otis Powers acknowledged receipt of Defendant Sauceda's letter and expressed surprise at Defendant Sauceda's request for an apology, explaining that there was no need for such and that Sauceda had no right to write any such letter and include the Board Members' names, explaining that Defendant Sauceda had abused his power by writing this letter.

19.    At the conclusion of the presentations and questions, the employees' insurance committee voted, and their votes were put into a box. In order to further his part of the conspiratorial plan with Defendant Sauceda, Defendant Dunn attempted to delay counting of the ballots by proposing that the ballots be taken to the police station's safe for safe-keeping, knowing that there was no such safe because as a retired police sergeant he was aware that the safe was removed during his tenure. That attempt was thwarted when the committee insisted instead on an immediate count. As a result, the proposal submitted by Mr. Chavez on behalf of AFLAC won by a margin of 44-1. A significant part of the reason for the success of the AFLAC proposal was Mr. Chavez's history of providing service to BISD employees. As a result, Defendant Sauceda notified the audience that AFLAC could begin enrollment the following day. Sauceda did not indicate,

however, that Mr. Chavez could participate in any of those enrollments.

20.     In addition, following the Insurance Committee Meeting and discussion, no action was taken by BISD Trustees to reverse the dictates in Defendant Sauceda's letter of November 29, 2001, thereby adopting its provisions.  As a result, Plaintiff Chavez was prevented from further speaking on the matters of public importance previously raised, and he was prevented from enjoying or participating in his chosen profession.  Because greater than 95% of all AFLAC sales of ancillary insurance products are made between the last two weeks of November and the first 3 weeks of December, Defendants' prohibition of Plaintiff on any campus grounds during this time period without an opportunity to be heard prevented him from engaging in his livelihood.  Because Defendant Sauceda had previously notified Mr. Chavez that he was not allowed on BISD campuses, Mr. Chavez was not allowed to participate in those enrollments, and thus lost all income from any new enrollments.  These actions were specifically designed to interfere with Plaintiff Chavez's ability to earn a living by entering into contracts with BISD employees for the provision of insurance products, and as a result, Mr. Chavez was in fact prevented from doing so.

21.     As a result of Defendants' actions, Plaintiff Dino Chavez was removed from the handling of the proposal he had submitted to BISD for AFLAC products, and he was thereafter terminated from his regional sales coordinator position with AFLAC.  Although Mr. Chavez had spent years establishing his relationship with AFLAC and with BISD employees, including the provision of numerous services for both, Mr. Chavez was summarily terminated by AFLAC because Defendants refused to work with Mr. Chavez.  Although Mr. Chavez acted within his rights at all times, Defendants acted contrary to law and deprived Mr. Chavez of his rights.  Defendant Sauceda never identified any specific actions taken by Mr. Chavez that were inappropriate, and all of Mr. Chavez's actions in the present application process, as well as in his

prior years in servicing BISD employees, were proper, authorized and according to law.

# IV.

# CAUSES OF ACTION

### A.    Brownsville Independent School District

22.    The facts alleged in Section III above are incorporated as though fully set out herein. As set out in therein, the actions of Defendant BISD caused a deprivation of Plaintiff Chavez's constitutional rights to free speech and to due process of law, of which he was deprived without justification or excuse, and for which he now sues pursuant to 42 U.S.C. § 1983. Defendant's actions against Plaintiff were in retaliation for his legitimate exercise of his free speech rights, guaranteed by the First Amendment to the U.S. Constitution. Defendant's actions were in retaliation for Mr. Chavez's legitimate speech relating to the illegality of the use of an "agent of record" and other matters relating to the contract for insurance services. Defendant's actions further violated Plaintiff's rights to due process, liberty, and to the equal protection of the laws, protected by the Fifth and Fourteenth Amendments to the U.S. Constitution, by depriving him of the right to hold specific private employment, to follow a chosen profession free from unreasonable governmental interference, and to participate in the enrollment process, as further set out above.

23.    Defendant BISD's actions in depriving Mr. Chavez of his rights to free speech and to the due process and equal protection of the laws were conducted and implemented as part of the customs, policies and/or practices of Defendant BISD, or were made by those with policy-making authority in that area of BISD's business, for which Defendant BISD is now liable. Defendant's actions were deliberately intended to cause harm to Mr. Chavez, and the resulting harm to him was severe. As a result of Sauceda's and BISD's actions, Mr. Chavez suffered

extreme shame, humiliation, embarrassment, loss of reputation, injury to his reputation, worry, anxiety, sleeplessness and damage to his personal health.

24.    Plaintiff would further show that the deprivation of his rights to free speech, to due process, and to the equal protection of the laws by Defendant BISD was conducted as part of the custom and policy established by this Defendant, or alternatively, through the actions of its policymaker, Superintendent Noe Sauceda.  Because Defendant Sauceda was the policymaker of Defendant BISD, his actions are imputed to Defendant BISD.  In addition, the actions of BISD's Board of Trustees was such as to adopt the actions of Defendant Sauceda as part of its custom and policy by refusing to reverse the dictates of Defendant Sauceda after notice, and through the trading of special favors between the Trustees and Defendant Sauceda. *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)(On Petition for Rehearing)(en banc)(per curiam), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3467, 87 L.Ed.2d 612 (1985).  Had Defendant BISD's policy or custom been otherwise, it would have prevented Sauceda from violating Plaintiff's rights or taken action to remedy those violations timely.

