33

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 2 0 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| DINO X. CHAVEZ | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | B - 02 - 128 |
| and RANDY DUNN, MARILYN DEL | § | |
| BOSQUE-GILBERT and HUGH-EMERSON, | § | |
| JR., in their official capacities as Board | § | |
| Members of Brownsville Independent | § | |
| School District | § | |

## MOTION FOR RECONSIDERATION OF DISMISSAL
## OF PLAINTIFF'S DUE PROCESS CLAIMS

TO THE HONORABLE U. S. DISTRICT COURT:

COMES NOW **DINO X. CHAVEZ**, Plaintiff and files this his Motion for Reconsideration of this Court's Order of January 16, 2003, dismissing his Due Process Claims, pursuant to the Fourteenth Amendment to the U.S. Constitution, and for such motion would respectfully show unto the Court as follows:

### SUMMARY OF MOTION

Pursuant to this Court's Order of January 16, 2003, Plaintiff's claim that Defendant Brownsville Independent School District (hereinafter BISD) violated his rights to due process, protected by the Fourteenth Amendment to the U.S. Constitution, was dismissed. That claim was dismissed after the Court determined "that Plaintiff [had] not demonstrated that a property interest exists for insurance service providers who are neither employed by BISD nor bound by contract to

BISD." Plaintiff would respectfully show unto the court, however, that Plaintiff in fact did have a protected property and liberty interest in following his chosen profession and in holding specific private employment, free from unreasonable government interference. Plaintiff was entitled to due process protections when his property or liberty interests are involved, even where the Plaintiff is an independent insurance service provider who is not employed by BISD, nor bound by contract to BISD.

## ARGUMENT AND AUTHORITIES

Plaintiff Chavez does not dispute that he did not have an independent contract with Defendant BISD. Although Plaintiff's prior pleadings may not have identified his role with sufficient clarity, Mr. Chavez was an independent insurance agent, authorized by American Family Life Insurance Company of Columbus (hereinafter AFLAC) to sell its products. Mr. Chavez was also appointed by AFLAC as a Regional Sales Coordinator, supervising other AFLAC appointed agents in the Rio Grande Valley area. At all material times herein, AFLAC did not have any employees in the Rio Grande Valley area; rather all of AFLAC's business in the Rio Grande Valley area was done through independent insurance agents such as Mr. Chavez, who had been similarly appointed, or authorized, to sell AFLAC policies.

Defendant BISD annually appoints a Third Party Administrator (hereinafter TPA) for its Cafeteria Insurance Plan. During the years 1999, 2000, and 2001, Plaintiff Chavez's proposal to have AFLAC appointed as Third Party Administrator was awarded the contract for those services. That agreement provided that Mr. Chavez and AFLAC would provide Third Party Administrator services for Defendant BISD at no charge, in exchange for the opportunity to solicit ancillary insurance products to BISD employees. The ancillary products Mr. Chavez and his associates

would solicit included accidental injury and death, heart and stroke, and a hospital supplement, in addition to the health, dental and cancer policies previously available on the Cafeteria Plan. The insurance forms were accordingly modified to include options for employees to purchase those ancillary products and have the premiums deducted from the employees' paychecks

In exchange, the Third Party Administrator services Mr. Chavez provided included coordinating the scheduling and meeting with all BISD employees who wished to meet to discuss their §125 Cafeteria Plan elections for the coming year, discussing the technical details of the cafeteria plan with each employee, answering all questions they might have and completing all paperwork (salary redirection agreements), through independent sales associates directly under his control. Once the enrollment was completed, Plaintiff Chavez and his staff would compile all the information collected in the salary redirection agreements, review it for accuracy, and organize it to conform to BISD's requirements, requiring hundreds of man-hours. In addition, throughout the year Plaintiff Chavez personally would process practically all claims for benefits submitted by all BISD employees, evaluate and resolve all concerns relating to policies and their terms, respond to all employee requests for policy changes, whether on AFLAC's policies or on other companies' policies, collect, record and submit all AFLAC policy payments to AFLAC, and provide numerous other services relating to the Cafeteria Plan. All told, Plaintiff Chavez's services required thousands of man-hours per year. During 1999, 2000, and 2001, Plaintiff Chavez and AFLAC provided all appropriate Third Party Administrator services to BISD. There should be no question, therefore, that a significant part of Plaintiff Chavez's chosen profession involved selling ancillary insurance products to BISD employees and providing Third Party Administrator services to BISD. The facts described above are set out in **Exhibit "A,"** attached.

