United States District Court
Southern District of Texas
FILED

MAR 2 0 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DINO X. CHAVEZ | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | B - 02 - 128 |
| and RANDY DUNN, MARILYN DEL | § | |
| BOSQUE-GILBERT and HUGH EMERSON, | § | |
| JR., in their official capacities as Board | § | |
| Members of Brownsville Independent | § | |
| School District | § | |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSES TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF DISMISSAL OF PLAINTIFF'S DUE PROCESS CLAIMS**

TO THE HONORABLE U.S. DISTRICT COURT:

COMES NOW **DINO X. CHAVEZ**, Plaintiff herein, and files this his Reply to Defendant Brownsville Independent School District's Response to Plaintiff's Motion for Reconsideration of Dismissal of Plaintiff's Due Process Claims and to Defendant Noe Sauceda's Objection and Response to Plaintiff's Motion for Reconsideration of Dismissal of Plaintiff's Due Process Claims, and for such reply would respectfully show unto the Court the following:

**Summary**

In granting Defendants' Motions to Dismiss, this Court necessarily held that under no circumstances could Plaintiff even assert a Fourteenth Amendment due process and liberty claim against Defendants. Taking Plaintiff's pleadings in the light most favorable to Plaintiff, and as true, as this Court is compelled to do, Plaintiff has clearly "asserted that the fifth and fourteenth

amendments include the right to have property and the benefits from it, was well as the liberty to operate a legitimate business, free from arbitrary deprivation by local [authorities] acting under the color of state law." *San Jacinto Savings and Loan v. Kacal*, 928 F.2d 697, 702 (5th Cir. 1991). It is this action that the Fifth Circuit has held violates a Plaintiff's property and liberty interests, for which he may sue. *Id.* at 704. Defendants however, do not discuss Plaintiff's constitutional rights in light of *Kacal* and other cases cited in Defendant's Motion.

### Reply to BISD's Response

Defendant BISD responds that Plaintiff cannot have a property right because he was not an employee of BISD, and he was "a mere independent contractor" with AFLAC. BISD then attempts to re-characterize Plaintiff's claims as "mere injury to reputation or the impairment of future employment prospects...." Defendant's arguments assume that the only basis on which a person may sue a governmental entity for a due process violation would be based on a simple, direct employer-employee relationship. Defendant's interpretation would make the proverbial tail wag the dog, i.e., Defendant would have the employer-employee context the basis out of which the Fifth and Fourteenth Amendment due process rights were developed, rather than the reverse. Defendant overlooks the entire context on which due process claims were originally developed, including the long history and precedents established through Fifth and Fourteenth Amendment jurisprudence, as well as the rules and doctrines they have produced. *See Dolan v. Tigard*, 512 U.S. 374, 383-84, 114 S.Ct. 2309, 2316, 129 L.Ed.,2d 304 (1994); *Keystone Bituminous Coal Ass'n vs. DeBenedictis*, 480 U.S. 470, 481, n.10, 1075 S.Ct. 1232, 1240 n.10, 94 L.Ed.2d 472 (1987). Defendant does not even attempt to fathom how a due process violation can be established outside the traditional employer-employee context.

At the heart of Plaintiff's claims is the contention that the government may not take away from him that which he already has, i.e., his right and ability to follow his chosen profession, without according to him due process. This the Supreme Court has repeatedly stated the government may not do. *See* **Greene v. McElroy**, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959). The ability to follow one's chosen profession does not mean simply that an insurance salesman can still attempt sales to other clients. Plaintiff's chosen profession involved selling products to *these* clients in *this particular* manner. That is why Plaintiff submitted his proposal in the form he did, that is how he had been able to conduct his business for the three prior years, and that is why he had a property interest protected by the due process clauses of the U.S. Constitution. Defendant's argument that Plaintiff remained free to pursue his business through other avenues has been considered and rejected by the Fifth Circuit. **San Jacinto Savings and Loan v. Kacal**, 928 F.2d at 702-04. In *Kacal*, Defendants argued

> that [Plaintiff could not] show that a legal right or status ha[d] been removed or significantly altered. They point out that [Plaintiff] remained free to pursue her business just as the plaintiff in *Goulding* remained free to practice law. In rejecting [Plaintiff's] section 1983 claim, the district court reasoned that because [Plaintiff's] business was not condemned, because she had not lost her operating license, because the City had not restricted her right to do business in the past, present, or future, and because [Defendant's] remarks did not prohibit the public from patronizing [her business], the City had not deprived her of her continuing right to do business.

*Id.* at 702 (citations omitted) That Court rejected those arguments, however, because Defendants had taken affirmative action to prevent the Plaintiff from being able to carry on her business in the place and in the specific manner she chose, much like Defendants have done in the present action. *Id.* at 703. In doing so, the Court concluded unequivocally that

> [Plaintiff's] property interest in her business is essentially her interest in the lost profits, which are sought merely as the measure of damages in this action. **Kacal's property interest in the profits of her business and her liberty interest in operating her business do rise to the level of protectible interests.**

*Id.* at 704 (emphasis added).

