

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

OCT 0 1 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| DINO CHAVEZ, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL ACTION NO. B-02-128 |
| | § |
| BROWNSVILLE INDEPENDENT | § |
| SCHOOL DISTRICT AND NOE | § |
| SAUCEDA, | § |
| | § |
| Defendants. | § |

## ORDER

BE IT REMEMBERED, that on September 30, 2003, the Court **DENIED AS MOOT** Plaintiff's Motion for Leave to File Second Amended Complaint [Dkt. No. 25]; **DENIED AS MOOT** Defendant Brownsville Independent School District's Objections to Plaintiff's Motion for Leave to File Amended Petition and Motion to Dismiss Leave to File Amended Petition [Dkt. No. 26]; **GRANTED in part and DENIED in part** Plaintiff's Amended Motion for Leave to File Second Amended Original Complaint to Include Additional Defendants and to Provide Rule 7(a) Reply [Dkt. No. 30]; and **DENIED** Plaintiff's Motion for Reconsideration of Dismissal of Plaintiff's Due Process Claim [Dkt. No. 33].

### I. Factual and Procedural Background

Plaintiff, Dino Chavez, brought a claim against the Brownsville Independent School District ("BISD") and Noe Sauceda, the Superintendent of BISD, under 42 U.S.C. § 1983 for the deprivation of his due process rights under the Fourteenth Amendment and his free speech rights under the First Amendment of the United States Constitution. Plaintiff alleged in his first amended original complaint that he was an insurance sales agent representing American Family Life Assurance Company of Columbus ("AFLAC"). Plaintiff submitted an AFLAC proposal to BISD's Insurance

1

Committee for an optional section 125 Cafeteria Plan Services Contract. It was undisputed that Plaintiff was not an employee or independent contractor of BISD. Plaintiff claimed in his complaint that his bid was, in essence, a bid to provide enrollment services to BISD employees and to provide administrative services for the processing of the employees' insurance policies. Plaintiff would earn commission from the AFLAC insurance policies he sold directly to the employees.

The present dispute arose when, after coordinating the employees' cafeteria plan enrollment from 1998 through 2001, Plaintiff and his employer were notified by Noe Sauceda that Plaintiff would no longer be allowed to present AFLAC's bid to the Insurance Committee. Mr. Sauceda sent a letter to AFLAC in which he explained that unless another representative agent from AFLAC replaced Plaintiff, AFLAC's proposal would not be reviewed by the Insurance Committee. Mr. Sauceda cited unprofessional and unethical conduct and "continuous inappropriate correspondence" as the reason for such removal. See Plaintiff's First Amended Complaint, at ¶ 12 [Dkt. No. 14]. Plaintiff alleged this action occurred after Mr. Sauceda attempted to award the contract to another bidder, and submitted false information, such as misquotes, to the Insurance Committee in an effort to sabotage AFLAC's bid. In particular, Plaintiff accused BISD of attempting to appoint an "agent of record to provide all ancillary available insurance policies and products for BISD employees," and opined "it [was] illegal to appoint an agent of record according to information located on the Texas Attorney General's website." Plaintiff spoke about this issue at several BISD Board Committee meetings.

Along with other proposals, AFLAC's bid for insurance services was placed on the Insurance Committee's agenda for the November 29, 2001, meeting. During this Insurance Committee meeting, AFLAC's proposal was accepted by a vote of the Committee. Plaintiff alleged that despite the fact that he had written the proposal and had conducted previous insurance enrollment services for BISD employees, he was deprived of the opportunity to actually present the proposal at the meeting and was not allowed to begin enrollment after its acceptance. Plaintiff argued his due process rights under the Fourteenth Amendment were violated when he was deprived of the opportunity to fully participate in the bidding process. In addition, Plaintiff argued his

2

constitutional right to Free Speech under the First Amendment was violated when he was refused the opportunity to present the proposal in retaliation for publicly admonishing BISD for what he believed to be the illegal use of an agent of record.

BISD argued in its motion to dismiss that Plaintiff failed to demonstrate that a recognized property right arose from the award of a bidding contract. See BISD's Motion to Dismiss, at p. 2 [Dkt. No. 15]. BISD asserted that because Plaintiff was allowed to participate in all BISD bidding procedures, his procedural due process rights were not violated and no such property right exists under Texas law. See id. at 3.

