88

United States District Court
Southern District of Texas
FILED

DEC 2 2 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DINO X. CHAVEZ | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | B - 02 - 128 |
| and RANDY DUNN, MARILYN DEL | § | |
| BOSQUE-GILBERT and HUGH EMERSON, | § | |
| JR., in their official capacities as Board | § | |
| Members of Brownsville Independent | § | |
| School District | § | |

## JOINT PRE-TRIAL ORDER

## I.    APPEARANCE OF COUNSEL

Counsel for Plaintiff DINO X. CHAVEZ:

J. Arnold Aguilar
LAW OFFICE J. ARNOLD AGUILAR
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, TX 78520
Telephone    : (956) 504-1100
Facsimile    : (956) 504-1408


Counsel for Defendant/Third Party Plaintiff
BROWNSVILLE INDEPENDENT SCHOOL DISTRICT:

Ricardo Morado
Elizabeth G. Neally
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 W. Price Rd., Suite 9
Brownsville, TX 78520
Telephone    : (956) 542-5666
Facsimile    : (956) 542-0016

Counsel for Defendant/Third Party Plaintiff  NOE SAUCEDA:

Eileen M. Leeds
WILLETTE & GUERRA, L.L.P.
3505 Boca Chica Blvd., Suite 460
Brownsville, TX 78521
Telephone     :  (956) 541-1846
Facsimile     :  (956) 541-1893


Counsel for Third-Party Defendant
AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS:

William B. Steele, III
LOCKE, LIDDELL & SAPP, L.L.P.
100 Congress Avenue, Suite 300
Austin, TX 78701
Telephone     :  (512) 305-4734
Facsimile     :  (512) 305-4800

Valorie C. Glass
Of Counsel:
ATLAS & HALL, L.L.P.
P.O. Box 3725
McAllen, Texas 78502
Telephone     :  (956) 682-5501
Facsimile     :  (956) 686-6109


## II.    STATEMENT OF THE CASE

Plaintiff Dino Chavez is an independent insurance agent who sells supplemental insurance, such as disability insurance, cancer insurance, and the like.  At the relevant time in question, plaintiff was an independent agent for AFLAC and was coordinating a number of other AFLAC sales agents as a Regional Sales Coordinator.  From 1998 through 2001, Chavez and AFLAC had been providing Third Party Administrator (TPA) services for BISD's "Cafeteria Plan," which allows its employees to purchase supplemental insurance products with

pre-tax earnings. Plaintiff was responsible for coordinating the enrollment of the BISD employees in the Cafeteria Plan; the employees had the opportunity to buy supplemental insurance once each year during the enrollment period.

In the Fall of 2001, BISD's Superintendent, Noe Sauceda, issued a Request for Qualification (RFQ) for a TPA to administer the Cafeteria Plan and the Tax Deferred Annuity Program. This RFQ was later revised to be an "and/or" proposal in which the vendors could qualify for either or both. When Chavez learned that Sauceda was recommending National Plan Administrators("NPA") as the TPA for the Cafeteria Plan and the Tax Deferred Annuity Program and in a manner that Chavez believed was not financially responsible or legal, he raised his issues in letters to the BISD Board of Trustees and the Employee Insurance Committee and in the "Public Comment" section of BISD Board Meetings. On November 29, 2001, Dr. Sauceda sent a letter to Chavez and Frank LaFemina, the State Sales Coordinator for AFLAC, in which Sauceda criticized Chavez for conduct Sauceda believed was inappropriate and unprofessional, and in which Chavez and AFLAC were given 30 days notification that they would no longer be the TPA for BISD unless such conduct stopped. In the letter, Mr. Chavez was also advised that he would no longer be permitted to appear on BISD campuses. AFLAC, through LaFemina, reassigned the handling of the BISD enrollment to another AFLAC agent, and AFLAC was elected as the 2002 TPA for the Cafeteria Plan by the Campus Insurance Committee on November 29, 2001, but Chavez was not allowed to participate in the enrollment process. Thereafter, Plaintiff's Regional Sales Coordinator's Agreement was terminated by AFLAC.

Mr. Chavez complains that Dr. Sauceda and BISD violated his rights to free speech by retaliating against him for speaking on matters of public concern, and that Dr. Sauceda

tortiously and intentionally interfered with his business relationship with AFLAC, defrauded Chavez, libeled and slandered him, acted maliciously, and intentionally inflicted emotional distress on him.

BISD and Sauceda deny that they violated plaintiff's constitutional rights or otherwise caused any harm to plaintiff. BISD denies that any policy or custom of BISD was breached by Sauceda's letter to Mr. Chavez. BISD further denies that Sauceda acted under policy or custom or under the authority of the BISD Board of Trustees when he sent the letter. BISD also denies that Sauceda was a policy maker for BISD when he wrote the letter. BISD asserts that its Trustees were unaware that Sauceda had written the November 29th letter to Chavez until after Sauceda distributed the letter to Chavez. Further, while BISD denies liability, it has joined AFLAC in this action, claiming that, if BISD is found liable for any of plaintiff's damages, then AFLAC should contribute to the payment of those damages because AFLAC chose to terminate Chavez's Regional Sales Coordinator's Agreement.

AFLAC denies that BISD is entitled to contribution or that Mr. Chavez is entitled to recover any damages. Further, AFLAC contends that AFLAC would not have removed plaintiff from the BISD enrollment but for the letter from Sauceda, and that plaintiff's reaction to his removal from the enrollment, as well as his other conduct, led to the termination of his Regional Sales Coordinator Agreement with AFLAC. Finally, AFLAC contends that Mr. Chavez expressly agreed that AFLAC had the right to reassign the BISD account to another AFLAC agent and that Mr. Chavez expressly agreed that his Regional Sales Coordinator Agreement could be terminated by AFLAC for any reason, without cause, upon thirty-days advance written notice.

## III.   JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C.   1331, as this case is a civil action arising under the Constitution and laws of the United States.   This Court has pendent jurisdiction over all claims under the laws of the State of Texas.

## IV.   MOTIONS

The following motions are presently pending before this Court in chronological order of filing.

(1) Third-Party Defendant American Family Life Assurance Company of Columbus's Motion to Dismiss BISD's Third-Party Complaint;

(2) Defendant Noe Sauceda's Motion for Leave to File Third-Party Complaint Against American Family Life Assurance Company of Columbus;

(3) AFLAC's Motion to Strike or, in the Alternative, Motion to Stay Proceedings and Compel Arbitration;

(4) Third Party Defendant AFLAC's Motion for Summary Judgment and Brief in Support Thereof;

(5) Defendant Brownsville Independent School District's Motion for Summary Judgment;

(6) Defendant Noe Sauceda's Motion for Summary Judgment;

(7) Plaintiff's Motion to Exclude Testimony of Donald R. House;

(8) Joint Motion of Defendants Brownsville Independent School District and Noe Sauceda to Exclude Plaintiff's Expert; and

(9) Third-Party Defendant AFLAC's Daubert Objections to Testimony of Plaintiff's Expert Stephen M. Horner, and Brief in Support.

## V.   CONTENTIONS OF THE PARTIES

### (A)   PLAINTIFF DINO X. CHAVEZ

From 1998 through 2001, Plaintiff Dino X. Chavez was an agent for Third Party Defendant American Family Life Assurance Company of Columbus (hereinafter AFLAC), having risen from the position of Associate to District Coordinator, to Regional Sales Coordinator.    In 1998, Plaintiff Chavez submitted a proposal to provide Third Party Administrator services in response to Defendant Brownsville Independent School District's (hereinafter BISD) Request for Proposals (RFP) to provide Third Party Administrator (hereinafter TPA) services for their §125 Cafeteria Plan.   Plaintiff Chavez was awarded that proposal and he became the *de facto* TPA.

Presumably, one of the reasons Mr. Chavez was appointed *de facto* TPA was because his proposal provided that he would not charge for the TPA services, whereas his predecessor had been charging in excess of $30,000.00 per year in fees.   Mr. Chavez agreed to waive all fees in exchange for being allowed to add at least one AFLAC product to the Cafeteria Plan menu.   Based on BISD's history, therefore, the "value" of this position was in excess of $30,000.00 per year.   Plaintiff Chavez continued in this role for approximately three (3) years, until the arrival of Defendant Noe Sauceda.

Once Defendant Sauceda arrived as Superintendent and CEO of Defendant BISD, he began efforts to direct the TPA bid award to a particular company, National Plan Administrators (hereinafter NPA).   He did this first by attempting to re-design the Request for

Qualifications (RFQ) in a manner that would most favor NPA. When it appeared that attempt would not work, he then used his authority to attempt to directly appoint NPA as Defendants' TPA, in order that Insurance Associates of the Valley could be appointed "agent of record." Plaintiff Chavez thereupon notified Defendant BISD of the illegality of Defendant Sauceda's proposal, including the Texas Attorney General's opinion that Defendant's proposed appointment of an 'agent of record' was illegal, and emphasized that selection of NPA as the TPA would be financially irresponsible, since NPA's proposal charged fees, while Plaintiff's proposal did not. Content on taking whatever action was necessary to appoint NPA as the TPA, Defendants even allowed NPA to modify its bid proposal after the close of the bid submission date, a process that even Defendants admit was improper. When those efforts still failed, Defendant Sauceda, individually and as a policymaker for Defendant BISD, sent Plaintiff Chavez a letter on November 29, 2001, terminating him as the Third Party Administrator, rejecting his bid for the coming year, and prohibiting him from being on school district property or contacting school personnel during school business hours. A copy of that letter was also submitted to Plaintiff's supervisor and State Sales Coordinator for AFLAC, Frank LaFemina, and Sauceda spoke directly to Mr. LaFemina, in order to have him take other actions to prevent Plaintiff from making and enforcing contracts for the provision of AFLAC insurance products.

The actions taken by Defendants were in retaliation for Plaintiff's exercise of his rights to free speech. As a result of those actions, Plaintiff Chavez was not allowed to go onto BISD property, to participate in the BISD Insurance Committee meeting at which the determination was to be made on the appointment of a TPA, or to continue to sell AFLAC products to BISD employees. Plaintiff Chavez was also not allowed to participate in the 2001 enrollment, from which he customarily made a significant portion of his income, and he was ultimately

terminated from his position as Regional Sales Coordinator. Because of Defendants' termination letter, Mr. Chavez has not returned to any BISD campus since November 29, 2001. Each of these actions resulted directly from Defendant's letter of November 29, 2001, and Defendant Sauceda's conversations with Plaintiff's supervisor, Frank LaFemina. Had these actions been anything other than the accepted custom and policy of Defendant BISD, that Defendant would have taken action to withdraw the directives included in the November 29th letter and allowed Mr. Chavez to return onto BISD property and act as Third Party Administrator, but no such action was ever taken. As a result, Plaintiff Chavez remains terminated from his Regional Sales Coordinator position with AFLAC.

The actions of Defendant Sauceda also constituted tortious and intentional interference with Chavez's business relationship with AFLAC, fraud on Chavez and BISD employees, libel, slander, malice, and the intentional infliction of emotional distress . Although Chavez has not alleged a direct action against AFLAC, the conduct of AFLAC, its agents and representatives constituted discrimination on the basis of race in restricting Chavez's ability to make and enforce contracts, pursuant to 42 U.S.C. § 1981(a), for which AFLAC would be liable on BISD's and Sauceda's third party claims.

**(B)    DEFENDANT BROWNSVILLE INDEPENDENT SCHOOL DISTRICT**

BISD contends that the RFQ for TPA for the Cafeteria Plan and the Tax Deferred Annuity Program in 2001 was legal as it involved no expense to BISD. Further, the request for a TPA was not a request for an agent or record. BISD did not delegate its authority to Sauceda to terminate the TPA services. BISD contends that the letter authorized by Noe Sauceda dated November 29, 2002 was sent to Chavez without the knowledge or consent of any of the Board of Trustees. BISD contends that the Trustees at no time authorized this letter. BISD contends

that there was no policy or custom which caused Plaintiff's injury. Sauceda was not a policy maker for BISD. Only the majority of the Board of Trustees can act as policy makers for BISD. BISD contends as a matter of law that Plaintiff cannot meet this burden under 42 USC §1983.

BISD contends that Plaintiff's speech was not a matter of public concern and that the cost of the TPA's service was at no charge to BISD and, therefore, there was no need for Board approval of the decision to appoint the TPA. Defendant BISD would further show the Court that Brownsville Independent School District is a governmental entity and has sovereign immunity from any State law and common law torts. Defendant BISD is entitled to all defenses and immunities pursuant to the Texas Tort Claims Act and/or the Texas Education Code.

Defendant BISD would further assert that any loss or damages allegedly sustained by Plaintiff as alleged in Plaintiff's First Amended Complaint were caused, in whole or in part, or were contributed to by the negligence, want of care, or intentional conduct of Plaintiff, and Defendant BISD therefore invokes the doctrine of comparative responsibility. In the alternative, Defendant BISD further asserts that any loss or damages allegedly sustained by Plaintiff as alleged in Plaintiff's First Amended Complaint were caused, in whole or in part, or were contributed to the negligence, want of care, or intentional conduct of third-parties including AFLAC over whom this Defendant has no control and is therefore not liable.

Plaintiff should not be entitled to attorney's fees in the event that Plaintiff is not a prevailing party and Defendant BISD herein is entitled to its attorney's fees under 42 U.S.C. §1988. Plaintiff has failed to mitigate his damages and such Defendant is entitled to offset of damages, if any, awarded to Plaintiff. Defendant BISD affirmatively pleads, to the extent that

Plaintiff's claims request punitive damages, as well as any judgment ultimately rendered herein awarding punitive damages, that punitive damages constitute a contravention of the Texas and United States Constitutions.  Defendant BISD is further immune from liability for exemplary damages pursuant to §101.024 of the Tex. Civ. Prac. & Rem. Code.

### (C)    DEFENDANT NOE SAUCEDA

Sauceda contends that he recommended NPA as the TPA for the Cafeteria Plan and Taxed Deferred Annuities Program because they were the only company that responded to the combined Request for Qualifications.  He denies any alleged attempt to improperly promote a company or agent.

Sauceda contends that he never considered selecting an "agent of record" and further contends that the opinion which Chavez keeps quoting was not applicable in this matter as the District was not going to be purchasing any insurance contracts.

Sauceda contends that after receiving copies of mailings to the Campus Insurance Committee, members that accused the administration and Board Members of illegal conduct and were inflammatory against the administration, he, within his authority as superintendent, wrote Chavez terminating him as TPA and telling him to stay off BISD campuses.

Sauceda contends that he believed Chavez' conduct to be unprofessional and against the best interest of the BISD Administration and AFLAC. Sauceda later learned of all the other inflammatory faxes Chavez had been sending the Campus Insurance Committee Members.

Sauceda states that he spoke with Chavez' supervisor and was told that Chavez would still be involved.

Sauceda also contends that even though he had the authority to have made the selection without the Board's input (because the District was not purchasing anything) he agreed to allow Campus Representatives to select the Cafeteria Plan . TPA, AFLAC, was chosen. Initially

Chavez and his supervisors agreed that Chavez would collect his commissions and help the enrollment and programs from afar. After Chavez was insubordinate, threatened litigation and argued with his supervisors about how to organize the enrollment, he was inadvertently demoted when a memo was faxed by mistake to AFLAC headquarters.

As support for the fact that the Superintendent may make the selection without Board input is that the year after Sauceda's departure, the Interim Superintendent chose the TPA without any input from the Campus Insurance Committee Members who had not been riled up against the administration.

Sauceda also contends that the letter he wrote was in his discretion as a Superintendent dealing with security and other day to day affairs of the School District. The purpose of the letter was to stop the unwelcomed, unprofessional behavior of a vendor that was insulting him and his Board and instigating and fomenting discontent among his employees. He wrote the letter in a good faith effort to prevent future problems and further discord. Thus, he is entitled to qualified official and professional immunity under federal and sate laws.

### (D)    THIRD-PARTY DEFENDANT AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS

AFLAC contends that, as a matter of law, BISD has no right to obtain contribution or indemnity with respect to claims arising under 42 U.S.C. § 1983, the only claims pending against BISD. AFLAC also denies that it is liable to BISD for contribution or indemnity, in any event.

Plaintiff was removed from enrollment of the BISD account because BISD, through Sauceda, demanded his removal. AFLAC was simply following the demands of its customer when AFLAC told plaintiff that another AFLAC agent would handle the BISD Cafeteria Plan enrollment. When plaintiff refused to agree to that arrangement, a recommendation was made to AFLAC that his RSC Agreement be terminated. After considering that recommendation and

weighing the facts as AFLAC knew them, AFLAC sent plaintiff a thirty-day notice of termination of his RSC Agreement in late December of 2001, which became effective in late January 2002. BISD cannot now complain that AFLAC is liable for removing Plaintiff from the BISD account when BISD demanded that AFLAC take such action.

AFLAC contends that BISD is precluded from obtaining the relief sought in its third-party complaint by the doctrine of unclean hands, by the doctrine of estoppel, and by the doctrine of waiver.

As to the allegations made by plaintiff that he was wrongfully denied the right to participate in the December 2001 enrollment of BISD employees, AFLAC contends that plaintiff expressly agreed to allow AFLAC to reassign the BISD account to another AFLAC agent. Further, AFLAC contends that plaintiff expressly agreed that his Regional Sales Coordinator Agreement could be terminated, without cause and for no reason at all, upon thirty-days written notice. Accordingly, AFLAC states that plaintiff has no legal claim for damages against AFLAC or any other party based upon the reassignment of the BISD account or the termination of his Regional Sales Coordinator's Agreement. Finally, AFLAC contends that plaintiff has failed to mitigate his damages.

AFLAC objects to the last sentence of plaintiff's contentions regarding an alleged Section 1981 violation by AFLAC because that contention does not appear in any complaint, cross-claim, third-party claim, or counter-claim filed by any party in this action and, therefore, is not properly before this Court as a contention and is also the subject of a motion to strike filed by AFLAC.

## VI.   ADMISSIONS OF FACT

(1)     On September 6, 1994, Dino Chavez was appointed as an independent contractor authorized to solicit applications for insurance policies offered for sale by AFLAC.

(2)    In 1994, when Dino Chavez first became an AFLAC agent, he and AFLAC entered into an Associate's Agreement.

(3)    Dino Chavez was promoted to District Sales Coordinator (DSC) in December 1994 and to Regional Sales Coordinator (RSC) in November 1998.

(4)    On November 19, 1998, AFLAC and Dino Chavez entered into an additional contract making Dino Chavez a Regional Sales Coordinator for AFLAC, while retaining Dino Chavez's status as an independent contractor.

(5)    A "Cafeteria Plan" is a program established by large employers to provide an opportunity for employees to purchase certain insurance policies, and pay for them with pre-tax dollars, pursuant to Internal Revenue Code §125.

(6)    Defendant Sauceda started working with BISD in April 2001 as a consultant, after which he continued as Superintendent and CEO.

(7)    On October 30, 2001, Defendant Sauceda attended the Special Called  Board Meeting at which he recommended that NPA be appointed TPA for the Sect.  403(b) and Sect. 125 Tax Deferred Annuity Program.  The decision was tabled.

(8)    On November 12th, Mr. Chavez submitted another memo to the Insurance Committee Campus Representatives, notifying them that the decision on the selection of the TPA had been postponed from the November 13th scheduled meeting, and emphasizing the need for a TPA to be selected immediately.

(9)    Mr. Chavez attended and spoke at the November 13th BISD Board of Trustees Meeting.

(10)    Mr. Chavez sent another memo to the Insurance Committee Campus Representatives on November 19th, repeating some of the concerns in his prior memo of November 12th, and including a new concern that "[i]f NPA/Insurance Associates of the Valley is chosen, all supplemental choices will have to go through them, thereby eliminating all local agents that currently provide their services to the District."

(11)    NPA's proposal to become the TPA included a provision that Insurance Associates of the Valley be appointed as BISD's "agent of record."

(12)    Mr. Chavez was limited to speaking two (2) minutes during the November 20 BISD Board Meeting.

(13)    NPA's agreement to waive all fees is a modification of their original bid, which provided for general administration fees, an annual fee, and Dependent/Child Care and/or Medical Reimbursement fees, even if the enrollment fee were to be waived.

(14)    Defendant Sauceda sent a copy of the November 29 letter to Frank LaFemina, the AFLAC State Sales Coordinator.

(15)    Defendant Sauceda contacted Mr. LaFemina on November 29 and thereafter to discuss the matters described in the letter, including Mr. Chavez's continued presence at BISD.

# VII. CONTESTED ISSUES OF FACT

(1)    Whether prior to 1998, National Plan Administrators (NPA) was the TPA for BISD's Cafeteria Plan.

(2)    Whether prior to 1998, NPA charged in excess of $30,000.00 per year for its services as TPA?

(3)    Whether prior to 1998, BISD provided a health plan for all of its employees, and allowed them to purchase group term life insurance, dental, medical reimbursement, or dependent/child care plans as part of the Cafeteria Plan "menu".

(4)    Whether during the 1997-98 school year, BISD had 6,141 employees?

(5)    Whether the value of the TPA position was in excess of $25,000.00 per year?

(6)    Whether NPA's 2001 TPA bid provided that it would waive the $5.00 per employee enrollment fee "[i]f Insurance Associates of the Valley are selected as agent of record," and other plans either remain in effect or are selected, "[t]he administration fee [of] $.50 per participant per month," "an annual fee of $75.00 for completion of Form 5500," and "Dependent/Child Care and/or Medical Reimbursement - The fee for administration is $3.00 per participant, per month" would remain.

(7)    Whether on or about November 9, 2001, Mr. Chavez submitted a memo to the BISD Insurance Committee Campus Representatives regarding alleged misrepresentations in a Cafeteria Plan Comparison Chart, re-emphasizing that his proposal would not charge any fees, while his competitors' did, and indicating that appointment of a TPA for the Tax Sheltered Annuity Program could effectively limit employees' annuity "choices to only those annuities offered by or through the chosen annuity administrator."

(8)    Whether Mr. Chavez was the *de facto* TPA for the BISD Cafeteria Plan for the 1999, 2000 and 2001 calendar years?

(9)    Whether in August 2001, BISD issued its Request for Qualifications (RFQ) for a TPA to administer the Cafeteria Plan as well as the Tax Deferred Annuity Program, rather than a Request for Proposals (RFP) as had been done in prior years, whether the "name" of that RFQ was subsequently changed twice, and whether the terms of the RFQ remained unchanged, including the tentative award date of September 18, 2001?

(10)    Whether by October 30, 2001, a TPA had not yet been selected, whether on that date, the Board Insurance Committee held a meeting at which agents were allowed to discuss the proposals they had submitted for providing TPA services, whether at that meeting, Mr. Chavez explained that his proposal did not include any fees, and whether the agent for NPA also indicated that his administration of the Cafeteria Plan "would be at no cost to the District or to the employee...?"

(11)    Whether BISD representatives compiled a Cafeteria Plan Comparison chart, which misrepresented the TPA proposal Chavez had submitted.

(12)    Whether the issues raised in Mr. Chavez's letters involved factors that were of public interest, particularly to BISD employees?

(13)    Whether Defendant BISD was publishing inaccurate and misleading statements about the TPA proposals that had been submitted?

(14)    Whether Mr. Chavez's comments at the November 13 BISD Board Meeting emphasized the need for accountability to the public and the need to protect BISD employees?

(15)    Whether at no time in the Fall of 2001 did Sauceda recommend an agent of record for Section 125 or Section 403b services for BISD.

(16)    Whether the term "agent of record" is a term of art in the insurance industry, and connotes being the sole insurance representatives for a business entity or employer relating to one or more insurance policies?

(17)    Whether the RFQ for TPA for the Cafeteria Plan and the Tax Deferred Annuity Program in 2001 was legal as it involved no expense to BISD and the request for a TPA was not a request for an agent or record?

(18)    Whether Defendants have ever explained why NPA's services would have been preferable to those of Mr. Chavez and AFLAC?

(19)    Whether Mr. Chavez attended the BISD Board Meeting on November 20, 2001, at which he spoke during the Public Audience section of the meeting, explaining BISD had an interest in not having to pay additional fees to a TPA, as NPA was proposing, while Chavez's proposal did not include any fees, whether he referenced the Texas Attorney General's Opinion JC-0205 in stating that "[g]ranting an Agent of Record designation to an insurance agent or agency is illegal when the value of the contract is more than $10,000.00 and granting an individual Agent-of-Record letter for the purpose of soliciting optional retirement investments or annuities is also illegal," whether he stated that awarding the TPA bid to NPA "would be illegal, as their proposal calls for an agent-of-record designation" and that "[b]ecause the use of a designated broker of record will necessarily limit the number of companies from which the District may purchase insurance, it may foreclose the District's access to the most advantageous rates and terms," and whether he also provided a copy of a flyer setting out these concerns to each of the Board Trustees at this meeting?

(20)    Whether Board President Colunga agreed it would be appropriate for Mr. Chavez to notify the Board and insurance committee representatives of potential legal violations, and there was no policy that prohibited vendors or citizens from sending letters to board members or insurance committee members, and whether Board Trustee Powers similarly agreed Mr. Chavez's memos were not inappropriate.

(21)   Whether Chavez violated the RFQ for the TPA, certificate of assurance signed by ALAC, by his correspondence and speech.

(22)   Whether at the November 20 Board Meeting, Defendant Sauceda and Board Attorney Roerig presented a letter from NPA dated November 20th, agreeing to waive "any and all fees associated with the Cafeteria Plan … if National Plan Administrators is selected as the Cafeteria Plan administrator and Insurance Associates of the Valley is selected as the agency to provide *all* of the ancillary products?"

(23)   Whether Joey Lopez made a presentation at the November 20 Board Meeting on behalf of NPA prior to the conclusion of the meeting, which lasted for over ten (10) minutes, although he did not sign up to speak during the Public Audience section of the meeting and his speaking was not on the Agenda?

(24)   Whether when Mr. Lopez spoke to the BISD Board, he promoted the benefits of his company, NPA, and asked the Board to reconsider its earlier decision and instead appoint NPA as the TPA.

(25)   Whether there is no reference in the minutes to Mr. Lopez speaking during the November 20 BISD Board Meeting.

(26)   Whether BISD's original version of the videotape of the Board Meeting of November 20th has "disappeared," although Defendant Sauceda explained that the original was supposed to be kept in the Superintendent's office and it would be illegal to destroy or dispose of that tape.

