IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 0 5 2004

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| DINO X. CHAVEZ | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, NOE SAUCEDA, | § | B - 02 - 128 |
| and RANDY DUNN, MARILYN DEL | § | |
| BOSQUE-GILBERT and HUGH EMERSON, | § | |
| JR., in their official capacities as Board | § | |
| Members of Brownsville Independent | § | |
| School District | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT BISD'S MOTION
TO EXCLUDE PLAINTIFF'S EVIDENCE**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **DINO X. CHAVEZ**, Plaintiff herein, and files this his Response to Motion of Brownsville Independent School District to Exclude Plaintiff's Evidence, and for such response would respectfully show unto the Court the following:

**I.**

**SUMMARY OF RESPONSE**

Defendant seeks to exclude evidence pursuant to Federal Rules of Evidence 402 (relevance), 403 (prejudice) and 802 (hearsay). Plaintiff has alleged First Amendment violations by Defendants Noe Sauceda and Brownsville Independent School District (BISD) when they terminated him from his position as *de facto* Third Party Administrator (TPA) and prohibited any involvement with BISD, in retaliation for his speaking on matters of public interest, including financially irresponsible and potentially illegal proposals being made by Defendants. Defendant recasts Plaintiff's

allegations in an attempt to justify exclusion of evidence that would establish Defendants' liability. Defendant seeks to exclude Plaintiff's evidence in order to prevent Plaintiff from being able to establish his claims.

## II.

## **FACTUAL SUMMARY OF ALLEGATIONS**

Plaintiff Dino X. Chavez had been acting as *de facto* TPA for the BISD Cafeteria Plan for the 1999, 2000, and 2001 calendar years. As Defendants Sauceda and BISD prepared to select a TPA for the 2002 calendar year, they prepared the bid specifications in a manner that would most favor a particular vendor, National Plan Administrators (NPA), and Defendant Sauceda thereafter recommended the appointment of NPA as the TPA for the 2002 calendar year. That recommendation, however, provided that Insurance Associates of the Valley (IAV) was to be appointed "agent of record," and that NPA would charge certain fees for its TPA services. Defendant Sauceda was able to make that recommendation with the assistance and support of Board Attorney Roerig, Board Trustee Dunn, and others. Defendant Sauceda was able to garner such support through the offer of favorable treatment for his supporters. For attorney Roerig it was in receiving a favorable attorney services contract, which was not authorized by the board through proper channels. For Board Trustee Dunn, it was at least in receiving favorable treatment for his former spouse (an assistant to Defendant Sauceda) and for his girlfriend and current spouse (an employee in the BISD Insurance Department). As one Board Trustee explained, Sauceda garnered support by asking Trustees what they wanted out of the "cookie jar."

After Mr. Chavez reported to the BISD Employee Committee and the public in general that Defendants' proposed appointment of NPA as the TPA was financially irresponsible, because they charged fees while his proposal did not, and the appointment of an "agent of record" was illegal according to a Texas Attorney General Opinion, Defendants Sauceda and BISD terminated Plaintiff Chavez's services, rejected his bid for services during 2002, and prohibited him from contacting any BISD employee regarding the matters of which he reported. Defendants BISD thereafter took no further official action to retract the directives of Defendant Sauceda, thereby further adopting those actions as its own.

## III.

## RESPONSE TO INDIVIDUAL OBJECTIONS

1.   **Evidence of Damages through Expert Dr. Stephen Horner**

Plaintiff has previously responded to this Defendant's Motion to Exclude Dr. Horner's Testimony through Plaintiff's Response to Defendant's Motion to Exclude Plaintiff's Expert. Dr. Horner has been retained to provide expert testimony that *assists* the trier of fact to understand the evidence and to determine the facts in issue, i.e., the damages suffered by Plaintiff, as allowed by Federal Rule of Evidence 702. Dr. Horner is expected to provide expert economic testimony to establish the amount of wages or earnings Mr. Chavez reasonably would have earned had he remained with AFLAC, including an analysis that would be outside the scope of the lay person's understanding. Unquestionably, such testimony will assist the trier of fact, and Dr. Horner is qualified as an expert economist. Defendant's challenge to Dr. Horner's opinions challenges only the weight and credibility of those opinions, which are the province of

the jury. Defendant may not challenge Dr. Horner's testimony "because it embraces an ultimate issue to be decided by the trier of the fact." FED. R. EVID. 704 (a).