25.    Defendant BISD may not rely on the defense of qualified or sovereign immunity under state law, because no state claims have been raised against this Defendant, and because Defendant Sauceda himself is not entitled to qualified immunity under state law.  In addition, Defendant BISD may not relay on the defense of qualified or sovereign immunity under federal law, because the violation of Plaintiff's constitutional rights was through a policy "decision officially adopted and promulgated by [BISD's] officers" or was "pursuant to governmental `custom' even though such a custom [had] not received formal approval through [BISD's] official decision making channels." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).  Accordingly, Defendant BISD is not entitled to

qualified or sovereign immunity based on its own customs or policies, or on the immunity of one of its employees or representatives, even if one or more of them were entitled to immunity.

## B.    Noe Sauceda

26.    The facts alleged in Section III above are incorporated as though fully set out herein. As set out therein, the actions of Defendant Sauceda constitute tortious and intentional interference with the business relationship between Plaintiff Dino Chavez and his employer American Family Life Assurance Company of Columbus (AFLAC), on a matter on which he did not have discretion, in such a manner as to constitute fraud on Plaintiff Chavez and BISD employees, as well as malice and an intentional infliction of emotional distress on Plaintiff Chavez, in violation of state law. The actions of Defendant Sauceda were such as to deliberately interfere with, or to prevent, Plaintiff's business relationships with AFLAC and with BISD employees, and were deliberately intended to cause loss and damages to Mr. Chavez by doing so. Such actions were taken by Defendant Sauceda without privilege or justification and caused Plaintiff the damages for which he now sues. Defendant Sauceda's written and spoken comments were also intended to, and did, disparage Plaintiff and his reputation in his business and community. Such comments were with malice and made without regard to their truth and were in fact false, and thus constitute libel and slander, for which this Defendant is individually liable. Plaintiff would further assert that the actions of Defendant Sauceda were such as to constitute malice for which Plaintiff is entitled to the recovery of exemplary damages pursuant to Texas Civil Practice and Remedies Code § 41.001, *et seq*. In particular, Defendant Sauceda had a specific intent to cause substantial injury to Mr. Chavez, and the acts he committed involved an extreme degree of risk that Mr. Chavez would lose all income from the proposal he had submitted on behalf of AFLAC, considering the probability and

magnitude of potential harm. Defendant Sauceda had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to Mr. Chavez's rights or welfare.

27.    Defendant Sauceda's actions further caused a deprivation of Plaintiff Chavez's federal constitutional rights to free speech and to due process of law, of which he was deprived without justification or excuse, and for which he now sues pursuant to 42 U.S.C. § 1983. Defendant's actions against Plaintiff were in retaliation for his legitimate exercise of his free speech rights, guaranteed by the First Amendment to the U.S. Constitution. Defendant's actions were in retaliation for Mr. Chavez's legitimate speech relating to the illegality of the use of an "agent of record" and other matters relating to the contract for insurance services. Defendant's actions further violated Plaintiff's rights to due process and to liberty, protected by the Fifth and Fourteenth Amendments to the U.S. Constitution, by depriving him of the right to hold specific private employment, to follow a chosen profession free from unreasonable governmental interference, and to participate in the enrollment process, and deprived him of his right to equal protection of the laws, as further set out above.

28.    Defendant Sauceda is not entitled to qualified immunity because his actions in retaliating against Plaintiff because of his speech and preventing him from speaking further, as well as in depriving him of his rights to due process, liberty and the equal protection of the laws by preventing him from participating in the enrollment process and in prejudicing his ability to make a living without giving him an opportunity to be heard, violated Plaintiff's clearly established constitutional rights of which a reasonable person would have known. Defendant's actions were deliberately intended to cause harm to Mr. Chavez, and the resulting harm to him was severe. As a result of Sauceda's and BISD's actions, Mr. Chavez suffered extreme shame, humiliation, embarrassment, loss of reputation, injury to his reputation, worry, anxiety, sleeplessness and

damage to his personal health.