Although Plaintiff Chavez was not an employee of Defendant BISD, there should be no question that Defendant BISD understood Plaintiff Chavez to be its Third Party Administrator. *See* **Exhibit "B"** (Defendant Sauceda's letter of November 29, 2001, addressed to Plaintiff Chavez, notifying him of Defendants' "intent to non-renew [his] services as [Defendants'] Third Party Administrator for [Defendants'] Cafeteria Plan" and "directing [Plaintiff] to cease and desist all contact with school personnel during school business hours.") Through this letter, Plaintiff Chavez was effectively dismissed as BISD's Third Party Administrator. Through this letter, Defendants Sauceda and BISD took from Mr. Chavez his ability to continue providing Third Party Administrator services. In addition, that letter also notified Plaintiff that Defendants were rejecting his proposal for renewal of the Third Party Administrator contract. In order words, Defendants would not consider his proposal for the following year's services, through which he would have been entitled to sell AFLAC's ancillary products. Although the BISD Insurance Committee ultimately approved the proposal submitted by Plaintiff Chavez to have AFLAC appointed as the Third Party Administrator, Sauceda's letter prohibited Plaintiff Chavez from having any contact with school personnel during school business hours, providing further that security services would be contacted if he was found on school district property. **Exhibit "B."** As a result, Plaintiff Chavez was dismissed from his existing position, and he was prevented from engaging any further in his chosen profession selling AFLAC ancillary products, without any notice or opportunity to be heard.

The particular timing of Defendant Sauceda's and BISD's order to "cease and desist" all contact with school personnel was designed to prevent Plaintiff Chavez from being able to engage in his chosen profession. As Defendants were aware, the entire enrollment process was designed, and required, to be conducted after the contract was awarded on or about November 29, 2001, and it had to be completed before all BISD employees were released for the Christmas break, on or about

December 20, 2001 since any new contracts, or renewals, went into effect on January 1. **Exhibits "A" and "C."** As a result, practically all sales of AFLAC ancillary products had to be made during that two-week time period, and the profits made during that time period were what was necessary to sustain Plaintiff Chavez throughout the year in providing his Third Party Administrator services. Although Plaintiff's prior counsel petitioned Defendants Sauceda and BISD's Board of Trustees to allow Mr. Chavez back on BISD's campuses, and to allow him to continue his prior work through AFLAC on December 4, 2001, no action was ever taken on that request. **Exhibit "D."** Rather, by December 7, 2001, Plaintiff was notified that because of Defendant Sauceda's letter of November 29, Mr. Chavez was removed as the servicing agent to BISD, and he was directed to refrain from any further contact with BISD. **Exhibit "E."**

As the U.S. Supreme Court has previously explained, work opportunities may not be "severely limited on the basis of a fact determination rendered after a hearing which failed to comport with out traditional ideas of fair procedure," even where the complaining party is not an employee of the governmental entity, but is instead privately employed. ***Green v. McElroy***, 360 U.S. 474, 508, 79 S. Ct. 1400, 1419, 3 L. Ed. 2d 1377 (1959). It is undisputed that Plaintiff Chavez's proposal on behalf of AFLAC was ultimately awarded the Third Party Administrator contract. Plaintiff Chavez was prevented, however, from participating in his chosen profession after AFLAC was awarded the Third Party Administrator contract. Sales of ancillary products are almost exclusively made during the enrollment procedure, which occurred between approximately December 5 and December 20, 2001, and at no other time during the year. It was during this two-week period that over 95% of all sales of AFLAC ancillary products was made, through which Plaintiff Chavez was to be able to earn enough commissions to justify providing the Third Party

Administrator services he had previously provided throughout the year. By failing to allow Mr. Chavez on school district property during this time period, however, he was prevented from following his chosen profession or making any sales of AFLAC ancillary products.

Just as a federal agency "cannot arbitrarily interfere with [a private employee's] continuing employment relationship with [his employer]" without depriving the employee of a property interest, so too BISD could not interfere with Plaintiff Chavez's employment relationship with AFLAC without affecting a deprivation of his property interests. *See Fed. Deposit INS. Corp. v. Mallen*, 486 U.S. 230, 240, 108 S. Ct. 780, 1787, 100 L. Ed. 2d 265 (1988). Plaintiff's "interest in continued employment is without doubt an important interest that ought not be interrupted without substantial justification." *Id.* 1789.

The Fifth Circuit has similarly acknowledged the existence of a property right in private employment, with which the government cannot interfere. "It has been stated that an individual's right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the "liberty" and "property" concepts of the Fifth Amendment." *VanderZee v. Reno*, 73 F.3d 1365, 1370 (5th Cir. 1996). *Vander Zee* involved a Texas bank executive who was complaining of action taken by the FDIC following his indictment, which precluded his future employment. The Fifth Circuit explained that had the Plaintiff alleged the Defendant coerced or caused his termination from his private employer, that claim would have been allowed to stand. *Id.* at 1370-71.