Defendant also argues that Plaintiff had no due process rights because he was not a direct employee of AFLAC. Regardless of the relationship between Plaintiff and AFLAC, ***Plaintiff's due process claims against Defendants are based on Defendants' actions in interfering with that relationship and with Plaintiff's ability to carry on his insurance sales practice in the manner he had chosen.*** Plaintiff's chosen profession included selling AFLAC products to BISD employees and others. Plaintiff had been successfully involved in this chosen profession for the three years prior to Defendants recent actions. Even though Plaintiff's proposal to provide TPA services was awarded the bid, Defendants prevented Plaintiff from following and performing in his chosen profession by restricting him from performing the duties required of the bid. Defendants took from Plaintiff his ability to sell products to BISD employees, his largest group client, when they fired him as TPA and threatened to arrest him if he appeared on any campus. As in ***Kacal***, Plaintiff had a right to engage in his chosen profession by supervising and performing the campus enrollments, pursuant to the TPA agreement, at which time he would solicit his ancillary products, even though no employer–employee relationship existed. *See **San Jacinto Savings and Loan v. Kacal***, 928 F.2d at 704. Defendants' restriction of Plaintiff's ability to do so, however, without providing him with any notice or avenue to appeal that decision, violated his due process rights.

In summary, Plaintiff was entitled to due process protections for the following reasons:

(1) Plaintiff was an independent contractor with an Associate's and Regional Sales Coordinator's agreement to sell AFLAC products.

(2) Plaintiff had been selling AFLAC products to BISD employees and providing TPA services for three years prior to December 2001. During each of those years, Plaintiff would charge no fee to provide his TPA services (although his predecessor charged in excess of $30,000.00), and Plaintiff expended thousands of man-hours providing TPA services, in exchange for his being allowed to supervise and handle

        the Cafeteria Plan enrollments and to sell AFLAC ancillary products. Practically all sales of AFLAC ancillary products are made during the enrollment process.

(3)    Plaintiff timely submitted his proposal in 2001 to provide TPA services in 2002, which included his supervising and handling enrollments and proposed sales of AFLAC ancillary products in December 2001.

(4)    Plaintiff's proposal was awarded the bid for TPA services, which included, and even required, the enrollment process. As a result, Plaintiff would have been allowed to administer the Cafeteria Plan enrollment and sell AFLAC ancillary products.

(5)    Defendants, however, submitted a letter to Plaintiff unilaterally firing him as TPA, and notifying him that if he were to be found on BISD campuses, he would be arrested, thus preventing him from administering the enrollment and selling any AFLAC products.

(6)    The case law previously submitted establishes that an independent contractor has property and liberty rights to continue in his chosen profession, which in this case included supervising and handling the Cafeteria Plan enrollment, during which he would sell AFLAC ancillary products, free from unreasonable governmental interference. Defendants violated those rights by firing Plaintiff as TPA, preventing him from participating in the enrollment process where he could sell his products, and restricting him from being on any campus.

Defendants' actions did not result in "mere injury to reputation or the impairment of future employment prospects," but rather directly interfered with Plaintiff's ability to perform his chosen profession. As a result of Defendants' actions, Plaintiff was in fact terminated from his position as Regional Sales Coordinator from AFLAC. Although Plaintiff distinguished *Vander Zee* in his Motion for Reconsideration, Defendant BISD instead cites that case for matters unrelated to Plaintiff's particular due process claims. *Vander Zee v. Reno*, 73 F.3d 1365 (5th Cir. 1996). Of course, Defendant ignored the Court's explanation that the government would have been liable had it acted as Defendants did in this case, in coercing or causing the Plaintiff's termination from his private employment. *Id.* at 1370-71. Defendants should not know be allowed to re-characterize Plaintiff's claims simply to suit their contentions.

### Reply to Defendant Sauceda's Response

In response to Plaintiff's Motion for Reconsideration, Defendant Sauceda submitted a 3-page polemical diatribe, without citing a single authority, and instead berating Plaintiff and his counsel. Because Defendant fails to engage in a legal analysis of Fourteenth Amendment due process jurisprudence, or to discuss its parameters, no further reply should be necessary.

WHEREFORE, PREMISES CONSIDERED Plaintiff **DINO X. CHAVEZ** would respectfully request that his Motion for Reconsideration of Dismissal of Plaintiff's Due Process Claims be GRANTED, that his due process claims be REINSTATED, and that Plaintiff be granted such other and further relief to which he may show himself to be justly entitled, whether general or special, at law and in equity.

Signed on this the 20th day of March, 2003.

        Respectfully submitted,

        **LAW OFFICE**
        **J. ARNOLD AGUILAR**
        Artemis Square, Suite H-2
        1200 Central Boulevard
        Brownsville, Texas 78520
        Telephone   : (956) 504-1100
        Facsimile    : (956) 504-1408

By: _____
        J. Arnold Aguilar
        State Bar No. 00936270
        Federal Adm. No. 6822

        Attorney for Plaintiff,
        DINO X. CHAVEZ

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the above and foregoing **PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSES TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF DISMISSAL OF PLAINTIFF'S DUE PROCESS CLAIMS** has on this the 20th day of March, 2003, been forwarded via certified mail, return receipt requested to:

Ms. Elizabeth G. Neally
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 W. Price Rd., Suite 9
Brownsville, TX 78520

Ms. Eileen M. Leeds
WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, TX 78521

Mr. William B. Steele, III
LOCKE, LIDDELL & SAPP, L.L.P.
100 Congress Avenue, Suite 300
Austin, TX 78701

_____
J. Arnold Aguilar