On January 14, 2003, the Court dismissed Plaintiff's due process claim against Defendants Brownsville Independent School District ("BISD") and Noe Sauceda. The Court's order was based on a finding "that Plaintiff [had] not demonstrated that a property interest exists for insurance service providers who are neither employed by BISD nor bound by contract to BISD." Court's Jan. 14, 2003, Order, at p. 6.

Soon thereafter, Plaintiff filed a motion for reconsideration of the Court's dismissal of his due process claims [Dkt. No. 33]. Plaintiff now argues in his motion for reconsideration "that Plaintiff in fact did have a protected property and liberty interest in following his chosen profession and in holding specific private employment." Pl's Motion for Reconsideration, at p. 2.

## II. Reconsideration Standard of Review

The Federal Rules of Civil Procedure do not recognize a motion for reconsideration per se. See Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir. 1990), abrogated on other grounds by, Little v. Liquid Air Corp., 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc). Pursuant to Federal Rule of Civil Procedure 6(a), a motion for reconsideration filed within ten days of the Court's judgment or order is considered a motion to "alter or amend the judgment" under Federal Rule of Civil Procedure 59(e). See id. See also Fletcher v. Appel, 210 F.3d 510, 511-12 (5th Cir. 2000). Motions, filed beyond the ten days, as this motion was, are considered to be motions seeking relief from judgment under Federal Rule of Civil Procedure 60(b). See, e.g., Lavespere, 910 F.2d at 173; United States v. Emmons, 107 F.3d 762, 764 (10th Cir. 1997). Motions for reconsideration are generally disfavored

and are not proper tools "to introduce evidence that was available at [the time the original motion was filed] but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1219 (5th Cir. 1986).

Plaintiff has not even argued to the Court under which provision of the Federal Rules of Civil Procedure he files his motion for reconsideration. Based on the time limitations, the Court can only review the motion under Rule 60(b). Furthermore, because Plaintiff has now provided new legal citation, all of which were already decided at the time he filed his original response, the Court presumes that only Rule 60(b)(1) (an omission attributable to "mistake, inadvertence, surprise, or excusable neglect") or Rule 60(b)(6) (manifest injustice or "any other reason justifying relief") could apply to this motion. See Lavespere, 910 F.2d at 173 (citation omitted). Plaintiff's failure to assert his arguments and legal theories earlier appears to the Court to be simple negligence or carelessness.[1] Mere negligence, however, does not justify a motion for reconsideration. In addition, relief under Rule 60(b)(6) requires a showing of "extraordinary circumstances." American Totalisator Co. v. Fair Grounds Corp., 3 F.3d 810, 815 (5th Cir. 1993) (citations omitted). Indeed, although the Court may exercise its discretion to entertain the motion, this discretion is "not boundless," and the movant must make a showing under Rule 60(b) that the case or order should be reopened. See Lavespere, 910 F.2d at 173. Stated differently, a motion for reconsideration is not an opportunity to have the court review the merits of Plaintiff's claim simply because the party did not like the first ruling of the Court.

Despite the fact that Plaintiff has not properly argued his motion for reconsideration, the Court briefly analyzes the motion and denies it on the merits.

_____

[1]Even plaintiff states, "[a]lthough Plaintiff's prior pleadings may not have identified his role with sufficient clarity, Mr. Chavez was an independent Insurance agent, authorized by American Family Life Insurance Company of Columbus . . . to sell its products." Pl's Motion for Reconsideration, at p. 2. Based on Plaintiff's First Amended Complaint and his response to Defendants' motions to dismiss, the Court understood Mr. Chavez to be an employee of AFLAC. Indeed, the complaint references AFLAC as the employer.