(27)   Whether bid proposals can be changed for one bidder without re-opening the entire bid process for all bidders?

(28)   Whether on November 29th, the day on which an Employee Insurance Committee meeting was scheduled, Defendant Sauceda sent Plaintiff Chavez a letter providing notice of his "official 30-day notice of our intent to non-renew your services as our Third Party Administrator for our Cafeteria Plan," rejecting his "proposal for renewal of the contract, directing him "to cease and desist all contact with school personnel during school business hours," informing him that "[c]ampus administration will be directed to contact security services if [he] or any of [his] associates are found to be on school-district property," and notifying him that he would be contacting his supervisor, Frank LaFemina, to request an apology and other matters.

(29)   Whether on November 29th, Defendant Sauceda sent Plaintiff Chavez a letter providing 30-day notice of the intent to non-renew AFLAC as the TPA for BISD's Cafeteria Plan, whether it also accused Chavez of continuous inappropriate correspondence and conduct as unprofessional, unethical and against expected customer-service provider relations, whether Sauceda also advised Chavez, that in his opinion the correspondence disseminated to BISD staff was both slanderous and libelous, and whether Chavez was directed to cease and desist all  contact with school personnel during school business hours?

(30)    Whether Dr. Sauceda sent the Nov. 29, 2003 letter without the knowledge of any of the BISD Board of Trustees.

(31)    Whether BISD delegated its authority to Sauceda to terminate the TPA services.

(32)    Whether the letter authorized by Noe Sauceda dated November 29, 2002 was sent to Chavez without the knowledge or consent of any of the Board of Trustees, and whether the Trustees at no time authorized this letter.

(33)    Whether there was no policy or custom which caused Plaintiff's injury.

(34)    Whether Sauceda was a policy maker for BISD and whether only the majority of the Board of Trustees can act as policy makers for BISD and whether Plaintiff can make this burden under 42 USC §1983.

(35)    Whether Plaintiff's speech was a matter of public concern.

(36)    Whether the cost of the TPA's service was at no charge to BISD.

(37)    Whether there was no need for Board approval of the decision to appoint the TPA.

(38)    Whether Dr. Sauceda is a policymaker for BISD and whether only the Board of Trustees lawfully acting during an Open Meeting can create or implement policy for BISD.

(39)    Whether there was no custom, policy or practice which governed the sending of the Nov. 29, 2003 letter to Dino Chavez.

(40)    Whether Sauceda was acting with the authorization or approval of the BISD Board of Trustees at the time he wrote the Nov. 29, 2003 letter to Chavez.

(41)    Whether Defendant Sauceda's letter of November 29th and the follow up conversations Defendant Sauceda had with other representatives of AFLAC were in direct response to, or retaliation for, Mr. Chavez's submitting letters and speaking to the Board of Trustees during the public input sections of Board Meetings regarding the legality of Defendants' actions and their responsibility to the District and its employees to avoid paying unnecessary fees.

(42)    Whether BISD agreed to reconsider AFLAC's proposal, provided that AFLAC appointed another agent to service the account?

(43)   Whether because of the restrictions in Sauceda's November 29 letter, Mr. Chavez was not allowed to attend the Employee Insurance Meeting on November 29th.

(44)   Whether because of the restrictions in Sauceda's November 29 letter, Mr. Chavez has not returned to any BISD campus for fear of being arrested by campus security services.

(45)   Whether as a result of the TPA work Mr. Chavez had done, the employees voted overwhelmingly to select Mr. Chavez's AFLAC bid as the TPA, with 44 votes for AFLAC, 1 vote for NPA, and 0 votes for First Financial.

(46)   Whether Board Trustee Salazar opined that the "teacher's insurance commission voted 44 – 1 to keep AFLAC. In my opinion, this overwhelming show of support for AFLAC is the result of Mr. Chavez's excellent service and the continued dedication he personally has provided to our employees in the past."

(47)   Whether on or about December 3rd, four (4) days after Defendant Sauceda's letter, Mr. LaFemina notified Mr. Chavez that he was being terminated from his position of Regional Sales Coordinator.

(48)   Whether AFLAC sent another representative to a BISD school board meeting to present AFLAC's proposal for services for BISD and was granted the Section 125 Cafeteria Plan Services Contract for the 2002 calendar year.

(49)   Whether, in December 2001, AFLAC informed Dino Chavez that it was exercising its contractual rights to terminate Dino Chavez's Regional Sales Coordinator's Agreement at will and without cause, and would do so in thirty (30) days.

(50)   Whether Dino Chavez is still an independent insurance agent authorized to sell AFLAC products, and whether his 1994 Associate's Agreement is still in force and effect.

(51)   Whether Dino Chavez has ever been an employee of AFLAC.

(52)   Whether, at all times relevant to this lawsuit, Dino Chavez's relationship with AFLAC was that of an independent contractor.

(53)   Whether Dino Chavez was the Original Servicing Agent ("OSA") on the Brownsville Independent School District account for AFLAC from November of 1998 until AFLAC reassigned it in late November or early December of 2001 at the request of BISD.

(54)   Whether AFLAC's policies and procedures include the following statement in the definition of an OSA, "This agent may remain the OSA until AFLAC, in its sole discretion, transfers the account and assigns it to another associate for servicing."

(55)   Whether AFLAC's account service guidelines provide that "AFLAC may in its sole and absolute discretion, revoke or terminate an OSA's account designation and transfer an account to another associate or agent for servicing."

(56)    Whether, when Chavez set up the BISD account for AFLAC in November of 1998, he submitted to AFLAC the Insurance Program Acknowledgement Payroll Deduction form, which he signed as the OSA on the BISD account.

(57)    Whether, in the Insurance Program Acknowledgement Payroll Deduction form, which Dino Chavez signed as the OSA on the BISD account, Chavez stated, "I acknowledge that AFLAC has the sole and absolute right to determine who shall solicit and service payroll deduction accounts, and AFLAC may reassign any account for servicing and designate who may solicit applications from persons in the account."

(58)    Whether, at all times relevant to this lawsuit, AFLAC, in its sole discretion, retained the right to revoke or terminate an OSA's account designation and transfer the account and assign it to another associate or agent for servicing.

(59)    Whether, at all times relevant to this lawsuit, AFLAC had the sole and absolute right to determine who shall solicit and service payroll deduction accounts, and the right to reassign any account for servicing and designate who could solicit applications from persons in the account.

(60)    Whether, in the Associate's Agreement entered into by Dino Chavez and AFLAC, Dino Chavez agrees that either he or AFLAC may terminate the agreement at will, without cause, upon giving thirty days prior written notice to the other party.

(61)    Whether, in the Associate's Agreement entered into by Dino Chavez and AFLAC, Dino Chavez agrees that all accounts and records are and shall remain the property of AFLAC exclusively, both before and after the termination of the Agreement, and the Associate shall have no property rights therein.

(62)    Whether, in the Associate's Agreement entered into by Dino Chavez and AFLAC, Dino Chavez agrees that AFLAC has the absolute right to reassign any account for servicing and to designate who may solicit applications from persons in the account in its sole discretion.

(63)    Whether, in the Associate's Agreement entered into by Dino Chavez and AFLAC, Dino Chavez agrees that either he or AFLAC may terminate the agreement at will, without cause, upon giving thirty days prior written notice to the other party.

(64)    Whether, in the Regional Sales Coordinator's Agreement entered into by Dino Chavez and AFLAC, Dino Chavez agrees all of the provisions of his Associate's Agreement continue to be of full force and effect, and shall govern the Regional Sales Coordinator's Agreement in all respects except as expressly modified therein.

(65)    Whether, in the Regional Sales Coordinator's Agreement entered into by Dino Chavez and AFLAC, Dino Chavez ratified and reaffirmed all the provisions of his Associate's Agreement with AFLAC as fully and effectually as though the provisions thereof were set forth in the Regional Sales Coordinator's Agreement verbatim.

(66)    Whether, in the Regional Sales Coordinator's Agreement entered into by Dino Chavez and AFLAC, Dino Chavez expressly agreed that the Regional Sales Coordinator's

Agreement may be terminated subject to the termination conditions set forth in Chavez's Associate's Agreement.

(67)    Whether, the Regional Sales Coordinator's Agreement entered into by Dino Chavez and AFLAC was terminated in January of 2002 after Dino Chavez was given thirty days written notice.

(68)    Whether the actions of Defendants BISD and Sauceda violated Plaintiff Chavez's rights to free speech, pursuant to the First Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

(69)    The amount of actual damages to which Plaintiff Chavez is entitled from Defendants BISD and Sauceda, pursuant to 42 U.S.C. § 1983, if any.

(70)    Whether the actions of Defendant Sauceda constituted an intentional interference with Plaintiff Chavez's business relationships with AFLAC and/or BISD employees.

(71)    The amount of actual damages to which Plaintiff Chavez is entitled from Defendant Sauceda for the intentional interference with Plaintiff Chavez's business relationships, if any.

(72)    Whether the actions of Defendant Sauceda constituted a fraud on Plaintiff Chavez and BISD employees.

(73)    The amount of actual damages to which Plaintiff Chavez is entitled from Defendant Sauceda for a finding of fraud, if any.

(74)    Whether any written or spoken statements by Defendant Sauceda constituted libel or slander.

(75)    The amount of actual damages to which Plaintiff Chavez is entitled from Defendant Sauceda for his libel and/or slander, if any.

(76)    Whether the actions of Defendant Sauceda were such as to constitute the intentional infliction of emotional distress on Plaintiff Chavez.

(77)    The amount of actual damages to which Plaintiff Chavez is entitled from Defendant Sauceda for the intentional infliction of emotional distress, if any.

(78)    Whether the actions of Defendant Sauceda constituted fraud or malice, for purposes of awarding punitive damages.

(79)    The amount of punitive damages to which Plaintiff Chavez is entitled from Defendant Sauceda, if any.

(80)    The amount of contribution to which either BISD or Sauceda are entitled from AFLAC, if any.

(81)    Whether Plaintiff Chavez failed to mitigate his damages and, if so, the amount by which any of his actual damages should be reduced.

## VIII. AGREED PROPOSITIONS OF LAW

(1)    Plaintiff's lawsuit is premised on allegations of violation of the Reconstruction Era Civil Rights Act (42 U.S.C. § 1983).

(2)    BISD can not be sued under Sect. 1983 for an injury inflicted solely by its employees or agents. Only when the execution of BISD's policy or custom inflicts the injury complained of can BISD be sued under this statute. Monell v. Dept. of Soc. Services, 436 US 658, 694 S. Ct. 2018, 2037(1977.

(3)    Whether a particular official has "final policymaking authority" is a question of state law." City of St. Louis v. Praprotnik, 485 US 112, 123, 99 L. Ed. 2d 107, 108 S.Ct. 915(1988).

(4)    Under Section 1983, BISD cannot be held liable solely because it employs a tortfeasor or under a respondeat superior theory. Doe v. Dallas ISD, 153 F3d 211, 216 (5th Cir 1998).

(5)    Whether speech is entitled to First Amendment protection is a question of law. Wheeler v. Mental Health & Mental Retardation, 752 F.2d 1063, 1069(5th Cir. Tex. 1985).

(6)    Whether Chavez's speech addressed a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record. Rankin v. McPherson, 483 U.S. 378, 385, 107 S.Ct. 2891 (1987).

## IX.    CONTESTED PROPOSITIONS OF LAW

(1)    Chavez has the burden of prove to establish that: (1) BISD promulgated a policy; (2) a decision was made that displayed "deliberate indifference" and proved BISD's culpability; and (3) the decision led to the particular injury. *Foust v. Thigpen*, 317 F3d 849, 861 (5th Cir 2002).

(2)    A formal policy is a statement, ordinance, regulation or decision that is officially adopted and promulgated by the BISD Board of Trustee. *Foust v. Thigpen*, 317 F3d 849, 861 (5th Cir 2002).

(3)    In Texas it is clear that final policymaking authority in an independent school district, such as BISD, rests with the District's board of trustees. Texas Education Code Sect. 23.01, Sect. 23.36(b) and (d). *Jett v. Dallas Ind. School Dist.*, 7 F3d 1241, 1245 (5th Cir. Tex 1993).

(4)    For Chavez to establish a custom was violated, Chavez must show a persistent, wide spread practice of school district officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents school district policy. *Piotrowsky v. City of Houston*, 237 F3d 567, 579 (5th Cir. 2001) cert. den. 534 U.S. 820, 122 S.Ct. 53 (2001).

(5)     Dr. Sauceda, as the Superintendent, as a matter of law, was not a final policymaker when he wrote and sent the letter dated November 29, 2001. Jett 7 F3d 1245, *Pena v. Rio Grande City Consolidated Independent School District*, 616 S.W. 2d 658 (Tex. Civ. App -Eastland, 1981); *Hinojosa v. State*, 648 SW2D 380 (Tex. App.—Austin, 1983, discretionary review refused).

(6)     Speech involves a matter of public concern when it is made primarily in the speaker's role as a citizen then as an employee addressing matters of public concern. *Bitsoff v. City of Dallas*, 199 F3d 438, (N.D. Tex 1999).

(7)     The U.S. Constitution does not establish absolute rights to free expression of ideas. The free exercise of speech under the Constitution may be infringed on by the State if there are compelling reasons to so. *Ferrell v. Dallas Independent School District*, 392 F.2d 697(5th Cir. Tex. 1968).

(8)     "A plaintiff may also establish a custom or policy based on an isolated decision made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered." *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002), citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25, 108 S.Ct. 915, 924-25, 99 L.Ed.2d 107 (1988).

(9)     "[A] final decision maker's adoption of a course of action 'tailored to a particular situation and not intended to control decisions in later situations' may, in some circumstances, give rise to ... liability under §1983." *Foust v. Thigpen*, 310 F.3d at 862, *quoting Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 406, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) *quoting Pembaur v. Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986).

(10)    "[G]overnmental entities ... often spread policymaking authority among various officers and official bodies.  As a result, particular officers may have authority to establish binding ... policy respecting particular matters and to adjust that policy for the [entity] in changing circumstances.  To hold [an entity] liable for actions ordered by such officers exercising their policymaking authority is no more an application of the theory of *respondent superior* than was holding the municipalities liable for the decisions of the City Councils in *Owens* and *Newport*. In each case, municipal liability attached to a single decision to take unlawful action made by [the entity's] policymakers." *Pembaur v. Cincinnati*, 475 U.S. at 483, 106 S.Ct. at 1300.

(11)    Liability may attach to Defendant BISD for the actions of its Board or the actions of the person to whom it had delegated policymaking authority relating to the appointment of a TPA, Defendant Noe Sauceda.

(12)    There are three ways in which a policymaker's acts can create governmental liability. First, the policy requirement "is certainly met when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy," which policy is found to be unconstitutional. *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. at 417 (Souter, J., dissenting). Second, although no official policy may be promulgated, federal law can be violated by an act of a policymaker himself. "[T]he choice of [the] policy and its implementation are one, and the first or only action will suffice to ground municipal liability simply because it is the very policymaker who is acting." *Brown*, 520 U.S. at 417 (Souter, J., dissenting). The third manner in which the Supreme Court concluded a municipal policy can be established is where the policymaker has consciously omitted to act. *Brown*, 520 U.S. at 418 (Souter, J., dissenting). The most obvious example of this situation is where a policymaker sits on his hands after repeated, unlawful acts of subordinate officers and that failure "evidences a 'deliberate indifference' to the rights of [the municipality's] inhabitants," [because] the policymaker's toleration of the subordinates' behavior establishes a policy-in-practice just as readily attributable to the municipality as the one-act policy-in-practice described [in *Monell* and *Pembaur*]." *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 389-90 (1989)).

(13)    "Deliberate indifference is thus treated, as it is elsewhere in the law, as tantamount to intent, so that the inaction of a policymaker deliberately indifferent to a substantial risk of harm is equivalent to the intentional action that setting a policy presupposes." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. at 419 (Souter, J., dissenting).

(14)    "[P]roof that [an entity's] legislative body *or authorized decision maker* had intentionally deprived a Plaintiff of a federally protected right necessarily establishes that the [entity] acted culpably. Similarly, the conclusion that the action taken or directed by the [entity] *or its authorized decision maker* itself violates federal law will also determine that the [entity's] action was the moving force behind the injury of which the Plaintiff complains." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 1389, 137 L.Ed.2d 626 (1997) (emphasis added).

(15)    "If a program does not prevent constitutional violations, municipal decision makers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action - the 'deliberate indifference' - necessary to trigger municipal liability." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. at 407, 117 S.Ct. at 1390. *See also, Grandstaff v. City of Borger*, 767 F.2d 161, 171-72 (5th Cir. 1985), *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987).

(16)    Defendant Sauceda may not retaliate against an independent contractor such as Plaintiff Chavez for exercising his First Amendment rights. *O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996).

(17)   Defendants did not have an "absolute right to enforce a patronage scheme,...as a means of retaining control over independent contractors,...and satisfying governmental officials' concerns about reliability...." *O'Hare Truck Service, Inc. v. City of Northlake,* 518 U.S. 712, 726, 116 S.Ct. 2353, 2361, 135 L.Ed.2d 874 (1996).

(18)   A claim to immunity under Texas Education Code §22.051 is an affirmative defense, which Defendant Sauceda is required to conclusively establish as a matter of law. *Gonzalez v. Ison-Newsome,* 68 S.W.3d 2, 4 (Tex.App.- Dallas 1999, pet. denied w.o.j. sub nom. *Collins v. Ison-Newsome,* 73 S.W.3d 178 (Tex. 2001).

(19)   If Insurance Associates of the Valley were to be appointed as "agent of record," it would be entitled to recover a commission on the sale of every insurance policy sold to employees of BISD.  This would require all of the agents currently selling policies within the Plan to pay to Insurance Associates of the Valley all of their commissions, and if Insurance Associates of the Valley was not appointed to represent a particular insurance company, that company would not be authorized to sell policies under the Cafeteria Plan or at BISD.  *See* Tex. Ins. Code Article 21.02 (Vernon Supp. 2003*); Parrish v. Washington Nat'l Ins. Co.,* 421 S.W.2d 117 (Tex.Civ.App.- Ft. Worth 1967, writ ref'd n.r.e.).

(20)   The authority of school districts to designate agents or brokers of record to purchase insurance as BISD was attempting to do through the appointment of Insurance Associates of the Valley had been previously discussed by the Texas Attorney General. *See* Op. Tex. Att'y Gen. No. JC-0205 (2000).  As that Opinion concluded, a "district may not use a designated broker of record to purchase insurance contracts with premiums of an aggregate value of $10,000 or more for each 12-month period." *Id.*, p.5.  That Opinion also referenced Texas Education Code §44.031(a), which provides that "all school district contracts ... valued at $25,000 or more in the aggregate for each 12-month period shall be made by the method, of the following methods, that provide the best value for the district ...." *See also*, BISD Policy CH (LEGAL).  Those options included competitive bidding, but did not allow for appointment by a Superintendent.  TEX. EDUC. CODE §44.031(a); BISD Policy CH (LEGAL).

(21)   Because the use of a designated broker of record will necessarily limit the number of companies from which the district may purchase insurance, it may foreclose the district's access to the most advantageous rates and terms." Op. Tex. Att'y Gen. No. JC-0205, p.2 (2000).

(22)   [B]ecause use of a designated broker of record is not authorized by [Education Code] sections 44.031 and 44.033, a junior college district may not use a designated broker of record to purchase insurance contracts with premiums with an aggregate yearly value of $10,000 or more.  A district must use one of the methods listed in section 44.031 if purchasing insurance contracts with premiums of $25,000 or more in the aggregate for each twelve-month period. Op. Tex. Att'y Gen. No. JC-0205, p.5 (2000).

(23)   BISD Policy CH (Legal) and Texas Education Code 44.031 provides that only contracts over $10,000 are subject to the Open Bidding Laws in the State of Texas.

(24)   BISD Policy CH (Legal) and Texas Education Code Chapter 44 provide that the Superintendent is given the authority to: "determine the method of purchase in accordance with CH (Legal), and to make budgeted purchases. However, any purchase that costs or aggregates to a cost of $10,000.00 or more, shall require board approval before a transaction may take place."

(25)   There is no authority that Op. Tex. Att'y Gen. No. JC-0205, (200), applies to the appointment of a TPA for either Section 125 or 403b services.

(26)   School District Contracts "valued at $25,000 or more" must be made by the method "that provides the best value for the district," including competitive bids, and not including independent selection by a superintendent. Tex. Educ. Code § 44.031(a).

(27)   Although Attorney General opinions "do not carry the force of law, they are entitled to be given considerable weight in determining the proper construction of statutes." *City of Houston v. Southern Pacific Transp. Co.*, 504 S.W.2d 554, 557 (Tex.App.- Houston [14th Dist.] 1974, writ ref'd n.r.e.).

(28)   The attorney general opinion relied on by Plaintiff does not apply to the RFQ at issue because BISD was not "purchasing insurance contracts with premiums of $25,000 or more in the aggregate for each twelve-month period" as referenced in the opinion.

(29)   Because there is no value or cost to the district, it is legal to appoint a Third Party Administer to administer Section 403b services for a school district.

(30)   There are no policies or delegation of authority to the Superintendent to end a contract formally entered into by the Board of Trustees.

(31)   A contract for TPA services at no charge to the school district is not required to go through the Competitive Bidding laws or required to  be selected by the BISD Board of Trustees.

(32)   IRS regulations applicable in 2001 provided that school districts could elect to have their employees receive the benefits of tax deferred purchases of annuity contracts pursuant to I.R.C. §403(b) either through the form of an "arrangement" or a formalized "summary plan description;" otherwise, their "involvement in the Plan is strictly limited to providing a list of insurance carriers to employees and executing salary reduction agreements." IRS Plan Examination Guidelines Handbook, No. 7.7.1, §13.1.1.1(2).

(33)   "[T]he State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); *Blackburn v. City of Marshall*, 42 F.3d 925, 931-32 (5th Cir. 1995).

(34)   The test developed in *Pickering* was designed to apply to a public employee, a teacher, who was commenting on matters of public concern relating to the State, her employer, and required the balancing of her right to speak on matters of public interest with the State's need to promote the efficiency of the services it performs through its employees. *Pickering v. Board of Education*, 391 U.S. at 568-69, 88 S.Ct. 1734-35. That court acknowledged, however, that the same test would not apply "were [Plaintiff] a member of the general public...." *Id.*

(35)   The Supreme Court in *Perry* and the Fifth Circuit in *Blackburn* both concluded that the First Amendment analysis applicable to an independent contractor, such as the Plaintiff herein, is the more generalized question of whether Defendants acted or denied a benefit to Plaintiff because of his "constitutionally protected speech or associations...." *Perry v. Sindermann*, 408 U.S. at 597, 92 S.Ct. at 2697 (untenured teacher); *Blackburn v. City of Marshall*, 42 F.3d at 933 (independent owner of towing and wrecker service business alleging facts similar to Plaintiff herein) ("we conclude that the relationship between [Plaintiff] and Defendants does not rise to the level of even a quasi-employment relationship like that in the medical staff privileges cases. Accordingly, we hold that the facts of this case are not sufficiently analogous to the employment cases to warrant the direct and full application of *Pickering* and *Connick*.") Accordingly, the *Perry* standard should apply, rather than the *Pickering* balancing test.

(36)   Plaintiff Chavez must show that the termination of his contract was motivated by his speech on a matter of public concern, an initial showing that requires him to prove more than the mere fact that he criticized the Board Members before they terminated him. If he can make that showing, the Board will have a valid defense if it can show, by a preponderance of the evidence, that, in light of their knowledge, perceptions, and policies at the time of the termination, the Board Members would have terminated the contract regardless of his speech. [citation omitted] The Board will also prevail if it can persuade the District Court that [BISD's] legitimate interests as contractor, deferentially viewed, outweighed the free speech interests at stake." *Id.*, 518 U.S. at 685, 116 S.Ct. at 685-86, *citing Mt. Healthy City Bd. of Ed v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

(37)   As the Supreme Court has held, even where a public citizen has no "right" to a valuable government benefit, and though the government may have a number of valid reasons for denying him that benefit, the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests--especially, his interests in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech, his exercise of that freedom would in effect be penalized and inhibited. This would allow the government to 'produce a result which [it] could not command directly.'" *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972), *quoting Speiser v. Randall*, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958).

(38)   The First Amendment protects speech "not only [from] direct limitations ... but also [from] adverse government action against individual[s] because of [their] speech]," which would include denying public benefits to Plaintiff or punishing him because of his speech. *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999).

(39)    BISD policies provide that "only those persons (on this [Public Audience Sign-In Sheet] list) who request to speak shall be heard. The speaker shall limit remarks to 5 minutes."

(40)    BISD Policy BED (Local) provides that the Board shall allot no more than 30 minutes for the public audience portion of a public meeting. The practice of the Board of Trustees is when there are more than six persons signed up for public audience, than the amount of time shall be reduced accordingly.

(41)    Chavez was an independent contractor for ALAC, who was a vendor and bidder for BISD, and therefore, his claims under the First Amendment should be considered under the Balancing test set out in *Pickering v. Board of Education*, 391 U.S. 563, 570-72, 20 L.Ed. 2d 811, 88 S.Ct. 1731, 1735-37 (1968).

(42)    The balancing test set out in *Pickering* requires the following factors are to be considered in striking a balance between the interests of the employer and the employee/independent contractor's right of free speech:

a.    the parties working relationship;
b.    the detrimental effect of the speech on the employer; and
c.    the nature of the speech, the person's relationship to the speech, and the value of the speech to the public.

*Pickering*, 391 U.S. at 570-72.

(43)    In performing the Pickering Balancing test, pertinent considerations are whether the statement impairs discipline by superiors or harmony among co-workers, have a detrimental impact on close relationships from which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise. *Pickering*, 88 S.Ct. 1731; *Braxton v. City of Dallas*, 272 F3d 730 (5th Cir. Tex. 2001).

(44)    Charges of illegal conduct that are made with knowledge of their falsehood or with reckless disregard of whether they are false or not, are not constitutionally protected. *Colson v. Grohman*, 174 F3d 498, 507 (5th Cir. 1999) *citing Monitor Patriot Co. V. Roy*, 401 U.S. 265, 277, 28 L.Ed.2d 35, 91 S. Ct. 612 (1971).

(45)    In the event the Court determines that Chavez spoke not as a citizen on matters of public concern, but instead as an employee on matter of personal interest, then Chavez is not extended First Amendment protection. *Connick v. Myers*, 461 US 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).