2. **Testimony by BISD employees and trustees**

   a. **Purchase of Worker's Compensation Insurance in August 2001 – Exhibit 1 to Powers' Deposition, Plaintiff's Trial Exhibit 15.**

The referenced documents did not refer to worker's compensation insurance, but rather to the sale of tax sheltered annuities at BISD. Defendant BISD had combined the Request for Qualifications for a TPA to administer the Cafeteria Plan, as well as to administer the Tax Sheltered Annuity Program. Defendants were attempting to combine these two plans to limit the number of companies that would qualify to administer both, or to justify their selection of NPA and IAV as being the only applicant who could administer both programs. During this time, Defendants authorized only a single agent or company to sell annuities at BISD. The documents referenced by Defendant BISD reflect Board Trustee Powers' attempts to get information on why only one agent was being allowed to solicit his products, and Defendant's responses to those attempts. That information is therefore relevant and probative, and not unduly prejudicial.

   b. **Allegations of impropriety concerning attorney Jeff Roerig's actions.**

As set out above, Defendants were utilizing the services of Attorney Roerig to justify their actions. Attorney Roerig knew or should have known that the actions taken by Defendants BISD and Sauceda were improper. The allegations of impropriety made by Board Trustees Powers and Lehman specifically identify Mr. Roerig's biased approach as designed to "chastize, frighten, incite, and threaten both Mr. Powers and [Mr. Lehman]." Those trustees also referenced "Mr. Roerig's attempt to solicit for a contract," and "having members of his law firm

solicit [them] on his behalf for such a contract." This testimony is relevant to Mr. Roerig's purported bias and his testimony designed to retain or increase the amount of fees garnered through the attorney contract. Such testimony is relevant and probative to establish Defendants' knowing violations and is not unduly prejudicial.

    c.    **The hiring of Rogelio Garcia as a benefit consultant.**

Plaintiff does not intend to delve into any discussion involving the hiring of Mr. Garcia as a benefit consultant at this time. Plaintiff agrees to approach the Court before inquiring into any matters relating to the hiring of Mr. Garcia.

    d.    **Impropriety of posting of agenda in May 2002.**

Plaintiff does not intend to inquire into the impropriety of the agendas that were posted in May 2002. Should Plaintiff choose to inquire into this area, counsel will approach the court before doing so.

    e.    **Change in chairperson for the Insurance Committee in February 2002**

The testimony referred to by Defendant is relevant to the bias of attorney Roerig in providing opinions, or as Board President Colunga explained, "Mr. Roerig's opinion is extremely narrow and obviously concocted as he fails to adequately address other relevant issues ... and presents his opinions adversarially as opposed to advisory." Mr. Colunga further explained that "Mr. Roerig's actions [gave him] great concern in whether [Roerig was] ethically fulfilling his role as counsel for BISD or rather [was] more interested in maintaining his contract and pushing what appears to be [Sauceda's] private agenda."

As set out above, Defendants were utilizing the services of Attorney Roerig to justify their actions. Attorney Roerig knew or should have known that the actions taken by Defendants BISD and Sauceda were improper. The allegations of impropriety made by Board Trustees Powers and Lehman specifically identify Mr. Roerig's biased approach as designed to "chastize, frighten, incite, and threaten both Mr. Powers and [Mr. Lehman]." Those trustees also referenced "Mr. Roerig's attempt to solicit for a contract," and "having members of his law firm solicit [them] on his behalf for such a contract." This testimony is relevant to Mr. Roerig's purported bias and his testimony designed to retain or increase the amount of fees garnered through the attorney contract. Such testimony is relevant and probative to establish Defendants' knowing violations and is not unduly prejudicial.

    f.    **Employment contract between BISD and Roerig law firm**

The testimony referred to by Defendant is relevant to the bias of attorney Roerig in providing opinions, or as Board President Colunga explained, "Mr. Roerig's opinion is extremely narrow and obviously concocted as he fails to adequately address other relevant issues ... and presents his opinions adversarially as opposed to advisory." Mr. Colunga further explained that "Mr. Roerig's actions [gave him] great concern in whether [Roerig was] ethically fulfilling his role as counsel for BISD or rather [was] more interested in maintaining his contract and pushing what appears to be [Sauceda's] private agenda."