## C. Marilyn Del Bosque-Gilbert and Randall Dunn

29.    The facts alleged in Section III above are incorporated as though fully set out herein.  As set out therein, Defendants Del Bosque-Gilbert's and Dunn's actions caused a deprivation of Plaintiff Chavez's federal constitutional rights to free speech, of which he was deprived without justification or excuse, and for which he now sues pursuant to 42 U.S.C. §1983. Defendant's actions against Plaintiff were in retaliation for his legitimate exercise of his free speech rights, guaranteed by the First Amendment to the U.S. Constitution.  Defendants' actions were in retaliation for Mr. Chavez's legitimate speech relating to the illegality of the use of an "agent of record" and other matters relating to the retention of a Third Party Administrator and purchases of contracts for insurance services.  These Defendants, while acting in their personal capacities for their own selfish purposes, conspired to use their official positions for personal gain, and in the process violated Plaintiff's free speech rights. Their actions were deliberately intended to cause harm to Mr. Chavez, and the resulting harm to him was severe.  The actions of Defendants Del Bosque-Gilbert and Dunn constitute civil conspiracy under state law, for which they are each liable, jointly and severally. Defendants' actions further violated Plaintiff's rights to due process, liberty, and to the equal protection of the laws, protected by the Fifth and Fourteenth Amendments to the U.S. Constitution, by depriving him of the right to hold specific private employment, to follow a chosen profession free from unreasonable governmental interference, and to participate in the enrollment process, as further set out above.  As a result of Del Bosque-Gilbert's and Dunn's actions, Mr. Chavez suffered extreme shame, humiliation, embarrassment, loss of reputation, injury to his reputation, worry, anxiety, sleeplessness and damage to his

personal health, for which he now sues.

30.     The actions of Defendants Del Bosque- Gilbert and Dunn were also such as to constitute malice, for which Plaintiff is entitled to the recovery of exemplary damages pursuant to Texas Civil Practice and Remedies Code §41.001, *et seq*.  Defendants Del Bosque-Gilbert and Dunn had a specific intent to cause substantial injury to Mr. Chavez, and the acts they committed involved an extreme degree of risk that Mr. Chavez would lose all income from the proposal he had submitted on behalf of  AFLAC, considering the probability and magnitude of potential harm.   These Defendants had an actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to Mr. Chavez's rights or welfare.

31.     Defendants Del Bosque-Gilbert and Dunn are not entitled to qualified immunity because their actions in retaliating against Plaintiff because of his speech and preventing him from speaking further, as well as in depriving him of his rights to due process, liberty and the equal protection of the laws by preventing him from participating in the enrollment process and in prejudicing Plaintiff's his ability to make a living without giving him an opportunity to be heard, violated Plaintiff's clearly established constitutional rights of which a reasonable person would have known. Defendants' actions were deliberately intended to cause harm to Mr. Chavez, and the resulting harm to him was severe.  As a result of Del Bosque-Gilbert's and Dunn's actions, Mr. Chavez suffered extreme shame, humiliation, embarrassment, loss of reputation, injury to his reputation, worry, anxiety, sleeplessness and damage to his personal health.

## V.

## DAMAGES

32.     As a direct and proximate result of the facts made the basis of this lawsuit, Plaintiff sustained personal injuries and damages, and those injuries and damages were proximately caused

by the acts and/or omissions of Defendants, for which Plaintiff now seeks recovery. Such damages include a loss of wages and wage earning capacity, loss of income and income opportunities, loss of past and prospective earnings, and mental pain, suffering and anguish in the past and in the future. In sum, Plaintiff seeks all actual and compensatory damages to which he may be entitled under the law. Plaintiff also seeks recovery of his reasonable and necessary attorney's fees and expenses, pursuant to 42 U.S.C. §1988. Plaintiff further seeks the recovery of punitive or exemplary damages from Defendants Sauceda, Del Bosque-Gilbert and Dunn, in amounts to be determined entirely by the discretion of the jury.

## VI.

## CONDITIONS PRECEDENT

33.     All conditions precedent to the filing of this suit and the recovery of the damages prayed for herein have occurred and have been performed.

## VII.

## JURY TRIAL REQUEST

34.     Plaintiff **DINO X. CHAVEZ** requests that a jury of his peers be convened to determine the facts made the basis of this lawsuit.

WHEREFORE, PREMISES CONSIDERED, Plaintiff **DINO X. CHAVEZ** respectfully prays that the Defendants be cited to appear and answer herein, and that upon final hearing of this action, that judgment be entered for Plaintiff against Defendants for all actual and compensatory damages suffered by Plaintiff, in an amount within the jurisdictional limits of this Court, together with all pre-judgment and post-judgment interest at the maximum rate allowed by law, reasonable attorneys' fees and expenses incurred by Plaintiff, and costs of court, as well as

punitive or exemplary damages against Defendants Sauceda, Del Bosque-Gilbert and Dunn, as well as all other further relief to which Plaintiff may show himself to be justly entitled, whether special or general, at law and in equity.

Signed on this the 10th day of February, 2003.

Respectfully submitted,

**LAW OFFICE**
**J. ARNOLD AGUILAR**
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas  78520
Telephone    : (956) 504-1100
Facsimile    : (956) 504-1408

By: _____
J. Arnold Aguilar
State Bar No. 00936270
Federal Adm. No. 6822

Attorney for Plaintiff,
DINO X. CHAVEZ

v:\fp\pop\258-02 P's 2nd Am. Original Complaint                                    PAGE 18

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT** has on this the 10th day of February, 2003, been forwarded via certified mail, return receipt requested to:

Ms. Elizabeth G. Neally
Mr. Ricardo Morado
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 W. Price Rd., Suite 9
Brownsville, TX 78520

Mr. Charles V. Willette, Jr.
Ms. Eileen M. Leeds
WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, TX 78521

J. Arnold Aguilar