There should be no question that Plaintiff Chavez had a property right to continued employment without unreasonable governmental interference. "It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth]

Amendment to secure." *Truax v. Raich*, 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915). Indeed, the Supreme Court has repeatedly held that individuals enjoy due process and equal protection rights to engage in private employment. *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923) ("Without doubt, ['liberty' in the Fourteenth Amendment] denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life . . . ."); *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238-39, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957) ("A state cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment."); *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959) ("[T]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment . . . .").

The Fifth Circuit has similarly acknowledged these rights. *San Jacinto Savings & Loan v. Kocal*, 928 F.2d 697, 704 (5th Cir. 1991) (Plaintiff's "property interest in the profits of her business and her liberty interest in operating her business do rise to the level of protectible interests."); *Phillips v. Vandygriff*, 711 F.2d 1217, 1222-23 (5th Cir. 1983), cert. denied, *Vandygriff v. Phillips*, 469 U.S. 821, 105 S.Ct. 94, 83 L.Ed.2d 40 (1989) ("The freedom to pursue any of the 'common occupations' has long been held to be a liberty interest."). *See also, Shaw v. Hospital Authority*, 507 F.2d 625, 628 (5th Cir. 1975); *Ferrell v. Dallas Independent School District*, 392 F.2d 697, 704 (5th Cir. 1968). Although Plaintiff Chavez did not have an employment contract with Defendant BISD, he still maintained property and liberty interests in being able to continue his private employment and to follow his chosen profession free from unreasonable governmental interference by Defendants.

"'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S. Ct. 1743, 1748, 6 L. Ed. 2d 1230 (1961); *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 162-63, 71 S. Ct. 624, 643, 95 L. Ed. 817 (1951)(concurring opinion). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrisey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484 (1972). Whether the procedures actually applied were "constitutionally sufficient requires analysis of the governmental and private interests that are affected." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976). As the Supreme Court has explained, its

> prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id*. 424, U.S. at 334-35, 96 S. Ct. at 903.

Plaintiff has established that the actions of Defendants affected his significant private interest, in that he was prevented from engaging in his chosen profession because of Defendants' actions. Defendants, on the hand, have provided no evidence of any significant interest in immediately suspending him from engaging in his chosen profession and from participating in the enrollment process and the anticipated sales of ancillary products. In addition, Defendant's unilateral termination of Plaintiff Chavez, without any timely opportunity to be heard, carried with it a significant risk that Mr. Chavez would be deprived of his ability to effectively engage in his chosen profession within that two-week time period when over 95% of all sales were made. Rather

than the draconian measure of immediate expulsion from all BISD campuses, Defendants could have employed an alternative or substitute procedure to assess the merits of Defendant Sauceda's allegations. Defendants could have simply notified Mr. Chavez of the allegations and set the matter for consideration at a time when it would not interfere with Mr. Chavez's ability to engage in his chosen profession, such as after the enrollment period, and the issues could have been effectively addressed at that time. In fact, four of the BISD Trustees ultimately notified AFLAC's Vice President that they disagreed with Defendant Sauceda's allegations, although those notices were not submitted until after the expiration of the enrollment period, and after AFLAC removed Mr. Chavez from the BISD account and ordered him to refrain from any further contact with BISD. **Exhibit "F."** In addition, Defendant Sauceda's directives in his November 29, 2001 letter have not been withdrawn, and Plaintiff Chavez is presumably still barred from all BISD campuses.

As for the third factor, BISD's interest in removing Mr. Chavez immediately, without any notice or opportunity to be heard, Defendants have not identified any interest that would justify the immediate exclusion of Mr. Chavez from any contact with all school personnel. Nor have Defendants identified any burden or harm they would have suffered by allowing the matter to be set for consideration after the enrollment period, at a time that would not affect Mr. Chavez's ability to carry on his livelihood. Such an alternative procedure would have resulted in minimal delay and inconvenience to Defendants. Defendants have identified no reason why Plaintiff Chavez's exclusion from BISD campuses required *immediate* attention, however. Providing Mr. Chavez with a hearing and appropriate due process after the enrollment period would have imposed only a *de minimus* burden on Defendants Sauceda and BISD. In contrast, Defendants' unilateral action in excluding Mr. Chavez from contacting school personnel during the crucial two-week enrollment period had a debilitating effect on his ability to engage in his chosen profession. Because this was

the only time during the entire year that he would have to make sufficient sales and to earn sufficient commissions to sustain him throughout the year, Defendants expulsion of Plaintiff had a severe and debilitating effect on his ability to engage in his chosen profession, and its ramifications continue.

For the reasons set out above, Plaintiff Dino Chavez would respectfully request that the Court reconsider its Order dismissing Plaintiff's due process claims, and allow Plaintiff to proceed with those claims in the prosecution of this action.