### III.  **Plaintiff's Old and New Due Process Claims**

Plaintiff argued in his first amended original complaint that his due process rights were violated when Defendants' actions deprived him of his property interests without due process of law when he was refused the opportunity to present the final proposal to the Insurance Committee and to begin the enrollment of employees following the awarding of AFLAC's proposal. See Plaintiff's First Amended Complaint, at ¶¶ 11-12. In his response to Defendants' motions to dismiss, Plaintiff similarly argued his due process rights were violated when "Defendant . . . remov[ed] Plaintiff from the bidding process and allow[ed] Plaintiff's *employer* to continue with its bid only if Plaintiff was excluded from participation." Pl's Response to Defendants' motions to dismiss, at p. 2 (emphasis added). Now, however, in his Motion for Reconsideration, Plaintiff alters and broadens his due process claim, asserting a property and liberty interest "in following his chosen profession and in holding specific private employment." Pl's Motion for Reconsideration, at p. 2.

Not surprisingly, Plaintiff's redirected focus on a more general property interest, that is pursuing a chosen profession, leads him to support his new theory of recovery with a slew of cases never cited in his original response to Defendants' motions to dismiss. The new cases Plaintiff cites are, however, distinguishable from the case at hand, and the Court will discuss these in turn. Had Plaintiff cited them in his original response, the Court could have granted Defendants' Motions to Dismiss after addressing Plaintiff's new theory of recovery - i.e. that he "has a protected property and liberty interest in pursuing his chosen profession and in holding specific private employment." This tactic, a better option than now asserting arguments that should have been raised earlier, could have avoided this motion for reconsideration altogether, thus saving the Court and the parties time and expense.

### IV.  **The Court's Original Due Process Analysis: Alleged Property Interest in Participating in the Bidding Process**

When a plaintiff asserts a section 1983 claim alleging a due process violation, he "must first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in a deprivation of that

interest." Blackburn, 42 F.3d at 935 (citations omitted). See also American Mfr. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999). "[P]roperty interests," the Supreme Court has said, "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." Perry v. Sindermann, 408 U.S. 593, 602, n.7 (1972) (internal quotation marks and citation omitted). See also Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).

Plaintiff does not cite to any Texas cases,[2] nor has the Court unearthed any, in which the courts recognized a property interest in the award of a government contract. To the contrary, case law indicates that in light of the fact that a governmental entity may reject any and all bids, a rejected bidder has no property right in the award of the contract. See § 271.027(a) Tx. Loc. Gov't Code Ann. (Vernon's 1999 & Supp. 2003). See also, e.g., Spawglass Constr. Corp. v. City of Houston, 974 S.W.2d 876, 880 (Tex. App.–Houston [14th Dist.] 1998, pet. denied); DRT Mechanical Corp. et al. v. Collin County, Texas, 845 F. Supp. 1159, 1162-63 (E.D. Tex. 1994); Assoc. General Contractors v. Corpus Chrisiti, 694 S.W.2d 581, 583 (Tex. App.–Corpus Christi 1985, no writ); A & A Const. Co. v. City of Corpus Christi, 527 S.W.2d 833 (Tex. Civ. App. –Corpus Christi 1975, no writ). Generally, courts have found that a property interest is present in a government contract when the contract confers a special status such as employment or entitlement to a social benefit. See, e.g., S & D Maintenance Co. v. Goldin, 844 F.2d 962, 965-69 (2d Cir. 1988); San Bernardino Physicians' Services Med. Group v. County of San Bernardino, 824 F.2d 1404, 1407-10 (9th Cir. 1987).

Plaintiff cannot establish a property interest because his interest in the proposal itself is simply too attenuated. Plaintiff was an employee of AFLAC. He was not an

---

[2]Plaintiff cites to Systems Contractors Corp. v. Orleans Parish School Bd., 148 F.3d 571 (5th Cir. 1998). This case can be distinguished from the present case. Systems Contractors was a case under Louisiana's bidding laws, and the Louisiana Supreme Court found explicitly that a bidder for a government contract has a protected property interest under the Due Process Clause. See id. at 574 n. 16. Indeed, the Court stated in Systems Contractors that "unlike Louisiana, many states do not recognize a protected property interest in government contracts until those contracts are actually awarded." Id. at 575.

independent contractor and received no direct payment or formal benefits from BISD because he was not employed by the school district. Plaintiff was denied the opportunity to present AFLAC's proposal at the final Insurance Committee meeting, but he had participated in prior meetings leading up to the vote on the proposal. Although Plaintiff was not allowed to present the proposal himself, an alternate AFLAC representative did, and the Insurance Committee accepted it and allowed employee enrollment to begin with the new representative.