(46)    BISD Policy BED (Local) provides that the Board shall allot no more than 30 minutes for the public audience portion of a public meeting. The practice of the Board of Trustees is when there are more than six persons signed up for public audience, than the amount of time shall be reduced accordingly.

(47)    A defendant accused of violating 42 U.S.C. §1983 cannot seek contribution or indemnity, as a matter of law. *Wright v. B.J. Reynolds*, 703 F. Supp. 583, 591 (N.D. Tex. 1988); *Mason v. City of New York*, 949 F. Supp. 1068, 1079 (S.D.N.Y. 1996).

(48)    Contribution is a tort-based notion, and contribution is appropriate only among joint tort-feasors. Hence, a party whose obligations are contract-based cannot be subject to a claim for contribution if those obligations are allegedly breached. TEX. CIV. PRAC. & REM. CODE § 33.002(a); *Bonniwell v. Beach Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984); *CBI NA-CON, Inc. v. UOP Inc.*, 961 S.W.2d 336 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

(49)    Whether Defendants BISD or Sauceda are entitled to contribution from AFLAC pursuant to Chapter 33 of the Texas Civil Practice and Remedies Code.

(50)    Whether Plaintiff's contention that he has a claim for discrimination against AFLAC under 42 U.S.C. § 1981(a) is properly before this Court, where no party has so asserted in a claim, cross-claim, counter-claim, or third-party claim.

(51)    If such § 1981(a) claim is before this Court, whether this case must be stayed and arbitration compelled.

(52)    If this case is not stayed to compel arbitration, whether AFLAC is entitled to file a motion for summary judgment concerning the § 1981(a) claim.

(53)    Whether BISD or, if allowed to amend and file a third-party claim against AFLAC, Sauceda can, as a matter of law, sustain a third-party claim against AFLAC for contribution or indemnity.

(54)    The amount of attorney's fees to which Plaintiff Chavez is entitled, pursuant to the Reconstruction Era Civil Rights Act (42 U.S.C. § 1988).

(55)    Whether, AFLAC had the right to terminate the Regional Sales Coordinator's Agreement entered into by Dino Chavez and AFLAC without cause upon thirty day's prior written notice.

(56)    Whether AFLAC had the right to reassign the BISD account to another AFLAC agent for enrollment.

## X.   EXHIBITS

(1)    Plaintiff's Exhibit List is attached as "Exhibit P-A."

(2)    Defendant/Third Party Plaintiff BISD's Exhibit List is attached as "Exhibit D1-A."

(3)    Defendant SAUCEDA's Exhibit List is attached as "Exhibit D2-A."

(4)    Third-Party Defendant AFLAC's Exhibit List is attached as "Exhibit D3-A."

## XI.  WITNESSES

(1)    Plaintiff's Witness List is attached as "Exhibit P-B."

(2)    Defendant/Third Party Plaintiff BISD's Witness List is attached as "Exhibit D1-B."

(3)    Defendant SAUCEDA's Witness List is attached as "Exhibit D2-B."

(4)    Third-Party Defendant AFLAC's Witness List is attached as "Exhibit D3-B."

## XII.  SETTLEMENT

Although mediation has been attempted, attempts to settle this action have not been successful.  This case will therefore have to be tried.

## XIII.  TRIAL

The trial of this case is expected to last approximately ten (10) days, exclusive of jury selection.  The parties are unaware at this time of any special logistical problems affecting the trial of this case. Mr. Steele, lead counsel for AFLAC, has a scheduling conflict within the trailing docket.  Prior to the Court's entry of the current scheduling order setting the trial date for this lawsuit, Mr. Steele had an arbitration scheduled for January 26-28, 2004.  The parties to that suit have scheduled mediation on January 5, 2004; if that dispute does not settle, the matter will have to be tried to the arbitrators on January 26-28, 2004.

AFLAC expects to call witnesses from Columbus, Georgia, Salt Lake City, Utah, Austin, Texas, and College Station, Texas, all of whom will require at least a day's travel to arrive in Brownsville to attend Court, and they will need at least a day's advance warning to arrange for their travel to Brownsville. Accordingly, AFLAC requests that it have at least 48-hours notice prior to being called to trial, and preferably 72 hours. AFLAC requests the use of an easel in the courtroom for display of blow-ups of exhibits.

# XIV. ATTACHMENTS

(A)     Plaintiff's Proposed Questions for Voir Dire examination are attached as "Exhibit P-C."

(B)     Defendant/Third Party Plaintiff BISD's Proposed Questions for Voir Dire examination are attached as "Exhibit D1-C."

(C)     Defendant SAUCEDA's Proposed Questions for Voir Dire examination are attached as "Exhibit D2-C."

(D)     Third-Party Defendant's AFLAC's Proposed Questions for Voir Dire examination are attached as "Exhibit D3-C."

(E)     Plaintiff's Proposed Charge, including instructions, definitions and special interrogatories, with authorities are attached as "Exhibit P-D."

(F)     Defendant/Third Party Plaintiff BISD's Proposed Charge, including instructions, definitions and special interrogatories, with authorities are attached as "Exhibit D1-D."

(G)     Defendant SAUCEDA's Proposed Charge, including instructions, definitions and special interrogatories, with authorities are attached as "Exhibit D2-D."

(H)     Third-Party Defendant AFLAC's Proposed Charge, including instructions, definitions and special interrogatories, with authorities are attached as "Exhibit D3-D."

_____

**UNITED STATES DISTRICT JUDGE**

By: _____

J. Arnold Aguilar
State Bar No. 00936270
Federal Adm. No. 6822
Attorney for Plaintiff DINO X. CHAVEZ


By: _____

Elizabeth G. Neally
State Bar No. 14840400
Federal Adm. No. 8044
Attorney for Defendant/Third Party Plaintiff BISD


By: _____

Eileen M. Leeds
State Bar No. 00791093
Federal Adm. No. 16799
Attorney for Defendant NOE SAUCEDA


By: _____

William B. Steele, III
State Bar No. 19107400
Federal Adm. No. 8019
Attorney for Third-Party Defendant AFLAC

# "EXHIBIT P-A"

Plaintiff's Exhibit List

| UNITED STATES DISTRICT COURT | ✳ | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

| | |
|---|---|
| Dino X. Chavez,<br>　　　　　　　Plaintiff<br>*versus*<br>Brownsville Independent School District,<br>Noe Sauceda,<br>　　　　　　Defendants/Third Party Plaintiffs<br>*versus*<br>American Family Life Assurance Company of<br>Columbus (AFLAC),<br>　　　　　　　Third-Party Defendant | CASE NO.   B – 02 - 128 |
| | **EXHIBIT LIST** |
| | Case Manager: Stella Cavazos<br>Court Reporter: |
| Judge Hilda G. Tagle | Proceeding　　　　　　　　Date |
| **List for Plaintiff Dino X. Chavez** | |

| No. | Description | Adm | Exd |
|---|---|---|---|
| 1 | BISD 2001 RFQ for TPA to Administer Cafeteria Plan and Tax Deferred Annuities | | |
| 2 | BISD RFQ change 8/14/01 | | |
| 3 | BISD RFQ change 8/15/01 | | |
| 4 | Chavez/AFLAC 2001 TPA bid proposal (selected pages) | | |
| 5 | Chavez/AFLAC 1998 TPA bid proposal (selected pages) | | |
| 6 | Chavez/AFLAC 1999 TPA bid proposal (selected pages) | | |
| 7 | Overview of AFLAC/Employer Responsibilities | | |
| 8 | NPA 2001 TPA bid proposal (selected pages) | | |
| 9 | BISD 1998 RFP for Cafeteria Plan | | |
| 10 | NPA 1997 TPA bid proposal (selected pages) | | |
| 11 | "Budget" Insurance Group flyer | | |
| 12 | Comparison of Cafeteria Plan Proposals 9/16/98 | | |
| 13 | 1998 TPA Recommendation | | |
| 14 | 2001 Organizational Chart | | |
| 15 | Lehmann memo to Colunga 9/7/01 | | |
| 16 | Colunga letter to Sauceda 2/13/02 | | |
| 17 | 2001 BISD Attorney Contract | | |
| 18 | Chavez Memo to BISD Insurance Committee 9/6/01 | | |
| 19 | Chavez Letters to Emerson, Powers, Lehmann & Del Bosque-Gilbert 9/10/01 | | |
| 20 | Chavez Letters to Colunga & Salazar 9/10/01 | | |
| 21 | Insurance Committee Meeting minutes 10/30/01 | | |
| 22 | BISD Board Meeting Agenda 10/30/01 | | |

| 23 | BISD Board Meeting Minutes 10/30/01 | | |
|----|---|---|---|
| 24 | Cafeteria Plan Comparison Chart | | |
| 25 | Chavez Letter to Insurance Committee Representatives 11/9/01 | | |
| 26 | Chavez Letter to Insurance Committee Representatives 11/12/01 | | |
| 27 | Lopez Memo to Asst. Superintendents, et al., 11/5/01 | | |
| 28 | BISD Board Meeting Minutes 11/13/01 (excerpts) | | |
| 29 | BISD Board Meeting 11/13/01 transcript (Public Audience excerpts) | | |
| 30 | Why AFLAC? Flyer | | |
| 31 | Chavez Letter to Insurance Committee Representatives 11/19/01 | | |
| 32 | Texas AG Opinion JC-0205 | | |
| 33 | BISD Board Meeting Agenda 11/20/01 | | |
| 34 | 11/20/01 TPA Recommendation | | |
| 35 | BISD Board Meeting Minutes 11/20/01 | | |
| 36 | Insurance Associates of the Valley Letter to BISD 11/20/01 | | |
| 37 | BISD Policy BED(E) | | |
| 38 | Public Audience Sign-In Sheet 11/20/01 | | |
| 39 | Certification of Norma Lee Ortiz | | |
| 40 | Videotape recording of BISD Board Meeting 11/20/03 | | |
| 41 | Chavez Letter to Insurance Committee Representatives 11/27/01 | | |
| 42 | Sauceda Memo to Board of Trustees 11/29/01 | | |
| 43 | Sauceda Letter to Chavez 11/29/01 | | |
| 44 | BISD Employee Insurance Committee Meeting Minutes 11/29/01 | | |
| 45 | Insurance Committee Meeting Minutes 11/29/01 (Barrera) | | |
| 46 | Lopez Memo to All Departments 12/3/01 | | |
| 47 | BISD Board Meeting Minutes 12/4/01 | | |
| 48 | Baker Letter to Lehmann 1/8/02 | | |
| 49 | Colunga e-mail to Baker 2/6/02 | | |
| 50 | Lehmann Letter to Baker 1/15/02 | | |
| 51 | Salazar Letter to Baker 1/22/02 | | |
| 52 | Powers Letter to Baker 1/16/02 | | |
| 53 | Herrera, et al. Memo to Pineda 8/29/02 | | |
| 54 | Pizano-Flores Memo to Gonzalez 11/25/02 | | |
| 55 | Recommendation of the Hearing Examiner 3/4/03 | | |
| 56 | Sanchez Memo to Chavez 12/1/01 | | |
| 57 | LaFemina e-mail to Team, 12/1/01 | | |
| 58 | LaFemina e-mail to Team, 12/2/01 | | |
| 59 | LaFemina e-mail to Chavez 12/2/01 | | |
| 60 | Chavez Letter to Amos 12/2/01 | | |
| 61 | Chavez e-mail to Barnson 12/4/01 | | |
| 62 | Chavez Letter to Amos 12/4/01 | | |
| 63 | Change in Status Form | | |
| 64 | Willis Letter to Chavez 12/5/01 | | |
| 65 | Steele Letter to Rodriguez 12/7/01 | | |
| 66 | Sanchez Letter to LaFemina 12/19/01 | | |

| 67 | LaFemina e-mail to Davis 12/19/01 | | |
| 68 | Douglas Letter to Chavez re: termination of RSC position 12/28/01 | | |
| 69 | Douglas Letter to Chavez re: termination of RSC position 1/28/02 | | |
| 70 | Chavez Letter to Barnson 1/4/02 | | |
| 71 | Willis Letter to Chavez 1/14/02 | | |
| 72 | Tape Recording of Conversation Between Garza & Levine | | |
| 73 | Transcript of Tape Recording of Conversation Between Garza & Levine | | |
| 74 | TXC Administrator e-mail to Davila, et al. 8/27/03 | | |
| 75 | LaFemina Letter to Sanchez 9/11/02 | | |
| 76 | Sanchez Letter to LaFemina 9/16/02 | | |
| 77 | 1998 RSC Year-to-Date Actual Sales vs MPI | | |
| 78 | Texas South 1999 Business Plan | | |
| 79 | Escobar 2001 Business Plan (excerpts, with LaFemina notes) | | |
| 80 | AFLAC 2003 Financial Analysts Briefing (excerpts) | | |
| 81 | County Comparison With Sales and Penetration | | |
| 82 | At a glance… Texas Central | | |
| 83 | Report of Dr. Stephen M. Horner 9/19/03, with attachments | | |
| 84 | Initial Report of Dr. Stephen M. Horner 5/15/03, with attachments | | |
| 85 | Chavez AFLAC Awards & Recognition through 2/02 | | |
| 86 | Copies of AFLAC referencing Awards and Recognition | | |
| 87 | Barnson Card to Chavez 9/26/00 | | |
| 88 | Barnson Card to Chavez re: Pride Award | | |
| 89 | Barnson Letter to Chavez 6/15/00 | | |
| 90 | Barnson Card to Chavez 2/2/01 | | |
| 91 | Barnson Letter to Chavez 10/29/01 | | |
| 92 | Kuechenmeister Memo to Chavez 1/25/02 | | |
| 93 | Kuechenmeister Memo to Chavez 1/28/02 | | |
| 94 | Barnson Card to Chavez 2/6/02 | | |
| 95 | Deposition Transcript of Noe Sauceda 4/9/03 | | |
| 96 | Videotape of Deposition of Noe Sauceda 4/9/03 | | |
| 97 | Deposition Transcript of Noe Sauceda 6/17/03 | | |
| 98 | Videotape of Deposition of Noe Sauceda 6/17/03 | | |
| 99 | Deposition Transcript of Leonel Lopez 3/26/03 | | |
| 100 | Videotape of Deposition of Leonel Lopez 3/26/03 | | |
| 101 | Deposition Transcript of Leonel Lopez 5/20/03 | | |
| 102 | Videotape of Deposition of Leonel Lopez 5/20/03 | | |
| 103 | Deposition Transcript of Lynn Barnson | | |
| 104 | Videotape of Deposition of Lynn Barnson | | |
| 105 | Deposition Transcript of Frank D. LaFemina 5/22/03 | | |
| 106 | Videotape of Deposition of Frank D. LaFemina 5/22/03 | | |
| 107 | Deposition Transcript of Frank D. LaFemina 8/21/03 | | |
| 108 | Videotape of Deposition of Frank D. LaFemina 8/21/03 | | |
| 109 | Deposition Transcript of Ron Levine | | |
| 110 | Videotape of Deposition of Ron Levine | | |

| 111 | Deposition Transcript of Joe Colunga, III | | |
|-----|-------------------------------------------|--|--|
| 112 | Videotape of Deposition of Joe Colunga, III | | |
| 113 | Deposition Transcript of Herman Otis Powers | | |
| 114 | Videotape of Deposition of Herman Otis Powers | | |
| 115 | Deposition Transcript of Hector Gonzalez | | |
| 116 | Videotape of Deposition of Hector Gonzalez | | |
| 117 | Deposition Transcript of Kenneth Lieck | | |
| 118 | Videotape of Deposition of Kenneth Lieck | | |
| 119 | Deposition Transcript of Donald R. House | | |
| 120 | Videotape of Deposition of Donald R. House | | |
| 121 | Deposition Transcript of Stephen Horner | | |
| 122 | Deposition Transcript of Dino X Chavez 3/4/03 | | |
| 123 | Videotape of Deposition of Dino X. Chavez 3/4/03 | | |
| 124 | Deposition Transcript of Dino X Chavez 3/19/03 | | |
| 125 | Videotape of Deposition of Dino X. Chavez 3/19/03 | | |
| 126 | | | |
| 127 | | | |
| 128 | | | |
| 129 | | | |
| 130 | | | |
| 131 | | | |
| 132 | | | |
| 133 | | | |
| 134 | | | |
| 135 | | | |
| 136 | | | |
| 137 | | | |
| 138 | | | |
| 139 | | | |
| 140 | | | |

# "EXHIBIT D1-A"

Defendant BISD's Exhibit List

IN THE UNITED STATES DISTRICT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DINO CHAVEZ | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-02-128 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, and NOE SAUCEDA, | § | |
| | § | |
| ------------------------------------------------------- | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
|          Third-Party Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| AMERICAN FAMILY LIFE INSURANCE | § | |
| COMPANY OF COLUMBUS (AFLAC), | § | |
|          Third-Party Defendant. | § | |
| | § | |

## EXHIBIT LIST
## OF DEFENDANT BROWNSVILLE INDEPENDENT SCHOOL DISTRICT

**ROERIG, OLIVEIRA & FISHER, L.L.P.**
855 W. Price Road, Suite 9
Brownsville, Texas 78520
Telephone: (956) 542-5666
Facsimile: (956) 542-0016

Attorneys for Brownsville Independent School District

By_____
Elizabeth G. Neally
Texas Bar No. 14840400
Federal Bar No. 8044
Ricardo Morado
State Bar #14417250
Fed. ID #1213

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing EXHIBIT LIST OF DEFENDANT BROWNSVILLE INDEPENDENT SCHOOL DISTRICT has been served to counsel of record, to wit:

Mr. J. Arnold Aguilar
**Law Offices of J. Arnold Aguilar**
Artemis Square, Suite H-2,
1200 Central Boulevard
Brownsville, Texas 78520
Via Hand-Delivery

Ms. Eileen Leeds
**Willette & Guerra**
3505 Boca Chica Boulevard, Suite 460
Brownsville, Texas 78521
Via Hand-Delivery

Mr. William B. Steele, III
**LOCKE, LIDDELL & SAPP**
100 Congress Avenue, Suite 300
Austin, Texas 78701
Via Over Night Delivery Service

on this ___19___ day of December, 2003.

Elizabeth G. Neally

| EXHIBIT # | DESCRIPTION | ADMITTED | EXCLUDED | OBJ |
|---|---|---|---|---|
| 1 | Associate Agreement between Dino Chavez and AFLAC | | | |
| 2 | Regional Sales Coordinator Agreement between Dino Chavez and AFLAC | | | |
| 3 | Reimbursement Services Agreement between BISD and AFLAC | | | |
| 4 | Request for Qualifications (RFQ's) for TPA to Administer BISD's Cafeteria Plan (Section 125) and Tax Deferred Annuities | | | |
| 5 | Addendum #1 for RFQ #012-02, Request for Qualification (RFQ's) for TPA to Administer BISD's Cafeteria Plan (Section 125) and Tax Deferred Annuities | | | |
| 6 | Addendum #2 for RFQ #012-02, Request for Qualification (RFQ's) for TPA to Administer BISD's Cafeteria Plan (Section 125) and Tax Deferred Annuities | | | |
| 7 | BED [Local] - BISD Board Policy | | | |
| 8 | BF [Local] - BISD Board Policy | | | |
| 9 | CH [Legal] - BISD Board Policy | | | |
| 10 | CH [Local] - BISD Board Policy | | | |
| 11 | GKD [Local] - BISD Board Policy | | | |
| 12 | GF [Local] - BISD Board Policy | | | |
| 13 | GKA [Local] - BISD Board Policy | | | |
| 14 | GKC [Local] - BISD Board Policy | | | |

| EXHIBIT # | DESCRIPTION | ADMITTED | EXCLUDED | OBJ |
|---|---|---|---|---|
| 15 | Correspondence from Herman Otis Powers dated January 16, 2002 to Janet Baker | | | |
| 16 | Correspondence from Linda Salazar to Janet Baker dated January 22, 2002 | | | |
| 17 | Correspondence from Pat Lehman to Janet Baker dated January 15, 2002 | | | |
| 18 | Email correspondence from Joe Colunga to Janet Baker dated February 6, 2002 | | | |
| 19 | CD Rom - Public Audience and transcription of Andrus address at November 13, 2001, Brownsville Independent School District Meeting | | | |
| 20 | CD Rom - Public Audience and transcription of Andrus address at November 20, 2001, Brownsville Independent School District Meeting | | | |
| 21 | Correspondence dated September 10, 2001 from Chavez to various Board Members | | | |
| 22 | Correspondence dated November 9, 2001 from Chavez to Brownsville Independent School District Insurance Committee Campus Representatives | | | |
| 23 | Correspondence dated November 12, 2001 from Chavez to Insurance Committee Campus Representatives | | | |

| EXHIBIT # | DESCRIPTION | ADMITTED | EXCLUDED | OBJ |
|---|---|---|---|---|
| 24 | Correspondence dated November 19, 2001 from Chavez to Brownsville Independent School District Insurance Committee Campus Representatives | | | |
| 25 | Correspondence dated November 27, 2001 from Chavez to Insurance Committee Campus Representatives | | | |
| 26 | Correspondence from Superintendent Noe Sauceda to Dino Chavez dated November 29, 2001 | | | |
| 27 | RFQ Certificate Plan signed by AFLAC representative Michele Weed | | | |
| 28 | Correspondence from Dino Chavez to Wilkinson dated August 10, 2001 | | | |
| 29 | Email correspondence from LaFemina referred to as Exhibit 2 in his deposition | | | |
| 30 | Email correspondence from LaFemina referred to as Chavez 36 in his deposition | | | |
| 31 | NPA 1997 Cafeteria Plan Proposal | | | |
| 32 | AFLAC/Chavez 1998 Cafeteria Plan Proposal | | | |
| 33 | AFLAC/Chavez 2001 Cafeteria Plan Proposal | | | |
| 34 | 2001 RFQ for TPA | | | |
| 35 | 8/14/01 RFQ change | | | |
| 36 | 8/15/01 RFQ change | | | |

| EXHIBIT # | DESCRIPTION | ADMITTED | EXCLUDED | OBJ |
|---|---|---|---|---|
| 37 | Insurance Commission Meeting Minutes of 10/30/01 | | | |
| 38 | Special Called Board Meeting Minutes of 10/30/01 | | | |
| 39 | BISD Meeting Excerpts of 11/13/01 | | | |
| 40 | Excerpts from BISD Board Meeting Minutes of 11/13/01 | | | |
| 41 | BISD Board Meeting Agenda of 11/20/01 | | | |
| 42 | BISD Board Meeting Minutes of 11/20/01 | | | |
| 43 | Employee Insurance Commission Meeting Minutes of 11/29/01 | | | |
| 44 | Employee Insurance Commission Meeting Minutes of 11/29/01 | | | |
| 45 | Janet Baker's Letter of 01/08/02 | | | |
| 46 | Email correspondence from Dino Chavez to Dana Sieg dated December 3, 2001 | | | |
| 47 | Email correspondence from Dino Chavez to Frank LaFemina dated December 1, 2, or 3, 2003 | | | |
| 48 | Portion of Videotape of 11/13/01 BISD Board Meeting pertaining to Public Audience Speech by Dino Chavez | | | |
| 49 | Portion of Videotape of 11/20/01 BISD Board Meeting pertaining to Public Audience Speech by Dino Chavez | | | |
| 50 | Memo from Daniel Sanchez, AFLAC to Dino Chavez dated 12/01/01 | | | |

| EXHIBIT # | DESCRIPTION | ADMITTED | EXCLUDED | OBJ |
|---|---|---|---|---|
| 51 | Letter from Dino X. Chavez to Dan Amos, AFLAC dated 12/02/01 with two (2) email attached: <br> -Frank LaFemina <br> -from Frank LaFemina to Dino Chavez dated 12/02/01 | | | |
| 52 | Email from Frank LaFemina to Mitch Whitman, et al dated 12/02/01 | | | |
| 53 | Email from Dino X. Chavez to Dana Sieg (not dated) | | | |
| 54 | Letter from Dino X. Chavez to Dan Amos, AFLAC, dated 12/04/01 | | | |
| 55 | Letter from Ted Rodriguez, Jr. To Noe Sauceda, BISD dated 12/04/01 with attachments | | | |
| 56 | Letter from Jefferson W. Willis, AFLAC to Dino X. Chavez dated 12/05/01 | | | |
| 57 | Letter from William B. Steele, III to Ted Rodriguez, Jr. dated 001242-001244 | | | |
| 58 | Email from Janet Baker to Paulette Briggs dated 12/27/01 with attachments of Change in Status Form | | | |
| 59 | Notice letter from F. Karl Douglass to Dino X. Chavez dated 12/28/01 | | | |
| 60 | Letter from Dino X. Chavez to Lynn Barnson/AFLAC dated 01/04/02 | | | |

| EXHIBIT # | DESCRIPTION | ADMITTED | EXCLUDED | OBJ |
|---|---|---|---|---|
| 61 | Notice letter from F. Karl Douglass to Dino X. Chavez dated 01/28/02 | | | |
| 62 | 1099 Miscellaneous Income Statements 1996 - 2002 | | | |
| 63 | Recommendation of Termination by Frank LaFemina dated 11/04/03 | | | |
| | | | | |

# "EXHIBIT D2-A"

## Defendant Sauceda's Exhibit List

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DINO X. CHAVEZ                              §
                                           §
                                           §
VS.                                        §
                                           §          CIVIL ACTION NO.  B-02-128
                                           §          JURY REQUESTED
BROWNSVILLE INDEPENDENT                     §
SCHOOL DISTRICT AND                        §
NOE SAUCEDA                                 §
                                           §
VS.                                        §
                                           §
AMERICAN FAMILY LIFE INSURANCE             §
COMPANY OF COLUMBUS (AFLAC)                 §

---

## DEFENDANT NOE SAUCEDA'S EXHIBIT LIST

---

Respectfully submitted,

Willette & Guerra, L.L.P.
International Plaza, Ste. 460
3505 Boca Chica Blvd.
Brownsville, Texas 78521
Telephone:  (956) 541-1846
Facsimile:  (956) 541-1893

By: _Eileen M. Leeds up nnn_
    Eileen M. Leeds
    State Bar No. 00791093
    USDC Adm. No. 16799

**ATTORNEYS FOR DEFENDANT
NOE SAUCEDA**

02-156 CHAVEZ: Exhibitlist
PAGE 1

## CERTIFICATE OF SERVICE

I hereby certify that on this the **9th** day of December, 2003, a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record as noted hereunder.