3.    **Transcripts and exhibits from the Termination Hearing of Dr. Noe Sauceda and the opinion of TEA Hearing Officer Victoria Guerra and internal audit information**

The referenced documents serve to establish that defendants Sauceda and BISD were flaunting BISD's own hiring practices in order that defendant Sauceda could retain personnel

that either were not sufficiently knowledgeable or qualified for the positions to which they were assigned, or were otherwise indebted to defendant Sauceda and would do his bidding, including specific positions in the BISD Insurance Department. The evidence referenced establishes Defendants' willingness to circumvent procedures in a manner similar to the manner in which Plaintiff's rights were violated, in order to promote a particular agenda. The documents referenced were all provided by Defendant BISD and constitute exceptions to hearsay under Federal Rules of Evidence 803(a)(Public Records) and 804(b)(3)(Statement Against Interest). This evidence is therefore relevant and admissible and does not unfairly prejudice Defendant.

4.  **Testimony concerning other lawsuits against BISD, including testimony by Norma Ortiz, Catalina Garcia, or any other individual who has sued BISD.**

At this time, Plaintiff does not anticipate soliciting any testimony concerning any other lawsuits against BISD. Depending on all the testimony that is submitted, however, Plaintiff may call Stephen Andrus to testify to his knowledge relating to the efforts by Defendants to combine the TPA for the Cafeteria Plan and the Tax Sheltered Annuity Program, possibly as a rebuttal witness. Plaintiff agrees to approach the court before soliciting any such evidence, however.

5.  **Testimony and evidence concerning relationship between Randy Dunn and Lizzie Parra**

As set out above, Defendant Sauceda was able to gain approval of his private agenda through Board Trustees, including Trustee Dunn, in exchange for special favors, including favorable treatment for his former girlfriend and current spouse, Lizzie Parra. BISD's own internal audit later found, however, that when Ms. Parra was hired, there was no position control available for that position, no board approval was found to hire her, she did not have a GED or High School Diploma on file for her position, her application was signed five days before her

date of hire, her prior work experience was not verified, and other matters were not properly checked before she was hired. The Texas Hearing Examiner also concluded that Ms. Parra's personnel file was falsified in order to justify her hiring, pursuant to the direction of Defendant Sauceda, that public funds were advanced to Ms. Parra before she became eligible to receive those funds, that Defendant Sauceda tampered with governmental records by authorizing the creation of multiple personnel files for Ms. Parra and backdating the Authority to Report to Work form for her, as well as other such findings. Such evidence establishes Defendant Sauceda's and BISD's willingness to modify BISD's rules to achieve their objectives. Once that support had been garnered, Sauceda could rely on that support even if it would violate the rights of those such as Plaintiff Chavez. Such evidence is relevant and probative to the liability of Defendants and is not unduly prejudicial. The documents also constitute exceptions to the hearsay rule as public records (FRE 803(a)) and statements against interest (FRE 804(b)(3)).

6. **Testimony or evidence that Marilyn Del Bosque-Gilbert and Randy Dunn acted improperly or with illegal intent or motive while acting as BISD Board Trustees.**

Plaintiff does not anticipate soliciting any testimony or evidence relating to the illegal or improper intent or motive of Marilyn Del Bosque-Gilbert while acting as BISD Board Trustee. Should Plaintiff choose to inquire into these matters, Plaintiff will approach the Court before doing so.

With regard to testimony or evidence that Randy Dunn acted improperly or with illegal intent or motive while acting as BISD Board Trustee, Defendant Sauceda was able to gain approval of his private agenda through Board Trustees, including Trustee Dunn, in exchange for special favors, including favorable treatment for his former girlfriend and current spouse, Lizzie Parra. BISD's own internal audit later found, however, that when Ms. Parra was hired, there was

no position control available for that position, no board approval was found to hire her, she did not have a GED or High School Diploma on file for her position, her application was signed five days before her date of hire, her prior work experience was not verified, and other matters were not properly checked before she was hired. The Texas Hearing Examiner also concluded that Ms. Parra's personnel file was falsified in order to justify her hiring, pursuant to the direction of Defendant Sauceda, that public funds were advanced to Ms. Parra before she became eligible to receive those funds, that Defendant Sauceda tampered with governmental records by authorizing the creation of multiple personnel files for Ms. Parra and backdating the Authority to Report to Work form for her, as well as other such findings. Such evidence establishes Defendant Sauceda's and BISD's willingness to modify BISD's rules to achieve their objectives. Once that support had been garnered, Sauceda could rely on that support even if it would violate the rights of those such as Plaintiff Chavez. Such evidence is relevant and probative to the liability of Defendants and is not unduly prejudicial. The documents also constitute exceptions to the hearsay rule as public records (FRE 803(a)) and statements against interest (FRE 804(b)(3)).