WHEREFORE, PREMISES CONSIDERED, Plaintiff **DINO X. CHAVEZ** respectfully requests that upon consideration of this Motion for Reconsideration of Dismissal of Plaintiff's Due Process Claims that the Court set this matter for hearing at its earliest convenience, and upon conclusion of such hearing that the Court reinstate Plaintiff 's due process claims and allow this matter to proceed accordingly, and that Plaintiff be granted such other and further relief to which he may show himself to be justly entitled, whether general or special, at law and in equity.

Signed on this the 19th day of February, 2003.

Respectfully submitted,

**LAW OFFICE
J. ARNOLD AGUILAR**
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas 78520
Telephone        : (956) 504-1100
Facsimile        : (956) 504-1408

By: _____

J. Arnold Aguilar
State Bar No. 00936270
Federal Adm. No. 6822

Attorney for Plaintiff,
DINO X. CHAVEZ

## CERTIFICATE OF CONFERENCE

I, J. Arnold Aguilar, hereby certify that I have conferred with Defendants' counselors with regard to the Motion for Reconsideration of Dismissal of Plaintiff's Due Process Claims, and they responded as follows:

Elizabeth Neally        ___X___         _____        _____
                        opposed          unopposed          unavailable

Eileen Leeds.           ___X___         _____        _____
                        opposed          unopposed          unavailable

_____
J. Arnold Aguilar

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **MOTION FOR RECONSIDERATION OF DISMISSAL OF PLAINTIFF'S DUE PROCESS CLAIMS** has on this the _2oth_ day of February, 2003, been forwarded via certified mail, return receipt requested to:

Ms. Elizabeth G. Neally
Mr. Ricardo Morado
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 W. Price Rd., Suite 9
Brownsville, TX 78520

Mr. Charles V. Willette, Jr.
Ms. Eileen Leeds
WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, TX 78521

J. Arnold Aguilar

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

DINO X. CHAVEZ                                §
                                             §
    VS.                                       §
                                             §          **CIVIL ACTION NO.**
BROWNSVILLE INDEPENDENT                      §
SCHOOL DISTRICT, NOE SAUCEDA,                §          **B - 02 - 128**
and RANDY DUNN, MARILYN DEL                  §
BOSQUE-GILBERT and HUGH EMERSON,             §
JR., in their official capacities as Board   §
Members of Brownsville Independent           §
School District                              §

---

## ORDER SETTING HEARING

---

    On this day came on for consideration **Plaintiff's Motion for Reconsideration of Dismissal of Plaintiff's Due Process Claims.** Upon consideration of said motion the Court is of the opinion that such motion should be set for hearing.

    IT IS THEREFORE, ORDERED ADJUDGED and DECREED that said motion is hereby set for hearing on this _____ day of _____, 2003, at _____ o'clock ___.m.

    SIGNED for entry on this the _____ day of _____, 2003.


_____
U.S. DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

DINO X. CHAVEZ                              §
                                           §
    VS.                                    §
                                           §    CIVIL ACTION NO.
BROWNSVILLE INDEPENDENT                     §
SCHOOL DISTRICT, NOE SAUCEDA,               §    **B - 02 - 128**
and RANDY DUNN, MARILYN DEL                 §
BOSQUE-GILBERT and HUGH EMERSON,            §
JR., in their official capacities as Board  §
Members of Brownsville Independent          §
School District                            §

---

## ORDER GRANTING MOTION FOR RECONSIDERATION
## OF DISMISSAL OF PLAINTIFF'S DUE PROCESS CLAIMS

---

On this the _____ day of _____, 2003, came **Motion for Reconsideration of Dismissal of Plaintiff's Due Process Claims** and the Court being of the opinion that said Motion should be **GRANTED**.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff's **Motion for Reconsideration of Dismissal of Plaintiff's Due Process Claims** is hereby GRANTED and the Court hereby reinstates Plaintiff's due process claims.

Signed this the ____ day of _____, 2003.

_____
U.S. DISTRICT JUDGE

# EXHIBIT "A"

## AFFIDAVIT OF DINO X. CHAVEZ

STATE OF TEXAS                          §
                                        §
COUNTY OF CAMERON                       §

BEFORE ME, the undersigned official, on this day appeared **DINO X. CHAVEZ**, who is personally known to me, and first being duly sworn according to law upon his oath deposes and says:

1.     My name is Dino X. Chavez, I am over 18 years of age and I am fully competent to make this affidavit.

2.     I am an independent insurance agent, authorized by American Family Life Insurance Company of Columbus (hereinafter AFLAC) to sell its products. I was also previously appointed by AFLAC as a Regional Sales Coordinator, supervising other AFLAC appointed agents in the Rio Grande Valley area. At all material times herein, AFLAC did not have any employees in the Rio Grande Valley area; rather all of AFLAC's business in the Rio Grande Valley area was done through independent insurance agents such as myself, who had been similarly appointed, or authorized, to sell AFLAC policies.