In essence, Plaintiff was denied the privilege of continuing his relationship with BISD and of forging business relationships with the employees by his administration of their insurance policy plans. Plaintiff was not, however, denied a property interest nor were his due process rights violated. Despite the fact that Plaintiff had previously administered the insurance policy plans for BISD employees, he had no more than a "unilateral expectation" that he could continue to submit proposals and serve BISD employees. See Roth, 408 U.S. at 577. See also Blackburn, 42 F.3d at 936-37 (holding that owner of wrecker service failed to allege a property interest in remaining on city's and county's rotating on-call list for accident wrecker service). Plaintiff explains that he derives commission from his position as the insurance service provider when he sells insurance plans to BISD employees. This fact alone, however, does not alter the Court's determination that Plaintiff has not demonstrated that a property interest exists for insurance service providers who are neither employed by BISD nor bound by contract to  BISD.

## V.  The Court's Due Process Analysis on Reconsideration: Alleged Property Interest in Following Chosen Profession and Holding Specific Private Employment

The Supreme Court has held that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment." Green v. McElroy, 360 U.S. 474, 492 (1959). Similarly, "[a] State cannot exclude a person from the practice of law or from any other occupation in a manner and for reasons that

7

contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232, 238-39 (1957). See also Phillips v. Vandygriff, 711 F.2d 1217, 1222 (5th Cir. 1983) (citing Ferrel v. Dallas Independent School Dist., 392 F.2d 697, 707 (5th Cir. 1968); Shaw v. Hospital Authority, 507 F.2d 625, 628 (5th Cir. 1975); Daly v. Sprague, 675 F.2d 716, 727 (5th Cir. 1982)).

Although individuals do have a liberty interest in pursuing an occupation, this interest is not endless. Indeed, in cases in which the Fifth Circuit and Supreme Court have determined such a liberty or property interest exists, the State actor has curtailed this freedom in a manner that prevented the individual from either seeking employment at all, or limiting it to a far more severe degree than in the present case. For example, in Phillips, the plaintiff worked in the savings and loan industry and alleged a due process violation when he was precluded from working within Texas as a bank manager because of a de facto licensing scheme implemented by the Commissioner of the Texas Savings and Loan Department. See Phillips, 711 F.2d at 1223. The Fifth Circuit determined that certain due process protections must be afforded before depriving the individual of the ability to work within an industry in general. See id. (holding also that the difference between de facto licensing and formal licensing is not important in determining whether there is a liberty interest). See also Schware, 353 U.S. at 247 (denying petitioner the opportunity to qualify for legal practice implicates the Due Process Clause); Greene, 360 U.S. at 491 (denying security clearance without due process protections is actionable when the security clearance is a de facto necessity for employment in the field of aeronautics).

Plaintiff cites additional Fifth Circuit cases in which the Court determined that a property interest existed in the profits of a business. See San Jacinto Savings & Loan v. Kacal, 928 F.2d 697, 703-04 (5th Cir. 1991). In San Jacinto, "there [was] evidence that the comprehensive, concerted actions of the police caused Kacal to lose so much of her business that she had to close her doors and default on her lease." Id. at 703. In addition, the location and premises were unique to the business and access to it was

8

extremely important. Id.  The Court explicitly found that Kacal's protected property interest stemmed not from an interest in continued future employment, which the Court did not make a determination on, but rather from lost profits to her business.  Id. at 704 n.7.  Cf. Vander Zee v. Reno, 73 F.3d 1365, 1371 (5th Cir. 1996) (holding that Vander Zee's "complain[t] that the [agreement] prevented his rehiring[, which] interfered with his property interest in an alleged oral agreement to rehire him at some specified time in the future" did not state a claim concerning a property interest); Muniz v. City of Harlingen, 247 F.3d 607, 608-09 (5th Cir. 2001) (holding no property interest exists in future employment).