Mr. J. Arnold Aguilar
Law Offices of J. Arnold Aguilar
Artemis Square, Ste. H-2
1200 Central Blvd.
Brownsville, Texas 78520

Ms. Elizabeth G. Neally
Roerig, Oliveira, & Fisher, L.L.P.
855 W. Price Road, Ste. 9
Brownsville, Texas 78520

Mr. William B. Steele, III
Locke, Liddell & Sapp, L.L.P.
100 Congress Ave., Suite 300
Austin, Texas 78701

Eileen M. Leeds

02-156 CHAVEZ: Exhibitlist
PAGE 2

| EXHIBIT # | DESCRIPTION | STIP | WITNESS | OBJ | ADMITTED |
|---|---|---|---|---|---|
| 1-A | Associate Agreement between Dino Chavez and AFLAC | | | | |
| 1-B | Regional Sales Coordinator Agreement between Dino Chavez and AFLAC | | | | |
| 1-C | Reimbursement Services Agreement between BISD and AFLAC | | | | |
| 2 | Affidavit of Ken Lieck | | | | |
| 2-D | Request for Qualifications (RFQ's) for TPA to Administer BISD's Cafeteria Plan (Section 125) and Tax Deferred Annuities | | | | |
| 2-E | Addendum #1 for RFQ #012-02, Request for Qualification (RFQ's) for TPA to Administer BISD's Cafeteria Plan (Section 125) and Tax Deferred Annuities | | | | |
| 2-F | Addendum #2 for RFQ #012-02, Request for Qualification (RFQ's) for TPA to Administer BISD's Cafeteria Plan (Section 125) and Tax Deferred Annuities | | | | |
| 3-G | BED [Local] - BISD Board Policy | | | | |
| 3-H | BF [Local] - BISD Board Policy | | | | |
| 3-I | CH [Legal] - BISD Board Policy | | | | |

| EXHIBIT # | DESCRIPTION | STIP | WITNESS | OBJ | ADMITTED |
|---|---|---|---|---|---|
| 3-J | CH [Local] - BISD Board Policy | | | | |
| 3-K | GKD [Local] - BISD Board Policy | | | | |
| 4-L | GF [Local] - BISD Board Policy | | | | |
| 4-M | GKA [Local] - BISD Board Policy | | | | |
| 4-N | GKC [Local] - BISD Board Policy | | | | |
| 5 | Correspondence from Herman Ortis Powers dated January 16, 2002 to Janet Baker | | | | |
| 6 | Correspondence from Linda Salazar to Janet Baker dated January 22, 2002 | | | | |
| 7 | Correspondence from Pat Lehman to Janet Baker dated January 15, 2002 | | | | |
| 8 | Email correspondence from Joe Colunga to Janet Baker dated February 6, 2002 | | | | |
| 9 | CD Rom - Public Audience and transcription of Andrus address at November 13, 2001, Brownsville Independent School District Meeting | | | | |
| 10 | CD Rom - Public Audience and transcription of Andrus address at November 20, 2001, Brownsville Independent School District Meeting | | | | |

| EXHIBIT # | DESCRIPTION | STIP | WITNESS | OBJ | ADMITTED |
|---|---|---|---|---|---|
| 11 | Correspondence dated September 10, 2001 from Chavez to various Board Members | | | | |
| 12 | Correspondence dated November 9, 2001 from Chavez to Brownsville Independent School District Insurance Committee Campus Representatives | | | | |
| 13 | Correspondence dated November 12, 2001 from Chavez to Insurance Committee Campus Representatives | | | | |
| 14 | Correspondence dated November 19, 2001 from Chavez to Brownsville Independent School District Insurance Committee Campus Representatives | | | | |
| 15 | Correspondence dated November 27, 2001 from Chavez to Insurance Committee Campus Representatives | | | | |
| 16 | Correspondence from Superintendent Noe Sauceda to Dino Chavez dated November 29, 2001 | | | | |
| 17 | RFQ Certificate Plan signed by AFLAC representative Michele Weed | | | | |
| 18 | Correspondence from Dino Chavez to Wilkinson dated August 10, 2001 | | | | |

02-156 CHAVEZ: Exhibitlist
PAGE 5

| EXHIBIT # | DESCRIPTION | STIP | WITNESS | OBJ | ADMITTED |
|-----------|-------------|------|---------|-----|----------|
| 19 - O | Email correspondence from LaFemina referred to as Exhibit 2 in his deposition | | | | |
| 19 - P | Email correspondence from LaFemina referred to as Chavez 36 in his deposition | | | | |
| 20 | NPA 1997 Cafeteria Plan Proposal | | | | |
| 21 | AFLAC/Chavez 1998 Cafeteria Plan Proposal | | | | |
| 22 | AFLAC/Chavez 2001 Cafeteria Plan Proposal | | | | |
| 23 | 2001 RFQ for TPA | | | | |
| 24 | 8/14/01 RFQ change | | | | |
| 25 | 8/15/01 RFQ change | | | | |
| 26 | Insurance Commission Meeting Minutes of 10/30/01 | | | | |
| 27 | Special Called Board Meeting Minutes of 10/30/01 | | | | |
| 28 | BISD Meeting Excerpts of 11/13/01 | | | | |
| 29 | Excerpts from BISD Board Meeting Minutes of 11/13/01 | | | | |
| 30 | BISD Board Meeting Agenda of 11/20/01 | | | | |

| EXHIBIT # | DESCRIPTION | STIP | WITNESS | OBJ | ADMITTED |
|---|---|---|---|---|---|
| 31 | BISD Board Meeting Minutes of 11/20/01 | | | | |
| 32 | Employee Insurance Commission Meeting Minutes of 11/29/01 | | | | |
| 33 | Employee Insurance Commission Meeting Minutes of 11/29/01 | | | | |
| 34 | Janet Baker's Letter of 01/08/02 | | | | |
| 35 | Email correspondence from Dino Chavez to Dana Sieg dated December 3, 2001 | | | | |
| 36 | Email correspondence from Dino Chavez to Frank LaFemina dated December1, 2, or 3, 2003 | | | | |
| 37 | Portion of Videotape of 11/13/01 BISD Board Meeting pertaining to Public Audience Speech by Dino Chavez | | | | |
| 38 | Portion of Videotape of 11/20/01 BISD Board Meeting pertaining to Public Audience Speech by Dino Chavez | | | | |
| 39 | Memo from Daniel Sanchez, AFLAC to Dino Chavez dated 12/01/01 | | | | |

| EXHIBIT # | DESCRIPTION | STIP | WITNESS | OBJ | ADMITTED |
|---|---|---|---|---|---|
| 40 | Letter from Dino X. Chavez to Dan Amos, AFLAC dated 12/02/01 with two (2) email attached:<br>-Frank LaFemina<br>-from Frank LaFemina to Dino Chavez dated 12/02/01 | | | | |
| 41 | Email from Frank LaFemina to Mitch Whitman, et al dated 12/02/01 | | | | |
| 42 | Email from Dino X. Chavez to Dana Sieg (not dated) | | | | |
| 43 | Letter from Dino X. Chavez to Dan Amos, AFLAC, dated 12/04/01 | | | | |
| 44 | Letter from Ted Rodriguez, Jr. To Noe Sauceda, BISD dated 12/04/01 with attachments | | | | |
| 45 | Letter from Jefferson W. Willis, AFLAC to Dino X. Chavez dated 12/05/01 | | | | |
| 46 | Letter from William B. Steele, III to Ted Rodriguez, Jr. dated 001242-001244 | | | | |
| 47 | Email from Janet Baker to Paulette Briggs dated 12/27/01 with attachments of Change in Status Form | | | | |

| EXHIBIT # | DESCRIPTION | STIP | WITNESS | OBJ | ADMITTED |
|---|---|---|---|---|---|
| 48 | Notice letter from F. Karl Douglass to Dino X. Chavez dated 12/28/01 | | | | |
| 49 | Letter from Dino X. Chavez to Lynn Barnson/AFLAC dated 01/04/02 | | | | |
| 50 | Notice letter from F. Karl Douglass to Dino X. Chavez dated 01/28/02 | | | | |
| 51 | 1099 Miscellaneous Income Statements 1996 - 2002 | | | | |
| 52 | Recommendation of Termination by Frank LaFemina dated 11/04/03 | | | | |
| | | | | | |

02-156 CHAVEZ: Exhibitlist
PAGE 9

# "EXHIBIT D3-A"

Third-Party Defendant AFLAC's Exhibit List

| | |
|---|---|
| UNITED STATES DISTRICT COURT    •    SOUTHERN DISTRICT OF TEXAS | |

| | |
|---|---|
| Dino X. Chavez v. Brownsville Independent School District, Noe Sauceda, and Randy Dunn, Marilyn Del Bosque-Gilbert and Hugh Emerson, Jr., in their official capacities as Board members of Brownsville Independent School District | CASE NO. B – 02 – 128 |
| | **Exhibit List** |
| Judge Hilda G. Tagle | Case Manager: Stella Cavazos<br>Court Reporter: Breck Record |
| List of Third-Party Defendant American Family Life Assurance Company of Columbus | Proceeding                Date |

| No. | Description | Adm | Exd |
|---|---|---|---|
| 1 | Associate's Agreement between AFLAC and Dino X. Chavez effective date of 09/06/94 | | |
| 2 | District Sales – Coordinator's Agreement between AFLAC and Dino X. Chavez effective date of 12/15/94 | | |
| 3 | Regional Sales Coordinator's Agreement between AFLAC and Dino X. Chavez effective date of 11/19/98 | | |
| 4 | AFLAC Account Service Guidelines – No 99-279 dated 9/7/99 | | |
| 5 | Insurance Program Acknowledgment Payroll Deduction executed by Dino X. Chavez on 11/9/98 | | |
| 6 | Reimbursement Services Agreement between Brownsville Independent School District and AFLAC dated 12/22/98 | | |
| 7 | Flexible Benefits Plan Establishment of the Plan dated 12/23/98 | | |
| 8 | Proposal Request Form dated 8/15/01 | | |
| 9 | Letter to BISD Insurance Committee Campus Representative from Dino X. Chavez dated 11/27/01 | | |
| 10 | Letter from Noe Sauceda, BISD to Dino Chavez dated 11/29/01 with attachments | | |
| 11 | Memo from Daniel Sanchez, AFLAC to Dino Chavez dated 12/1/01 | | |
| 12 | Letter from Dino X. Chavez to Dan Amos, AFLAC dated 12/2/01 w/two (2) email attached:<br>- Frank LaFemina<br>- from Frank LaFemina to Dino Chavez dated 12/2/01 | | |
| 13 | Email from Frank LaFemina to Mitch Whitman, et al dated 12/2/01 | | |
| 14 | Email from Dino X. Chavez to Dana Sieg dated 12/3/01 | | |
| 15 | Email from Dino X. Chavez to Dana Sieg (not dated) | | |

| No. | Description | Adm | Exd |
|-----|-------------|-----|-----|
| 16 | Letter from Dino X. Chavez to Dan Amos, AFLAC, dated 12/4/01 | | |
| 17 | Letter from Ted Rodriguez, Jr. to Noe Sauceda, BISD dated 12/4/01 w/attachments | | |
| 18 | Letter from Jefferson W. Willis, AFLAC to Dino X. Chavez dated 12/5/01 | | |
| 19 | Letter from William B. Steele, III to Ted Rodriguez, Jr. dated 001242-001244 | | |
| 20 | Email from Janet Baker to Paulette Briggs dated 12/27/01 w/attachment of Change in Status Form | | |
| 21 | Notice letter from F. Karl Douglass to Dino X. Chavez dated 12/28/01 | | |
| 22 | Letter from Dino X. Chavez to Lynn Barnson/AFLAC dated 1/4/02 | | |
| 23 | Notice letter from F. Karl Douglass to Dino X. Chavez dated 1/28/02 | | |
| 24 | 1099 Miscellaneous Income Statements 1996 - 2002 | | |
| 25 | Expert Report of Donald R. House, Ph.D. dated 6/25/03 | | |
| 26 | Overview of AFLAC/Employer Responsibilities | | |
| 27 | Minutes of Board/Employee Insurance Committee Meeting dated 11/29/01 | | |

Respectfully submitted,

William B. Steele III, Attorney In Charge
So. Dist. No. 8019
State Bar No. 19107400
Of Counsel:
LOCKE LIDDELL & SAPP LLP
100 Congress Ave., Suite 300
Austin, Texas 78701
(512) 305-4700
(512) 305-4800 (Fax)

Valorie C. Glass
So. Dist. No. 15303
State Bar No. 00784135
Of Counsel:
ATLAS & HALL, L.L.P.
P.O. Box 3725
McAllen, Texas 78502
(956) 682-5501
(956) 686-6109 (Fax)

**ATTORNEYS FOR THIRD-PARTY
DEFENDANT AMERICAN FAMILY LIFE
ASSURANCE COMPANY OF COLUMBUS**

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that a true and correct copy of the above and foregoing has been served via Federal Express, on this 17th day of December, 2003, to all counsel of record listed below:

J. Arnold Aguilar
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas 78520

Elizabeth G. Neally
Roerig, Oliveira & Fisher, LLP
855 West Price Road, Suite 9
Brownsville, Texas 78550

Eileen Leeds
Willette & Guerra
3505 Boca Chica Boulevard.
Suite 460
Brownsville, Texas 78521

_____
William B. Steele III

# "EXHIBIT P-B"

Plaintiff's Witness List

| | |
|---|---|
| UNITED STATES DISTRICT COURT ✱ | SOUTHERN DISTRICT OF TEXAS |

| | |
|---|---|
| Dino X. Chavez,<br>　　　　　　　Plaintiff<br>*Versus*<br>Brownsville Independent School District,<br>Noe Sauceda,<br>　　　　　Defendants/Third Party Plaintiffs<br>*Versus*<br>American Family Life Assurance Company of<br>Columbus (AFLAC),<br>　　　　　　Third-Party Defendant | CASE NO.　B – 02 - 128 |
| | **WITNESS LIST** |
| | Case Manager: Stella Cavazos<br>Court Reporter: |
| Judge Hilda G. Tagle | Proceeding　　　　　　　　　Date |
| **List for Plaintiff Dino X. Chavez** | |

1.　　Dino X. Chavez, Plaintiff
　　　c/o J. Arnold Aguilar
　　　Law Office J. Arnold Aguilar
　　　Artemis Square, Suite H-2
　　　1200 Central Boulevard
　　　Brownsville, TX 78520
　　　Mr. Chavez is expected to testify to the facts giving rise to his claims, and matters
　　　relating to the insurance industry in general.

2.　　Noe Sauceda, Defendant
　　　c/o Eileen M. Leeds
　　　Willette & Guerra, L.L.P.
　　　International Plaza, Suite 460
　　　3505 Boca Chica Boulevard
　　　Brownsville, TX  78520
　　　Defendant Sauceda is expected to testify about his dealings with Plaintiff, BISD's and
　　　AFLAC's representatives.

3.　　Joe Colunga, III, BISD Trustee
　　　c/o Elizabeth G. Neally
　　　Roerig, Oliveira & Fisher, L.L.P.
　　　855 W. Price Road, Suite 9
　　　Brownsville, TX  78520
　　　Mr. Colunga is expected to testify about BISD's dealings with Plaintiff, Defendant
　　　Sauceda and BISD representatives, as well as about BISD's policies and practices.

4.      Herman Otis Powers, BISD Trustee
        c/o Elizabeth G. Neally
        Roerig, Oliveira & Fisher, L.L.P.
        855 W. Price Road, Suite 9
        Brownsville, TX 78520
        Mr. Powers is expected to testify about BISD's dealings with Plaintiff, Defendant
        Sauceda and BISD representatives, as well as about BISD's policies and practices.

5.      Dr. Leonelo Lopez
        c/o Elizabeth G. Neally
        Roerig, Oliveira & Fisher, L.L.P.
        855 W. Price Road, Suite 9
        Brownsville, TX 78520
        Dr. Lopez is expected to testify about BISD's dealings with Plaintiff, BISD's insurance
        practices and the insurance industry in general.

6.      Jeffrey D. Roerig
        c/o Elizabeth G. Neally
        Roerig, Oliveira & Fisher, L.L.P.
        855 W. Price Road, Suite 9
        Brownsville, TX 78520
        Mr. Roerig is expected to testify about BISD's dealings with Plaintiff, Defendant
        Sauceda and BISD's Board of Trustees, BISD's customs and policies, and the authority
        for actions taken by Defendants Sauceda and BISD relating to BISD's Cafeteria Plan and
        other insurance matters.

7.      Hector Gonzalez
        c/o Ruben Peña
        Law Offices of Ruben R. Peña, P.C.
        222 W. Harrison
        Harlingen, TX 78520
        Mr. Gonzalez is expected to testify about BISD's and Sauceda's dealings with Plaintiff.

8.      Kenneth Lieck
        c/o Mr. Mitchell C. Chaney
        Rodriguez, Colvin & Chaney, L.L.P.
        1201 E. Van Buren
        Brownsville, TX 78522-2155
        Mr. Lieck is expected to testify about his experiences in BISD's Insurance Department,
        facts relating to insurance and bidding at BISD, and his dealings with Plaintiff.

9.      Daniel Sanchez
700 Paredes Line Road, Suite 209
Brownsville, TX 78521
Mr. Sanchez is expected to testify about his experiences with AFLAC and his knowledge of AFLAC's treatment of, and dealings with, Plaintiff.

10.    Antonia Davila
4900 N. 23rd Street
McAllen, TX 78504
Ms. Davila is expected to testify about her experiences with AFLAC, and her knowledge of AFLAC's treatment of, and dealings with, Plaintiff.

11.    Jeanette Garza
RR9, Box 382B
Weslaco, TX 78596
Ms. Garza is expected to testify about her experiences with AFLAC and its representatives and AFLAC's treatment of Plaintiff.

12.    Arnulfo Olivarez
521 S. 77 Sunshine Strip
Harlingen, TX 78550
Mr. Olivarez is expected to testify about his involvement with BISD and Sauceda.

13.    Ron Levine
2027 Price Road, Suite E
Brownsville, TX 78521
Mr. Levine is expected to testify about his experiences with AFLAC and matters relating to the 2001 Cafeteria Plan enrollment.

14.    Frank LaFemina
c/o William B. Steele
Locke, Liddell & Sapp, L.L.P.
100 Congress Avenue, Suite 300
Austin, TX 78701
Mr. LaFemina is expected to testify about AFLAC's actions and policies, the bases for AFLAC's actions, Plaintiff's anticipated earnings with AFLAC, his experiences involving Plaintiff, Plaintiff's role with respect to AFLAC, and Defendants BISD's and Sauceda's actions and statements relating to Plaintiff's continued involvement with BISD and its personnel.

15.    Lynn Barnson
       c/o William B. Steele
       Locke, Liddell & Sapp, L.L.P.
       100 Congress Avenue, Suite 300
       Austin, TX  78701
       Mr. Barnson is expected to testify about AFLAC's actions and policies, the bases for
       AFLAC's actions, Plaintiff's anticipated earnings with AFLAC, his experiences
       involving Plaintiff, Plaintiff's role with respect to AFLAC, and Defendants BISD's and
       Sauceda's actions and statements relating to Plaintiff's continued involvement with BISD
       and its personnel.

16.    Dr. Stephen Horner
       615 N. Upper Broadway, Suite 1600
       Corpus Christi, TX  78477
       Dr. Horner is expected to provide economic testimony relating to Plaintiff's lost earnings
       and damages.

17.    J. Arnold Aguilar
       Law Office J. Arnold Aguilar
       Artemis Square, Suite H-2
       1200 Central Boulevard
       Brownsville, TX  78520
       Mr. Aguilar is expected to testify to the reasonableness and amount of attorney's fees.

# "EXHIBIT D1-B"

Defendant BISD's Witness List

IN THE UNITED STATES DISTRICT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DINO CHAVEZ | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-02-128 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, and NOE SAUCEDA, | § | |
| | § | |
| ----------------------------------------------------------§ | | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
|     Third-Party Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| AMERICAN FAMILY LIFE INSURANCE | § | |
| COMPANY OF COLUMBUS (AFLAC), | § | |
|     Third-Party Defendant. | § | |
| | § | |

## WITNESS LIST
## OF DEFENDANT BROWNSVILLE INDEPENDENT SCHOOL DISTRICT

1.    Dino Chavez
      14 Catherine Lane
      Brownsville, Texas 78520
      Plaintiff is expected to testify regarding his claims and damages.

2.    Noe Sauceda, Defendant
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

3.  Otis Powers
    Board of Trustees
    Brownsville Independent School District
    1900 Price Road
    Brownsville, Texas 78520
    (956) 548-8000
    This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

4.  Pat Lehmann
    Board of Trustees
    Brownsville Independent School District
    1900 Price Road
    Brownsville, Texas 78520
    (956) 548-8000
    This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

5.  Joe Cadriel
    Board of Trustees
    Brownsville Independent School District
    1900 Price Road
    Brownsville, Texas 78520
    (956) 548-8000
    This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

6.  Hugh Emerson, Jr.
    Board of Trustees
    Brownsville Independent School District
    1900 Price Road
    Brownsville, Texas 78520
    (956) 548-8000
    This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

7.  Marilyn del Bosque Gilbert
    Member — Board of Trustees
    Brownsville Independent School District
    1900 Price Road
    Brownsville, Texas 78520
    (956) 548-8000
    This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

8.    Joe Colunga
      Member — Board of Trustees
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

9.    Randy Dunn
      Member — Board of Trustees
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

10.   Kenneth Lieck
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

10.   Lynn G. Barnson
      225 East Ft. Union Blvd., Suite 125
      Midvale, UT 84047
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

11.   Ron Levine
      2027 Price Road, Suite E
      Brownsville, Texas 78521
      (956) 544-7717
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

12.   Daniel Sanchez
      700 Paredes Line Road, Suite 209
      Brownsville, Texas 78521
      (956) 571-5117
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

13.    Antonia Davila
       4900 North 23rd Street
       McAllen, Texas 78504
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

14.    Linda Salazar
       4914 Boca Chica Blvd.
       Brownsville, Texas 78520
       (956) 504-0003
       Former B.I.S.D. Trustee
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

15.    Frank Lafemina
       AFLAC State Office
       1801 Lavaca, Suite 108
       Austin, Texas 78701
       (512) 476-6661
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

16.    Dan Amos, President
       AFLAC
       1932 Wynnton Road
       Columbus, GA 31999
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

17.    Dr. Leonel Lopez
       235 Sunset Drive
       Brownsville, Texas 78520
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

18.    Hector Gonzalez
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

19.    Johnny Pineda
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

20.    Jesus Muniz
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

22.    Eddie Errisuriz, Jr.
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

23.    Sam Sauceda
       726 Orange Heights
       Harlingen, Texas 78550
       (956) 412-2675
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

24.    Sylvia Petraca
       15 Hunters Quest
       Brownsville, Texas 78520
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

25.    Arnulfo Olivarez
       521 South 77 Sunshine Strip
       Harlingen, Texas 78550
       (956) 432-0490
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

26.    Dayna Olivarez
       521 South 77 Sunshine Strip
       Harlingen, Texas 78550
       (956) 423-0490
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

27     Joey Lopez
       2 Conquistador Drive
       Brownsville, Texas
       (956) 548-0883
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

29.     Janet Baker
        1932 Wynnton Road
        Columbus, GA 31999-0001
        (706) 660-7297
        This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

30.     Dr. Stephen M. Horner, Ph.D
        Economist
        615 North Upper Broadway, Suite 1600
        Corpus Christi, Texas 78477
        (361) 883-1686
        Plaintiffs' Expert and has knowledge regarding Plaintiff's damages.

31.     Dr. Donald R. House
        RRC, Inc.
        3833 Texas Ave., Ste 285
        Bryan, Texas 77802
        Defendants' Expert and has knowledge regarding Plaintiff's damages.

Respectfully submitted,

**ROERIG, OLIVEIRA & FISHER, L.L.P.**
855 West Price Road, Suite 9
Brownsville, Texas 78520
(956) 542-5666
(956) 542-0016 Facsimile

Attorneys for Defendant Brownsville Independent
  School District

By:

Elizabeth G. Neally
State Bar No. 13840400
Fed. ID # 8044
Ricardo Morado
State Bar #14417250
Fed. ID #1213

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing **DEFENDANT BROWNSVILLE INDEPENDENT SCHOOL DISTRICT'S VOIR DIRE** has been served on all counsel of record, to wit:

Mr. J. Arnold Aguilar
**Law Offices of J. Arnold Aguilar**
Artemis Square, Suite H-2,
1200 Central Boulevard
Brownsville, Texas 78520

Ms. Eileen Leeds
**Willette & Guerra**
3505 Boca Chica Boulevard, Suite 460
Brownsville, Texas 78521

Mr. William B. Steele, III
LOCKE, LIDDELL & SAPP
100 Congress Avenue, Suite 300
Austin, Texas 78701

on this 19 day of December, 2003.

Elizabeth G. Neally

# "EXHIBIT D2-B"

Defendant Sauceda's Witness List

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DINO X. CHAVEZ                           §
                                         §
                                         §
VS.                                      §
                                         §        CIVIL ACTION NO.  B-02-128
BROWNSVILLE INDEPENDENT                  §        JURY REQUESTED
SCHOOL DISTRICT AND                      §
NOE SAUCEDA                              §
                                         §
VS.                                      §
                                         §
AMERICAN FAMILY LIFE INSURANCE           §
COMPANY OF COLUMBUS (AFLAC)              §

## DEFENDANT NOE SAUCEDA'S WITNESS LIST

1.    Dino Chavez
      14 Catherine Lane
      Brownsville, Texas 78520
      Plaintiff is expected to testify regarding his claims and damages.