7. **Testimony or evidence that attorney Roerig acted improperly or with some illegal intent or motive in representation of BISD, and specifically with regard to actions by Defendant Sauceda relating to Plaintiff Chavez**

As set out above, the testimony referred to by Defendant is relevant to the bias of attorney Roerig in providing opinions, or as Board President Colunga explained, "Mr. Roerig's opinion is extremely narrow and obviously concocted as he fails to adequately address other relevant issues ... and presents his opinions adversarially as opposed to advisory." Mr. Colunga further explained that "Mr. Roerig's actions [gave him] great concern in whether [Roerig was]

ethically fulfilling his role as counsel for BISD or rather [was] more interested in maintaining his contract and pushing what appears to be [Sauceda's] private agenda."

8.   **Portions of BISD minutes and transcripts, including November 13 and 20, that are unrelated to Mr. Chavez's complaint and concerns.**

Although Plaintiff does not intend to delve into any portion BISD minutes and transcripts "that are unrelated to Mr. Chavez's complaint and concerns," it is not clear what portions of such meeting it is that Defendant contends are unrelated." Until Defendant identifies which portions of those meetings it contends are "unrelated," Plaintiff cannot fully respond to this portion of Defendant's motion. Considering that Defendants Sauceda and BISD established a pattern and practice during the Autumn of 2001 to center control and direction of BISD in Defendant Sauceda, and considering that the violation of Plaintiff's rights was but a part of Defendants' policies and practices, it would be difficult to identify which portions of BISD's minutes and transcripts it is that would be "unrelated."

9.   **Testimony or evidence from the lawsuit styled Stephen M. Andrus, Fernando De Peña, Valentin Paz, and Andrus & Paz, a Partnership v. Brownsville Independent School District, Noe Sauceda and Eddie Errisuriz, Jr., Civil Action No. B-02-143.**

At this time, Plaintiff does not anticipate soliciting any testimony concerning any other lawsuits against BISD. Depending on all the testimony that is submitted, however, Plaintiff may call Stephen Andrus to testify to his knowledge relating to the efforts by Defendants to combine the TPA for the Cafeteria Plan and the Tax Sheltered Annuity Program, possibly as a rebuttal witness. Plaintiff agrees to approach the court before soliciting any such evidence, however.

WHEREFORE, PREMISES CONSIDERED, Plaintiff **DINO X. CHAVEZ**, would respectfully request that upon consideration of Motion of Defendant Brownsville Independent School District to Exclude Plaintiff's Evidence, that such motion be **OVERRULED** in its entirety, and that Plaintiff be granted such other and further relief to which he may show himself to be justly entitled, whether general or special, at law and in equity.

Signed on this the 5th day of January, 2004.

                Respectfully submitted,

                **LAW OFFICE**
                **J. ARNOLD AGUILAR**
                Artemis Square, Suite H-2
                1200 Central Boulevard
                Brownsville, Texas 78520
                Telephone   : (956) 504-1100
                Facsimile    : (956) 504-1408

By: _____
        J. Arnold Aguilar
        State Bar No. 00936270
        Federal Adm. No. 6822

        John J. Jordan, Jr.
        State Bar No. 0096852
        Federal Adm. No. 21304

        Attorneys for Plaintiff,
        DINO X. CHAVEZ

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT BISD'S MOTION TO EXCLUDE PLAINTIFF'S EVIDENCE** has on this the 5th day of January, 2004, been forwarded via certified mail, return receipt requested to:

Ms. Elizabeth G. Neally
ROERIG, OLIVEIRA & FISHER, L.L.P.
855 W. Price Rd., Suite 9
Brownsville, TX 78520

Ms. Eileen M. Leeds
WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, TX 78521

Mr. William B. Steele, III
LOCKE, LIDDELL & SAPP, L.L.P.
100 Congress Avenue, Suite 300
Austin, TX  78701

_____
J. Arnold Aguilar
John J. Jordan, Jr.