3.     Defendant BISD annually appoints a Third Party Administrator (TPA) for its Cafeteria Insurance Plan. My proposal to have AFLAC appointed as Third Party Administrator during the years 1999, 2000 and 2001 was awarded the contract for those services. That agreement provided that AFLAC and I would provide Third Party Administrator services for Defendant BISD at no charge, in exchange for the opportunity for me to solicit ancillary insurance products to BISD employees. The ancillary products my associates and I would solicit included accidental injury and death, heart and stroke, and a hospital supplement. The additional policies being offered included health, dental and cancer policies, which had been previously available on the Cafeteria Plan. The insurance forms were accordingly modified to include options for employees to purchase those ancillary products and have the premiums deducted from the employees' paychecks.

4.     The Third Party Administrator services I provided included coordinating the scheduling and meeting with all BISD employees who wished to meet to discuss their §125 Cafeteria Plan elections for the coming year, discussing the technical details of the cafeteria plan with each employee, answering all questions they might have and completing all paperwork (salary redirection agreements), through independent sales associates directly under my control. Once the enrollment was completed, I and/or my staff would compile all the information collected in the salary redirection agreements, review it for accuracy,

and organize it to conform to BISD's requirements, requiring hundreds of man-hours. In addition, throughout the year I personally would process practically all claims for benefits submitted by all BISD employees, evaluate and resolve all concerns relating to policies and their terms, respond to all employee requests for policy changes, whether on AFLAC's policies or on other companies' policies, collect, record and submit all AFLAC policy payments to AFLAC, and provide numerous other services relating to the Cafeteria Plan. All told, my services required thousands of man-hours per year. During 1999, 2000, and 2001, AFLAC and I provided all appropriate Third Party Administrator services to BISD.

5.    Sales of ancillary products are almost exclusively made during the enrollment procedure, which occurred between approximately December 5 and December 20, 2001, and at no other time during the year. Enrollments could only be conducted after the Third Party Administrator contract was awarded, on or about November 29, 2001, and before the Christmas break, on or about December 20, 2001, since any new contracts, or renewals, went into effect on January 1. It was during this two-week period that over 95% of all sales of AFLAC ancillary products was made, through which I was to be able to earn enough commissions to justify providing the Third Party Administrator services I had previously provided throughout the year. By failing to allow me on school district property during this time period, however, I was prevented from following my chosen profession or making any sales of AFLAC ancillary products.

6.    The entire enrollment process was designed, and required, to be conducted after the contract was awarded on or about November 29, 2001, and it had to be completed before all BISD employees were released for the Christmas break, on or about December 20, 2001. As a result, practically all sales of AFLAC ancillary products had to be made during that two-week time period, and the profits made during that time period were what was necessary to sustain me throughout the year in providing my Third Party Administrator services.

7.    I have reviewed Exhibits B, C, D and E attached to the Motion for Reconsideration of Dismissal of Plaintiff's Due Process Claims, and I hereby certify that they are all true, correct and exact copies of the originals.

8.    All the information included herein is true and correct and is based on my personal knowledge.

DINO X. CHAVEZ

    SUBSCRIBED AND SWORN TO BEFORE ME on the 20th day of February, 2003, to certify which witness my hand and official seal.

Notary Public, State of Texas

# *EXHIBIT "B"*

# Brownsville Independent School District

1900 Price Road    Brownsville, Texas 78521-2417    (956) 548-8000    Fax: (956) 548-8019

*Noe Sauceda, Ph.D.*
*Superintendent of Schools*

**HAND DELIVERED**

November 29, 2001

Dino Chavez, MBA
Regional Sales Coordinator
905 Los Ebanos Blvd., Suite A
Brownsville, Texas  78520

Dear Mr. Chavez,

Please accept this correspondence as my official 30-day notice of our intent to non-renew your services as our Third Party Administrator for our Cafeteria plan.  I must also inform you that your proposal for renewal of the contract has been rejected as allowed under BISD Policy CH (Legal) and CH (Local).

Your continuous inappropriate correspondence is troublesome since appropriate channels were not followed.  I consider the content of your letters and your conduct as unprofessional, unethical, and against expected customer-service provider relations. I am directing you to cease and desist all contact with school personnel during school business hours.  Campus administration will be directed to contact security services if you or any of your associates are found to be on school-district property.

I must caution you that the content of the memos you disseminated to BISD staff are, in my opinion, both slanderous and libelous and can place both you and your corporation (AFLAC) in a legally liable situation.  I will be contacting Mr. Frank Lafemina in the Austin Office and expressing to him my disappointment with your treatment of my Board and staff since it is obvious that you are not working in the best interest of BISD, your client.

Your supervisors will be advised that this administration will consider AFLAC as a future product provider under the following conditions:

a.    A corporate officer must personally apologize to each board member, the board as a whole, myself, and my administrators publicly.

b.    A written assurance that appropriate, ethical conduct will be exercised in the future by any and all AFLAC representatives wishing to serve BISD.

c.    Provided that the products are of the best quality, service and price.