In San Jacinto and other cases, such as Cowan v. Corley, 814 F.2d 223, 227 (5th Cir. 1987), the plaintiffs claimed property and liberty interest violations because they were allegedly "denied the opportunity to pursue a livelihood."  814 F.2d at 228. Plaintiff does not contend that BISD's refusal to consider bids advanced by Plaintiff as the representative of AFLAC completely prevented him from seeking employment as an independent insurance agent.  Instead, Plaintiff argues his "chosen profession included selling AFLAC products to BISD employees."  Pl's Reply to Defendants' Response, at p. 4 [Dkt. No. 44].  BISD does not license insurance agents, nor does it perform a gatekeeping role in the insurance industry.  BISD has not prevented Plaintiff from working as an insurance agent, but only from selling AFLAC's products to BISD employees.

In fact, Plaintiff's first amended complaint, the live complaint at the time Defendants filed their motions to dismiss, did not even allege that defendants deprived him of his property and liberty interests *because* he was later terminated from his regional sales coordinator position with AFLAC.  Now, in his Motion for Reconsideration, Plaintiff includes an affidavit in which he acknowledges that he is still authorized to sell AFLAC's insurance products, and "[a]t all material times . . . AFLAC did not have any employees in the Rio Grande Valley area; rather all of AFLAC's business in the Rio Grande Valley area was done through independent insurance

agents such as [himself]." Pl's Motion for Reconsideration, Ex. A, ¶ 2 [Dkt. No. 33].[3] Plaintiff's affidavit does not advance his cause because it demonstrates that Plaintiff was not even considered an employee of AFLAC. Rather, on reconsideration, Plaintiff confirms that any actions taken by BISD did not cause him to be "terminated" as an independent insurance agent authorized to sell AFLAC's products to prospective customers other than BISD employees.

Finally, the right to hold specific private employment is not limitless. Cases in which a state or federal actor has interfered with private employment in such a way that implicates due process protections, the interference has been far more direct than in the case presently before this Court. See, e.g., Federal Deposit Insurance Corp. v. Mallen, 486 U.S. 230, 240 (1988) (holding that where FDIC directly invoked its statutory "authority to suspend the president of an Illinois bank," arbitrary interference with appellee's continuing employment with the bank gave rise to a due process claim). In this case, the Court views Plaintiff's due process claim as pled in the first amended complaint–that is that Defendants' actions deprived him of his property interests without due process of law when he was refused the opportunity to present the final proposal to the Insurance Committee and to begin the enrollment of employees following the awarding of AFLAC's proposal–as too tenuous. In the Court's opinion, this case is more akin to the circumstances in the line of cases concerning wrecker services. As in Blackburn, Plaintiff has not alleged that BISD has interfered with his right as an independent insurance agent to conduct business or sell AFLAC products to other prospective customers. See Blackburn, 42 F. 3d at 938 (distinguishing Cowan v. Corley, 814 F.2d 223 (5th Cir. 1987) from Blackburn because in Cowan the Plaintiff alleged the sheriff and the county wrecker association prevented him from doing business with private individuals). In light of these differences, the Court stands by its original decision in granting Defendants' motions to dismiss on the due process claims, and **DENIES** Plaintiff's Motion for Reconsideration [Dkt. No. 33].

---

[3]The Court acknowledges that any evidence considered in a motion to dismiss beyond the pleadings transforms the motion to dismiss into a motion for summary judgment. See Fed. R. Civ. P. 12(b).

**VI.  Plaintiff's Motion for Leave to File Second Amended Complaint [Dkt. No. 25]**

Plaintiff sought leave to amend his complaint for a second time in order to clarify his pleadings and add Defendants Marilyn Del Bosque-Gilbert and Randall Dunn. Thereafter, Plaintiff withdrew his request to add these defendants [Dkt. No. 48]. Additionally, Plaintiff filed a second "second amended complaint" incorporating his Rule 7(a) reply.  As a result, the first Motion for Leave to File Second Amended Complaint is **DENIED AS MOOT**.

**VII.  Defendant Brownsville Independent School District's Objections to Plaintiff's Motion for Leave to File Amended Petition and Motion to Dismiss Leave to File Amended Petition [Dkt. No. 26]**

This motion is **DENIED AS MOOT**.