2.    Noe Sauceda, Defendant
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

3.    Otis Powers
      Board of Trustees
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

4.    Pat Lehmann
      Board of Trustees
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

5.    Joe Cadriel
      Board of Trustees
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

6.    Hugh Emerson, Jr.
      Board of Trustees
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

7.    Marilyn del Bosque Gilbert
      Member — Board of Trustees
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

8.    Joe Colunga
      Member —  Board of Trustees
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

9.    Randy Dunn
      Member — Board of Trustees
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

10.   Kenneth Lieck
      Brownsville Independent School District
      1900 Price Road
      Brownsville, Texas 78520
      (956) 548-8000
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

10.   Lynn G. Barnson
      225 East Ft. Union Blvd., Suite 125
      Midvale, UT 84047
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

11.   Ron Levine
      2027 Price Road, Suite E
      Brownsville, Texas 78521
      (956) 544-7717
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

12.   Daniel Sanchez
      700 Paredes Line Road, Suite 209
      Brownsville, Texas 78521
      (956) 571-5117
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

13.   Antonia Davila
      4900 North 23rd Street
      McAllen, Texas 78504
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

14.   Linda Salazar
      4914 Boca Chica Blvd.
      Brownsville, Texas 78520
      (956) 504-0003
      Former B.I.S.D. Trustee
      This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

15.    Frank Lafemina
       AFLAC State Office
       1801 Lavaca, Suite 108
       Austin, Texas 78701
       (512) 476-6661
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

16.    Dan Amos, President
       AFLAC
       1932 Wynnton Road
       Columbus, GA 31999
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

17.    Dr. Leonel Lopez
       235 Sunset Drive
       Brownsville, Texas 78520
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

18.    Hector Gonzalez
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

19.    Johnny Pineda
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

20.    Jesus Muniz
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520
       (956) 548-8000
       This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

22.    Eddie Errisuriz, Jr.
       Brownsville Independent School District
       1900 Price Road
       Brownsville, Texas 78520

(956) 548-8000
This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

23. Sam Sauceda
726 Orange Heights
Harlingen, Texas 78550
(956) 412-2675
This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

24. Sylvia Petraca
15 Hunters Quest
Brownsville, Texas 78520
This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

25. Arnulfo Olivarez
521 South 77 Sunshine Strip
Harlingen, Texas 78550
(956) 432-0490
This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

26. Dayna Olivarez
521 South 77 Sunshine Strip
Harlingen, Texas 78550
(956) 423-0490
This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

27 Joey Lopez
2 Conquistador Drive
Brownsville, Texas
(956) 548-0883
This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

29. Janet Baker
1932 Wynnton Road
Columbus, GA 31999-0001
(706) 660-7297
This witness is expected to testify regarding the facts the subject of Plaintiff's claims.

30. Dr. Stephen M. Horner, Ph.D
Economist
615 North Upper Broadway, Suite 1600
Corpus Christi, Texas 78477
(361) 883-1686

Plaintiffs' Expert and has knowledge regarding Plaintiff's damages.

31.    Dr. Donald R. House
       RRC, Inc.
       3833 Texas Ave., Ste 285
       Bryan, Texas 77802
       Defendants' Expert and has knowledge regarding Plaintiff's damages.

# "EXHIBIT D3-B"

Third-Party Defendant AFLAC's Witness List

UNITED STATES DISTRICT COURT  •  SOUTHERN DISTRICT OF TEXAS

| Dino X. Chavez v. Brownsville Independent School District, Noe Sauceda, and Randy Dunn, Marilyn Del Bosque-Gilbert and Hugh Emerson, Jr., in their official capacities as Board members of Brownsville Independent School District | CASE NO. B – 02 – 128 |
|---|---|
| | **Witness List** |
| **Judge Hilda G. Tagle** | Case Manager: Stella Cavazos<br>Court Reporter: Breck Record |
| **List of for Third-Party Defendant American Family Life Assurance Company of Columbus** | Proceeding              Date |

1.   Dino Chavez
     c/o J. Arnold Aguilar
     Law Office of J. Arnold Aguilar
     Artemis Square, Suite H-2
     1200 Central Boulevard
     Brownsville, Texas  78520
     Mr. Chavez, plaintiff, is expected to testify to the facts giving rise to
     his claims.

2.   Noe Sauceda
     c/o Eileen Leeds
     Willette & Guerra
     3505 Boca Chica Boulevard., Suite 460
     Brownsville, Texas  78521
     Dr. Sauceda is expected to testify about his dealings with plaintiff
     and AFLAC representatives.

3.    Representative of Brownsville Independent School District
      c/o Elizabeth G. Neally
      Ricardo Morado
      Roerig, Oliveira & Fisher, LLP
      855 West Price Road, Suite 9
      Brownsville, Texas  78520
      A representative of BISD is expected to testify about BISD's dealings
      with plaintiff and representatives of AFLAC.

4.    Frank La Femina
      c/o AFLAC State Office
      1801 Lavaca, Suite 108
      Austin, Texas  78701
      Mr. LaFemina is expected to testify about AFLAC, plaintiff's role as a
      Regional Sales Coordinator ("RSC"), and about the events before and
      after Dr. Sauceda's letter demanding that plaintiff cease contact with
      BISD personnel.

5.    Donald R. House,
      c/o RRC, Inc.
      3833 Texas Avenue, Suite 285
      Bryan, Texas 77082
      Mr. House is expected to provide expert testimony regarding
      Plaintiff's damages as alleged in this lawsuit.

6.    Janet Baker
      c/o AFLAC
      1932 Wynnton Road
      Columbus, Georgia  31999
      Ms. Baker is expected to testify about AFLAC and the termination of
      plaintiff's RSC Agreement with AFLAC.

7.    Ron Levine
      2027 Price Road, Suite E
      Brownsville, Texas  78521
      Mr. Levine is expected to testify about his efforts in retaining the
      BISD account for AFLAC.

8.    Lynn Barnson
      AFLAC
      1225 East Fort Union Blvd. #125
      Midvale, UT  84047
      Mr. Barnson is expected to testify about AFLAC, plaintiff's role as an
      RSC, and about the events before and after Dr. Sauceda's letter
      demanding that plaintiff cease contact with BISD personnel.

9.    Antonia Davila
      4900 N. 23rd Street
      McAllen, TX  78504
      Ms. Davila is expected to testify about AFLAC, her knowledge of
      AFLAC's marketing efforts in the region, and her knowledge of and
      dealings with Dino Chavez.


                              Respectfully submitted,


                              William B. Steele III, Attorney In Charge
                              So. Dist. No. 8019
                              State Bar No. 19107400
                              Of Counsel:
                              LOCKE LIDDELL & SAPP LLP
                              100 Congress Ave., Suite 300
                              Austin, Texas  78701
                              (512) 305-4700
                              (512) 305-4800 (Fax)

                              Valorie C. Glass
                              So. Dist. No. 15303
                              State Bar No. 00784135
                              Of Counsel:
                              ATLAS & HALL, L.L.P.
                              P.O. Box 3725
                              McAllen, Texas  78502
                              (956) 682-5501
                              (956) 686-6109 (Fax)

                              **ATTORNEYS FOR THIRD-PARTY**
                              **DEFENDANT AMERICAN FAMILY LIFE**
                              **ASSURANCE COMPANY OF COLUMBUS**


**AFLAC's Witness List – Page 3**

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that a true and correct copy of the above and foregoing has been served via Federal Express, on this 17th day of December, 2003, to all counsel of record listed below:

J. Arnold Aguilar
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas 78520

Elizabeth G. Neally
Roerig, Oliveira & Fisher, LLP
855 West Price Road, Suite 9
Brownsville, Texas 78550

Eileen Leeds
Willette & Guerra
3505 Boca Chica Boulevard.
Suite 460
Brownsville, Texas 78521

William B. Steele III

**AFLAC's Witness List – Page 4**

# "EXHIBIT P-C"

Plaintiff's Proposed Questions for Voir Dire

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DINO X. CHAVEZ,<br>    **Plaintiff** | §<br>§<br>§ | |
| VS. | §<br>§ | **CIVIL ACTION NO.** |
| BROWNSVILLE INDEPENDENT<br>SCHOOL DISTRICT, NOE SAUCEDA,<br>    **Defendants/Third-Party Plaintiffs** | §<br>§<br>§ | **B - 02 – 128** |
| AMERICAN FAMILY LIFE ASSURANCE<br>COMPANY OF COLUMBUS (AFLAC),<br>    **Third-Party Defendant** | §<br>§<br>§<br>§ | |

## EXHIBIT P - C
### PLAINTIFF'S REQUESTED JURY VOIR DIRE QUESTIONS

TO THE HONORABLE U.S. DISTRICT COURT:

    COMES NOW **DINO X. CHAVEZ**, Plaintiff herein and respectfully requests that the Court submit the following questions to the jury panel during the question and answer portion of jury empanelment. In that regard, Plaintiff would respectfully requests that the Court interrogate prospect jurors on the following questions during the voir dire portion of the trial:

(1)    Are any of you employed by, or are you related to or close friends with someone employed by, Brownsville Independent School District?
        - If so, please explain.

(2)    Do any of you have any opinions about BISD?
        - If so, please explain what they are.

(3)    Have any of you ever had any difficulties with BISD?
        - If so, please explain.

(4)     Have any of you ever worked with any BISD Board Trustee, including on any of their election campaigns?
        - If so, please explain.

(5)     Have any of you ever had any difficulties with any BISD Board Trustee?
        - If so, please explain.

(6)     Do any of you know, or are you familiar with, Defendant Noe Sauceda?
        - If so, please explain.

(7)     Have any of you ever had any dealings with Noe Sauceda?
        -   If so, please describe those dealings.
        -   As a result of those dealings, what sort of impression were you left with?

(8)     Do any of you know, or are you familiar with, Defendant BISD's attorneys Elizabeth G. Neally or Ricardo Morado, or Sauceda's attorney, Eileen M. Leeds ? Have any of you been represented by either one of them or anyone related to their law firm, Roerig, Oliveira & Fisher, or has anyone you know or are familiar with been represented by Ms. Neally, Mr. Morado or their firm?  If so, please explain.

(9)     Are any of you familiar with Dino Chavez?
        -   If so, how do you know him?
        -   Do you have any opinions of Mr. Chavez?

(10)    Do any of you know, or are you familiar with, Plaintiff's attorney J. Arnold Aguilar? Have any of you , or anyone with whom you are familiar, been involved in a case against someone represented by Mr. Aguilar or his law firm?  If so, please explain.

(11)    Do any of you know, or are you familiar with, any representative of AFLAC?
        - If so, please explain.

(12)    Have any of you ever had any experiences w/AFLAC, including purchasing any policy of insurance from AFLAC?
        - Would you consider that a positive or negative experience?

(13)    Do any of you know, or are you familiar with, Third-Party Defendant's attorneys William B. Steele, III or Valorie Glass?  Have any of you been represented by  either one of them or anyone related to their law firms, Locke, Liddell & Sapp, L.L.P. and Atlas & Hall, or has anyone you know or are familiar with been represented by Mr. Steele or Ms. Glass or their firm?  If so, please explain.

(14)    Are any of you familiar with what a Cafeteria Plan is?

(15)    Have any of you ever purchased any insurance products from a Cafeteria Plan?

(16)     Do any of you have any opinions about Cafeteria Plans?
- Any opinions about Third Party Administrators?
- Any opinions about Cafeteria Plan insurance salesmen?
- Any opinions about insurance salesmen in general?

(17)     Have any of you ever been a Plaintiff or a Defendant in a lawsuit?
- If so, please explain what type of lawsuit it was, whether you were Plaintiff or Defendant, and whether it has been resolved.

(18)     Have any of you, or anyone with whom you are familiar, had a lawsuit against the Defendants, Brownsville Independent School District, Noe Sauceda or Third-Party Defendant AFLAC?

(19)     Plaintiff Chavez is seeking damages for First Amendment violations. Will any of you have any difficulty in awarding damages for such violations, without reference to any physical injuries?

(20)     Would any of you have any hesitation in returning a verdict against BISD?

(21)     Mr. Chavez seeking damages for his lost income that resulted from his being fired from his supervisory position with AFLAC. We intend to show that the income Mr. Chavez would have earned through AFLAC is considerable, and that therefore the amount of income he lost is also considerable. If the evidence establishes that Mr. Chavez suffered a considerable amount of lost income, would any of you have any hesitation in returning a significant jury verdict?

(22)     If the evidence justifies it, will any of you have any hesitation in returning a significant jury verdict against BISD or Sauceda?

(23)     Are any of you familiar with the facts that have been alleged in this case?

(24)     Do any of you know, or are familiar with any of the witnesses listed by Plaintiff or any of the Defendants?

(25)     This case is presently expected to last  about 10 working days to try, and it should begin on January _____, 2004. Do any of you have a previously scheduled conflict that you absolutely could not change or reset that would prevent you from being able to be a juror during this time period?
- If so, please notify the Court so that Court can ask you some additional questions outside the presence of the other jurors.

IN THE UNITED STATES DISTRICT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DINO CHAVEZ | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-02-128 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, and NOE SAUCEDA, | § | |
| | § | |
| ------------------------------------------------ | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
|     Third-Party Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| AMERICAN FAMILY LIFE INSURANCE | § | |
| COMPANY OF COLUMBUS (AFLAC), | § | |
|     Third-Party Defendant. | § | |
| | § | |

**PROPOSED VOIR DIRE QUESTIONS**
**OF DEFENDANT BROWNSVILLE INDEPENDENT SCHOOL DISTRICT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, BROWNSVILLE INDEPENDENT SCHOOL DISTRICT, one of the

Defendants in the above styled and numbered cause, and respectfully requests the Court to present

the following questions to the jury during voir dire examination:

1.    Does any prospective juror know Dino Chavez, Noe Sauceda, Stephen M. Andrus, Fernando
de Pena, Valentin Paz or Andrus & Paz, a Partnership, Board of Trustees for the Brownsville
Independent School District now and then, Wife of Dino Chavez, The Teacher's Agency?

    1)     How do you know them and how would you describe your relationship with them?

    2)     Would such familiarity, if any, affect your ability to be fair and impartial?

2.    Does any prospective juror work for or has a close friend or relative working for Brownsville Independent School District?

    If yes, please explain.

3.    Does any prospective juror work for or has a close friend or relative working for American Family Life Insurance Company of Columbus (AFLAC)?

    If yes, please explain.

4.    Does any member of the panel know any of the following attorneys or their law firms; or have you or any member of your family ever been connected with, employed by or represented by any of these lawyers and/or their firms:

    1)     J. Arnold Aguilar or the LAW OFFICE OF J. ARNOLD AGUILAR?

    2)     Eileen M. Leeds or the law firm of WILLETTE & GUERRA, L.L.P.?

    3)     Elizabeth G. Neally or the law firm of ROERIG, OLIVEIRA & FISHER, L.L.P.?

    4)     William B. Steele, III or the law firm of LOCKE, LIDDELL & SAPP?

        a)     If yes, in what capacity and type of lawsuit?

        b)     If yes, is there anything in that relationship that would bias or prejudice the juror?

5.    Is there any prospective juror who believes that just because we are here at trial that the Plaintiff is automatically entitled to money?

6.    Is there any juror who believes that just because an attorney or plaintiff asks for a specific amount of money that the plaintiff is automatically entitled to it?

7.    Is there anyone who believes that just because an attorney or plaintiff files a lawsuit that all or part of the claims must be true?

8.    Will all the prospective jurors agree to make the Plaintiff prove his case upon a preponderance of the credible evidence on both liability and damages?

9.      Does any prospective juror have any specialized engineering, legal, or insurance training, education or experience?

10.     Has any prospective juror, or a member of the prospective juror's immediate family, ever been terminated from employment or as an independent contractor?

        If yes:

        1)      When did this happen?

        2)      Who terminated you?

        3)      Do you believe you were unfairly or wrongly terminated?

11.     Has any prospective juror, or a member of the prospective juror's immediate family, ever been wrongly disciplined by your employer?

        If yes:

        1)      What happened?

        2)      When did it happened?

12.     Do any of the prospective jurors have insurance with AFLAC?

        If yes,

        1)      When was it purchased?

        2)      From whom was it purchased?

13.     Do any of the prospective jurors have supplemental insurance?

        If yes, who was it purchased from?

14.     In this case, is there any prospective juror who would start off favoring the Plaintiff because he is an individual suing a governmental entity?

15.     Is there any member of the panel who has any quarrel with the rule of law that the Plaintiff has the burden of proof in a civil lawsuit?

16.     Is there any member of the panel who has any prejudice or feeling for or against civil lawsuits, or who has any experience which would cause him to have a feeling, bias, prejudice, or opinion on civil lawsuits before hearing any of the evidence in this case?

17.     Does any prospective juror believe that because of any past experience or personal feelings, they cannot fairly decide this case?

18.     Is there any prospective juror who cannot follow the court's instruction and not let sympathy or bias play any part in this case?

19.     Will all the prospective jurors agree to treat Brownsville Independent School District just like any other Defendant?

20.     Do you have any beliefs or opinions for or against punitive damages?

21.     Does the jury agree that should Plaintiff be unable to prove his case by a preponderous of the evidence, regardless of whether they feel sorry for or are sympathetic to Dino Chavez that they will find in favor of Brownsville Independent School District?

22.     Has any of the jury ever had a loved one or close friend who has had a bad experience with Brownsville Independent School District?

23.     Have you or a family member or close friend ever been involved in a lawsuit?

        a)     Who filed the lawsuit?

        b)     What was the suit about?

        c)     How was it resolved?

        d)     What were your feelings about the process at the conclusion of the case?

24.     Have the jurors, a family member, or any close friend or co-worker ever worked for Brownsville Independent School District?

25.     Do the jurors think that they can wait until Defendant BISD has had an opportunity to present evidence in this case before making a decision?

        If no, please explain.

26.     Can any of the jurors think that you will be able to listen to the judge's explanation of the law and apply it to the facts of this case as he instructs? Please explain if answered no.

27.   Can you think of anything that might affect his ability to fairly and impartially decide the issues in this case?  Please explain.

Respectfully submitted,

**ROERIG, OLIVEIRA & FISHER, L.L.P.**
855 West Price Road, Suite 9
Brownsville, Texas  78520
(956) 542-5666
(956) 542-0016 Facsimile

Attorneys for Defendant Brownsville Independent
  School District

By:_____
Elizabeth G. Neally
State Bar No. 13840400
Fed. ID # 8044
Ricardo Morado
State Bar #14417250
Fed. ID #1213

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing **DEFENDANT BROWNSVILLE INDEPENDENT SCHOOL DISTRICT'S VOIR DIRE** has been served on all counsel of record, to wit:

Mr. J. Arnold Aguilar
**Law Offices of J. Arnold Aguilar**
Artemis Square, Suite H-2,
1200 Central Boulevard
Brownsville, Texas 78520

Ms. Eileen Leeds
**Willette & Guerra**
3505 Boca Chica Boulevard, Suite 460
Brownsville, Texas 78521

Mr. William B. Steele, III
LOCKE, LIDDELL & SAPP
100 Congress Avenue, Suite 300
Austin, Texas 78701

on this _19_ day of December, 2003.

Elizabeth G. Neally

# "EXHIBIT D2-C"

Defendant Sauceda's Proposed
Questions for Voir Dire

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DINO X. CHAVEZ | § | |
| | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO.  B-02-128 |
| BROWNSVILLE INDEPENDENT | § | JURY REQUESTED |
| SCHOOL DISTRICT AND | § | |
| NOE SAUCEDA | § | |
| | § | |
| VS. | § | |
| | § | |
| AMERICAN FAMILY LIFE INSURANCE | § | |
| COMPANY OF COLUMBUS (AFLAC) | § | |

---

## DEFENDANTS' PROPOSED VOIR DIRE

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, Noe Sauceda, and submit this his Proposed Voir Dire and request

that the following questions be asked of the jury panel in the same or substantially similar wording:

1.    Have you or any members of your family or close friends ever had any dealings with Noe

Sauceda?

2.    Have you or any members of your family or close friends ever had any dealings with the

Brownsville Independent School District, or have you or any relatives or close friends ever

worked for the Brownsville Independent School District?

3.    Have you or members of your family or close friends ever sued the Brownsville Independent

School District or any of its employees?

4.    Have you or members of your family or close friends ever been denied a contract with the

Brownsville Independent School District?

5.    Have you ever sued any school district or any of its employees? (If yes, give details).

6.    Have members of your family or close friends ever sued any school district or any of its employees (If yes, give details).

7.    Have you, your family members or close friends ever been a plaintiff (a person bringing a lawsuit) in a lawsuit for any reason? (If yes, give details).

8.    (Identify Plaintiff's witnesses, including Plaintiff) Do you know, or have you, your family members, or close friends, ever had any dealings whatsoever with any of these individuals? (If yes, give details).

9.    (Identify Defendants' witnesses, including Defendants) Do any of you know or have you had any dealing whatsoever with any of these named individuals? (If yes, give details).

10.   Some of the witnesses may be public employees of a school district.  Would any of you be more or less inclined to believe the testimony of such individuals simply because of his/her position?

11.   Have any of you ever sat on a jury in a civil trial? (If yes, approach the bench and describe).

12.   Have any of you ever been arrested? (If yes, approach the bench and describe).

13.   Have any of you ever been in jail? (If yes, approach the bench and describe).

14.   Do any of you feel that just because a person files a lawsuit in federal court claiming he has sustained injury, that someone else must be at fault?

15.   Has anyone formed or expressed an opinion already that a plaintiff generally or this Plaintiff should recover from the Defendants?

02-156 CHAVEZ: Voiredire
PAGE 2

Signed on December 18, 2003

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
International Plaza, Ste. 460
3505 Boca Chica Blvd.
Brownsville, Texas  78521
Telephone:  (956) 541-1846
Facsimile:   (956) 541-1893


By: _Eileen Leedow_____
      Eileen M. Leeds
      State Bar No. 00791093
      USDC No. 16799
      Attorneys for Defendant

# "EXHIBIT D3-C"

Third-Party Defendant AFLAC's Proposed
Questions for Voir Dire

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DINO CHAVEZ,                                    §
                    Plaintiff,                  §
                                                §
vs.                                             §
                                                §
BROWNSVILLE INDEPENDENT                         §
SCHOOL DISTRICT and NOE SAUCEDA,                §
                    Defendants,                 §
------------------------------------------------- §      CIVIL ACTION NO. B-02-128
BROWNSVILLE INDEPENDENT SCHOOL                  §
DISTRICT,                                       §
                    Third-Party Plaintiff,      §
                                                §
vs.                                             §
                                                §
AMERICAN FAMILY LIFE ASSURANCE                  §
COMPANY OF COLUMBUS (AFLAC),                    §
                    Third-Party Defendant.      §

## THIRD-PARTY DEFENDANT AFLAC'S PROPOSED VOIR DIRE QUESTIONS

Third-Party Defendant American Family Life Assurance Company of Columbus ("AFLAC"), hereby submits its proposed voir dire questions, which AFLAC requests the Court to ask the venire panel in the above-referenced cause:

The parties to this lawsuit and their respective attorneys are as follows: Plaintiff Dino Chavez is represented by J. Arnold Aguilar of the Law office of J. Arnold Aguilar. Defendant and Third-Party Plaintiff Brownsville Independent School District ("BISD") is represented by Elizabeth G. Neally of the law firm Roerig, Oliveira & Fisher, L.L.P. Defendant Noe Sauceda is represented by Eileen M. Leeds of the law firm Willette & Guerra, L.L.P. Third-Party Defendant AFLAC is represented by William B. Steele III of the law firm Locke Liddell & Sapp LLP and Valorie C. Glass of the law firm Atlas & Hall, L.L.P.

1.    Is there any member of the panel who is acquainted with or who has heard of Plaintiff Dino Chavez or his attorney Arnold Aguilar?

(a)    If yes, please explain.

2.    Have any one of you had any business or personal relationship with BISD or its attorney Elizabeth Neally or her firm Roerig, Oliveira and Fisher?

(a)    If yes, please explain.

3.    Is there any member of the panel who is acquainted with or who has heard of Noe Sauceda or his attorney Eileen Leeds or her firm Willette & Guerra?

(a)    If yes, please explain.

4.    Have any of you had any business or personal relationship with AFLAC or its attorneys William Steele, with Locke Liddell & Sapp or Valorie Glass, with Atlas & Hall?

(a)    If yes, please explain.

5.    Is there any member of the panel who is acquainted with or who has heard of the following potential witnesses in the case:  Stephen Horner, Don House, Joe Colunga, Leo Lopez, Otis Powers, Eddie Erizuriz, Johnny Pineda, Frank LaFemina, Ron Levine, Janet Baker, Toni Davila or Lynn Barnson?  Do any of you have any belief, feeling or opinion toward any of the witnesses in this case that could influence your decision in this case?

6.    Have any of you heard of, or have any knowledge of, the facts or events involved in this case?

7.    Have any of you ever worked for AFLAC or had a relative or close friend who did so?

(a)    If yes, please explain.

8.    Has any member of the panel or a family member or close friend worked as an insurance agent?

**AFLAC's Voir Dire Questions – Page 2**

(a)    If yes, please explain.

9.    Have any of you ever worked for BISD or had a relative or close friend who did so?

(a)    If yes, please explain.

10.    For any member of the panel who has answered "yes" to one of the above questions, also please tell us:

    a.    the name and relationship to you of the person who works or who has worked for AFLAC or BISD;
    b.    when and where that person works or worked;
    c.    if the person no longer works for AFLAC or BISD, whether to your knowledge they left either AFLAC or BISD voluntarily or were asked to leave;
    d.    whether you or the person who worked for AFLAC or BISD had any employment dispute, business dispute, or any other dispute or problem with either?

11.    Do any of you have a feeling, belief or opinion about insurance companies that could influence your decision in this case?

(a)    If yes, please explain.

12.    The fact that a company is a party in this case must not influence your thoughts about this lawsuit, or your verdict.   Under the law, and in the interest of fairness, you are not permitted to distinguish between companies and individuals.   Both are persons and citizens in the eyes of the law and both are entitled to be judged fairly and by the same standards.   Do any of you have any belief or feeling for or against companies that might influence your decision in this case?

13.    Under the law in this country, any person can sue another person or company at any time by simply paying a filing fee.   Do any of you feel that because someone has filed a lawsuit, they must have suffered some kind of wrong?   Do any of you feel that because someone has filed a lawsuit, they are entitled to be awarded damages?

14.     Does any member of the panel believe that it is unfair or wrong for a party to exercise its contractual rights to terminate a contract?

15.     Does any member of the panel believe it is unfair or wrong for a party to a contract to exercise its express rights under that contract?

16.     Do you have any belief, feeling or opinion toward AFLAC that could in any way influence your decision in this case?

17.     Has any member of the panel ever purchased or considered purchasing insurance coverage through AFLAC?

18.     Does any member of the panel have a family member or acquaintance who knows Dino Chavez or his family?

      (a)     If yes, please explain.

19.     Does any member of the panel have a family member or acquaintance who knows Noe Sauceda or his family?

      (a)     If yes, please explain.