Sincerely,

Noe Sauceda, Ph.D.
Superintendent of Schools

Attachments:  Correspondence from Dino Chavez, Section 125 Cafeteria Plan Proposal
                       Policies CH (Legal and Local)

cc:      BISD Board of Trustees
          Frank Lafemina (via facsimile: 512/479-5968)
          AFLAC State Office
          1801 La Vaca, Suite 108
          Austin, Texas 78701

*"The Brownsville Independent School District is an Equal Opportunity Employer, M/W/D/V"*

# EXHIBIT "C"



# Brownsville Independent School District

1900 Price Road     Brownsville, Texas 78521-2417     (956) 548-8000     Fax: (956) 548-8010

Noe Sauceda, Ph.D.
*Superintendent of Schools*

**To:**   All Departments

      All Employees

**From:**   Dr. Leonel Lopez

      Administrator for Insurance

**Date:**   12/3/2001

**Re:**   AFLAC retained as Third Party Administrator

      Mandatory Verification of Election of Cafeteria Plan

---

On Thursday November 29, 2001, the BISD Employee Insurance Committee elected to retain AFLAC as our contracted Third Party Administrator.

Ron Levine, Representative with AFLAC publicly and contractually stated that no fees will be charged for services to BISD Employees or to BISD as a whole.

AFLAC Representatives will be on your campus/department as early as Wednesday, December 5, 2001 for open enrollment. AFLAC Representatives will be contacting you to schedule enrollment dates & times.

All BISD employees must meet with an AFLAC Representative. It is **mandatory** that each employee either select to enroll or not enroll in the cafeteria plan. Compliance is paramount. If you have any questions please call the Insurance Department at 548-8081. Thank you for your cooperation.

CC:   Dr. Noe Sauceda, Superintendent of Schools
      Mr. Eddie Errisuriz, Assist. Superintendent for Human Resources
      Mr. Jesus Muñiz, Chief Financial Officer

*BISD does not discriminate on basis of race, color, national origin, sex, religion, age or disability in employment or provision of services, programs or activities.*

# EXHIBIT "D"

José E. Garcia
Francisco R. Villarreal
Channing Slusher
Ted Rodriguez, Jr.
Robert Fernandez
Chad Tolar

4401 N. McColl Rd.
McAllen, Texas 78504

Telephone: 956-630-0081
Facsimile: 956-630-3631

December 4, 2001

Dr. Noe Sauceda
Brownsville Independent School
   District Board of Trustees
1900 Price
Brownsville, Texas 78521

Re:    Dino X. Chavez and AFLAC Insurance Plan

Dear Dr. Sauceda and Hon. Brownsville I.S.D. Trustees:

Please be advised that Dino X. Chavez has asked me to represent him in potential claims he may have against the Brownsville I.S.D. and certain individuals concerning the bidding process for insurance services with Brownsville I.S.D. These problems have been well documented and you are aware of them. In order to avoid any unnecessary and unpleasant problems in the future, my client requests the following:

1.    that Dino X. Chavez be requested to be the lead agent as the AFLAC representative with Brownsville I.S.D.; and

2.    that Dino X. Chavez and his representatives be allowed on Brownsville I.S.D. campuses to the full extent allowed in previous years, and he be allowed communication with appropriate Brownsville I.S.D. employees.

Due to prior directives from Dr. Sauceda, my client will need in writing that the two conditions listed above be allowed for Dino X. Chavez.

Please notify me of your response at your earliest convenience.

Sincerely,

GARCIA & VILLARREAL, L.L.P.

Ted Rodriguez, Jr.

TRJ/f

This is to confirm receipt of a hand delivered letter from AFLAC / Dino X Chavez today, December 4, 2001.

*D D Brown*

For : Joe Colunga

Hugh Emerson Jr

Randy Dunn

Dr. Noe Sauceda

This is to confirm receipt of a hand delivered letter from AFLAC / Dino X
Chavez today, December 4, 2001.

This is to confirm receipt of a hand delivered letter from AFLAC / Dino X Chavez today, December 4, 2001.