**VIII.  Plaintiff's Amended Motion for Leave to File Second Amended Original Complaint to Include Additional Defendants and to Provide Rule 7(a) Reply [Dkt. No. 30]**

Plaintiff has withdrawn his request to add additional parties.  See Dkt. No. 48. Defendant Brownsville Independent School District objects to Plaintiff's motion, arguing it was unnecessary to file a motion requesting leave to file a Rule 7(a) reply when this filing was in response to this Court's ordering of such reply.  Additionally, Defendant objects to the filing of another motion to amend his complaint in which Plaintiff seeks to add a cause of action under the Fifth Amendment.  See Pl's Second Amended Cmplt., ¶ 22 [Dkt. No. 30].  Finally, Defendant notes that Plaintiff continues to include a claim under the Fourteenth Amendment, which was previously dismissed by this Court.  In his reply, Plaintiff asserts that he is not adding a new claim under the Fifth Amendment, but rather is expounding on his previously pled Fourteenth Amendment claim. Furthermore, Plaintiff argues his amended complaint is sufficient for a Rule 7(a) reply.

As the Court noted in its earlier order dismissing Plaintiff's due process claims, when Defendants assert qualified immunity as an affirmative defense, this court *must* give the Plaintiff an opportunity to file a Rule 7(a) reply.  See Reyes v. Sazan, 168 F.3d

11

158, 161 (5th Cir. 1999) (holding district court's failure to require a Rule 7(a) reply to the defense of qualified immunity was an abuse of discretion). In order to survive the defense of qualified immunity, the Plaintiff must allege particularized facts that support the allegations. See Baker v. Putnal, 75 F.3d 190, 195 (5th Cir. 1996) (holding that in the face of a qualified immunity assertion, Plaintiff must plead "specific conduct and action giving rise to a constitutional violation").

The Court is aware of no authority, and Defendants cite to none, that requires Plaintiff to fulfil the Court's order to file a Rule 7(a) reply in the form of a brief, as opposed to an amended complaint. The Court, therefore, will not strike Plaintiff's reply. Having said this, the Court does not comment on the adequacy of Plaintiff's Rule 7(a) reply to overcome the defense of qualified immunity. In fact, the Court would not characterize Plaintiff's amended complaint as containing "detailed" allegations overcoming the assertion of qualified immunity. Be that as it may, the Court has given Plaintiff the opportunity to respond to Defendants' assertions of qualified immunity, as it is required to do, and thus the Court can now make the appropriate rulings on qualified immunity. Additionally, Defendant Noe Sauceda has very recently filed a motion for summary judgment again asserting qualified immunity. Because the motion for summary judgment has already been filed, Plaintiff will have the opportunity to respond to this affirmative defense in his response to the summary judgment motion.

Finally, Plaintiff has withdrawn his request to add additional parties, and Plaintiff, in his reply to Defendants' objections, asserts that he does not seek to add a new claim under the Fifth Amendment. To the extent that Plaintiff clarifies his factual allegations or otherwise incorporates his Rule 7(a) reply into an amended complaint, the Court **GRANTS** Plaintiff's motion to amend his complaint. See Fed. R. Civ. P. 15(a) ("leave shall be freely given when justice so requires"). For the sake of clarity the Court will state the obvious: Plaintiff's continued inclusion of any claims already dismissed has no effect and these claims remain dismissed. Defendants will be granted leave to amend or supplement their current motions for summary judgement if they feel such action is necessary.

12

## IX. <u>Conclusion</u>

The Court **DENIED AS MOOT** Plaintiff's Motion for Leave to File Second Amended Complaint [Dkt. No. 25]**; DENIED AS MOOT** Defendant Brownsville Independent School District's Objections to Plaintiff's Motion for Leave to File Amended Petition and Motion to Dismiss Leave to File Amended Petition [Dkt. No. 26]; **GRANTED in part and DENIED in part** Plaintiff's Amended Motion for Leave to File Second Amended Original Complaint to Include Additional Defendants and to Provide Rule 7(a) Reply [Dkt. No. 30]; and **DENIED** Plaintiff's Motion for Reconsideration of Dismissal of Plaintiff's Due Process Claim [Dkt. No. 33].

DONE at Brownsville, Texas, this 30th day of September, 2003.

Hilda G. Tagle
United States District Judge

13