20.     Is any member of the panel now involved or in the past has been involved in any type of proceeding or dispute, regardless of how minor, with AFLAC?

      (a)     If yes, please explain.

21.     Does any member of the panel have a family member or acquaintance who is now involved or in the past has been involved in any proceeding or any type of dispute, regardless of how minor, with AFLAC?

      (a)     If yes, please explain.

22.     Has any member of the panel ever been dissatisfied or complained of any services received from AFLAC?

23.     Has any member of the panel owned his or her own business?

**AFLAC's Voir Dire Questions – Page 4**

(a)    If yes, please explain.

24.    Has any member of the panel worked as a sales manager, managing other salesmen?

(a)    If yes, please explain.

25.    Have any of you ever been disciplined, suspended, or terminated for misconduct at work?  If so, please explain the alleged misconduct and the penalty that you received.

26.    Has any member of the panel been involved in a lawsuit as a plaintiff or defendant?

27.    Has any member of the panel ever testified in a lawsuit as a witness?

28.    Has any member of the panel ever been asked to serve as a witness or testify in a case involving allegations of wrongful termination?

29.    Has any member of the panel ever filed a grievance over an employment action?

30.    Have any of you served as a juror in any other case? Was it a criminal or civil case?  Was a verdict reached?  Were you the foreperson?  Was there anything about your previous experience as a juror that makes you NOT want to sit as a juror in this case?

31.    Have any one of you, or a member of your family, ever been a party to a lawsuit? If so, state the nature of the case and the outcome.

32.    Under the procedure in this court, Plaintiff is entitled to present his case to you first.  Do any of you feel that you will not be able to keep from deciding the case in your mind prior to hearing all of the evidence in this case?

33.    Plaintiff and Third-Party Plaintiffs have the burden in this case to prove all of his claims by a preponderance of the evidence.  Do any of you feel like you would be unable to require Plaintiff and Third-Party Plaintiffs to satisfy their burden of proof in this case?

**AFLAC's Voir Dire Questions – Page 5**

34.    Regardless of whether you conclude that Plaintiff was treated "fairly," you will be instructed on the elements of Plaintiff and Third-Party Plaintiffs' claims and must decide in favor of the Defendant or Third-Party Defendant if you find that the Plaintiff and Third-Party Plaintiffs have failed to prove the elements of their claims.  Do any of you have an opinion or belief that would prevent you from following the instructions of the Court?

35.    In this case, you may hear testimony from so-called expert witnesses.  The Court will instruct you that you are allowed to give the level of credibility that you deem appropriate to each witness' testimony.  Do any of you feel like you would be compelled to believe a witness' testimony simply because that person is designated and/or called an expert?

36.    Is there any reason, personal or otherwise, that would make it difficult for you to be a juror in this case?

37.    What magazines or newspapers do you regularly read?

Respectfully submitted,

William B. Steele III, Attorney In Charge
So. Dist. No. 8019
State Bar No. 19107400
Of Counsel:
LOCKE LIDDELL & SAPP LLP
100 Congress Ave., Suite 300
Austin, Texas  78701
(512) 305-4700
(512) 305-4800 (Fax)

Valorie C. Glass
So. Dist. No. 15303
State Bar No. 00784135
Of Counsel:
ATLAS & HALL, L.L.P.
P.O. Box 3725
McAllen, Texas  78502
(956) 682-5501
(956) 686-6109 (Fax)

**ATTORNEYS FOR THIRD-PARTY
DEFENDANT AMERICAN FAMILY LIFE
ASSURANCE COMPANY OF COLUMBUS**

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that a true and correct copy of the above and foregoing has been served via Federal Express, on this 17th day of December, 2003, to all counsel of record listed below:

J. Arnold Aguilar
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas  78520

Elizabeth G. Neally
Roerig, Oliveira & Fisher, LLP
855 West Price Road, Suite 9
Brownsville, Texas  78550

Eileen Leeds
Willette & Guerra
3505 Boca Chica Boulevard.
Suite 460
Brownsville, Texas  78521

William B. Steele III

# "EXHIBIT P-D"

Plaintiff's Proposed Charge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DINO X. CHAVEZ, | § | |
| **Plaintiff** | § | |
| | § | |
| VS. | § | |
| | § | **CIVIL ACTION NO.** |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | **B - 02 – 128** |
| **Defendants/Third-Party Plaintiffs** | § | |
| | § | |
| AMERICAN FAMILY LIFE ASSURANCE | § | |
| COMPANY OF COLUMBUS (AFLAC), | § | |
| **Third-Party Defendant** | § | |

---

## EXHIBIT P - D
### PLAINTIFF'S PROPOSED JURY CHARGE, INSTRUCTIONS AND SPECIAL INTERROGATORIES

---

### GENERAL INSTRUCTIONS FOR CHARGE

**MEMBERS OF THE JURY:**

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Your answers and your verdict must be unanimous.

The Plaintiff, DINO X. CHAVEZ, has the burden of proving his case by a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. This means the Plaintiff, DINO X. CHAVEZ, has the burden of proving by the greater weight of evidence his cause of action. In the event the Plaintiff proves his case to you, the Defendants may have to prove by a preponderance of the evidence certain affirmative defenses. However, the burden of proving his case by a preponderance of the evidence will rest on the Plaintiff at all times as to his claims. In determining whether any fact has been proven by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another. You may consider such evidence only for the specific limited purposes for which it was admitted.

In determining the weight to give to the testimony of a witness, you may consider whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

The fact that a witness has previously been convicted of a felony, or a crime involving dishonesty or false statement, is also a factor you may consider in weighing the credibility of that witness. Such a conviction does not necessarily destroy the witness' credibility, but it is one of the circumstances you may take into account in determining the weight to give to his testimony.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence - such as testimony of an eyewitness. The other is indirect or circumstantial evidence - the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction

between direct or circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field - he is called an expert witness - is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as a expert witness and has income from such testimony which represents a significant portion of his income.

Certain testimony has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been shown to you. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The

notes are not evidence.   A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

---

Adopted from U.S. 5th Circuit District Judges Association, Pattern Instructions, Inst. Nos. 3.1 and 2.23.

## STIPULATIONS OF FACT

The parties have agreed, or stipulated, that the following facts are true. This means that both sides agree that this is fact. You must therefore treat these facts as having been proved.

   (1) On September 6, 1994, Dino Chavez was appointed as an independent contractor authorized to solicit applications for insurance policies offered for sale by AFLAC.

   (2) In 1994, when Dino Chavez first became an AFLAC agent, he and AFLAC entered into an Associate's Agreement.

   (3) Dino Chavez was promoted to District Sales Coordinator (DSC) in December 1994 and to Regional Sales Coordinator (RSC) in November 1998.

   (4) On November 19, 1998, AFLAC and Dino Chavez entered into an additional contract making Dino Chavez a Regional Sales Coordinator for AFLAC, while retaining Dino Chavez's status as an independent contractor.

   (5) A "Cafeteria Plan" is a program established by large employers to provide an opportunity for employees to purchase certain insurance policies, and pay for them with pre-tax dollars, pursuant to Internal Revenue Code §125.

   (6) Defendant Sauceda started working with BISD in April 2001 as a consultant, after which he continued as Superintendent and CEO.

   (7) On October 30, 2001, Defendant Sauceda attended the Special Called Board Meeting at which he recommended that NPA be appointed TPA for the Sect. 403(b) and Sect. 125 Tax Deferred Annuity Program. The decision was tabled.

   (8) On November 12th, Mr. Chavez submitted another memo to the Insurance Committee Campus Representatives, notifying them that the decision on the selection of the TPA had been postponed from the November 13th scheduled meeting, and emphasizing the need for a TPA to be selected immediately.

   (9) Mr. Chavez attended and spoke at the November 13th BISD Board of Trustees Meeting.

(10) Mr. Chavez sent another memo to the Insurance Committee Campus Representatives on November 19th, repeating some of the concerns in his prior memo of November 12th, and including a new concern that "[i]f NPA/Insurance Associates of the Valley is chosen, all supplemental choices will have to go through them, thereby eliminating all local agents that currently provide their services to the District."

(11) NPA's proposal to become the TPA included a provision that Insurance Associates of the Valley be appointed as BISD's "agent of record."

(12) Mr. Chavez was limited to speaking two (2) minutes during the November 20 BISD Board Meeting.

(13) NPA's agreement to waive all fees is a modification of their original bid, which provided for general administration fees, an annual fee, and Dependent/Child Care and/or Medical Reimbursement fees, even if the enrollment fee were to be waived.

(14) Defendant Sauceda sent a copy of the November 29 letter to Frank LaFemina, the AFLAC State Sales Coordinator.

(15) Defendant Sauceda contacted Mr. LaFemina on November 29 and thereafter to discuss the matters described in the letter, including Mr. Chavez's continued presence at BISD.

## PARTIES' CLAIMS

Plaintiff Dino Chavez is an independent insurance agent who sells supplemental insurance, such as disability insurance, cancer insurance, and the like. At the relevant time in question, plaintiff was an independent agent for AFLAC and was coordinating a number of other AFLAC sales agents as a Regional Sales Coordinator. From 1998 through 2001, Chavez and AFLAC had been providing Third Party Administrator (TPA) services for BISD's "Cafeteria Plan," which allows its employees to purchase supplemental insurance products with pre-tax earnings. Plaintiff was responsible for coordinating the enrollment of the BISD employees in the Cafeteria Plan; the employees had the opportunity to buy supplemental insurance once each year during the enrollment period.

In the Fall of 2001, BISD's Superintendent, Noe Sauceda, issued a Request for Qualification (RFQ) for a TPA to administer the Cafeteria Plan and the Tax Deferred Annuity Program. This RFQ was later revised to be an "and/or" proposal in which the vendors could qualify for either or both. When Chavez learned that Sauceda was recommending National Plan Administrators("NPA") as the TPA for the Cafeteria Plan and the Tax Deferred Annuity Program and in a manner that Chavez believed was not financially responsible or legal, he raised his issues in letters to the BISD Board of Trustees and the Employee Insurance Committee and in the "Public Comment" section of BISD Board Meetings. On November 29, 2001, Dr. Sauceda sent a letter to Chavez and Frank LaFemina, the State Sales Coordinator for AFLAC, in which Sauceda criticized Chavez for conduct Sauceda believed was inappropriate and unprofessional, and in which Chavez and AFLAC were given 30 days notification that they would no longer be the TPA for BISD unless such conduct stopped. In the letter, Mr.

Chavez was also advised that he would no longer be permitted to appear on BISD campuses. AFLAC, through LaFemina, reassigned the handling of the BISD enrollment to another AFLAC agent, and  AFLAC was elected as the 2002 TPA for the Cafeteria Plan by the Campus Insurance Committee on November 29, 2001, but Chavez was not allowed to participate in the enrollment process.   Thereafter, Plaintiff's Regional Sales Coordinator's Agreement was terminated by AFLAC.

Mr. Chavez complains that Dr. Sauceda and BISD violated his rights to free speech by retaliating against him for speaking on matters of public concern, and that Dr. Sauceda tortiously and intentionally interfered with his business relationship with AFLAC, defrauded Chavez, libeled and slandered him, acted maliciously, and intentionally inflicted emotional distress on him.

BISD and Sauceda deny that they violated plaintiff's constitutional rights or otherwise caused any harm to plaintiff.  BISD denies that any policy or custom of BISD was breached by Sauceda's letter to Mr. Chavez.   BISD further denies that Sauceda acted under policy or custom or under the authority of the BISD Board of Trustees when he sent the letter.  BISD also denies that Sauceda was a policy maker for BISD when he wrote the letter. BISD asserts that its Trustees were unaware that Sauceda had written the November 29th letter to Chavez until after Sauceda distributed the letter to Chavez. Further, while  BISD denies liability, it has joined AFLAC in this action, claiming that, if BISD is found liable for any of plaintiff's damages, then AFLAC should contribute to the payment of those damages because AFLAC chose to terminate Chavez's Regional Sales Coordinator's Agreement.

AFLAC denies that BISD is entitled to contribution or that Mr. Chavez is entitled to recover any damages. Further, AFLAC contends that AFLAC would not have removed plaintiff from the BISD enrollment but for the letter from Sauceda, and that plaintiff's reaction to his removal from the enrollment, as well as his other conduct, led to the termination of his Regional Sales Coordinator Agreement with AFLAC. Finally, AFLAC contends that Mr. Chavez expressly agreed that AFLAC had the right to reassign the BISD account to another AFLAC agent and that Mr. Chavez expressly agreed that his Regional Sales Coordinator Agreement could be terminated by AFLAC for any reason, without cause, upon thirty-days advance written notice.

## PLAINTIFF'S REQUESTED SPECIAL INSTRUCTION NO. 1

Plaintiff in this action claims that Defendants Brownsville Independent School District (BISD) and Noe Sauceda  violated Plaintiff Dino X. Chavez's constitutional rights by retaliating against him for speaking out on matters of public interest.  As a result of Defendants' actions, the Plaintiff claims that he suffered injuries for which he seeks damages.

The Plaintiff claims that while Defendants were acting under color of authority of the State of Texas and the Brownsville Independent School District, they intentionally violated Plaintiff's constitutional rights.  The Plaintiff claims that when the Defendants terminated him from his position as Third Party Administrator for the BISD Cafeteria Plan, rejected his proposal for the renewal of his TPA contract, prohibited him from contacting school personnel during school business hours, prohibited him being present on school-district property, and contacted his supervisors at AFLAC, both in writing and verbally, to prevent him from continuing to work at BISD, it was because of Plaintiff's exercise of the right of free speech, and the Defendants thereby deprived him of his rights under the First Amendment of the Constitution.

The First Amendment of the Constitution of the United States gives every citizen the right to freedom of speech, which includes the right to speak out on matters of public concern without retaliation.

A person may sue for an award of money damages against anyone who, "under color" of any State law or custom, intentionally violates the Plaintiff's rights under the Constitution of the United States.

Thus, the Plaintiff must prove by a preponderance of the evidence each of the following:

(1)     That the actions of Defendants were "under color" of authority of the Brownsville Independent School District;

(2)     That the Plaintiff's speech activities were Constitutionally "protected" under the First Amendment;

(3)     That the Plaintiff's exercise of protected First Amendment rights was a substantial or motivating factor in the Defendants' decision to terminate him from his position as Third Party Administrator for the BISD Cafeteria Plan, reject his proposal for the renewal of his TPA contract, prohibit him from contacting school personnel during school business hours, prohibit him being present on school-district property, and contact his supervisors at AFLAC, both in writing and verbally, to prevent him from continuing to work at BISD;

(4)     That the Defendants' acts were the proximate or legal cause of the Plaintiff's damages.

State or local officials act "under color" of the authority of the State when they act within the limits of their lawful authority. However, they also act "under color" of the authority of the State when they act without lawful authority or beyond the bounds of their lawful authority if their acts are done while the officials are purporting or pretending to act in the performance of their official duties. An official acts "under color" of the state authority if he abuses or misuses a power that he possesses only because he is an official.

The plaintiff claims that the Brownsville Independent School District is liable for the alleged constitutional deprivations. A school district is liable for the deprivation of a constitutional right if the deprivation was pursuant to governmental custom, policy, ordinance, regulation or decision. Therefore, if you find that the plaintiff was injured as the proximate or legal result of the Brownsville Independent School District's policy, custom, ordinance, regulation or decision, whether made by its lawmakers or by those officials whose edicts or acts may fairly be said to represent official policy, the district itself will be responsible.

The Superintendent, Noe Sauceda, is an official whose acts constitute final official policy of the Brownsville Independent School District. Therefore, if you find that the acts of the Superintendent deprived the plaintiff of constitutional rights, the Brownsville Independent School District is liable for such deprivations.

To prove that his speech activities were a substantial or motivating factor in the Defendants' decision, the Plaintiff does not have to prove that those speech activities were the only reason the Defendants made the decision. The Plaintiff need only prove that the speech activities were a substantial consideration that made a difference in or influenced the Defendants' decision.

The Plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the Defendants were a cause-in-fact of the damage Plaintiff suffered. An act or a failure to act is a cause-in-fact of an injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages. The Plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the Defendants was a proximate cause of the damage Plaintiff suffered. An act or omission is a proximate cause of the plaintiff's injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.[1]

---

[1]      *See Anderson v. Nosser*, 456 F.2d 835 (5th Cir. 1972), *affirmed sub nom. Nosser v. Bradley*, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972); *Reimer v. Smith*, 663 F.2d 1316 (5th Cir. 1981). *See also* S. Nahmod, Civil Rights and Civil Liberties Litigation – The Law of Section 1983, sections 3.17 and 3.18 (second edition 1986); **Source:** Modern Federal Jury Instructions - Civil (Matthew Bender 1993).

If you find that the Plaintiff has established each element of his claim, you must then decide whether the Defendants have shown by a preponderance of the evidence that they would have taken the same actions for other reasons, even if Plaintiff had not exercised his protected speech activity. If you find that the Defendants would have taken the same actions for reasons apart from the speech activity, then your verdict should be for the Defendants.

If you find for the Plaintiff and against the Defendants or their defenses, you must then decide the issue of the Plaintiff's damages.

## PLAINTIFF'S REQUESTED SPECIAL INSTRUCTION NO. 2

An act is intentional if it is done knowingly, that is if it is done voluntarily and deliberately and not because of mistake, accident, negligence or other innocent reason. In determining whether the Defendants acted with the requisite knowledge, you should remember that while witnesses may see and hear and so be able to give direct evidence of what a person does or fails to do, there is no way of looking into a person's mind. Therefore, you have to depend on what was done and what the people involved said was in their minds and your belief or disbelief with respect to those acts.

## PLAINTIFF'S REQUESTED SPECIAL INSTRUCTION NO. 3

The Plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the Defendants were a cause-in-fact of the damage the Plaintiff suffered. An act or a failure to act is a cause-in-fact of any injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages. The Plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the Defendants was a proximate cause of the Plaintiff's injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.

## PLAINTIFF'S REQUESTED SPECIAL INSTRUCTION NO. 4

I, the judge, have decided that the acts of the Brownsville Independent School District (BISD) constituted official policy of the District, and the acts of the Superintendent Noe Sauceda constituted policy for the District for purposes of decisions relating to the Third Party Administration of the Cafeteria Plan.

## PLAINTIFF'S REQUESTED SPECIAL INSTRUCTION NO. 5

The Plaintiff alleges that the Defendants Brownsville Independent School District and Noe Sauceda deprived him of his rights to freedom of speech under the First Amendment to the Constitution of the United States. Specifically, the Plaintiff alleges that, while he was a public citizen, he engaged in one or more specific acts of speech (or expression) protected by the Free Speech Clause of the First Amendment, that the Defendants then took specific action against the Plaintiff, and that Plaintiff's acts of speech were the substantial or motivating factor in the Defendants' decision to take such action.

---

### Authority

United States Supreme Court: *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

## PLAINTIFF'S REQUESTED SPECIAL INSTRUCTION NO. 6

In order to prove his allegation against the Defendants, Plaintiff must establish each of the following two elements of his claim; first, that the Plaintiff's acts of speech (or expression) were protected by the Free Speech Clause of the First Amendment; and, second, that these acts of speech were a substantial or motivating factor in the Defendants' decision to take action against the Plaintiff.

## Authority

United States Supreme Court: *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 47 (1977), *Accord Givhan v. Western Line Consolidated School Dist.*, 439 U.S. 410, 99 S.Ct. 693, 50 L.Ed.2d 619 (1979).

Fifth Circuit: *Brown v. Texas A & M University*, 804 F.2d 327 (5th Cir. 1986); *Bueno v. City of Donna*, 714 F.2d 484 (5th Cir. 1983).

## <u>PLAINTIFF'S REQUESTS SPECIAL INSTRUCTION NO. 7</u>

I, the judge, have decided that the Free Speech Clause of the First Amendment protects the following speech in which the Plaintiff engaged:

Reporting or commenting on financially irresponsible decisions to be made by defendants

or

Reporting or commenting on the potentially illegal appointment of an "agent of record."

## PLAINTIFF'S REQUESTS SPECIAL INSTRUCTION NO. 8

The second element of the Plaintiff's claim is that his protected speech (or act of expression), was a substantial or motivating factor in the Defendants' decision to take action against him.

The Plaintiff's protected speech was a substantial or motivating factor in the Defendants' decision to take action against him if it played a substantial part in the actual decision to take action against the Plaintiff.

The Defendants may have taken action for no reason whatsoever. If so, then the Plaintiff's protected speech (or expression) was not a substantial or motivating factor in Defendants' decision.

The Defendants may have taken action for one sole reason. If that one sole reason was because the Plaintiff reported alleged thefts by city employees, then you must find that the Plaintiff's protected speech was a substantial or motivating factor in the Defendants' decision.

The Defendants may have taken action for many different reasons. If so, then you must determine whether one of those reasons was that the Plaintiff reported or commented on financially irresponsible decisions to be made by defendants or on the potentially illegal appointment of an "agent of record." If it was one of those reasons, then you must determine whether it played a substantial part in the actual decision to take action against the Plaintiff. If it did play a substantial part, then you must find that the Plaintiff's protected speech was a substantial or motivating factor in the Defendants' decision.

---

### Authority

United States Supreme Court: *Mt. Healthy City Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *Accord Givhan v. Western Line Consolidated School Dist.* 439 U.S. 410, 99 S.Ct. 693, 50 L.Ed.2d 619 (1979).

## PLAINTIFF'S REQUESTED SPECIAL INSTRUCTION NO. 9

If you find that the Plaintiff's protected speech (or act of expression) was a substantial or motivating factor in the Defendants' decision to take action against the Plaintiff, you must consider whether the Defendants have presented an adequate defense to the Plaintiff's case.

The Defendants present an adequate defense of the Plaintiff's case if the Defendants can show, by a preponderance of the evidence, that it would have reached the same decision to take action against the Plaintiff even in the absence of the Plaintiff's protected speech. In other words, the Defendants must show by a preponderance of the evidence that it would have made the same decision without considering the Plaintiff's protected speech.

If the Defendants show by a preponderance of the evidence that they would have reached the same decision without considering the Plaintiff's protected speech, then you must find in favor of the Defendants.

It is important for you to realize that the Defendants have not presented an adequate defense if it shows merely that it had other, valid reasons for taking action against the Plaintiff. It is a defense only if the Defendants would have acted on those other reasons in the absence of the Plaintiff's protected speech. Therefore, if the Defendants offer other, valid reasons for taking action against the Plaintiff, the Defendants must further show that they would have acted on those reasons. Otherwise, it has not presented an adequate defense.

---

### Authority

United States Supreme Court: *Mt. Healthy City School Dist. Board of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *Accord Givhan v. Western Line Consolidated School Dist.* 439 U.S. 410, 99 S.Ct. 693, 50 L.Ed.2d 619 (1979).

V:\FP\PRETRIAL\258-02 Jury Charge                                        PAGE 22

## PLAINTIFF'S REQUESTED SPECIAL INSTRUCTION NO. 10

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The Plaintiff asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you along, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw -- but not required to draw -- from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

------------------------

### Authority

United States Supreme Court: *Schulz v. Pennsylvania R. Co.*, 350 U.S. 372, 76 S.Ct. 608, 100 L.Ed. 668 (1956); *Lavender v. Kurn*, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 926 (1946).

## PLAINTIFF'S REQUESTS SPECIAL INSTRUCTION NO. 11

If the Plaintiff has proven his claim against the Defendants by a preponderance of the evidence, you must determine the damages to which the Plaintiff is entitled. You should not interpret the fact that I have given instructions about the Plaintiff's damages as an indication in any way that I believe that the Plaintiff should, or should not, win this case. It is your task first to decide whether the Defendants are liable. I am instructing you on damages only so that you will have guidance in the event you decide that the Defendants are liable and that the Plaintiff is entitled to recover money from the Defendants.

## PLAINTIFF'S REQUESTS SPECIAL INSTRUCTION NO. 12

If you find that the Defendants are liable to the Plaintiff, then you must determine an amount that is fair compensation for all of the Plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the Plaintiff whole -- that is, to compensate the Plaintiff for the damage that the Plaintiff has suffered.

You may award compensatory damages only for injuries that the Plaintiff proves were proximately caused by the Defendants' allegedly wrongful conduct. The damages that you award must be fair compensation for all of the Plaintiff's damages, no more and no less. Damages are not allowed as a punishment and can not be imposed or increased to penalize the Defendants. You should not award compensatory damages for speculative injuries, but only for those injuries which the Plaintiff has actually suffered or that the Plaintiff is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the Plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence.

The Plaintiff DINO X. CHAVEZ's physical and mental pain and suffering, and any earnings lost in the past and any such loss in the future, resulting from the deprivation of his Constitutional rights to free speech. In determining the duration of this physical and mental pain and suffering and loss of earnings, you must consider the life expectancy of the Plaintiff.

**A. Damages Accrued**

If you find for the Plaintiff, he is entitled to recover an amount that will fairly compensate him for any damages he has suffered to date.

**B.    Calculation of Future Damages**

If you find that the Plaintiff is reasonably certain to suffer damages in the future for his injuries, then you should award him the amount you believe would fairly compensate him for such future damages. In calculating future damages, you should consider the standard table of mortality as compiled by the United States Bureau of the Census, or other recognized mortality table.

**C.    Reduction of Future Damages to Present Value**

An award of future damages necessarily requires that payment be made now for a loss that Plaintiff will not actually suffer until some future date. If you should find that the Plaintiff is entitled to future damages, including future earnings, then you must determine the present worth in dollars of such future damages.

If you award damages for loss of future earnings, you must consider two particular

factors:

(1) You should reduce any award by the amount of the expenses that the Plaintiff would have incurred in making those earnings.

(2) If you make an award for future loss of earnings, you must reduce it to present value by considering the interest that the Plaintiff could earn on the amount of the award if he made a relatively risk-free investment. The reason why you must make this reduction is because an award of an amount representing future loss of earnings is more valuable to the Plaintiff if he receives it today than if he received it in the future, when he would otherwise have earned it. It is more valuable because the Plaintiff can earn interest on it for the period of time between the date of the award and the date he would have earned the money. Thus you should adjust the amount of any award for future loss of earnings by the amount of interest that the Plaintiff can earn that amount in the future.

However, you must not make any adjustment to present value for any damages you may

award for future pain and suffering or future mental anguish.