*Ana Cantu for MG*

ANA CANTU

# *EXHIBIT "E"*

# LOCKE LIDDELL & SAPP LLP

### ATTORNEYS & COUNSELORS

100 CONGRESS AVENUE
SUITE 300
AUSTIN, TEXAS 78701-4042

AUSTIN • DALLAS • HOUSTON • NEW ORLEANS

(512) 305-4700
FAX: (512) 305-4800
www.lockeliddell.com

December 7, 2001

Mr. Ted Rodriguez, Jr.
Garcia & Villarreal, LLP
4301 N. McColl Road
McAllen, TX 78504

*Via Facsimile 956-630-3631 and U.S. Mail*

CONFIRMATION COPY
OF MATERIAL
PREVIOUSLY FAXED

Re:    Dino X. Chavez

Dear Mr. Rodriguez:

I am writing on behalf of my client American Family Life Assurance Company of Columbus ("AFLAC") in connection with recent developments concerning its Brownsville Independent School District ("BISD") account and your client Dino X. Chavez. I have been provided with a copy of your letter dated December 4, 2001 to Dr. Noe Sauceda, Superintendent of Schools of BISD, and the BISD Board of Trustees written on behalf of Mr. Chavez. I am writing you as a result of that letter.

As you no doubt know, Dr. Sauceda, by letter dated November 29, 2001, notified Mr. Chavez and AFLAC, through Frank LaFemina, its State Sales Coordinator, that BISD would no longer tolerate Mr. Chavez's serving as the contact with BISD on the AFLAC account. In view of the situation, AFLAC determined that it had no option but to remove Mr. Chavez as the servicing agent on AFLAC's BISD account. Accordingly, AFLAC formally notified Mr. Chavez of this decision on December 5 via facsimile letter, a copy of which is attached for your convenience. As you will see, Mr. Chavez was directed to cease further contact with BISD.

While AFLAC recognizes that Mr. Chavez is an independent contractor, he is no longer the servicing agent for the BISD account. Hence, he has no authority to communicate with BISD, either directly or indirectly through you, regarding the servicing of AFLAC's account. Please remind Mr. Chavez of the provisions of his contract with AFLAC, a copy of which is also enclosed for your convenience. Paragraph 2(c) expressly provides, "AFLAC reserves the absolute right to reassign any account for servicing and to designate who may submit applications from persons in the account in its sole discretion". In addition, Mr. Chavez acknowledges in Paragraph 3 that the accounts and records, which would include the BISD account, shall remain the property of AFLAC exclusively and that Mr. Chavez has no property rights to AFLAC accounts. Finally, with regard to Mr. Chavez's authority as an independent contractor, he agreed in Paragraph 1(c) that his authority is expressly limited to that authority granted within his agreement. As noted above, the BISD account belongs to AFLAC, AFLAC

*Writer's Direct Dial No.: 512-305-4734*                    *Writer's e-mail: wsteele@lockeliddell.com*

Mr. Ted Rodriguez, Jr.
December 7, 2001
Page 2

decides who shall service it, and Mr. Chavez has no authority, express or implied, to continue to deal with the BISD account, either directly or indirectly.

Accordingly, we must insist that you notify your client immediately to refrain from any further contact with BISD regarding the AFLAC account, including indirect contact through your offices. Any such contact jeopardizes the account and may result in AFLAC's loss of that business which, as Mr. Chavez knows, is one of the largest accounts in that region. This would severely reduce Mr. Chavez's renewal commissions, as well. We trust you will so advise Mr. Chavez. If you have any question regarding AFLAC's position, please feel free to contact me.

Very truly yours,

William B. Steele III

WBS/glp
Attachments

cc:    Mr. Jeff Willis

04055-52117 · AUSTIN . 244827.1

# EXHIBIT "F"

# AFLAC®

Janet P. Baker, ACS
Vice President
Marketing Services

January 8, 2002

Pat Lehmann
Brownsville Independent School District
1900 Price Road
Brownsville, TX 78521

Dear Ms. Lahmann:

At the request of Dr. Noe Sauceda, Superintendent of BISD, I am writing to personally apologize to you for any negative action that may have been caused by the AFLAC representative Dino Chavez.

We sincerely regret this most unfortunate situation. AFLAC's ability to provide the best possible service to our clients is extremely important. Thank you for being highly supportive of our program over the years and providing the opportunity for BISD employees to elect AFLAC's coverage.

Best Regards,

Janet P. Baker

JPB/ch

American Family Life Assurance Company of Columbus (AFLAC)
Worldwide Headquarters: 1932 Wynnton Road • Columbus, Georgia 31999-0001
Phone: 706/660-7297 • Fax: 706/317-6121 • e-mail: jbaker@aflac.com



# Brownsville Independent School District

1900 Price Road, Suite 307    Brownsville, Texas 78521-2417    (956) 548-8011    Fax: (956) 548-8019

**BOARD OF TRUSTEES**

**Joe Colunga**
*President*

**Linda Salazar**
*Vice-President*

**Hugh Emerson, Jr.**
*Secretary*

**Marilyn del Bosque Gilbert**
*Assistant Secretary*

**Randy Dunn**
*Member*

**Pat Lehmann**
*Member*

**Herman Otis Powers, Jr.**
*Member*

**Dr. Noe Sauceda**
*Superintendent of Schools*

January 15, 2002

Ms. Janet P. Baker, ACS
AFLAC
1932 Wynnton Road
Columbus, GA 31999

Dear Ms. Baker:

Thank you for your letter dated January 8, 2002, concerning Mr. Dino Chavez.