---

**Source:** Modern Federal Jury Instructions - Civil (Matthew Bender 1993).

## PLAINTIFF'S REQUESTED SPECIAL INSTRUCTION NO. 13

If you find that the Defendants are liable for the Plaintiff's injuries, you must award the Plaintiff the compensatory damages that he has proven. You also may award punitive damages, if the Plaintiff has proved that the Defendants acted with malice or willfulness or with callous and reckless indifference to the safety or rights of others. One acts willfully or with reckless indifference to the rights of others when he acts in disregard of a high and excessive degree of danger about which he knows or which would be apparent to a reasonable person in his condition.

If you determine that the Defendants' conduct was so shocking and offensive as to justify an award of punitive damages, you may exercise your discretion to award those damages. In making any award of punitive damages, you should consider that the purpose of punitive damages is to punish a Defendant for shocking conduct, and to deter the Defendant and others from engaging in similar conduct in the future. The law does not require you to award punitive damages, however, if you decided to award punitive damages, you must use sound reason in setting the amount of the damages. The amount of an award of punitive damages must not reflect bias, prejudice, or sympathy toward any party. However, the amount can be as large as you believe necessary to fulfill the purposes of punitive damages. You may consider the financial resources of the Defendants in fixing the amount of punitive damages, and you may impose punitive damages against one or more of the Defendants, and not others, or against more than one Defendant in different amounts.[2]

---

[2] On the general subject of punitive damages and the guidelines to be considered in fashioning jury charges, *see Pacific Mutual Life Insurance Company v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2 1 (1991).

## SPECIAL INTERROGATORIES

You will answer Special Interrogatories or questions in order to reach a verdict in this case. I will read these interrogatories to you now:

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DINO X. CHAVEZ, | § | |
| **Plaintiff** | § | |
| | § | |
| VS. | § | |
| | § | **CIVIL ACTION NO.** |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | **B - 02 – 128** |
| **Defendants/Third-Party Plaintiffs** | § | |
| | § | |
| AMERICAN FAMILY LIFE ASSURANCE | § | |
| COMPANY OF COLUMBUS (AFLAC), | § | |
| **Third-Party Defendant** | § | |

---

## SPECIAL INTERROGATORIES

---

**THE JURY MUST UNANIMOUSLY AGREE ON THE ANSWERS TO ALL OF THE QUESTIONS.**

## QUESTION NO. 1:

Do you find, based on a preponderance of the evidence, that Plaintiff DINO X. CHAVEZ' protected speech was a substantial or motivating factor in Defendants Noe Sauceda's or BISD's decision to terminate him from his position as Third Party Administrator for the BISD Cafeteria Plan, reject his proposal for the renewal of his TPA contract, prohibit him from contacting school personnel during school business hours, prohibit him being present on school-district property, and contact his supervisors at AFLAC, both in writing and verbally, to prevent him from continuing to work at BISD?

ANSWER "YES" or "NO"

_____

If you have answered Question No. 1 "Yes," please answer Question No. 2. If not, proceed to Question No. 4.

## QUESTION NO. 2:

Do you find, based on a preponderance of the evidence, that Third-Party Defendant AFLAC discriminated against Plaintiff Dino X. Chavez in his ability to make and enforce contracts on account of his race?

ANSWER "YES" or "NO"

_____

If you have answered Question No. 2 "Yes," please answer Question No. 3.  If not, proceed to Question No. 4.

## QUESTION NO. 3:

What percentage of responsibility do you is attributable to each of those found by you, in your answer to Question Nos. 1 and 2, to have violated Plaintiff's rights?

The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The responsibility attributable to a person named below is not necessarily measured by the number of acts or omissions found. The percentage attributable to a person need not be the same percentage attributed to that person in answering another question.

(a)     BISD and Sauceda          _____ %

(b)     AFLAC                     _____ %

         TOTAL                    100%

Please proceed to Question No. 4.

## QUESTION NO. 4:

Did Defendant Noe Sauceda wrongfully interfere with Plaintiff Dino X. Chavez's ability to enter into contractual relations with AFLAC or BISD employees?

Wrong interference occurred if ---

        a.  there was a reasonable probability that Dino X. Chavez would have entered into the contractual relations and

        b.  Noe Sauceda intentionally prevented the contractual relations from occurring with the purpose of harming Plaintiff Dino X. Chavez.

ANSWER:     _____

Please proceed to Question No. 5.

## QUESTION NO. 5

Did Defendant Noe Sauceda commit fraud against Plaintiff Dino X. Chavez?

Fraud occurs when ---

       a.  a party makes a material misrepresentation,

       b.  the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,

       c.  the misrepresentation is made with the intention that it should be acted on by the other party, and

       d.  the other party relies on the misrepresentation and thereby suffers injury.

Misrepresentation means –

A statement of opinion that the maker knows to be false, or an expression of opinion that is false, made by one claiming or implying to have special knowledge of the subject matter of the opinion. "Special knowledge" means knowledge or information superior to that possessed by the other party and to which the other party did not have equal access.

ANSWER:     _____

Please proceed to Question No. 6.

## QUESTION NO. 6:

Did Defendant Noe Sauceda commit slander or libel against Plaintiff Dino X. Chavez?

A "libel" is a false and malicious defamation of a person by printing or writing, and a "slander" is a false and malicious defamation of a person by speaking, tending to provoke the person to wrath or to expose the person to public hatred, contempt or ridicule, or to deprive the person of the benefits of public confidence and social dealings.

Slander or libel occurred if

     (1)     Noe Sauceda published a statement of fact to a third party;
     (2)     The statement referred to Dino X. Chavez;
     (3)     The statement was defamatory; and,
     (4)     The statement was false.

ANSWER       _____

Source of Instruction: *Philadelphia Newspaper v. Hepps*, 475 W.S. 767 (1986).

Please proceed to Question No. 7.

## QUESTION NO. 7:

Did Defendant Noe Sauceda commit intentional infliction of emotional distress against Plaintiff Dino X. Chavez?

Intentional infliction of emotional distress occurred if

      (1)    Noe Sauceda's actions were intentional or reckless;

      (2)    Noe Sauceda's actions were extreme and outrageous; and,

      (3)    His actions caused severe emotional distress.

Extreme and outrageous conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605 (Tex. 1998).

ANSWER       _____

Source of Instruction: *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993).

Please proceed to Question No. 8.

## QUESTION NO. 8:

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate **DINO X. CHAVEZ** for his injuries, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

(a)      Physical pain and mental anguish in the past      $_____

(b)      Physical pain and mental anguish which, in reasonable probability, he will suffer in the future      $_____

(c)      Loss of earnings sustained in the past      $_____

(d)      Loss of earnings that, in reasonable probability, he will sustain in the future      $_____


**ANSWER:**      _____


Please proceed to Question No. 9.

If you have answered "Yes," to Question Nos. 1, 4, 5, 6, or 7, and you have inserted a sum of money in answer to Question No. 8, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 9:

Do you find by clear and convincing evidence that the harm to Plaintiff Dino X. Chavez resulted from malice or fraud?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means:

  a.  a specific intent by Defendant Noe Sauceda to cause substantial injury to Plaintiff Dino X. Chavez; or

  b.  an act or omission by Defendant Noe Sauceda,

    (i)  which, when viewed objectively from the standpoint of Defendant Noe Sauceda at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

    (ii)  of which Defendant Noe Sauceda had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

"Fraud" occurs when
  a.  a party makes a material misrepresentation,
  b.  the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,
  c.  the misrepresentation is made with the intention that it should be acted on by the other party, and
  d.  the other party relies on the misrepresentation and thereby suffers injury.

Answer "YES" or "NO."


ANSWER: _____

If you answered "Yes" to Question No. 9, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 10:

What sum of money, if any, if paid now in cash, should be assessed against Defendant Noe Sauceda and awarded to Plaintiff Dino X. Chavez as exemplary damages, if any, for the conduct found to Question No. 9?

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are —
    a.  The nature of the wrong.
    b.  The character of the conduct involved.
    c.  The degree of culpability of Defendant Noe Sauceda.
    d.  The situation and sensibilities of the parties concerned.
    e.  The extent to which such conduct offends a public sense of justice and propriety.
    f.  The net worth of Defendant Noe Sauceda.

Answer in dollars and cents, if any.

ANSWER:    $_____

# "EXHIBIT D1-D"

Defendant BISD's Proposed Charge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DINO X. CHAVEZ | § | |
| | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO.   B-02-128 |
| BROWNSVILLE INDEPENDENT | § | JURY REQUESTED |
| SCHOOL DISTRICT AND | § | |
| NOE SAUCEDA | § | |
| | § | |
| VS. | § | |
| | § | |
| AMERICAN FAMILY LIFE INSURANCE | § | |
| COMPANY OF COLUMBUS (AFLAC) | § | |

---

## DEFENDANT'S PROPOSED JURY INSTRUCTIONS AND QUESTIONS

---

Now Comes Defendant Brownsville Independent School District and requests that the Court

submit to the jury the instructions attached hereto.

**GENERAL INSTRUCTIONS:**

**Members of the Jury:**

Now that you have heard the evidence, my duty is to give you the instructions of the Court

on the law you should apply to this case.  Your duty as jurors is to follow the law as stated in these

instructions and to apply these rules of law to the facts you find from the evidence in the case.  You

are not to single out on instruction alone as stating the law; rather, you must consider the instructions

as a whole.

Regardless of any opinion you may have as to what the law should be, you would violate your

sworn duty if you based a verdict upon any view of the law other than that given in the instructions

stated by the Court. Similarly, you would violate your sworn duty as judges of the facts if you based your verdict upon anything but the evidence in this case. You, the Jury, are the sole and exclusive judges of the facts.

You are to perform this duty without bias or prejudice as to any party. Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion. Both the parties and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the Court, and reach a just verdict regardless of the consequences.

You should consider and decide this case as an action between persons of equal standing in the community, of equal worth, and holding the same or similar situations in life.

You must consider only evidence properly admitted in the case. Unless you are otherwise instructed, the evidence in the case always consists of the sworn testimony of the witnesses, regardless of who may have called them; any deposition testimony of witnesses that was admitted into evidence; all exhibits received in evidence, regardless of who may have produced them; and all facts that have been admitted or stipulated. You must entirely disregard any evidence that a party objected to if I sustained that objection and any evidence that was ordered stricken by the Court.

Statements and arguments of counsel are not evidence; rather they are intended only to assist you in understanding the evidence and the contentions of the parties. During the course of the trial, it often becomes the duty of counsel to make objections and for the Court to rule on them in accordance with the law. You should not consider or be influenced by the fact that such objections have been made, whether they are sustained or overruled.

Similarly, you should not allow your attitude toward either party or the evidence to be affected by how you regard the general conduct or attitude of the attorneys. Each attorney has a

solemn duty to defend the client vigorously and with dedication and thus may not please everyone all the time. Your decision on the facts of this case should therefore not be affected by your opinion of the attorneys.

While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

You, as jurors, are the sole judges of the credibility of the witnesses and weight their testimony deserves. You should carefully scrutinize all the testimony given and, in weighing the testimony of each witness, consider the relationship between the witness and the parties in the case, his or her interest in the outcome of the case, the witness's manner of testifying, candor, fairness, and intelligence, and the extent to which the witness's testimony has been confirmed or contradicted, if at all, by other credible evidence.

You will rely upon your own good judgment, your own common sense, and the experience you have gained as you have gone about your everyday affairs in weighing the evidence and determining the weight to be given to it. You are permitted to accept as true and worthy of belief everything that a particular witness may have said, or you are permitted to reject everything that a particular witness may have said. Of course, you may also accept as true part of what a witness tells you and reject other portions of that witness' testimony.

# EVIDENCE

You may, in your determination of the facts of this case, consider both direct and circumstantial evidence. Direct evidence is the testimony of a witness who actually saw an event occur. Circumstantial evidence is proof of a chain of circumstances pointing to the occurrence of a fact or the existence of a fact. Direct evidence includes a witness' testimony as to facts within that person's own personal knowledge, matters that the witness saw and heard, and matters that came to the witness out of that person's own senses or observations. Circumstantial evidence, rather than or in addition to direct evidence, can be used to establish a fact if that fact may be fairly and reasonably inferred from all other facts and circumstances proved in the case. In order to establish a fact or conclusion by circumstantial evidence, the facts that were directly proven in the case must be such as to make the fact or conclusion sought to be shown by circumstantial evidence more reasonably probable to be true than alternative facts or conclusions. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with a preponderance of all the evidence in the case, both direct and circumstantial.

## PREPONDERANCE OF THE EVIDENCE

In this case, the Plaintiff must prove every essential part of his claim by a preponderance of the evidence. A preponderance of the evidence simply means evidence that persuades you that the Plaintiff's claim is more likely true than not true. In deciding whether any fact has been proven by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses regardless of who may have called them and all exhibits received in evidence regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiff's claims, by a preponderance of the evidence, you should find for the Defendant as to that claim.

Modern Federal Jury Instructions 73-2 (5th Pattern Civil Jury Inst. 2.20)

## CIVIL RIGHTS

The Plaintiff claims that Brownsville Independent School District, herein School District, is liable for the alleged constitutional deprivations. A School District is liable for the deprivation of a constitutional right if the deprivation was pursuant to governmental custom or policy. Therefore, if you find that the Plaintiff was injured as the proximate or legal result of Brownsville Independent School District's policy or custom, whether made by its lawmakers or by those officials whose edicts or acts may fairly be said to represent official policy, Brownsville Independent School District itself will be responsible.

Only the Board of Trustees, by majority vote at a legally called open meeting may promulgate policy for the Brownsville Independent School District. A formal policy is a statement, ordinance, regulation or decision that is officially adopted and promulgated by the Brownsville Independent School District Board of Trustees.

For an action to be considered a custom Chavez must show a persistent, wide spread practice of school district officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents school district policy.

The Plaintiff claims that Defendant, while acting "under color of state law," intentionally deprived the Plaintiff of rights under the Constitution of the United States.

The Plaintiff claims that while Defendant was acting under color of authority of the State of Texas as members of the Brownsville Independent School District it intentionally violated the Plaintiff's constitutional rights. The Plaintiff claims that when Defendant Brownsville Independent school District prevented Plaintiff from participating in the open bidding process, because of the

Plaintiff's exercise of the right of free speech, this Defendant deprived him of his rights under the First Amendment of the Constitution.

State or local officials act "under color" of the authority of the State when they act within the limits of their lawful authority. However, they also act "under color" of the authority of the State when they act without lawful authority or beyond the bounds of their lawful authority if their acts are done while the officials are purporting or pretending to act in the performance of their official duties. An official acts "under color" of the state authority if he abuses or misuses a power that he possesses only because he is an official.

*United States Court of Appeals, Fifth Judicial Circuit*

*Pattern Jury Instructions 103.3 - 103.4*

## EXERCISE OF FIRST AMENDMENT RIGHTS

The Plaintiff claims that Defendant, while acting "under color of state law," intentionally deprived him of his rights under the Constitution of the United States.

The Plaintiff claims that while Defendants was acting under color of authority of the State of Texas it intentionally violated the Plaintiff's constitutional rights. The Plaintiff claims that when Defendant deprived him of the opportunity to participate in an open bidding process because of the Plaintiff's exercise of the right of free speech, Defendant deprived him of his rights under the First Amendment of the Constitution.

In determining whether a violation of the First Amendment has occurred you must balance the interests of the school district as to its duties and responsibilities with the plaintiff's right to participate in an open bidding process.

A person may sue for an award of money damages against anyone who, "under color" of any State law or custom, intentionally violates the plaintiff's rights under the Constitution of the United States.

Thus, the plaintiff must prove by a preponderance of the evidence each of the following:

1.   That the actions of the defendant(s) were "under color" of the authority of the State of Texas;

2.   That the plaintiff's speech activities were Constitutionally "protected" under the First Amendment;

3.   That the plaintiff's exercise of protected First Amendment rights was a substantial or motivating factor in the defendants decision to deprive him of the opportunity to participate in an open bidding process;

4.    That the defendants acts were the proximate or legal cause of the plaintiff's damages.

In determining whether Defendant intentionally or with deliberate indifference violated the Plaintiff's First Amendment rights, you must remember that the Plaintiff has a right to practice freedom of speech only to the extent that it does not unduly interfere with the duties and responsibilities of the school district. In determining whether the plaintiff's speech activities in this case were protected activities under the First Amendment, you must balance the plaintiff's First Amendment interests against the defendants interests in promoting the efficiency of the public service it performs through its employees. Therefore, if you find under all the circumstances presented that a reasonable public employer could not have concluded that the plaintiff's speech activities unduly interfered with the duties and responsibilities of the school district, you must find that the speech was protected First Amendment expression.

Plaintiff must prove deliberate indifference to plaintiff's rights by showing that the Defendant BISD deliberately or consciously chose deprive him of the opportunity to participate in the open bidding process, despite knowing such an act would be a violation of Plaintiff's constitutional rights.

To prove that his speech activities were a substantial or motivating factor in Defendant's decision, the Plaintiff does not have to prove that those speech activities were the only reason the Defendant made the decision. The Plaintiff need only prove that the speech activities were a substantial consideration that made a difference in or influenced the Defendant's decision.

The plaintiff must also prove by a preponderance of the evidence that the act or failure to act by defendant was a cause-in-fact of the damage plaintiff suffered. An act or a failure to act is a cause-in-fact of an injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages. The plaintiff must also

prove by a preponderance of the evidence that the act or failure to act by the defendant was a proximate cause of the damage plaintiff suffered. An act or omission is a proximate cause of the plaintiff's injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.[1]

If you find that the plaintiff has established each element of his claim, you must then decide whether the defendant(s) have shown by a preponderance of the evidence that they would have deprived the plaintiff of participating in the open bidding process for other reasons even if plaintiffs had not exercised his protected speech activity. If you find that defendant would have deprived the plaintiff of participating in the open bidding process for reasons apart from the speech activity, then your verdict should be for the defendant.

If you find that the plaintiff has proven his claim, you must then consider the individual defendant's defense that its conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident in issue and that the defendant is therefore not liable.

If after considering all of the surrounding circumstances of the case as they would have reasonably appeared at the time the plaintiff was deprived of an opportunity to participate in the open bidding process, you find from a preponderance of the evidence that plaintiff has proven they knowingly violated the law regarding the plaintiff's constitutional rights, you must find for the plaintiff. If, however, you find that defendant had a reasonable belief that its actions did not violate the constitutional rights of the plaintiff, then you cannot find it liable even if the plaintiff's rights

---

[1]See Anderson v. Nosser, 456 F.2d 835 (5th Cir.1972), *affirmed sub nom.* Nosser v. Bradley, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972); Reimer v. Smith, 663 F.2d 1316 (5th Cir.1981). See also S. Nahmod, Civil Rights and Civil Liberties Litigation—The Law of Section 1983, sections 3.17 and 3.18 (second edition 1986).

were in fact violated as a result of the defendant's objectively reasonable action.

      If you find for the Plaintiff and against the Defendant on its defense, you must then decide the issue of the Plaintiff's damages.

## DAMAGES

I will now instruct you on the law governing damages. However, the fact that I instruct you on the issue of damages should not be interpreted in any way as an indication that I believe the Plaintiff should, or should not, prevail in this case.

## COMPENSATORY DAMAGES

If you find that the Defendant is liable to the Plaintiff, then you must determine an amount that is fair compensation for all of the Plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the Plaintiff whole--that is, to compensate the Plaintiff for the damage that the Plaintiff has suffered, if any, from the injuries he sustained as a result of the Defendant's acts or omissions.

You may award compensatory damages only for injuries that the Plaintiff proves were proximately caused by the Defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of the Plaintiff's damages, no more and no less. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize a defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which the Plaintiff has actually suffered.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the Plaintiff prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You are specifically instructed that a person's constitutional rights have no intrinsic value. Thus, a plaintiff must prove more than that his constitutional rights were violated to prove that he or she suffered damages.

You will now return to decide the case. In order to prevail, the Plaintiff must sustain his burden of proof as I have explained to you with respect to each element of their complaint. If you

find that the Plaintiff succeeded, you should return a verdict in his favor on that claim. If you find that the Plaintiff failed to sustain his burden on any element of his claim or if you find that Defendant is entitled to qualified /sovereign immunity, you should return a verdict against the Plaintiff.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself, but you should do so only after a consideration of the case for himself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh you respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his conscientious beliefs solely for the purpose of returning a unanimous verdict.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DINO X. CHAVEZ                              §
                                           §
                                           §
VS.                                        §
                                           §        CIVIL ACTION NO.  B-02-128
BROWNSVILLE INDEPENDENT                     §        JURY REQUESTED
SCHOOL DISTRICT AND                         §
NOE SAUCEDA                                 §
                                           §
VS.                                        §
                                           §
AMERICAN FAMILY LIFE INSURANCE             §
COMPANY OF COLUMBUS (AFLAC)                 §

===============================================================

**DEFENDANT'S PROPOSED JURY ISSUES**

===============================================================

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Now Comes, Defendant Brownsville Independent School District  herein, and requests that

the Court submit to the jury the issues attached hereto.


**Question No. 1**

Did the Plaintiff engage in constitutionally protected speech on a matter of public concern?

Speech or experience touches on a matter of public concern when it can be fairly considered
as relating to any matter of political, social or other concern to the community.

Although the subject matter of the communication may generally be of public interest, the
focus of the public concern inquiry is upon what is actually said or expressed.

ANSWER:

      YES:_____      NO: _____

## Question No. 2

      Was Plaintiff's speech activity a substantial or motivating factor in Defendant Sauceda's decision to deny Chavez participation in the open bidding process.

ANSWER:

      YES:_____      NO: _____

## Question No. 3

      Was Defendant Sauceda's decision to deny Dino Chavez participation in the open bidding process the result of implementing a Brownsville Independent School District policy or custom.

ANSWER:

      YES:_____      NO: _____

## Question No. 4

      Were Defendant's acts the proximate or legal cause of damages sustained by the Plaintiff.

ANSWER:

      Answer "Yes" or "No" as to each Defendant.

      Defendant Sauceda:  YES:_____      NO: _____

      Defendant BISD:     YES:_____      NO: _____

      Third-Party AFLAC:  YES:_____      NO: _____

**Question No. 5**

What percentage of responsibility of those found by you in response to Question No. 5 to be responsible for Plaintiff's damages is attributable to each Defendant or Third-Party Defendant? Your answer must total 100%.

ANSWER:

Defendant Sauceda: _____

Defendant BISD: _____

Third-Party AFLAC: _____

Total: __100%__

**Question No. 6**

Would the Plaintiff have been precluded from participating in the open bidding process even in the absence of the Plaintiff's protected speech activity?

ANSWER:

YES:_____        NO: _____

**Question No. 7**

What sum of money, if any, would reasonably and fairly compensate Plaintiff for:

(a)    lost wages and income (past and future)    $_____

(b)    damage to reputation    $_____

©)    mental anguish, pain, and suffering    $_____

## MITIGATION OF DAMAGES

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate – to avoid or minimize those damages.

If you find the Defendant is liable and the Plaintiff has suffered damages, the Plaintiff may not recover from any item of damage which he could have avoided through reasonable effort. If you find by a preponderous of the evidence, the Plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages which he would have avoided had he taken advantage of the opportunity.

You are the sole judge of whether the Plaintiff acted reasonably in avoiding or minimizing his damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The defendant has the burden of proving the damages which the plaintiff could have mitigated. In deciding whether to reduce the plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the Defendant has satisfied his burden of proving that the Plaintiff's conduct was not reasonable.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

*United States Court of Appeals Fifth Judicial Circuit Pattern Jury's Instructions 1999 (Civil Cases) 15.15*

## RULE AGAINST DOUBLE RECOVERY

You should not award damages more than once for the same injury. For example, if a plaintiff were to prevail on two claims and establish damages for the same injury under both claims, you could not award her damages on both of those claims. The plaintiff is entitled to be made whole, but is not entitled to recover more than she lost. Of course, if different injuries are attributed to the separate claims, then you must compensate her fully for all of her injuries.

## BURDEN OF PROOF

Plaintiff must prove by a preponderance of the evidence that the act or failure to act by Defendant was a cause in fact of the damage Plaintiff suffered. An act or a failure to act is a cause in fact of an injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages. The Plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the Defendant was a proximate cause of the damage Plaintiff suffered. An act or omission is a proximate cause of the Plaintiff's injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.

After you have retired to consider your verdict, no one has any authority to communicate with you except the bailiff of the Court. You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all of the questions which you are required to answer under the instructions of the judge, and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will advise the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

_____

JUDGE PRESIDING

# CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicted, and herewith return same into court as our verdict.

(To be signed by the presiding juror if unanimous.)

_____

PRESIDING JUROR

(To be signed by those rendering the verdict if not unanimous.)

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

Signed on this 19th day of December, 2003

Respectfully submitted,

**ROERIG, OLIVEIRA & FISHER, LP**
855 West Price Road, Suite 9
Brownsville, Texas 78550
Telephone: (956) 542-5666
Facsimile: (956) 542-0016

Counsel for Defendant Brownsville Independent School
District

By:_____
Elizabeth G. Neally
State Bar No. 14840400
Fed. ID #8044
Ricardo Morado
State Bar #14417250
Fed. ID #1213

# "EXHIBIT D2-D"

Defendant Sauceda's Proposed Charge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DINO X. CHAVEZ | § | |
| | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO.  B-02-128 |
| BROWNSVILLE INDEPENDENT | § | JURY REQUESTED |
| SCHOOL DISTRICT AND | § | |
| NOE SAUCEDA | § | |
| | § | |
| VS. | § | |
| | § | |
| AMERICAN FAMILY LIFE INSURANCE | § | |
| COMPANY OF COLUMBUS (AFLAC) | § | |

---

### DEFENDANT'S PROPOSED JURY INSTRUCTIONS AND QUESTIONS

---

Now Comes Defendant Noe Sauceda, and request that the Court submit to the jury the instructions attached hereto.

**GENERAL INSTRUCTIONS:**

**Members of the Jury:**

Now that you have heard the evidence, my duty is to give you the instructions of the Court on the law you should apply to this case.  Your duty as jurors is to follow the law as stated in these instructions and to apply these rules of law to the facts you find from the evidence in the case.  You are not to single out on instruction alone as stating the law; rather, you must consider the instructions as a whole.