First of all, I am male and not female.  Your first mistake.

Second of all, there is no apology needed, on my part, for any action that Mr. Dino Chavez might have or might not have caused.    Your second mistake.

Third mistake of all, AFLAC's dismissal of Mr. Chavez.

Now you understand my position on this matter.

Sincerely,

Pat Lehmann
Board Member, BISD

P.S. You also misspelled my name, it's Lehmann not Lahmann.

*BISD does not dicriminate on basis of race, color, national origin, sex, religion, age or disability in emploment or provision of services, programs or activities.*

# Brownsville Independent School District

1900 Price Road, Suite 307    Brownsville, Texas 78521-2417    (956) 548-8011    Fax (956) 548-8019

**BOARD OF TRUSTEES**

**Joe Colunga**
*President*

**Linda Salazar**
*Vice-President*

**Hugh Emerson, Jr.**
*Secretary*

**Marilyn del Bosque Gilbert**
*Assistant Secretary*

**Randy Dunn**
*Member*

**Pat Lehmann**
*Member*

**Herman Otis Powers, Jr.**
*Member*

**Dr. Noe Sauceda**
*Superintendent of Schools*

January 16, 2002

Ms. Janet P. Baker, ACS
AFLAC
1932 Wynnton Road
Columbus, GA 31999

Dear Ms. Baker:

I am in receipt of your letter dated January 8, 2002.

Please be informed that Dr. Sauceda took action without my knowledge.

Upon learning of Dr. Sauceda's premature action taken against Mr. Dino Chavez, I personally contacted Mr. Frank Lafemina, AFLAC State Office, and expressed my disagreement with Dr. Sauceda's behavior.

Not Mr. Chavez or any AFLAC representative owes me an apology. On the contrary, Dr. Sauceda owes Mr. Chavez an apology.

I have served the district for the past five years and have known Mr. Chavez for the past three years, and I have known him to be professional, courteous, and an excellent AFLAC agent in representing the school district.

Respectfully submitted,

Herman Otis Powers, Jr.
Board Member, BISD

*BISD does not dicriminate on basis of race, color, national origin, sex, religion, age or disability in emploment or provision of services, programs or activities.*



# Brownsville Independent School District

1900 Price Road, Suite 307    Brownsville, Texas 78521-2417    (956) 548-8011    Fax: (956) 548-8019

**BOARD OF TRUSTEES**

**Joe Colunga**
*President*

**Linda Salazar**
*Vice-President*

**Hugh Emerson, Jr.**
*Secretary*

**Marilyn del Bosque Gilbert**
*Assistant Secretary*

**Randy Dunn**
*Member*

**Pat Lehmann**
*Member*

**Herman Otis Powers, Jr.**
*Member*

**Dr. Noe Sauceda**
*Superintendent of Schools*

Janet P. Baker, ACS
Vice President - Marketing Services
AFLAC
1932 Wynnton Rd.
Columbus, GA  31999

January 22, 2002

Dear Ms. Baker,

Thank you for your letter dated January 8, 2002 concerning Dino Chavez.  Your apology is not needed as I do not believe Mr. Chavez did anything wrong.  On the contrary, I believe his actions were appropriate and justified.  Please be aware that Superintendent Sauceda's dismissal of Mr. Chavez was done without the board of trustee's approval or knowledge.  Dr. Sauceda inappropriately took this action on his own.  I am not in agreement with this action and would like Mr. Chavez reinstated to the position he maintained with our district.

As a matter of record, our teacher's insurance committee voted 44-1 to keep AFLAC.  In my opinion, this overwhelming show of support for AFLAC is the result of Mr. Chavez's excellent service and the continued dedication he personally has provided to our employees in the past.

Sincerely,

Linda Salazar
Vice President,
BISD Board of Trustees

*BISD does not dicriminate on basis of race, color, national origin, sex, religion, age or disability in employment or provision of services, programs or activities*

Subject: Letter of apology
From: Joe Colunga <JColunga@utb1.utb.edu>
Date: Wed, 06 Feb 2002 12:45:19 -0600
To: jbaker@aflac.com

Dear Ms. Baker,

Thank you for the letter of  January 8 which was an apology for AFLAC
representative Dino Chavez.
I was not aware of any negative complaints against Mr. Chavez until the letter went
out from the superintendent requesting an apology to board members. I personally
did not request one and apparently the conflict developed between administration
and the representative during the selection process of a TPA.

I also regret that any conflict that developed led to his dismissal. His previous
record of servicing AFLAC in past years had brought no complaints as far as I know.


I appreciate your concerns about providing the best possible service and will
continue to support  your program in the future.

Sincerely,


Joe Colunga
BISD Board President