Regardless of any opinion you may have as to what the law should be, you would violate your sworn duty if you based a verdict upon any view of the law other than that given in the instructions

02-156 CHAVEZ: Jury Charge
PAGE 1

stated by the Court. Similarly, you would violate your sworn duty as judges of the facts if you based your verdict upon anything but the evidence in this case. You, the Jury, are the sole and exclusive judges of the facts.

You are to perform this duty without bias or prejudice as to any party. Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion. Both the parties and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the Court, and reach a just verdict regardless of the consequences.

You should consider and decide this case as an action between persons of equal standing in the community, of equal worth, and holding the same or similar situations in life.

You must consider only evidence properly admitted in the case. Unless you are otherwise instructed, the evidence in the case always consists of the sworn testimony of the witnesses, regardless of who may have called them; any deposition testimony of witnesses that was admitted into evidence; all exhibits received in evidence, regardless of who may have produced them; and all facts that have been admitted or stipulated. You must entirely disregard any evidence that a party objected to if I sustained that objection and any evidence that was ordered stricken by the Court.

Statements and arguments of counsel are not evidence; rather they are intended only to assist you in understanding the evidence and the contentions of the parties. During the course of the trial, it often becomes the duty of counsel to make objections and for the Court to rule on them in accordance with the law. You should not consider or be influenced by the fact that such objections have been made, whether they are sustained or overruled.

Similarly, you should not allow your attitude toward either party or the evidence to be affected by how you regard the general conduct or attitude of the attorneys. Each attorney has a

solemn duty to defend the client vigorously and with dedication and thus may not please everyone all the time. Your decision on the facts of this case should therefore not be affected by your opinion of the attorneys.

While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

You, as jurors, are the sole judges of the credibility of the witnesses and weight their testimony deserves. You should carefully scrutinize all the testimony given and, in weighing the testimony of each witness, consider the relationship between the witness and the parties in the case, his or her interest in the outcome of the case, the witness's manner of testifying, candor, fairness, and intelligence, and the extent to which the witness's testimony has been confirmed or contradicted, if at all, by other credible evidence.

You will rely upon your own good judgment, your own common sense, and the experience you have gained as you have gone about your everyday affairs in weighing the evidence and determining the weight to be given to it. You are permitted to accept as true and worthy of belief everything that a particular witness may have said, or you are permitted to reject everything that a particular witness may have said. Of course, you may also accept as true part of what a witness tells you and reject other portions of that witness' testimony.

**WITNESSES**

02-156 CHAVEZ: Jury Charge
PAGE 3

A witness may be discredited or "impeached" by contradictory evidence or by evidence that the witness has at other times made statements that are inconsistent with the witness' present testimony. The earlier contradictory statements are admissible only to impeach the credibility of the witness and not to conclusively establish the truth of the earlier statements. If you believe any witness has been impeached and thus discredited, you are free to give the testimony of that witness such credibility, if any, as you may think it deserves.

## EVIDENCE

You may, in your determination of the facts of this case, consider both direct and circumstantial evidence. Direct evidence is the testimony of a witness who actually saw an event occur. Circumstantial evidence is proof of a chain of circumstances pointing to the occurrence of a fact or the existence of a fact. Direct evidence includes a witness' testimony as to facts within that person's own personal knowledge, matters that the witness saw and heard, and matters that came to the witness out of that person's own senses or observations. Circumstantial evidence, rather than or in addition to direct evidence, can be used to establish a fact if that fact may be fairly and reasonably inferred from all other facts and circumstances proved in the case. In order to establish a fact or conclusion by circumstantial evidence, the facts that were directly proven in the case must be such as to make the fact or conclusion sought to be shown by circumstantial evidence more reasonably probable to be true than alternative facts or conclusions. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with a preponderance of all the evidence in the case, both direct and circumstantial.

## PREPONDERANCE OF THE EVIDENCE

In this case, the Plaintiff must prove every essential part of his claim by a preponderance of the evidence. A preponderance of the evidence simply means evidence that persuades you that the Plaintiff's claim is more likely true than not true. In deciding whether any fact has been proven by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses regardless of who may have called them and all exhibits received in evidence regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiff's claims, by a preponderance of the evidence, you should find for the Defendant as to that claim.

Modern Federal Jury Instructions 73-2 (5th Pattern Civil Jury Inst.2.20)

## EXERCISE OF FIRST AMENDMENT RIGHTS

The plaintiff claims that the defendants, while acting "under color of state law," intentionally deprived him of his rights under the Constitution of the United States.

The plaintiff claims that while the defendants were acting under color of authority of the State of Texas they intentionally violated the plaintiff's constitutional rights. The plaintiff claims that when the defendants deprived him of the opportunity to participate in an open bidding process because of the plaintiff's exercise of the right of free speech, the defendants deprived him of their rights under the First Amendment of the Constitution.

In determining whether a violation of the First Amendment has occurred you must balance the interests of the school district as to its duties and responsibilities with the plaintiff's right to participate in an open bidding process.

A person may sue for an award of money damages against anyone who, "under color" of any State law or custom, intentionally violates the plaintiff's rights under the Constitution of the United States.

Thus, the plaintiff must prove by a preponderance of the evidence each of the following:

1. That the actions of the defendant(s) were "under color" of the authority of the State of Texas;

2. That the plaintiff's speech activities were Constitutionally "protected" under the First Amendment;

3. That the plaintiff's exercise of protected First Amendment rights was a substantial or motivating factor in the defendants decision to deprive him of the opportunity to participate in an open bidding process;

4. That the defendants acts were the proximate or legal cause of the plaintiff's damages.

In determining whether the defendants intentionally or with deliberate indifference violated the plaintiff's First Amendment rights, you must remember that the plaintiff has a right to practice freedom of speech only to the extent that it does not unduly interfere with the duties and responsibilities of the school district. In determining whether the plaintiff's speech activities in this case were protected activities under the First Amendment, you must balance the plaintiff's First Amendment interests against the defendants interests in promoting the efficiency of the public service it performs through its employees. Therefore, if you find under all the circumstances presented that a reasonable public employer could not have concluded that the plaintiff's speech activities unduly interfered with the duties and responsibilities of the school district, you must find that the speech was protected First Amendment expression.

Plaintiffs must prove deliberate indifference to plaintiff's rights by showing that the Defendants deliberately or consciously chose deprive him of the opportunity to participate in the open bidding process, despite knowing such an act would be a violation of plaintiff's constitutional rights.

To prove that his speech activities were a substantial or motivating factor in the defendants' decision, the plaintiff does not have to prove that those speech activities were the only reason the defendants made the decision. The plaintiff need only prove that the speech activities were a substantial consideration that made a difference in or influenced the defendants' decision.

The plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the defendants was a cause-in-fact of the damage plaintiff suffered. An act or a failure to act is a cause-in-fact of an injury or damages if it appears from the evidence that the act or omission played

a substantial part in bringing about or actually causing the injury or damages. The plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the defendant was a proximate cause of the damage plaintiff suffered. An act or omission is a proximate cause of the plaintiff's injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.[1]

If you find that the plaintiff has established each element of his claim, you must then decide whether the defendant(s) have shown by a preponderance of the evidence that they would have deprived the plaintiff of participating in the open bidding process for other reasons even if plaintiffs had not exercised his protected speech activity. If you find that the defendants would have deprived the plaintiff of participating in the open bidding process for reasons apart from the speech activity, then your verdict should be for the defendants.

If you find that the plaintiff has proven his claim, you must then consider the individual defendants' defense that their conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident in issue and that the defendants are therefore not liable.

If after considering all of the surrounding circumstances of the case as they would have reasonably appeared at the time the plaintiff was deprived of an opportunity to participate in the open bidding process, you find from a preponderance of the evidence that plaintiff has proven they knowingly violated the law regarding the plaintiff's constitutional rights, you must find for the

---

[1]See Anderson v. Nosser, 456 F.2d 835 (5th Cir.1972), *affirmed sub nom.* Nosser v. Bradley, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972); Reimer v. Smith, 663 F.2d 1316 (5th Cir.1981). See also S. Nahmod, Civil Rights and Civil Liberties Litigation—The Law of Section 1983, sections 3.17 and 3.18 (second edition 1986).

plaintiff. If, however, you find that the defendants had a reasonable belief that their actions did not violate the constitutional rights of the plaintiff, then you cannot find them liable even if the plaintiff's rights were in fact violated as a result of the defendants' objectively reasonable action.

If you find for the plaintiff and against the defendants on their defense, you must then decide the issue of the plaintiff's damages.

**DAMAGES**

I will now instruct you on the law governing damages. However, the fact that I instruct you on the issue of damages should not be interpreted in any way as an indication that I believe the Plaintiff should, or should not, prevail in this case.

## COMPENSATORY DAMAGES

If you find that the Defendant is liable to the Plaintiff, then you must determine an amount that is fair compensation for all of the Plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the Plaintiff whole--that is, to compensate the Plaintiff for the damage that the Plaintiff has suffered, if any, from the injuries he sustained as a result of the Defendant's acts or omissions.

You may award compensatory damages only for injuries that the Plaintiff proves were proximately caused by the Defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of the Plaintiff's damages, no more and no less. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize a defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which the Plaintiff has actually suffered.

If you decide to award compensatory damages, you should be guided by dispassionate

02-156 CHAVEZ: Jury Charge
PAGE 10

common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the Plaintiff prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You are specifically instructed that a person's constitutional rights have no intrinsic value. Thus, a plaintiff must prove more than that his constitutional rights were violated to prove that he or she suffered damages.

You will now return to decide the case. In order to prevail, the Plaintiff must sustain his burden of proof as I have explained to you with respect to each element of their complaint. If you find that the Plaintiff succeeded, you should return a verdict in his favor on that claim. If you find that the Plaintiff failed to sustain his burden on any element of their claim or if you find that Defendants are entitled to qualified /sovereign immunity, you should return a verdict against the Plaintiff.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself, but you should do so only after a consideration of the case for himself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh you respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

02-156 CHAVEZ: Jury Charge
PAGE 11

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his conscientious beliefs solely for the purpose of returning a unanimous verdict.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DINO X. CHAVEZ                              §
                                           §
                                           §
VS.                                        §
                                           §        CIVIL ACTION NO.  B-02-128
BROWNSVILLE INDEPENDENT                     §        JURY REQUESTED
SCHOOL DISTRICT AND                         §
NOE SAUCEDA                                 §
                                           §
VS.                                        §
                                           §
AMERICAN FAMILY LIFE INSURANCE §
COMPANY OF COLUMBUS (AFLAC)      §

---

## DEFENDANT'S PROPOSED JURY ISSUES

---

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Now Comes, Defendant Noe Sauceda herein, and requests that the Court submit to the jury

the issues attached hereto.

**Question No. 1**

Was Dino Chavez's speech a substantial or motivating factor in Noe Sauceda's decision to

deprive him of his participation in the open bidding process which was the proximate cause of damages

to Dino Chavez?

Answer_____

02-156 CHAVEZ: Jury Charge
PAGE 13

**Question No. 2**

Would Noe Sauceda have deprived Dino Chavez of the opportunity to participate in the open bidding process even in the absence of plaintiff's protected speech? If the answer is yes, do not answer question 3.

Answer_____

**Question No. 3**

What sum of money, if any, would reasonably and fairly compensate Dino Chavez for:

(a)    lost wages and income (past and future)    $ _____

(b)    damage to reputation    $ _____

(c)    mental anguish, pain, and suffering    $ _____

## TORTIOUS AND INTENTIONAL INTERFERENCE WITH AN EXISTING CONTRACT

**Question No. 4**

Did Noe Sauceda intentionally interfere with the contract between Dino Chavez and AFLAC?

Interference is intentional if committed with the desire to interfere with the contract or with the belief that interference is substantially certain to result.


Answer_____

Source of Instruction: Texas Pattern Jury Charge 106.1

02-156 CHAVEZ: Jury Charge
PAGE 15

## FRAUD

**Question No. 5**

      Did Noe Sauceda commit fraud against Dino Chavez?

Fraud occurs when

        (1)      A party makes a material misrepresentation,

        (2)      The misrepresentation is made with knowledge of its falsity or made recklessly without

                any knowledge of the truth and as a positive assertion,

        (3)      The misrepresentation is made with the intention that it should be acted on by the other

                party, and

        (4)      The other party relies on the misrepresentation and thereby suffers injury.

      Misrepresentation is a false statement of fact.

Answer_____

Source of Instruction:  Texas Pattern Jury Charge 105.1, 105.2, 105.3.

## SLANDER/LIBEL

**Question No. 6**

      Did Noe Sauceda commit slander or libel against Dino Chavez?

Slander or Libel occurred if

    (1)      Noe Sauceda published a statement of fact to a third party;

    (2)      The statement referred to Dino Chavez;

    (3)      The statement was defamatory; and

    (4)      The statement was false;

Answer_____

Source of Instruction: *Philadelphia Newspapers v. Hepps*, 475 U.S. 767 (1986).

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**Question No. 7**

Did Noe Sauceda commit intentional infliction of emotional distress against Dino Chavez?

Intentional infliction of emotion distress occurred if

(1)     Noe Sauceda's actions were intentional or reckless;

(2)     Noe Sauceda's actions were extreme and outrageous; and

(3)     his actions caused severe emotional distress.

Extreme and outrageous conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *GTE Southwest, Inc., v. Bruce*, 998 S.W.2d 605 (Tex.1998).

Answer_____

Source of Instruction:   *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993).

## DAMAGES

**Question No. 8**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Dino

Chavez for his damages, if any, proximately caused by Noe Sauceda's

(1)    tortiuos and intentional interference with an existing contract          $_____

(2)    fraud          $_____

(3)    slander or libel          $_____

(4)    intentional infliction of emotional distress          $_____

## MITIGATION OF DAMAGES

If you find that Plaintiff was injured as a natural consequence of conduct by the Defendants, you must determine whether Plaintiff would thereafter have done something to lessen the harm that he suffered. If Defendants convince you that the Plaintiff could have reduced the harm done to him but failed to do so, the Plaintiff is entitled only to damages sufficient to compensate her for the injury that he would have suffered if he had taken appropriate action to reduce the harm done to him.

## MITIGATION OF DAMAGES

If you find that Plaintiff was injured as a natural consequence of conduct by the Defendants, you must determine whether Plaintiff would thereafter have done something to lessen the harm that he suffered. If Defendants convince you that the Plaintiff could have reduced the harm done to him but failed to do so, the Plaintiff is entitled only to damages sufficient to compensate her for the injury that he would have suffered if he had taken appropriate action to reduce the harm done to him.

## RULE AGAINST DOUBLE RECOVERY

You should not award damages more than once for the same injury. For example, if a plaintiff were to prevail on two claims and establish damages for the same injury under both claims, you could not award her damages on both of those claims. The plaintiff is entitled to be made whole, but is not entitled to recover more than she lost. Of course, if different injuries are attributed to the separate claims, then you must compensate her fully for all of her injuries.

## BURDEN OF PROOF

Plaintiff must prove by a preponderance of the evidence that the act or failure to act by Defendants was a cause in fact of the damage Plaintiff suffered. An act or a failure to act is a cause in fact of an injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages. The Plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the Defendant was a proximate cause of the damage Plaintiff suffered. An act or omission is a proximate cause of the Plaintiff's injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.

After you have retired to consider your verdict, no one has any authority to communicate with you except the bailiff of the Court. You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all of the questions which you are required to answer under the instructions of the judge, and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will advise the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

_____
JUDGE PRESIDING

## CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicted, and herewith return same into court as our verdict.

(To be signed by the presiding juror if unanimous.)

_____

PRESIDING JUROR

(To be signed by those rendering the verdict if not unanimous.)

_____   _____

_____   _____

_____   _____

_____   _____

_____   _____

Signed on December 18, 2003

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
International Plaza, Ste. 460
3505 Boca Chica Blvd.
Brownsville, Texas 78521
Telephone: (956) 541-1846
Facsimile: (956) 541-1893

By: *Eileen Leeds wpmm*
Eileen M. Leeds
State Bar No. 00791093
USDC No. 16799
Attorneys for Defendant

02-156 CHAVEZ: Jury Charge
PAGE 24

# "EXHIBIT D3-D"

Third-Party Defendant AFLAC's Proposed Charge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DINO CHAVEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT and NOE SAUCEDA, | § | |
| | § | |
| Defendants, | § | |
| ----------------------------------------------------- | § | CIVIL ACTION NO. B-02-128 |
| BROWNSVILLE INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Third-Party Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| AMERICAN FAMILY LIFE ASSURANCE | § | |
| COMPANY OF COLUMBUS (AFLAC), | § | |
| | § | |
| Third-Party Defendant. | § | |

## THIRD-PARTY DEFENDANT AFLAC'S
## PROPOSED JURY CHARGE SUBMISSION

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW Third-Party Defendant American Family Life Assurance Company of Columbus ("AFLAC") and files this, its proposed jury interrogatories and instructions. AFLAC does not waive any objection to the propriety of the submission of any particular interrogatory or instruction to the jury under the law and under the evidence admitted at trial. Further, by this submission, AFLAC does not concede that any question regarding its conduct or regarding contribution or indemnity by AFLAC should be submitted to the jury, but AFLAC reiterates its position that Third-Party Plaintiff BISD has no right to contribution or indemnity against AFLAC in this case.

**AFLAC's Proposed Jury Charge – Page 1**

Respectfully submitted,

William B. Steele III, Attorney In Charge *by permission*
So. Dist. No. 8019
State Bar No. 19107400
Of Counsel:
LOCKE LIDDELL & SAPP LLP
100 Congress Ave., Suite 300
Austin, Texas 78701
(512) 305-4700
(512) 305-4800 (Fax)

Valorie C. Glass
So. Dist. No. 15303
State Bar No. 00784135
Of Counsel:
ATLAS & HALL, L.L.P.
P.O. Box 3725
McAllen, Texas 78502
(956) 682-5501
(956) 686-6109 (Fax)

**ATTORNEYS FOR THIRD-PARTY
DEFENDANT AMERICAN FAMILY LIFE
ASSURANCE COMPANY OF COLUMBUS**

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that a true and correct copy of the above and foregoing has been served via Federal Express, on this 17th day of December, 2003, to all counsel of record listed below:

J. Arnold Aguilar
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas 78520

Eileen Leeds
Willette & Guerra
3505 Boca Chica Boulevard.
Suite 460
Brownsville, Texas 78521

Elizabeth G. Neally
Roerig, Oliveira & Fisher, LLP
855 West Price Road, Suite 9
Brownsville, Texas 78550

William B. Steele III *by permission*

**AFLAC'S REQUESTED INSTRUCTION NO. 1:**

**(MITIGATION)**

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate--to avoid or minimize those damages.

If you find the defendant is liable and the plaintiff has suffered damages, the plaintiff may not recover for any item of damage which he could have avoided through reasonable effort. If you find by a preponderance of the evidence the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages which he would have avoided had he taken advantage of the opportunity.

You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing his damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The defendant has the burden of proving the damages which the plaintiff could have mitigated. In deciding whether to reduce the plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable.[1]

Given_____        Refused_____        Given as modified_____

---

[1]U.S. Fifth Circuit Judges Ass'n, Pattern Jury Instructions (Civil Cases) § 15.15 (1999) [hereinafter Fifth Circuit Pattern Jury Instructions].

**AFLAC's Proposed Jury Charge** – Page 3

**AFLAC'S REQUESTED INSTRUCTION NO. 2:**

**(CALCULATION OF PAST AND FUTURE DAMAGES)**

A. Damages Accrued

If you find for the plaintiff, he is entitled to recover an amount that will fairly compensate him for any damages he has suffered to date.

B. Calculation of Future Damages

If you find that the plaintiff is reasonably certain to suffer damages in the future from his injuries, then you should award him the amount you believe would fairly compensate him for such future damages. In calculating future damages, you should consider the standard table of mortality as compiled by the United States Bureau of the Census, or other recognized mortality table.

C. Reduction of Future Damages to Present Value

An award of future damages necessarily requires that payment be made now for a loss that plaintiff will not actually suffer until some future date. If you should find that the plaintiff is entitled to future damages, including future earnings, then you must determine the present worth in dollars of such future damages.

If you award damages for loss of future earnings, you must consider two particular factors:

1. You should reduce any award by the amount of the expenses that the plaintiff would have incurred in making those earnings.

2. If you make an award for future loss of earnings, you must reduce it to present value by considering the interest that the plaintiff could earn on the amount of the award if he made a relatively risk-free investment. The reason why you must make this reduction is because an award of an amount representing future loss of

earnings is more valuable to the plaintiff if he receives it today than if he received it in the future, when he would otherwise have earned it. It is more valuable because the plaintiff can earn interest on it for the period of time between the date of the award and the date he would have earned the money. Thus you should adjust the amount of any award for future loss of earnings by the amount of interest that the plaintiff can earn on that amount in the future.[2]


Given_____            Refused_____            Given as modified_____

---

[2]Fifth Circuit Pattern Jury Instructions § 15.3 (modified to exclude the last two sentences of pattern in situations regarding future medical expenses, future pain and suffering, and future mental anguish).

**AFLAC's Proposed Jury Charge** – Page 5

## AFLAC'S REQUESTED INSTRUCTION NO. 3:

## (WAIVER)

Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.[3]  Waiver can be either express or implied from clear acts or conduct.[4]

Given_____          Refused_____          Given as modified_____

---

[3] Texas Pattern Jury Charges, § 101.24 (1998).

[4] Lang v. Lee, 777 S.W.2d 158, 164 (Tex. App.—Dallas 1989, no writ).

**AFLAC's Proposed Jury Charge – Page 6**

## AFLAC'S REQUESTED INSTRUCTION NO. 4:

## (UNCLEAN HANDS)

The doctrine of unclean hands applies to bar recovery by a litigant whose own conduct in connection with the same matter or transaction has been unconscientious, unjust, marked by a want of good faith, or violates the principles of equity and righteous dealing.[5]

Given_____        Refused_____        Given as modified_____

---

[5] City of Fredericksburg v. Bopp, — S.W.3d. —, 2003 WL 22489640, *2 (Tex. App.—San Antonio, Nov. 5, 2003, no pet. h.)

**AFLAC's Proposed Jury Charge** – Page 7

**AFLAC'S REQUESTED INSTRUCTION NO. 5:**

**(TORTIOUS INTERFERENCE)**

A party cannot tortiously interfere with its own contract.[6]  Thus, AFLAC could not be liable for tortiously interfering with its Regional Sales Coordinator Agreement or any other agreement, express or implied, written or oral, that AFLAC has with Plaintiff Dino Chavez.

Given_____          Refused_____          Given as modified_____

---

[6]Holloway v. Skinner, 898 S.W.2d 793,796 (Tex. 1995).

**AFLAC's Proposed Jury Charge – Page 8**

**AFLAC'S REQUESTED INSTRUCTION NO. 6:**

**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional stress was severe.[7] As to the second element, extreme and outrageous conduct is conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.[8]

To determine whether certain conduct is extreme and outrageous, you must also consider the context and the relationship between the parties.[9] The mere fact that AFLAC terminated its Regional Sales Coordinator's agreement with Plaintiff, even if you believe that termination was wrongful, does not, standing alone, render AFLAC's conduct extreme and outrageous.[10] Further, the fact that AFLAC exercised its contractual right to reassign the BISD account to another AFLAC agent cannot constitute extreme and outrageous conduct because AFLAC was acting within its legal rights when it did so.[11]


Given\_\_\_\_\_          Refused\_\_\_\_\_          Given as modified\_\_\_\_\_

---

[7]Tiller v. McLure, -- S.W.3d --, 2003 WL 21026572, *4 (Tex. 2003).
[8]Id.
[9]Id. at *5.
[10]Southwestern Bell Mobile Sys. v. Franco, 971 S.W.2d 52, 54 (Tex. 1998).
[11]Wornick Company v. Casas, 856 S.W.2d 732, 735 (Tex. 1993).

**AFLAC's Proposed Jury Charge – Page 9**

## AFLAC'S REQUESTED INSTRUCTION NO. 7:

### (Quasi Estoppel)

Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken.[12] The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit.[13]

Given_____        Refused_____        Given as modified_____

---

[12]Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857 (Tex. 2000).
[13]Id.

AFLAC's Proposed Jury Charge – Page 10

## AFLAC'S REQUESTED QUESTION NO. 1:

## (WAIVER)

Do you find from a preponderance of the evidence that BISD waived its claim for contribution in connection with the termination of Dino Chavez's Regional Sales Coordinator's agreement with AFLAC or the reassignment of the BISD account?

Given_____          Refused_____          Given as modified_____

**AFLAC'S REQUESTED QUESTION NO. 2 (if Sauceda is granted leave to join AFLAC):**

**(WAIVER)**

Do you find from a preponderance of the evidence that Noe Sauceda waived his claim for contribution in connection with the termination of Dino Chavez's Regional Sales Coordinator's agreement with AFLAC or the reassignment of the BISD account?


Given_____        Refused_____        Given as modified_____

**AFLAC'S REQUESTED QUESTION NO. 3:**

**(UNCLEAN HANDS)**

Do you find from a preponderance of the evidence that, in connection with the events leading up to the termination of Plaintiff's Regional Sales Coordinator's agreement with AFLAC, BISD's conduct was unconscientious, unjust, marked by a want of good faith, or in violation of the principles of equity and righteous dealing?

Given_____          Refused_____          Given as modified_____

**<u>AFLAC'S REQUESTED QUESTION NO. 4</u> (if Sauceda is granted leave to join AFLAC):**

**(UNCLEAN HANDS)**

Do you find from a preponderance of the evidence that, in connection with the events leading up to the termination of Plaintiff's Regional Sales Coordinator's agreement with AFLAC, Noe Sauceda's conduct was unconscientious, unjust, marked by a want of good faith, or in violation of the principles of equity and righteous dealing?


Given_____        Refused_____        Given as modified_____

**AFLAC'S REQUESTED QUESTION NO. 5:**

**(ESTOPPEL)**

Do you find from a preponderance of the evidence that BISD is estopped from asserting a claim against AFLAC in connection with the termination of plaintiff's Regional Sales Coordinator Agreement or the reassignment of the BISD account?

Given_____          Refused_____          Given as modified_____

**AFLAC'S REQUESTED QUESTION NO. 6 (if Sauceda is granted leave to join AFLAC):**

**(ESTOPPEL)**

Do you find from a preponderance of the evidence that Noe Sauceda is estopped from asserting a claim against AFLAC in connection with the termination of plaintiff's Regional Sales Coordinator agreement or the reassignment of the BISD account?


Given_____          Refused_____          Given as modified_____